Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 1 of 53

1

1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF COLUMBIA
2
     In Re:                        .  Case No. 23-00217-ELG
3                                  .  Chapter 7
     CHARLES PAXTON PARET,         .
4                                  .  Washington, D.C.
              Debtor.             .  June 25, 2024
5    . . . . . . . . . . . . . .  .

6                    341 MEETING OF THE CREDITORS
                        BEFORE WENDELL WEBSTER
7                        CHAPTER 7 TRUSTEE

8    APPEARANCES:

9    For the Debtor:           Martin Law Group, P.C.
                               By: ELIZABETH KORBUT, ESQ.
10                             8065 Leesburg Pike
                               Suite 750
11                             Vienna, VA 22182

12   For the Chapter 7         McNamee Hosea, P.A.
     Trustee:                  By: JUSTIN PHILIP FASANO, ESQ.
13                             6404 Ivy Lane
                               Suite 820
14                             Greenbelt, MD 22070

15   For WCP Fund I LLC, DP    The VerStandig Law Firm, LLC
     Capital LLC, 1Sharpe      By: MAURICE BELMONT VERSTANDIG, ESQ.
16   Opportunity Intermediate  9812 Falls Road
     Trust:                    #114-160
17                             Potomac, MD 20854

18   For Manik Chamarthy:      Greenstein DeLorme & Luchs, P.C.
                               By: JAMES SADOWSKI, ESQ.
19                             801 17th Street, N.W.
                               Suite 1000
20                             Washington, DC 20006

21   For Welch Family Limited  By: TODD LEWIS, ESQ.
     Partnership Group:
22

23

24
     Proceedings recorded by electronic sound recording.
25   Transcript produced by transcription service.



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 2 of 53

2

Colloquy

1        (Proceedings commenced at 10:30 a.m.)

2        (Witness sworn.)

3            MR. WEBSTER:  All right.  State your full name for the

4     record.

5            MR. PARET:  Charles Paxton Paret.

6            MR. WEBSTER:  Did you read the bankruptcy petition and

7     bankruptcy schedules and the forms that were filed in this case

8     on your behalf?

9            MR. PARET:  I did.

10           MR. WEBSTER:  And are you personally familiar with

11    that information?

12           MR. PARET:  I am.

13           MR. WEBSTER:  And it is true and accurate, correct?

14           MR. PARET:  Yes.  There's some edits and additions

15    that were -- that we're making that I found going back through,

16    items that are missing that I still -- that I still believe

17    that I have ownership in that haven't been discontinued or

18    haven't been -- are not part of my larger claims.

19           MR. WEBSTER:  I understand, but you can continue to

20    clarify that, correct, going forward?

21           MR. PARET:  Yes, of course.

22           MR. WEBSTER:  All right.  Now, is there any reason why

23    you can't answer the questions this morning?

24           MR. PARET:  Why would there not be a reason why I

25    can't answer the questions?

Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript    Page 3 of 53

3

Colloquy

1          MR. WEBSTER:  Well, no.  I'm just required to ask you

2     that question.  But I take it there is no reason you can't

3     answer, correct?  You're ready to proceed, right?

4          MR. PARET:  Unless I don't know the answer to the

5     question.

6          MR. WEBSTER:  Very good.  Very good.  I understand.

7     All right.  So do the bankruptcy schedules identify all of your

8     assets and creditors in the case?

9          MR. PARET:  They identify -- there are some missing

10    creditors.  There's some missing -- not -- nobody that had

11    filed anything, but there's missing creditors, I believe.  And

12    there's missing -- there's a few missing properties that I

13    still have ownership in that were not included in there.

14         MR. WEBSTER:  All right.  So I'm going to make a note

15    of that, and we'll follow back up on that.  All right?

16         MR. PARET:  Absolutely.

17         MR. WEBSTER:  You may need to update the schedules at

18    some point to complete them.  Now, do you still live at the

19    same address that you lived at when the bankruptcy petition was

20    filed?

21         MR. PARET:  Well, you're saying 343 First Street?

22         MR. WEBSTER:  Is that the address, 343 First Street?

23         MR. PARET:  It's where I live now.

24         MR. WEBSTER:  343 First Street.  North.  What?

25    Northwest?  Northeast?


www.escribers.net | 800-257-0885

Colloquy

1           MR. PARET:  No, no.  Berryville, Virginia.

2           MR. WEBSTER:  343 First Street.  Varityville,

3    Virginia.

4           MR. PARET:  Berryville, Virginia.

5           MR. WEBSTER:  Berryville.  Berryville, Virginia

6           MR. PARET:  22611.  And when the bankruptcy was filed

7    I was moving around between my house in DC where I lived with

8    my ex-wife and our other house here.

9           MR. WEBSTER:  I got you.  So now, let me ask you.  How

10   long did you live in the District of Columbia before you moved

11   to Berryville?

12          MR. PARET:  We haven't.  We've always been in

13   Virginia, but we've -- we've -- we've had a house in DC.  My

14   wife's had a house in DC we'd go back and forth to quite

15   frequently.

16          MR. WEBSTER:  How long did you have that house?

17          MR. PARET:  I never had it.  My wife had it for,

18   maybe, eight, seven -- seven, six years, something like that.

19          MR. WEBSTER:  Oh, I see.  So that never really was

20   your address, the DC house.  Your address was always the

21   Virginia house, correct?

22          MR. PARET:  Yes, sir.

23          MR. WEBSTER:  All right.  How long did you live in

24   Virginia?

25          MR. PARET:  I've lived in Virginia for, maybe, six --



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 5 of 53

5

Colloquy

1    six years.  Six, seven years.  I had another address before

2    that in DC.  I lived in an apartment before I was married.

3              MR. WEBSTER:  So hold on then.  You lived in Virginia

4    for six years.

5              MR. PARET:  Let me give you -- let me give you the --

6    I would say 2018.  2018, 2019 I started going out more to

7    Virginia.  That's correct.

8              MR. WEBSTER:  All right.  And you still live there

9    now.  You still live in Virginia now, correct?

10             MR. PARET:  Yes.

11             MR. WEBSTER:  All right.

12             MR. PARET:  Between here and Atlanta, where my wife

13   has a business, and we go back and forth.

14             MR. WEBSTER:  And the property that you live in in

15   Virginia, is that your residence, or are you renting it?

16             MR. PARET:  It is.

17             MR. WEBSTER:  Your residence?

18             MR. PARET:  It is my residence.

19             MR. WEBSTER:  All right.

20             MR. PARET:  Okay.

21             MR. WEBSTER:  Are you planning on buying any real

22   estate in the next 120 days?

23             MR. PARET:  No.

24             MR. WEBSTER:  Do you have a mobile phone number you

25   can give me?



Colloquy

1          MR. PARET:  Yes.  202-834-7673.

2          MR. WEBSTER:  And do you have an email address?

3          MR. PARET:  Yes.

4          MR. WEBSTER:  Go ahead.

5          MR. PARET:  C as in Charlie, P as in Paul, P as in

6     Paul.

7          MR. WEBSTER:  Is that two P's?

8          MR. PARET:  Yeah.

9          MR. WEBSTER:  Is that two P's?

10          MR. PARET:  Yeah.  Two P's.

11          MR. WEBSTER:  Okay.  Go ahead.

12          MR. PARET:  @colomariver.com.

13          MR. WEBSTER:  Spell that.

14          MR. PARET:  C-O-L-O-M-A-R-I-V-E-R.com.

15          MR. WEBSTER:  Thank you.  Are you currently single,

16     married or separated?

17          MR. PARET:  I just have a partner.  I'm not married.

18          MR. WEBSTER:  All right.  Single.  Do you have any

19     dependents?

20          MR. PARET:  I have a daughter.

21          MR. WEBSTER:  One daughter.  Are you currently

22     employed?

23          MR. PARET:  Yes.  I'm working as an advisor in putting

24     together real estate transactions.

25          MR. WEBSTER:  Do you have an employment address



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 7 of 53

7

Colloquy

1   different from your home?

2          MR. PARET:  No.

3          MR. WEBSTER:  Okay.  Your home address. Have you ever

4   filed for bankruptcy before?

5          MR. PARET:  No, I never filed for bankruptcy.  I was

6   involuntary, put into it.

7          MR. WEBSTER:  I see.  I understand.  Have you

8   purchased a car within the last six months?

9          MR. PARET:  No.

10          MR. WEBSTER:  All right.  You currently own a vehicle?

11          MR. PARET:  I do.

12          MR. WEBSTER:  Is it insured?

13          MR. PARET:  It is.

14          MR. WEBSTER:  All right.  You have any life insurance

15   with cash surrender value?

16          MR. PARET:  No.

17          MR. WEBSTER:  Were you expecting any tax refunds at

18   the time you filed the bankruptcy case -- at the time the

19   bankruptcy case was filed?

20          MR. PARET:  No, but there could be.  We've engaged a

21   tax company, and there could be substantial refunds that we're

22   in the process of working through.

23          MR. WEBSTER:  All right.  In the process.  Okay.

24          MR. PARET:  I can give you the name of that accountant

25   if you need that.



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript    Page 8 of 53

8

Colloquy

1          MR. WEBSTER:  Please do.

2          MR. PARET:  It's Bobby Bhatia.

3          MR. WEBSTER:  Bobby?

4          MR. PARET:  Bhatia LLP or is it Bhatia, CPA &

5   Consultants.

6          MR. WEBSTER:  Spell it for me.  Bobby?

7          MR. PARET:  B --

8          MR. WEBSTER:  Wait a minute.  I'm sorry.  Bobby,

9   B-O-B-B-Y?

10          MR. PARET:  Yes, sir.

11          MR. WEBSTER:  All right.

12          MR. PARET:  B-H-A-T-I-A.

13          MR. WEBSTER:  CPA?

14          MR. PARET:  Yes, sir.

15          MR. WEBSTER:  All right.  And is there a phone number?

16          MR. PARET:  I don't -- I don't have it on me at the

17   moment, but I can have it emailed to you at another time.

18          MR. WEBSTER:  Very good.  Very good.  All right.  Does

19   anyone owe you any money, including wages?

20          MR. PARET:  Yeah.  There's probably a long.  I have to

21   go through that list.  Yeah.

22          MR. WEBSTER:  Okay.  And that would be added to your

23   schedules, correct, monies that are owed?

24          MR. PARET:  You would think -- I think one is, I mean,

25   there's some people that I can't really find that owe me an



Case 24-10023-ELG    Doc 1-1    Filed 07/04/24    Entered 07/04/24 00:55:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 9 of 53

9

Colloquy

1    exorbitant amount of money.  I don't know where they're

2    located.  I looked into hiring a private investigator, and I

3    can't seem to -- seem to locate one of the individuals.  The

4    other individual is based in DC.  Owes me probably about

5    $75,000.  He used my money to buy a personal residence instead

6    of an investment.  And he's based in DC.

7            MR. WEBSTER:  All right.  Do you own any antique

8    collectibles?

9            MR. PARET:  I did for -- I had -- I had a bunch of

10   stuff under consignment on a store that I used to manage, but I

11   no longer -- I've been -- I no longer have that property

12   anymore or any of the antiques that were in there other than

13   what's in my house, my furniture and stuff --

14           MR. WEBSTER:  All right.

15           MR. PARET:  -- now.

16           MR. WEBSTER:  So all of your property though, is

17   listed in the bankruptcy schedules now; is that correct?

18           MR. PARET:  That's correct.

19           MR. WEBSTER:  All right.  Do you have any domestic

20   support obligations that you're required to pay?

21           MR. PARET:  Other than taking care of my daughter and

22   my wife, no, I don't have any other.

23           MR. WEBSTER:  But I mean, not -- that's not in the

24   form of a domestic support obligation.  Is that right?

25           MR. PARET:  No, I don't.



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript    Page 10 of 53

10

Colloquy

1            MR. WEBSTER:  Okay.  All right.

2            MR. PARET:  But --

3            MR. WEBSTER:  Have you --

4            MR. PARET:  I have to take care of my family.

5            MR. WEBSTER:  I understand.  I understand.  Have you

6    transferred any property out of your name in the last four

7    years?

8            MR. PARET:  No.  No.

9            MR. WEBSTER:  All right.  Have you sold a house or

10   business in the last four years?

11           MR. PARET:  You know, I've had -- no.  I've had some

12   properties taken from me, but I haven't had any -- I haven't

13   sold or exited.

14           MR. WEBSTER:  I understand.  Has anyone passed away

15   that you would expect to inherit property from?

16           MR. PARET:  No.

17           MR. WEBSTER:  Have you been involved in an automobile

18   accident where you might have a claim against someone?

19           MR. PARET:  No.

20           MR. WEBSTER:  And now, are you currently involved in

21   any litigation where you're suing anyone?

22           MR. PARET:  Yes.

23           MR. WEBSTER:  All right.  And is that information in

24   the schedules?

25           MR. PARET:  It should be.



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript    Page 11 of 53

11

Colloquy

1          MR. WEBSTER:  All right.  We'll follow up if it's not.

2    Now, you said you're -- are you in the process of finalizing

3    your personal taxes, or are these business taxes?  You said you

4    have an accountant that's looking into the tax issues.

5          MR. PARET:  It will be a combination of personal and

6    business.

7          MR. WEBSTER:  All right.  So you're in the process of

8    doing that?

9          MR. PARET:  Yes.

10         MR. WEBSTER:  All right.  And we need to speak to

11   speak to Bobby Bhatia about that.

12         MR. PARET:  (Indiscernible).

13         MR. WEBSTER:  All right.

14         MR. PARET:  And I spoke to my agent at the IRS, and

15   she's aware that we're amending the -- there's some tax

16   obligations that are incorrect that date back to 2019.  So

17   hopefully, by the time we're done with these taxes, all of that

18   will be amended.

19         MR. WEBSTER:  I understand.  Now, did you list all of

20   your bank accounts in the schedules?

21         MR. PARET:  I did.

22         MR. WEBSTER:  All right.  Do you have a stock account

23   or mutual fund account?

24         MR. PARET:  I do not.

25         MR. WEBSTER:  All right.  And have you paid anyone



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 12 of 53

12

Colloquy

1    more than $600 in bills in the past three months?

2          MR. PARET:  Other than my current obligations,

3    mortgages, car payments --

4          MR. WEBSTER:  All right.  And that information is

5    reflected in the schedules.  Correct?

6          MR. PARET:  Correct.  All right.

7          MR. WEBSTER:  Do you have a college education fund for

8    your daughter?

9          MR. PARET:  I do not.

10         MR. WEBSTER:  Have you owned or had any interest in an

11   LLC or a business in the past four years?

12         MR. PARET:  Yes, of course.

13         MR. WEBSTER:  And that's reflected in the schedules

14   too, correct?

15         MR. PARET:  Yeah, there's a lot of LLCs.  Now, the

16   problem is most of those LLCs are either defunct or I'm not

17   renewing them.  So either they're -- they're part of the

18   current litigation, or I've just let them go because I can't

19   pay to renew them.

20         MR. WEBSTER:  I understand.  But they are listed in

21   your schedules.

22         MR. PARET:  Yes.

23         MR. WEBSTER:  All right.

24         MR. PARET:  There are some that are missing or that

25   have properties attached to them that were not in the schedules

Case 24-10023-ELG    Doc 1-1    Filed 07/04/24    Entered 07/04/24 00:55:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 13 of 53

13

Colloquy

1    that I did not think that I would have a claim to, but the LLCs

2    are still active and the properties are still active, and these

3    are assets that are outside of the current litigation with one

4    of my creditors.

5            MR. WEBSTER:  Okay.  So we may have to follow up with

6    you on that.  Have you been involved in any type of trust in

7    the last three years?

8            MR. PARET:  No.  There was a trust that was set up in

9    Virginia that never went -- it was never actually set up.  It

10   was meant to be for a project.  I think it was called the Paret

11   Family Limited Partnership Trust, but it never was set up, and

12   there's nothing attached to it.  And it just -- it should have

13   gone defunct at this point.

14           MR. WEBSTER:  All right.  Do you own any

15   cryptocurrency?

16           MR. PARET:  I did, and it's one of the ongoing

17   litigations.  I'm trying to find one of my -- the gentleman who

18   ran off with it is one of my debtors that ran off with quite --

19   quite a large sum of it.

20           MR. WEBSTER:  All right.  And is that referred to in

21   the schedules?

22           MR. PARET:  It should be, yes.

23           MR. WEBSTER:  All right.  What about a Venmo account?

24   Do you have a Venmo account?

25           MR. PARET:  I personally do not, but I think, like,



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript    Page 14 of 53

14

Colloquy

1   one of my -- my retail businesses did for a while.

2           MR. WEBSTER:  All right.  How about a PayPal account?

3           MR. PARET:  No.

4           MR. WEBSTER:  And have you made any electronic

5   transfers to any parties from any of these accounts in the past

6   year?

7           MR. PARET:  To what accounts?

8           MR. WEBSTER:  From any of those electronic accounts in

9   the past year.

10          MR. PARET:  Yeah, I think for my -- it's set up under

11  my house payments where renters can -- people that rent my

12  little cottages that are at my house and properties that I

13  manage, they pay through -- they can pay through Venmo.  It's

14  mostly where they pay.  If they don't pay through Venmo,

15  they'll pay through, like, just an online processing.

16          MR. WEBSTER:  So but --

17          MR. PARET:  That goes to --

18          MR. WEBSTER:  That's the Venmo account, though, that's

19  listed for your business.

20          MR. PARET:  That's correct, Your Honor.  Yes.

21          MR. WEBSTER:  Yeah, you said you said you didn't have

22  one personally, but your business -- you have a business name.

23          MR. PARET:  Yeah.

24          MR. WEBSTER:  All right.

25          MR. PARET:  It should be at least.  I mean, I have an

Colloquy

1    admin that manages all of that.

2            MR. WEBSTER:  All right.  All right.

3            MR. PARET:  I'll double check with you.

4            MR. WEBSTER:  Oh.  Very good.  Okay.  I don't have any

5    more 341 interrogatory questions right now, but we may have to

6    follow up once we review your schedules.  All right?

7            MR. PARET:  Okay.

8            MR. WEBSTER:  All right.  The attorneys on the line

9    beginning with Attorney Fasano.  Do you have any follow-up

10   questions?

11           MR. FASANO:  Yeah.  All right.  Mr. Paret, I saw you

12   listed, it looked like forty or fifty, maybe eighty or ninety

13   LLCs.  I know those LLCs are involved in litigation, but did

14   any of those LLCs still own any property in --

15           MR. PARET:  Yes.

16           MR. FASANO:  Yes.  Which ones are those?

17           MR. PARET:  1114 8th Street Holdings L.L.C.

18           MR. FASANO:  Okay.  And does that one own the property

19   at that address?

20           MR. PARET:  Correct.  And I'm a fifty percent owner of

21   that address of that company.  Yes.

22           MR. FASANO:  Okay.

23           MR. PARET:  There was a very, you know, the partner in

24   that deal, in order to avoid a claim against the property by

25   one of our investors, he made me sign, like, a small release,



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 16 of 53

16

Colloquy

1    but I've had my counsel look at it, and he said, that's

2    invalid.  There's been no dissolution of the partnership, and

3    there's been no dissolving of the asset, and it's worth

4    probably $2 million.  And I think we have about a $900,000

5    first position trust that's on that.

6          MR. FASANO:  All right.  Is there any second position

7    trust on it?

8          MR. WEBSTER:  I don't think so.  No.

9          MR. FASANO:  Okay.  Who's the other fifty percent

10   owner?

11         MR. PARET:  I believe Easy Loans (phonetic).  Ryan

12   Shandell.

13         MR. FASANO:  Ryan.  How do you spell his last name?

14         MR. PARET:  S-H-A-N-D-E-L-L.

15         MR. FASANO:  Okay.  Are there any other --

16         MR. PARET:  Go ahead.

17         MR. FASANO:  Are there any other companies that still

18   own property that you have an interest in?

19         MR. PARET:  Yes.  There was 729 Kennedy Street

20   Holdings.  It's not a party to the WCP litigation.

21         MR. FASANO:  Okay.  And what does that own?  I mean,

22   does that own 729 Kennedy Street?

23         MR. PARET:  Yes.

24         MR. FASANO:  So what?  Fifty percent interest?

25         MR. PARET:  1,000,003, and it's -- I think it has a

Colloquy

1    $550,000 first position.

2              MR. FASANO:  You own --

3              MR. PARET:  No, I own sixty-five percent.  Sixty-three

4    percent, something like that.  I don't know the exact amount.

5              MR. FASANO:  Who's the other owner?

6              MR. PARET:  That's a group of small investors that are

7    part of the litigation.

8              MR. FASANO:  Okay.  And WCP has no lien on that?

9              MR. PARET:  No.

10             MR. FASANO:  Okay.  Who has the lien on that?  .

11             MR. PARET:  Dave McClure (phonetic).  I forget the

12   name of the lender.  It's something, Hive Lending (phonetic).

13   Hive lending.

14             MR. FASANO:  Hive lending?  Like a beehive.

15             MR. PARET:  Yes.

16             MR. FASANO:  Okay.  Anything else?

17             MR. PARET:  Well, there's a property in question that

18   I signed a release for, but it may be a little gray.  There was

19   a property in southeast DC, a fairly sizable site, where we

20   made a deal with a developer that we could close on the land,

21   but in order for him to close on the land he had -- we had to

22   lower our purchase price, and he would give us a concession.  I

23   don't think there's any -- if either -- I mean, I could try to

24   litigate it, but I'm not sure it's worth going after, because

25   we did sign, sort of, a release.  But there was an agreement

Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 18 of 53

18

Colloquy

1   between us and the other party.  It's just a single individual,

2   but we sold them a property for a million dollars, and the --

3   it ended up being, like, more like 300,000, because we couldn't

4   get the appraisal done.  But I don't know if I have any real

5   claim to it at this point, but -- I forgot.  I forgot about --

6          MR. FASANO:  What is the entity and what is the

7   property?

8          MR. PARET:  I have to send it to you.  It's -- it's

9   just lots.  It's just empty lots.  There's no property.

10         MR. FASANO:  Okay.  And it's not in your company's

11  name right now?

12         MR. PARET:  No, it was in a company that I

13  established.  I think it was reassigned to a new -- it was sold

14  to a new entity, but it was sold for no money.  It was just --

15  we just lowered the price and to get -- to get him approved for

16  the loan, so he could close on it quickly.  It's slightly

17  complicated, but I can -- I can -- it's worth a lot of money

18  now.  It's probably worth maybe $3 million now, but this is

19  five, six, seven years ago, something like that.

20         MR. FASANO:  So you lowered the price and that he

21  would qualify for a loan because he couldn't get the appraisal?

22         MR. PARET:  And we were supposed to -- we were

23  supposed to work together on the property to get the

24  entitlements, which we did work on after he closed and get it,

25  you know, get the financing together.  It was being held in his



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 19 of 53

19

Colloquy

1    name during that time.  But a lot of things happened between

2    now and then, and we just sort of.

3           MR. FASANO:  And what is his name?

4           MR. PARET:  His name's Peter Corbett (phonetic).  Or

5    wait, wait.  I'm sorry.  Let me make sure of this.  Corbetts.

6    It's not Peter Corbett.  It's Corbett-Daly (phonetic).

7           MR. FASANO:  Corbett-Daly.  Is that his last name is

8    Corbett-Daly or is --

9           MR. PARET:  Yeah.

10          MR. FASANO:  Okay.

11          MR. PARET:  And the name of the LLC  The name of the

12   LLC was 15th Place Holdings, LLC.

13          MR. FASANO:  UU:  Got it.  And do you know, is that

14   within the last four years?

15          MR. PARET:  2019, sort of.

16          MR. FASANO:  Sort of.

17          MR. PARET:  Maybe.

18          MR. FASANO:  Okay.

19          MR. PARET:  Maybe.  I mean, I think it went into --

20   hold on.  Let me see.  Yeah.  This is all in 2018 from -- we

21   closed in -- it -- the purchase price that we were selling it

22   to the entity, I believe, was for 800,000.  I'm looking at the

23   details now.  We actually ended up settling for 300 or

24   something very way below market value, so he could close on the

25   loan.  But you can build thirty units in --



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript    Page 20 of 53

20

Colloquy

1          MR. FASANO:  You mean like, a second note on the

2     property?  Second deed of trust.

3          MR. PARET:  No it was -- I think it was more of a -- I

4     have somewhere in an email, I think we -- the structure of how

5     we did it.  I'd have to share it with you.  I'd have to find

6     it.

7          MR. FASANO:  Right.  Any other properties, any other

8     LLCs that still have property?

9          MR. PARET:  I'd have to go back through that list

10    again.  I know it was a lot, but I think there was, like, one

11    or two more that were slightly outstanding.  I'll go -- I don't

12    want to say no, and then have there be another one and me -- me

13    being questioned as regarding of what my you know.  I just, I

14    don't know off the top of my head.  I'd have to go back through

15    to look.

16         MR. FASANO:  Marlin Mead (phonetic), that is the guy

17    who owes you 75,000?

18         MR. PARET:  I mean, it's accruing interest heavily.

19    Yeah.

20         MR. FASANO:  So what?  What happened with that?

21         MR. PARET:  He bought a house using that money, and

22    it's worth quite a lot of money now, I think.  I think it's

23    worth quite substantially.  I can send you the -- I mean, as of

24    it was a $40,000 principal as of July 18th, 2019, accruing

25    three percent a month since that date.



Colloquy

 1        MR. FASANO:  So he took your money.  He bought a house

 2   with it.  Was there a loan document between you?

 3        MR. PARET:  There was a -- there was a promissory

 4   note.  And a few other things, I believe.  Yes.  I can -- I can

 5   share that with you.

 6        MR. FASANO:  Okay.

 7        MR. PARET:  But I knew he used that money to buy a

 8   house.  And the house is, I think, has 300 or $400,000 in

 9   equity in it.

10        MR. FASANO:  Is he living there?

11        MR. PARET:  I believe so.  James Lomax (phonetic).

12   The name of the -- the name of the -- the name of the address

13   that he used to acquire the property was -- can I give you the

14   address?

15        MR. FASANO:  Yeah.

16        MR. PARET:  6017 Seat Pleasant Drive in Capital

17   Heights, Maryland.  But he never he never used that money to

18   buy that house.  He used it to buy something else.  To buy

19   another house that he was developing, and then ended up moving

20   in as a personal residence.

21        MR. FASANO:  Right.  Have you sued?

22        MR. PARET:  I have been emailing him consistently.  I

23   haven't filed suit yet.  But I had enough of other things and

24   other things I'm dealing with regarding filings.

25        MR. FASANO:  Okay.  And James Lomax, IV, that's the



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 22 of 53

22

Colloquy

 1  guy you can't find?

 2          MR. PARET:  Correct.

 3          MR. FASANO:  And he sold 320 bitcoin?

 4          MR. PARET:  Something like that.

 5          MR. FASANO:  I just went online.  That looks like it's

 6  valued around $60,000 right now.  Does that seem right?

 7          MR. PARET:  Something like that.

 8          MR. FASANO:  Okay.

 9          MR. PARET:  Yeah, if I could find him.  If you look

10  up, there was an LLC, a Coloma River LLC that he had registered

11  in Florida.  He went ghost on me probably, maybe, five years

12  ago.  We had a total of, like, 500 and something bitcoin,

13  something like that.  I think at the time where it began to

14  disappear was somewhere around 300.  At the time they were,

15  like, $300 a coin or something like -- it wasn't substantial

16  the way it is now, but I've tried to hire people to find him.

17          MR. FASANO:  What else?

18          MR. PARET:  Right.  Keep going.  I think that's about

19  it.

20          MR. FASANO:  Give me two seconds.  The consigned

21  goods.  Were you running a store in Clark County?

22          MR. PARET:  Yeah, I was.  I mean, it was a -- just a

23  hobby project.  Called Neatoville (phonetic).  It was an asset

24  that I was trying to buy over -- over time through, like, a

25  lease to own structure.  And the guy went back on his offer,

Colloquy

1   and I couldn't keep staff there to manage it, and just ended up

2   walking away from the store and everything in it.  There was a

3   lot of, you know, assets and things that were being sold under

4   that, under that LLC, but I didn't have time to manage it, and

5   it didn't really make any money.

6           MR. FASANO:  What was the LLC?

7           MR. PARET:  Neatoville LLC.  N-E-A-T-O.  It doesn't

8   have any value now.  I mean, it's nothing.

9           MR. FASANO:  You would buy goods on consignment?  Or

10  not buy goods.  People would consign goods to it?

11          MR. PARET:  Yeah.  I never was involved in it.  I

12  don't have time to.  I mean, it's not my business.  It was more

13  of a way to, you know, grow community, and it was a hobby, if

14  any.

15          MR. FASANO:  All right.  So you're living at 343 First

16  Street?

17          MR. PARET:  Yeah.

18          MR. FASANO:  Okay.  What is 98 East Fairfax?

19          MR. PARET:  It's part of 343 First Street.  It's just

20  a separate -- a separate parcel.  And I'm here now.  It's the

21  house.  I live on a farm.  I, you know, I have animals.  I take

22  care of the animals, and 98 East Fairfax is the rear entrance

23  of my farm.  It's the main farmhouse that attaches to this

24  parcel.

25          MR. FASANO:  So First Street is the house.  Fairfax is



Case 24-10023-ELG    Doc 1-1    Filed 07/04/24    Entered 07/04/24 00:55:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 24 of 53

24

Colloquy

1    the farm.

2          MR. PARET:  Fairfax is the farm.  It's all connected.

3    And I have a guest house on that property as well.  But it used

4    to be, originally, in the early days, about 100, 150 years ago,

5    It used to be all one parcel.  It was subdivided, and I

6    reconnected them.

7          MR. FASANO:  Are you actively farming there?

8          MR. PARET:  I am.

9          MR. FASANO:  What are you farming?

10         MR. PARET:  I have cows, and I think, a couple of

11   ducks.

12         MR. FASANO:  Any crops?

13         MR. PARET:  No, minus the hay.  That's it.

14         MR. FASANO:  How many cows?  Do you know?

15         MR. PARET:  Eight.

16         MR. FASANO:  And how many ducks?

17         MR. PARET:  Four or six.

18         MR. FASANO:  Are these milk cows?

19         MR. PARET:  Yeah, they're -- they're Angus beef.

20         MR. FASANO:  Angus beef.  So are they (indiscernible)

21   cows?

22         MR. PARET:  I guess they're cows, but they're --

23   they're not, I mean, I'm not breeding them.

24         MR. FASANO:  Right.

25         MR. PARET:  I mean, the guy who manages it all does



Colloquy

1    it, but we just.  I just do it for food.

2          MR. FASANO:  Right.

3          MR. PARET:  I don't do it for money.

4          MR. FASANO:  You don't sell the cows?  You just --

5          MR. PARET:  No cows.

6          MR. FASANO:  Yeah.  Got it.  Okay.

7          That's going to be all my questions for now.  I'll

8    open up the floor to everyone else.

9          MR. WEBSTER:  Well does Attorney VerStandig have any

10   questions?

11          MR. VERSTANDIG:  Yes.  And just as a sort of

12   preliminary matter, can we keep the 341 open until such a time

13   as amended schedules are filed?

14          UNIDENTIFIED SPEAKER:  I think we're going to need to,

15   yeah.

16          MR. WEBSTER:  Yes, we'll do that.

17          MR. VERSTANDIG:  Mr. Paret, earlier today you

18   indicated that you have a partner, but you're not married.  And

19   then subsequently, you made a reference to your wife.  What is

20   your marital status?

21          MS. KORBUT:  You're muted.

22          MR. PARET:  When I was talking about my wife, I meant

23   my ex-wife.

24          MR. VERSTANDIG:  Okay.  Do you have a support

25   obligation to your ex-wife?



Colloquy

1          MR. PARET:  No, I do not.

2          MR. VERSTANDIG:  Do you send your ex-wife money?

3          MR. PARET:  No.

4          MR. VERSTANDIG:  I'm sorry.  Say that one more time.

5          MR. PARET:  No.

6          MR. VERSTANDIG:  Okay.  So when you talked about

7    supporting your child and your wife, what did you mean by

8    supporting your wife?

9          MR. PARET:  Oh, I'm sorry.  I mean, supporting my

10   partner.  I'm not married.  I'm engaged.  I'm not married.

11         MR. VERSTANDIG:  Do you have a wedding date?

12         MR. PARET:  No.

13         MR. VERSTANDIG:  Did you present your partner with an

14   engagement ring?

15         MR. PARET:  I did.

16         MR. VERSTANDIG:  When did you become engaged?

17         MR. PARET:  It's like, I think, October of last year.

18         MR. VERSTANDIG:  October of 2023?

19         MR. PARET:  Correct.

20         MR. VERSTANDIG:  Okay.  Where did you procure the

21   engagement ring?

22         MR. PARET:  I got it through -- well, I got it from --

23   I think I got it from an estate, like, an estate sale.

24         MR. VERSTANDIG:  It's a used engagement ring?

25         MR. PARET:  Yes, absolutely.



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 27 of 53

27

Colloquy

1        MR. VERSTANDIG:  How much did you pay for it?

2        MR. PARET:  I think I paid, like, 2 or $3,000.

3        MR. VERSTANDIG:  Are you familiar with the property

4   known as 4910 Georgia Avenue?

5        MR. PARET:  Yes.

6        MR. VERSTANDIG:  Okay.  You're currently being sued in

7   federal court over your involvement with that property,

8   correct?

9        MR. PARET:  Yes.

10        MR. VERSTANDIG:  Do you claim, through partnership or

11   otherwise, to have any ownership interest in that property, as

12   we sit here today?

13        MR. PARET:  Is that pertinent to this conversation?

14        MR. VERSTANDIG:  Yes.

15        MR. PARET:  I mean, can I answer this question without

16   my other counsel?

17        MR. VERSTANDIG:  Mr. Paret, you're under oath, and

18   it's your meeting of creditors.  Unless someone instructs you

19   otherwise, you're going to answer my questions today.  So do

20   you claim to have an ownership interest in 4910 Georgia Avenue?

21        MR. PARET:  I do.

22        MR. VERSTANDIG:  What is the nature of your ownership

23   interest?

24        MR. PARET:  I think that's currently in debate.

25        MS. KORBUT:  Considering it's an ongoing proceeding,



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 28 of 53

28

Colloquy

 1    is this something that can be updated as the proceeding

 2    continues?

 3            MR. VERSTANDIG:  Mr. Paret has certainly changed

 4    answers in the past.  He's welcome to change them in the

 5    future.

 6            All right.  Mr. Paret, are you familiar with a

 7    property known as 423 Kennedy Street in Washington, DC?

 8            MR. PARET:  Yes.

 9            MR. VERSTANDIG:  Okay.  Do you claim to have an

10    ownership interest in that property?

11            MR. PARET:  That's currently in debate.

12            MR. VERSTANDIG:  I understand you're saying it's in

13    debate.  What is your position in the debate?  Do you maintain

14    that you have an interest, or do you maintain that you don't

15    have an interest?

16            MR. PARET:  We maintain that we have an interest.

17            MR. VERSTANDIG:  Okay.  When you say we, who is we?

18            MR. PARET:  My LLC, 423 Kennedy Street Holdings.

19            MR. VERSTANDIG:  Okay.  Do you own an interest in 423

20    Kennedy Street Holdings LLC?

21            MR. PARET:  That's currently in debate.

22            MR. VERSTANDIG:  Okay.  But you maintain that you do?

23            MR. PARET:  It's currently in debate.

24            MR. VERSTANDIG:  No.  Mr. Paret, I'm not asking you if

25    there's a debate.  I'm asking you what your position is.  And I

Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 29 of 53

29

Colloquy

1    understand.  Judges can tell you that you're wrong.  Other

2    people can argue with you.  Is it your position that you own an

3    interest in 423 Kennedy Street, the property in Washington, DC?

4         MR. PARET:  It's currently in debate.

5         MR. VERSTANDIG:  Mr. Paret, that's not an acceptable

6    answer.  If you don't know, you can tell me that you don't

7    know, and we can talk about the facts.  And if you'd rather do

8    this for 4910 Georgia or one of the other sixty-some odd

9    properties, that's fine.  I picked a few properties at random.

10   But I want to understand.  Is it your position -- and look.  A

11   judge may say otherwise.  Lawyers may say otherwise.  Other

12   people may say otherwise.  But is it your position, Charles

13   Paxton Paret, that you own an interest in the real property

14   situated at 423 Kennedy Street in the District of Columbia?

15        MR. PARET:  It's currently in debate.

16        MS. KORBUT:  Mac, I think you got the answer you're

17   going to get on this one.  I think he understood.

18        MR. PARET:  I can go -- I can go all day, Mac.  Let's,

19   you know, you're going to get the same thing out of me.

20        MR. VERSTANDIG:  Okay.

21        MR. PARET:  Let's move on.  In the interest of time.

22        MR. VERSTANDIG:  Mr. Paret, what is your position in

23   that debate?  Do you believe that you own an interest, or do

24   you not believe that you own an interest?  I'm sorry.  I didn't

25   hear an answer.



www.escribers.net | 800-257-0885

Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 30 of 53

30

Colloquy

1          MR. PARET:  I didn't give one.

2          MR. VERSTANDIG:  Chuck, please answer the question.

3          MR. PARET:  I -- I believe that my investors have an

4     ownership interest in that property.  And our LLC, our LLC has

5     an ownership interest in that property.  And I'm not going to

6     speak on behalf of my interest.

7          MR. VERSTANDIG:  Why are you not going to speak on

8     behalf of your interest?

9          MR. PARET:  Because it's currently in debate.

10          MR. VERSTANDIG:  Only for the record at this point,

11     because obviously a contempt admission's forthcoming.

12          Mr. Trustee, would you please direct the debtor to

13     answer the question?

14          MR. WEBSTER:  Well, I believe he's saying that he

15     doesn't -- he's not able to answer it, because it's unclear.

16     That's my understanding.

17          MR. PARET:  That is correct, Mr. Webster.

18          MR. VERSTANDIG:  But Mr. Paret, now, it is your

19     position that an entity you own owns an interest in that

20     property?

21          MR. PARET:  I mean, you're trying to get me to answer

22     that question the way you want me to answer the question.  And

23     as Mr. Webster stated, it is currently unclear.  My only

24     position that I'm stating on record is that the LLC that we own

25     had interest in that property, and my investors had interest in

Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 31 of 53

31

Colloquy

1   that property.  And that is all at this time that I will say.

2          MR. VERSTANDIG:  Well, Mr. Paret, you've sued my

3   client for, I believe, half a billion dollars on the theory

4   that you have an interest in that property and fifty some odd

5   others, correct?

6          MR. PARET:  That is correct.

7          MR. VERSTANDIG:  Did you voluntarily file that

8   lawsuit, or were you forced to do so?

9          MR. PARET:  Force?  Force by who?

10          MR. VERSTANDIG:  Well, I just want to make sure, since

11   you're not answering today, that you at least understood what

12   you were doing when you filed that lawsuit.

13          MR. PARET:  I mean, we were filing that lawsuit on

14   behalf of, you know, the other partners and investors that were

15   in that project.

16          MR. VERSTANDIG:  So you filed it on behalf of them.

17   The lawsuit is <u>Charles Paret v. Daniel Huertas</u>, correct?  You

18   don't have any co-plaintiffs?

19          MR. PARET:  No, there's -- it's currently myself and

20   the LLCs, I believe.

21          MR. VERSTANDIG:  I'm sorry.  It's your position that

22   the LLCs are your co-plaintiffs?

23          MR. PARET:  No.  I'm sorry.  I misspoke.

24          MS. KORBUT:  Mr. VerStandig, is any of this calculated

25   towards finding out whether or not the estate has any assets?



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 32 of 53

32

Colloquy

1          MR. VERSTANDIG:  Yeah.  It appears the estate's only

2    asset, other than things that haven't been scheduled and

3    several hundred million dollars in stolen bitcoin is a

4    litigation claim against my client.  I'm trying to gently

5    explore whether or not he even understands the litigation claim

6    he filed

7          MS. KORBUT:  Mac, currently, we're not discussing the

8    litigation claim, and he doesn't have his attorneys present

9    that are representing him in that litigation claim, so I can't

10   really speak to it, nor could I cover what should or shouldn't

11   be disclosed in this meeting under that proceeding.  So this

12   seems like something that needs to be sorted out in the

13   litigation proceedings and not in these ones.

14         MR. VERSTANDIG:  Well, he's not represented in the

15   litigation, because it's an asset of the estate.  So we don't

16   need to worry about him having litigation counsel present.  I'm

17   simply asking for his understanding of what he's asserting.

18   I'm not asking him to make legal conclusions.  I'm not asking

19   him to play judge.

20         MR. PARET:  If my attorneys are present that are

21   representing me, I'm going to give the same response, that it's

22   unclear.

23         MR. VERSTANDIG:  Okay.  Who are the attorneys that are

24   representing you, Mr. Paret?

25         MR. PARET:  Blank Rome, Donald Temple.



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 33 of 53

33

Colloquy

1          MR. VERSTANDIG:  When did you engage the services of

2    Blank Rome?

3          MR. PARET:  I currently -- I think they currently are

4    being engaged now, I believe.

5          MR. VERSTANDIG:  So they're not your attorneys at the

6    moment.  They're yet to be engaged?

7          MR. PARET:  I believe so.  They -- they were engaged

8    with me on a -- on a matter of, the OAG matter, which is not

9    related to this.

10         MR. VERSTANDIG:  Well, let me ask you a different

11   question.  Since you were placed into bankruptcy, have you

12   hired any attorney other than the Martin Law Group without the

13   permission of the bankruptcy court?

14         MR. PARET:  No.

15         MR. VERSTANDIG:  Okay.  So if Blank Rome is still

16   being engaged, are you saying that they represented you since

17   before the bankruptcy, even though there is --

18         MR. PARET:  No.  They haven't been formally engaged

19   yet?

20         MR. VERSTANDIG:  Okay.  What about Mr. Temple?  When

21   did you formally engage Mr. Temple?

22         MR. PARET:  I think May or May or April, May, March of

23   2023, somewhere around that time.

24         MR. VERSTANDIG: Is Mr. Temple holding a retainer for

25   you?



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript    Page 34 of 53

34
Colloquy

1            MR. PARET:  He is not.

2            MR. VERSTANDIG:  You paid him somewhere between 10 and

3     $20,000, correct?

4            MR. PARET:  That's correct.

5            MR. VERSTANDIG:  Okay.  And that was to represent you

6     in connection with the litigation against my client, correct?

7            MR. PARET:  Correct.

8            MR. VERSTANDIG:  Okay.  And he did not complete that

9     representation, did he?

10           MR. PARET:  He has not as of yet.

11           MR. VERSTANDIG:  Okay.  So is it your position that he

12    owes you some of that money back?

13           MR. PARET:  No.

14           MR. VERSTANDIG:  You believe he earned all of it, even

15    though he didn't finish the representation?

16           MR. PARET:  I mean, he's still working on the

17    representation, so I believe so.

18           MR. VERSTANDIG:  So he represents you?

19           MR. PARET:  I mean, currently, on paper, yes, I

20    believe so.

21           MR. VERSTANDIG:  Do you know when he filed his

22    employment application with the bankruptcy court?

23           MR. PARET:  I don't know if he -- I don't think he was

24    representing me in the bankruptcy court.  It -- Jeff Martin was

25    representing me in the bankruptcy court.

Colloquy

1          MR. VERSTANDIG:  But we can agree that the litigation

2     is in the bankruptcy court, correct?

3          MR. PARET:  Correct.  And we're trying to -- we're

4     waiting on the direction.  And I believe he was entering his

5     office to employ or whatever the language that's used shortly

6     with the trustee.

7          MR. VERSTANDIG:  So it's your understanding that the

8     trustee is going to be engaging Donald Temple?

9          MR. PARET:  And Blank Rome.

10         MR. VERSTANDIG:  Mr. Trustee, subject to the meeting

11    being held up, I have nothing further at this time.  Thank you.

12         MR. WEBSTER:  All right.  Ms. can I have your attorney

13    identify herself?  I see it's listed as Elizabeth.  Can you

14    give me your full name for the record, ma'am?

15         MS. KORBUT:  Elizabeth Korbut.  K-O-R-B as in boy-U-T

16    as in Tom.

17         MR. WEBSTER:  K-O-R-B as in boy.  What else?

18         MS. KORBUT:  U-T as in Tom.

19         MR. WEBSTER:  All right.  Thank you very much.  Any

20    other party on the line have any questions of the debtor?

21         MR. SADOWSKI:  Mr. Gardner (sic), this is Jim

22    Sadowski.  I do.

23         MR. WEBSTER:  All right, Mr. Sadowski.  First of all,

24    what is your connection with the case?

25         MR. SADOWSKI:  I entered an appearance on behalf of



Colloquy                                                    36

1    Manik Chamarthy --

2            MR. WEBSTER:  All right.

3            MR. SADOWSKI:  -- as a creditor or potential creditor.

4            MR. WEBSTER:  All right.

5            MR. SADOWSKI:  -- related to money that was invested

6    in 4910 Georgia Avenue.

7            MR. FASANO:  Jim, can you spell that?

8            MR. SADOWSKI:  Sure.  Manik Chamarthy?

9            MR. FASANO:  Yeah.

10           MR. SADOWSKI:  Justin, I think I entered an

11   appearance.

12           MR. FASANO:  I'll look it up.  I'll look it up.

13           MR. SADOWSKI:  Yeah.  Mr. Gardner (sic), did you want

14   me to proceed, or are we waiting for Ms. Korbut?

15           UNIDENTIFIED SPEAKER:  You can go ahead.

16           MR. SADOWSKI:  Okay.  Mr. Gardner (sic), am I able to

17   share my screen to pull up the schedules?  It's disabled

18   currently.  I don't have to, but it might be helpful.

19           MR. WEBSTER:  Is there a technical problem?

20           MR. SADOWSKI:  It says the host has disabled

21   participant screen sharing, so I don't think the option is

22   available.

23           MR. WEBSTER:  Hold on a second.  Screen sharing.  I

24   just checked on it.  Let's see if it's available now.

25           MR. SADOWSKI:  It is.  Thank you.



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 37 of 53

37

Colloquy

1        MR. WEBSTER:  All right.

2        MR. SADOWSKI:  Permission to share my screen?

3        MR. WEBSTER:  Certainly.

4        MR. SADOWSKI:  Now, Mr. Paret, I can't see what's

5   being shared, but do you see some color-coded numbers and

6   entities on the screen?

7        MR. PARET:  I do.

8        MR. SADOWSKI:  Yeah.  I'll represent to you that this

9   is your schedules, page 10 of 46.  Sure.

10       MR. PARET:  Yeah.

11       MR. SADOWSKI:  Mr. Paret, is there any reason why

12  these things are color coded the way they are?

13       MR. PARET:  I actually have no idea why they were like

14  that.  No idea.

15       MR. SADOWSKI:  Okay.  All right.  And I take it, is

16  this, like, this page is prepared in some sort of Excel file?

17       MR. PARET:  Yes.

18       MR. SADOWSKI:  And does the same holds true for page

19  12, which has some color coding on it.

20       MR. PARET:  Yeah.

21       MR. SADOWSKI:  Is that an Excel file?

22       MR. PARET:  Yes.

23       MR. SADOWSKI:  Okay.  Going back to page 10, I'm

24  looking -- I don't see on page 10.  Maybe I missed it.  I don't

25  see any reference to 4910 Georgia.  Did I miss that or?



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 38 of 53

38

Colloquy

1        MR. PARET:  Should be.  It should be in there.

2   There's a -- there's a -- there is a bunch of missing ones that

3   were not listed in here for some reason.  Most of these are

4   defunct, but there is a lot of them that were missing in here.

5        MR. SADOWSKI:  So do you recall what the -- when I say

6   4910 Georgia Avenue, we're talking about the property in DC at

7   that address, right?

8        MR. PARET:  Correct.

9        MR. SADOWSKI:  Yeah.  Do you remember the entity that

10  was associated with that property as an owner?

11       MR. PARET:  Yeah.  It was 4910 Georgia Avenue Holdings

12  LLC.

13       MR. SADOWSKI:  Okay.  Were there any other LLCs

14  involved with the ownership of that property?  .

15       MR. PARET:  I think there was 4910 Georgia Avenue

16  Partners LLC.  Does that ring a bell?

17       MR. SADOWSKI:  It does.  It's actually on my list.

18  And what was that partner's entity relationship to that

19  property?

20       MR. PARET:  That was the property -- that was the

21  ownership structure for their percentage of our ownership.

22       MR. SADOWSKI:  And do you remember what the percentage

23  was?

24       MR. PARET:  Not off the top of my head.

25       MR. SADOWSKI:  Have you heard of an entity called, and



Colloquy

1    I'll spell this.  G4910 LLC.

2          MR. PARET:  Yes.

3          MR. SADOWSKI:  That's G as in go.

4          MR. PARET:  That's correct.

5          MR. SADOWSKI:  How was that entity, G4910 LLC,

6    involved with 4910 Georgia Avenue?

7          MR. PARET:  They were the financing arm of the 4910

8    Georgia Avenue Partners that was then a member of 4910 Georgia

9    Avenue Holdings.  That was the LLC that financed that finance

10   deal.  That was -- I didn't have any ownership of that.  That

11   was the Manik and their group's of ownership.

12         MR. SADOWSKI:  Okay.  Do you remember who else besides

13   you mentioned Manik?  That's Mr. Chamarthy, right?

14         MR. PARET:  Correct.

15         MR. SADOWSKI:  Yeah.  Besides Manik.  I'll just use

16   that name.

17         It's M-A-N-I-K, for those listening.

18         Do you know who else was involved in the financing

19   arm.

20         MR. PARET:  Lala Shore (phonetic), and I think a

21   number of other individuals.  I don't know.  I couldn't -- I

22   couldn't say their names if I -- if you asked me to.  I don't

23   know I can pronounce them.

24         MR. SADOWSKI:  Let me see if I can help you with that.

25   Can you now see on my screen a word file that has Manik number



Colloquy

 1   one at the top?  Manik Chamarthy?

 2          MR. PARET:  Correct.

 3          MR. SADOWSKI:  Okay.  And there's your spelling.  Let

 4   me make this a little bit bigger.  Okay.  Records that I have

 5   indicate that Mr. Chamarthy paid $320,000 on September 27th,

 6   2018 to District Title.  Do you know what that money was for?

 7          MR. PARET:  Yes.  That was the funds that were sent to

 8   the closing that WCP requested for the settlement of 4910

 9   Georgia Avenue.

10          MR. SADOWSKI:  Okay.  And then how about -- I have a

11   similar questions for some others?  I'm going to scroll down.

12   There's a name here that even I can't pronounce.  It's

13   Venugopal Cheegarama (phonetic).

14          MR. PARET:  Yes.  Yeah.

15          MR. SADOWSKI:  Yeah.

16          MR. PARET:  Correct.

17          MR. SADOWSKI:  And then there's a reference to

18   $180,000 also being paid to District Title on September 27th,

19   2018.  Do you recall what that money was for?

20          MR. PARET:  That was for the settlement.  That was to

21   WCP for the settlement of 4910.  That went into the WCP escrow

22   account.  Both of those did.

23          MR. SADOWSKI:  Okay.  All right.  And then when you

24   say WCP, can you help me out?  There's a whole lender there.

25          MR. PARET:  They're the lender for 4910 Georgia



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 41 of 53

41

Colloquy

1    Avenue.

2            MR. SADOWSKI:  And is that Washington Capital

3    Partners?

4            MR. PARET:  That's right.

5            MR. SADOWSKI:  Do you know if that lender had another

6    name besides WCP, like WCP Fund I or Fund II or Fund V?

7            MR. PARET:  I don't know what their escrow account is

8    at District Title or what their -- what the -- what -- I

9    believe it was WCP Fund I or DP Capital.

10           MR. SADOWSKI:  Okay.  And now let me just scroll to

11   the next one, Mr. Paret.  By the way, Mr. Paret, is it Paret or

12   Parae?

13           MR. PARET:  It's Paret.

14           MR. SADOWSKI:  Paret.  Okay.  I'm sorry about that.  I

15   always pronounced it with a t, but like that, but I'll change

16   that.  Now, there's another name here on the screen.  Ravinder

17   (phonetic), E-E-R-A- --

18           MR. PARET:  Yeah.

19           MR. SADOWSKI:  -- V-E-N-I.  It says $100,000 is paid

20   to District Title on January 10th, 2019.  What was that money

21   for?

22           MR. PARET:  It was for 4910 George Avenue.

23           MR. SADOWSKI:  Okay.  Do you know why this payment

24   came in a couple of months behind the others that I've showed

25   you?



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 42 of 53

42

Colloquy

1      MR. PARET:  I think it's because there was more funds

2   that were needed for closing.  I'm not a hundred percent sure.

3      MR. SADOWSKI:  Okay.  That's fair.  And you can scroll

4   down to the next one, which is -- give me a second.  We're

5   having a little slow internet connection here.  Okay.  This one

6   I can't pronounce either.  Srikanth.  That's S-R-I-K-A-N-T-H,

7   Tangedipali, T-A-N-G-E-D-I-P-A-L-I and it indicates $50,000 was

8   sent to District Title on January 10th, 2019.  Do you know what

9   those funds were for?

10      MR. PARET:  I believe 4910 Georgia Avenue, but I'd

11   have to -- I'd have to confirm.

12      MR. SADOWSKI:  Okay.  And then the seventh one I have,

13   which would be the last one, indicates -- well, no.  That's

14   only six.  Okay.  So we did this one.  Let me just track back.

15   Going up.  Back to the top, Mr. Paret.  Oh, yeah.  Sorry.

16         (Indiscernible)

17      MR. SADOWSKI:  Yup.  Number 5. 29 C-H-I-N-N-A-R-I LLC.

18   It indicates $200,000 paid to District Title on January 8th,

19   2019.  Do you see that?

20      MR. PARET:  Yes, yes.  These were all -- that's the

21   G4910.  That's Bala Shore (phonetic) wire transfer of 200,000.

22      MR. SADOWSKI:  Okay.  And do you know the collective

23   number?  Sorry, I skipped this one too, Mr. Paret.  I was

24   scrolling too fast.  Number four, Tanuja Vedere.  That's

25   T-A-N-U-J-A.  And then last name capital V-E-D-E-R-E, $150,000.

Case 24-10023-ELG    Doc 1-1    Filed 07/04/24    Entered 07/04/24 00:55:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 43 of 53

43

Colloquy

1    Now, this was paid, it looks like, a day earlier than some of

2    the others.  January 9, 2019 to District Title.  What was this

3    money for?

4           MR. PARET:  That was for G4910.

5           MR. SADOWSKI:  Okay.  Let's see if I skipped that.  I

6    did that one.  Okay.  So of these seven different payments I

7    asked you questions about, what ultimately came of that

8    collective amount of money?

9           MR. PARET:  Well, I mean, it went to the -- it went to

10   WCP for the closing of 4910 Georgia Avenue.

11          MR. SADOWSKI:  Okay.  Thank you.  And now let me go

12   back, if I may.  I'm just going to minimize that transfer list.

13   And other than the group of investors, the investing arm that I

14   told you about, that you testified about, that the investing

15   arm, which was G4910 LLC, who else invested money in 4910

16   Georgia Avenue?

17          MR. PARET:  Along with myself, and I think there is,

18   like, two or three other investors.  Halmer Name (ph.)

19   invested, I think, around 250,000.  And there was a couple of

20   others.  I don't have the capital stack in front of me.

21          MR. SADOWSKI:  Okay.  And do you remember what your

22   investment was?

23          MR. PARET:  I believe somewhere in the realm of

24   900,000 or a million dollars, somewhere in that realm.

25          MR. SADOWSKI:  And what -- see, what they're closing



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 44 of 53

44

Colloquy

1  online with WCP, the loan closed.  Then what happened to that

2  project?

3       MR. PARET:  The project went on for quite some time.

4  There were tremendous delays in the construction, and we

5  weren't able to get our construction funds in time.  I think

6  that that date, I believe, of January 2020 was the beginning of

7  COVID.  At that point of time, WCP Funds began to get

8  assaulted, and it just was a very slow process for the next

9  couple of years of getting construction done on that property.

10  And eventually WCP foreclosed on the property.  A group of the

11  investors, Manik included, made an offer to buy out the

12  portfolio for $2.5 million, to buy out Georgia Avenue for $2.5

13  million more than our debt position, and WCP refused.  And then

14  they foreclosed on the property.

15       MR. SADOWSKI:  Okay.  Now --

16       MR. PARET:  We have a debt position of roughly 7.3

17  million with --

18       MR. SADOWSKI:  Okay.

19       MR. PARET:  -- construction and acquisition, along

20  with their fees.  But because they said the properties were

21  cross-collateralized, they refused to take a lesser number,

22  because they were trying to pay down debt across the portfolio

23  with the money from Georgia Avenue.

24       MR. SADOWSKI:  Now, along -- how do you know that?

25  How did you learn of that fact that you just talked about, why

Colloquy

1   WCP was doing that?  Did they tell you that?  Did WCP tell you

2   that, or did you learn that from the grapevine?

3          MR. PARET:  Yeah.  They do.  And they would tell most

4   of the other investors that because of their -- because of the

5   interlacings of my other properties, they had cross-

6   collateralized the debt instruments and they said that the --

7   they needed -- it wasn't enough to pay down the loan overall.

8          MR. SADOWSKI:  And the person you were dealing with at

9   WCP was whom?

10          MR. PARET:  Jared and Daniel Huertas.

11          MR. SADOWSKI:  And does Jared have a name?  Last name?

12          MR. PARET:  Fasnot (phonetic) or something.  I can't

13   pronounce it.

14          MR. SADOWSKI:  Okay.  I'm getting near the end, Mr.

15   Gardner (sic), just FYI.  Now I have up on my screen, Mr.

16   Paret, page 12 of 46.  Do you see it?  It's really hard to see,

17   because it's teeny-weeny print.  Do you know why the -- and I'm

18   going to go down to the line for 419 to 423 Kennedy Street.

19   And I'm squinting at this.  It looks like line 50.  It lists

20   Brighton KSD (phonetic), LLC.  Why is Brighton KSD, LLC listed

21   there?

22          MR. PARET:  Because they were an investor in that

23   property.

24          MR. SADOWSKI:  Okay.

25          MR. PARET:  And I thought they were okay.



Case 24-10023-ELG    Doc 1-1    Filed 07/04/24    Entered 07/04/24 00:55:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 46 of 53

46

Colloquy

1    MR. SADOWSKI:  So is this -- what is this schedule

2   here on page 12 designed to show the world?  What are you

3   trying to -- what information are you trying to convey here,

4   generally?

5    MR. PARET:  I mean, this is just showing --

6   whatchamacallit.  This is basically showing -- I think this is

7   an estimated.  A lot of these numbers are not correct.  So this

8   was just an estimate of what the investors were going to put in

9   and what they were committed to.  A lot of these numbers

10  changed, and some of these investors never even put money in

11  that are on this list.  This list was to show, you know, what

12  the investment start dates would be if they were going to

13  invest, what the numbers would be, but nobody ever got removed

14  from the list.  So this is just an ongoing list that we had.

15    MR. SADOWSKI:  Okay.  And who was maintaining this

16  list?  Was this somebody over at Coloma River?

17    MR. PARET:  Yeah, the person left, like, five years

18  ago.

19    MR. SADOWSKI:  Okay.  One second, Mr. Gardner (sic).

20    Now, when you were being asked some questions by Mr.

21  VerStandig, you gave some answers that things were currently in

22  debate.  I'm not going to debate you over your answers, but

23  would it be fair to sum it up that -- all right.  Let me ask it

24  this way.  Do you currently own a membership interest in 423

25  Kennedy Street Holdings, LLC?



Colloquy

1          MR. PARET:  I believe I do.

2          MR. SADOWSKI:  Okay.  And is that belief based upon

3    this theory that WCP was a partner with you?  Is that what the

4    basis for that belief is?

5          MR. PARET:  That is correct.

6          MR. SADOWSKI:  Okay.  And would the same hold true for

7    5501?  Excuse me.  I don't have the address right in front of

8    my face here.  5501 First Street Holdings, LLC, you indicated

9    that it's -- there's a debate over whether you have a

10   membership interest in that.  And my understanding from your

11   testimony is that the date is -- that the belief that you have,

12   you have a membership interest is on this partnership theory

13   with the WCP.  Is that right?

14         MR. PARET:  That is correct, along with the fact that

15   the LLCs that were in ownership, the investor group have

16   ownership in those LLCs.  That's -- that's -- it's still

17   unclear.  But that is the -- that's the theory.

18         MR. SADOWSKI:  Okay.  And so I'm just -- should tell

19   the world where I'm going and you, Mr. Krays (phonetic).  I'm

20   currently representing those entities in litigation against the

21   WCP, and the operating agreements that I have indicate that

22   those entities are actually owned by members, not including

23   yourself.  So I just want to make sure.  Do you have an

24   operating agreement, a current operating agreement that shows

25   that you have a membership interest in 423 Kennedy Street

Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 48 of 53

48

Colloquy

1    Holdings, LLC?

2         MR. PARET:  Well, I have the old one.  Yeah.  I can

3    share with you.

4         MR. SADOWSKI:  When you say the old one, wasn't that

5    before your membership interest was sold to Mel Noguchi

6    (phonetic)?

7         MR. PARET:  How much did it sell for?

8         MR. SADOWSKI:  I don't have in front of me.  But let

9    me ask it.  I'm just trying to find out, Mr. Paret, is there a

10   current operating agreement that you have for 423 Kennedy

11   Street Holdings, LLC?  A current operating agreement, not an

12   old one.  Not one that was amended that shows --

13        MR. PARET:  Yeah, I can -- I can share you the one --

14   I can share the one with you that was still signed.  I mean --

15        MR. SADOWSKI:  Let me finish my question.  Yeah.  Is

16   there a current operating agreement that you have that shows

17   that you have a membership interest in 423 Kennedy Street

18   Holdings LLC?

19        MR. PARET:  I'll have to check with you, and I'll send

20   it to you.

21        MR. SADOWSKI:  Okay.  And the same question is, is

22   there a current member -- current operating agreement that

23   you're aware of that shows that you have a membership interest

24   in 5501 First Street Holdings LLC?

25        MR. PARET:  You'd have to check, and we can send it to



Colloquy

1    you.

2         MR. SADOWSKI:  Okay.  Mr. Fasano, these Excel files

3    are really hard to review on screen.  Is it possible you could

4    get us a sanitized version of this in Excel?  Both what's page

5    10 of 46 and 11, and then page 12 of 46 of the schedules.

6         MR. FASANO:  Elizabeth, can you send that to us in

7    Excel?

8         MS. KORBUT:  Probably, as long as I -- I'm assuming

9    that that's something that we have.  I was just put on this not

10   long ago, but assuming that we have the original Excel, that

11   that's our document, yeah, we should be able to send that.

12        MR. SADOWSKI:  All right.  Thank you.

13        And Mr. Gardner (sic), just the last question.

14        Mr. Paret, are you intending to amend the schedules,

15   particularly these color-coded charts here in blue, green,

16   purple, to add the 4910 Georgia Avenue entity as one of those

17   LLCs which you have an interest?

18        MR. PARET:  Yes.

19        MR. SADOWSKI:  Okay.  Those are all the questions I

20   have, Mr. Gardner (sic).  Thank you very much.

21        Thank you, Mr. Paret.

22        MR. WEBSTER:  Any other parties have any questions for

23   the 341 meeting?  All right.  It didn't sound like anyone else

24   has any questions for the 341 meeting.

25        MR. FASANO:  Wendell?



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 50 of 53

50

Colloquy

1          MR. WEBSTER:  Yes.

2          MR. FASANO:  I'm just going to give Mr. Paret an

3    instruction.

4          MR. WEBSTER:  Certainly.

5          MR. FASANO:  When the tax return is filed, we need to

6    get a copy of it.

7          MR. WEBSTER:  Certainly.

8          MR. FASANO:  And potentially a turnover of the tax

9    refund when received.

10          MR. WEBSTER:  Right.

11          MR. FASANO:  So I'm just putting you on notice.

12          MR. WEBSTER:  Right.  Actually, we're not -- we're

13    not.  I'm sorry.  Go ahead.  Who was that?

14          MR. LEWIS:  This is attorney Todd Lewis, on behalf of

15    Welch Family Limited Partnership Group.  I just want to be

16    clear for the record here.  This meeting is going to be

17    continued to a later date?

18          MR. WEBSTER:  Well, I'm not going to conclude it at

19    this point in time, but it's unclear to what extent we'll need

20    to keep it open.  Do you have any questions that need to be

21    asked today?

22          MR. LEWIS:  Not today.  That's why I'm wondering

23    whether the case is clear the 341 is being continued or being

24    adjourned?

25          MR. WEBSTER:  Well, I'm going to keep it open to the

Colloquy

1    extent that there's some issues that we need to follow up on.

2    But at this point in time, that hasn't been clarified.

3            MR. LEWIS:  Okay.  No.

4            MR. WEBSTER:  All right.  Any other parties?  You have

5    any questions?  All right.  I will.

6            UNIDENTIFIED SPEAKER:  No other questions, but we

7    would join in the request of both Mr. Lewis and Mr. VerStandig

8    to leave it open in the event that additional schedules are

9    filed that raise additional questions that we have for this

10   debtor.

11           MR. WEBSTER:  Well, actually, additional schedules are

12   going to be filed.  They're going to be additional information

13   provided.  So we'll decide at that point whether we need to

14   hold another Zoom 341 meeting.

15           But let me just explain to everyone.  Keep in mind,

16   this is a 341 meeting for bankruptcy purposes, not a

17   deposition.  If you need to take a deposition or a 2004 exam,

18   that's actually different from this 341 meeting.  I just want

19   to make sure everyone understands that.  These are not -- this

20   is not a deposition.  Okay?

21           MR. LEWIS:  Understood.

22           MR. WEBSTER:  Very good.  All right.  So with that, we

23   will adjourn the meeting for today and proceed accordingly.

24   Anybody else have anything before we close out?

25           UNIDENTIFIED SPEAKER:  Nothing, Mr. Webster.



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 52 of 53

52

1        MR. WEBSTER:  All right.  Thank you, all.

2        UNIDENTIFIED SPEAKER:  Thank you, all.

3        MR. WEBSTER:  Take care.

4        UNIDENTIFIED SPEAKER:  Thank you.

5        MS. KORBUT:  Thank you.

6    (Whereupon the hearing was adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Case 24-10023-ELG   Doc 1-1   Filed 07/04/24   Entered 07/04/24 00:55:28   Desc
Exhibit A - Meeting of Creditors Transcript    Page 53 of 53

53

```
 1                            CERTIFICATE

 2   I certify that the foregoing is a correct transcript from the

 3   electronic sound recording of the proceedings in the above-

 4   entitled matter.

 5

 6

 7

 8   /s/ Hana Copperman

                                        Date: June 30, 2024
 9   ESCRIBERS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```


www.escribers.net | 800-257-0885