eFiled
5/6/2024 8:58:44 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

    *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event:  Trial Readiness Hearing
Date:  September 6, 2024

## OPPOSITION TO DEFENDANT SF NU, LLC'S MOTION TO DISMISS

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, submits its

Opposition to the Motion to Dismiss ("Motion") filed by Defendant SF NU, LLC ("SNL").  SNL

asserts that JPK NewCo LLC ("JNL") is an indispensable party, and, therefore, the Court should

dismiss the Complaint against SNL.  According to the Motion, SNL did not have any role with

respect to the loan documents at issue in this case until *after* the Second Amended Complaint

was filed, so it was impossible for Developer RE1 to name SNL as a defendant.  For that reason

alone, the Motion should be denied.  In further support of its Opposition, Developer RE1 states

as follows:

## I.    THE FACTS IN THE SECOND AMENDED COMPLAINT[1]

Developer RE1 owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389

(the "Property").  Compl. ¶ 10.[2]  Developer RE1 is partially owned by Mel Negussie.  *Id.* ¶ 11.

---

[1]    Although the Court is already familiar with the facts as a result of the hearing held on Developer
RE1's Motion for a Temporary Restraining Order, Developer RE1 has included an outline of those
facts again for ease of reference since that hearing took place several months ago.

[2]    All "Compl." references are to the Second Amended Complaint filed on March 1, 2024.

The five defendants in this case are:  DP Capital, LLC, a company that uses the trade name

"Washington Capital Partners" ("WCP"); the WCP Fund I, LLC ("WCP Fund"), a company that

lends money in the District and is controlled by the WCP; Daniel Huertas ("Mr. Huertas"), an

individual that controls the WCP; SNL, a company that lends money in the District, and Russell

Drazin ("Mr. Drazin"), counsel to the WCP and the WCP Fund and the Trustee under two deeds

of trust.  *Id.* ¶¶ 2-7.

On December 23, 2021, the WCP helped Developer RE1 obtain an acquisition finance

loan for the Property, which original loan was later refinanced.  *Id.* ¶¶ 15-16.  As part of that

refinancing, Developer RE1 signed the following documents:

(1)     a Deed of Trust (the 'First DOT") for the Property that named the WCP
Fund as Beneficiary and Mr. Drazin, as Trustee;

(2)     a Commercial Deed of Trust Note (the "First Note") in the amount of
$3,579,000.00, as "Borrower", in favor of the WCP Fund;

(3)     a second Deed of Trust ("Second DOT") for the Property that also named
the WCP Fund as Beneficiary and Mr. Drazin as Trustee; and

(4)     a second Commercial Deed of Trust Note (the "Second Note") in the
amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 15, 18, 21, and 24 (collectively the "loan documents").  The loan documents were form

documents prepared by the WCP that Developer RE1 was not allowed to modify.  *Id.* ¶¶ 16-17,

19-20, 22-23, and 25-26.  The loan documents provided security for the construction financing

loans that Developer RE1 needed to develop the Property.  WCP assigned its interest in the

Second DOT to SNL in an Assignment of Deed of Trust.  *Id.* ¶ 28.  As of November 3, 2022,

Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note.  *Id.*

¶ 30.

By November 15, 2022, the Defendants knew that Developer RE1 had secured alternative

financing for the Property with Main Street Bank and that Developer RE1 was expected to close

on a refinancing loan in December of 2022.  *Id.* ¶ 35.  By November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed under any of the loan documents.  *Id.* ¶ 36.  On November 30, 2022, Developer RE1 made a request to WCP for the payoff figures for both loans for the Property, and that same day WCP agreed to provide the requested payoff figures.  *Id.* ¶¶ 36-37.

.  As of December 8, 2022, there was no claim made by any of the Defendants that any default by Developer RE1 existed under any of the loan documents and by that date Developer RE1 had made all payments due under the Notes ($332,319.03 in interest payments).  *Id.* ¶¶ 42-43.  That same day by phone, Mr. Huertas told Developer RE1 that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out (the "2507 I Street Project").  *Id.* ¶ 43.  SNL is believed to be controlled by Jason Shrensky.  SNL is also believed to have a financial interest in the 2507 I Street Project.  *Id.* ¶ 44.  Mr. Huertas further stated that the unnamed investor "is very wealthy and will make life hard for you", and "has now bought the notes" on the Property and another project financed by WCP, and that WCP is "defaulting the loans."  *Id.* ¶ 45.  Mr. Huertas also said:  "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them take care of the "$700,000 shortfall" on that project.  *Id.*  Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".  *Id.* ¶ 46.  Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to try to force Developer RE1 or Mr. Negussie to pay for the debts owed for another, unrelated project, and that it was not

3

appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to any

other development project involving Mr. Negussie. *Id.* ¶ 47.

After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street

Project, Mr. Huertas told Mr. Negussie that all prior Payoff Statements under the loan documents

"were withdrawn" and that he would place Developer RE1 and the borrower on another,

unrelated project named 423 Kennedy St Holdings, LLC ("423 Kennedy") in default under their

loan documents. *Id.* ¶ 48.   Mr. Huertas followed through with his threats to "make trouble" for

Mr. Negussie, 423 Kennedy, and Developer RE1 by arranging for an employee at WCP (Leslie

Calderas) to send two letters, each called a "Notice of Default" to Mr. Negussie by email.  *Id.*

¶ 61.  Each "Notice of Default" was unsigned and failed to include either a description of the

alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A".  *Id.*

¶¶ 63-65.  WCP also sent two Payoff Statements to Developer RE1.  The Payoff Statement for

the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a

"Default Penalty" of $357,900.00, while the Payoff Statement for the second loan included a

demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default

Penalty".  *Id.* ¶¶ 69-71.

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default"

claims.  *Id*. ¶ 71.  Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to

contact the WCP's counsel.  *Id*.  Developer RE1 believes that Mr. Huertas then instructed Mr.

Drazin to review every provision of the loan documents to try to find a reason to justify the

decision to declare that Developer RE1 was in "default".  *Id*. ¶¶ 74-75.  Developer RE1 also

believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact

that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real

reason why Developer RE1 was improperly placed in default, *i.e.,* because the Defendants were angry about the 2507 I Street Project. *Id.* ¶¶ 74-78.

The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan. *Id.* ¶¶ 81-84. The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing. *Id.* ¶ 83. The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project). *Id.* ¶ 84-85.

All of the "defaults" that have been alleged were all claimed after-the-fact as a pre-text. *Id.* ¶ 111-12. There was also no proper legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property. *Id.* ¶¶ 113-114. The Defendants deliberately timed their improper interference with Developer RE1's business relations to make it almost impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property. *Id.* ¶ 117.

## II.   PROCEDURAL HISTORY

On December 16, 2022, Developer RE1 filed a Complaint against WPC, WCP Fund, Mr. Huertas and Mr. Drazin. JNL did not exist at the time Developer RE1 filed its Complaint or when Developer RE1 filed its first Motion for a Temporary Restraining Order a week later. *See* Exhibit A (screenprint showing the date of formation of JNL). On June 23, 2023, Mr. Drazin, on behalf of SNL, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice"). *Id.* ¶ 119. In response, Developer RE1 re-filed a

Motion for Temporary Restraining Order to Prevent Imminent Foreclosure Sale ("TRO

Motion"), which the Defendants opposed. On July 25, 2023, the Court held a hearing and

granted the TRO Motion. The Court ordered the Defendants to immediately cease taking any

action to foreclose on the Property pending further order of the Court. The Court set a trial date

for September 9, 2024.

On March 7, 2024, Developer RE1 filed its Second Amended Complaint, adding SNL as

a defendant to the case and adding new claims against Mr. Drazin. Developer RE1 added SNL

as a defendant because Developer RE1 saw that SNL was listed on the foreclosure notice, which

was issued six months after the First Amended Complaint was filed. According to the Motion,

SNL assigned the Second Note and DOT to JNL on April 16, 2024, more than one month *after*

Developer RE1 filed the Second Amended Complaint. *See* Mot. at 1. Developer RE1 could not

have possibly known that SNL transferred the Second Note and DOT to JNL at the time the

Second Amended Complaint was filed. JNL was formed on February 1, 2024, with none other

than Mr. Drazin listed as its registered agent. The business address for JNL is also the business

address for the WCP. The Motion appears to have been filed solely for purposes of delay and to

perhaps divert the attention of the Court away from SNL.

III.    L̲E̲G̲A̲L̲  A̲R̲G̲U̲M̲E̲N̲T̲

A.    T̲h̲e̲ ̲L̲e̲g̲a̲l̲ ̲S̲t̲a̲n̲d̲a̲r̲d̲ ̲f̲o̲r̲ ̲I̲n̲d̲i̲s̲p̲e̲n̲s̲a̲b̲l̲e̲ ̲P̲a̲r̲t̲i̲e̲s̲

A motion to dismiss pursuant to Rule 12(b)(7) asserts that a complaint should be

dismissed for failure to join a party under Rule 19. *See Asrat v. Trs. of Boston Univ.*, 2015 D.C.

Super. LEXIS 7, *4. Courts are generally reluctant to grant Rule 12(b)(7) motions, and dismissal

is warranted only when the defect is serious and cannot be cured. *Id.* (*quoting Direct Supply,*

*Inc. v. Specialty Hosps. Of Am., LLC*, 878 F. Supp. 2d 13, 23 (D.D.C. 2012)). When ruling on a

Rule 12(b)(7) motion, the Court must accept the allegations in the complaint as true and may

consider matters outside the pleadings in order to determine whether Rule 19 requires that a

party be joined. *Id.*

A party is necessary to litigation and should be joined if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Super. Ct. Civ. R. 19(a).  The burden is on SNL to demonstrate that JNL is required under Rule

19.  *See Asrat*, 2015 D.C. Super. LEXIS 7 at *5-6.  It is clear, however, that SNL cannot meet its

burden because JNL is not an indispensable party.

B.    The Court Can Adjudicate Developer RE1's Claims Without JNL.

First, the Motion wholly fails explain why the Court cannot adjudicate Developer RE1's

claims without joining JNL as a defendant.[3]  The Court can adjudicate Developer RE1's claims

without joining JNL because any interest JNL has in the Second Note and DOT did not arise

until *after* SNL improperly issued the Foreclosure Notice and after Developer RE1 filed the

Secon Amended Complaint.  Put another way, SNL cannot assign away its liability to Developer

RE1 to JNL.  Moreover, the Court can accord complete relief between Developer RE1 and SNL

without JNL's presence.  Adding JNL as a defendant to this case will have no bearing on the six

claims pending against SNL.  Developer RE1 asserts that it is SNL, not JNL, that engaged in

unethical, outrageous conduct specifically designed to make Developer RE1's construction

project fail.  SNL's role in this matter can be determined by Developer RE1 during discovery.

---

[3]        In fact, SNL fails to cite a single case in the Motion.

C.      This Litigation Will Not Impede JNL's Ability to Protect Its Interest Because Mr.
        Drazin Cannot Foreclose on the Property.

SNL asserts that JNL is an indispensable party because JNL now owns the Second DOT,

and Developer RE1 seeks to enjoin foreclosure of the Second DOT.  Mot. at  2-3.    However,

just because JNL is now in possession of the Second DOT does not automatically make JNL an

indispensable party.  In fact, possession is not the test of whether a party is indispensable.  *Habib*

*v. Miller*, 284 A.2d 56, 57 (D.C. 1971).  Whether an entity is "indispensable" can only be

determined in the context of particular litigation.  *See id.*  Here, SNL has failed to demonstrate at

all how JNL's absence would undermine or hinder JNL's capability to safeguard its interests.

The Defendants are already temporarily enjoined from foreclosing on the Property, including Mr.

Drazin, who is responsible for initiating foreclosure proceedings as Trustee of the Second DOT.

Mr. Drazin is the named as Trustee in both the First and Second DOT -- and in the

Assignment attached to the Motion.  Compl. at ¶¶ 15 and 21.  While JNL could theoretically

instruct Mr. Drazin to initiate a foreclosure, it is Mr. Drazin, not JNL, that must conduct the

foreclosure.  *See, e.g., Paroni v. Quick*, 211 A.2d 765, 767 (D.C. 1965) ("The secured

debt under the first deed of trust, showing an unpaid balance of $4,597, being in default,

the trustees were directed by the Home Building Association of the District of Columbia, as

holder of the recorded first deed of trust, to foreclose under its terms.").  Pursuant to the Court's

August 15, 2023 Order, Mr. Drazin is prohibited from taking any action to foreclose on the

Property.  *See* August 15, 2023 Order at 5.  The Second Note and DOT could be transferred a

dozen times to a dozen different entities, and the outcome is still the same.  As long as Mr.

Drazin is the Trustee of the Second DOT,  Mr. Drazin is unable to foreclose on the Property

regardless of any instruction he receives from JNL (or any other entity).

Under the caselaw, the Court has to consider the events leading up to the dispute, the parties involved, and the nature of the claims being made.  *See Habib,* 284 A.2d at 57.  Here, there are allegations and claims involving unfair business practices – claims that the Court has already found are likely to succeed.  The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan.  Compl. at ¶¶ 81-84.  The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing.  *Id.* ¶ 83.  The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (i.e., for the 2507 I Street Project).  *Id.* ¶ 84-85.  After Developer RE1 asked WCP to provide a basis for the "default" claim, Mr. Drazin claimed that Developer RE1 was in "default" because of:  a balance due to DC Water ($44,857.93) that resulted in a lien (the "DC Water Alleged Debt Claim"); the late payment of real estate taxes (the "Property Tax Late Payment Claim"); and that "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".  *Id.* ¶ 87.

Taking these past events into consideration within a broader context, the Court should find it troubling that SNL secretly transferred the Second Note and DOT to JNL on April 16, 2024, *after* Developer RE1 filed the Second Amended Complaint adding SNL as a defendant and *before* the date that SNL had to respond to the Second Amended Complaint.  The connection between all of the Defendants and JNL is also disturbing because JNL appears to have been formed with Mr. Drazin's assistance.  If the Court finds that JNL is an indispensable party, the cycle of the filing of motions to dismiss could never end.  That is because there is nothing

9

stopping the Defendants from creating endless new entities which they can use to continuously transfer the Second Note and DOT to -- over and over again. Each predecessor entity (like SNL) could then file a motion to dismiss arguing that the new entity is an indispensable party.

IV.    CONCLUSION

For the foregoing reasons, Developer RE1 respectfully requests that the Count deny the Motion to Dismiss filed by SNL. A proposed order is attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  May 6, 2024

/s/ Alexandria J. Smith
James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

4861-3174-1371.v3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May, 2024, a true and correct copy of the

foregoing Opposition to Defendants' Motion to Dismiss was served using eFileDC and a notice

of service should be sent electronically by eFileDC to all counsel of record in this case.

/s/ Alexandria J. Smith
Alexandria J. Smith

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

       *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

       *Defendants.*

2022-CAB-005935
Judge Ebony Scott
Next Event:  Trial Readiness Hearing
Date:  September 6, 2024

### [PROPOSED] ORDER DENYING MOTION TO DISMISS

Upon consideration of the SF NU, LLC's Motion to Dismiss ("Motion"), the Plaintiff's

Opposition thereto, and any reply, it is this _____ day of _____, 2024 hereby:

ORDERED, that the Motion is DENIED.

_____
Honorable Judge Ebony Scott
Associate Judge

Copies electronically to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
*Counsel for Plaintiff*

Maurice B. VerStandig, Esq.
*Counsel for Defendants*

4861-3174-1371.v3

EXHIBIT A

**DC.gov** ★ ★ ★ (/Home.aspx/index)

Mayor Muriel Bowser

Home (/Home.aspx)

Edit Account (/Account.aspx/AccountManagement)

Sign Out (/Account.aspx/LogOff?signoutFromCropLogin=true)

# JPK NewCo LLC - Initial File Number: L00007898479

| Main | Reports | Trade Names | Beneficial Owners |

## Entity Info

**Business Name**

JPK NewCo

**Suffix**

LLC

**Registration / Effective Date**

2/01/2024

**Commencement Date**

2/01/2024

**Entity Status**

Active

**Foreign Name**

**Date of Organization**

**State**

**Country**

## Business Address

**Line1**
8401 Greensboro Drive

**Line2**
Suite 960

| City | State | Zip |
|------|-------|-----|
| McLean | Virginia | 22102 |

## Agent

**Is non-commercial Registered Agent?**
Yes

**Name**
Russell S. Drazin

# Address

**Line1**

4400 Jenifer Street, NW

**Line2**

Suite 2

| **City** | **State** | **Zip** |
|---|---|---|
| Washington | District of Columbia | 20015 |

**Email**

rdrazin@pardodrazin.com

## Return to Home

---

**District News**

- Mayor's Public Schedule (https://mayor.dc.gov/newsroom)

- Citywide News (https://newsroom.dc.gov)

- Citywide Calendar (https://calendar.dc.gov/events)

- Subscribe to Receive Emails (https://service.govdelivery.com/accounts/DCWASH/subscriber/new)

- Subscribe to Text Alerts (https://hsema.dc.gov/page/alertdc)

- Subscribe to Newsletters (https://public.govdelivery.com/accounts/DCWASH/subscriber/new)

**District Initiatives**

- Green DC (https://green.dc.gov)

- Grade DC (https://grade.dc.gov)

- Age-Friendly DC (https://agefriendly.dc.gov)

- Sustainable DC (https://sustainable.dc.gov)

- Connect DC (https://connect.dc.gov)

- Great Streets (https://greatstreets.dc.gov)

- Ready DC (https://ready.dc.gov)

**About DC**

- Open DC (https://open.dc.gov)

- Budget (https://cfo.dc.gov/budget)

- Emancipation (https://emancipation.dc.gov)

- Consumer Protection (https://oag.dc.gov/consumer-protection)

- Contracts (https://dc.gov/contracts)

- Property Quest (https://propertyquest.dc.gov)

- Track DC (https://track.dc.gov)

**Contact Us**

- Agency Director (https://directory.dc.gov)

- Call 311 (https://311.dc.gov)

- Contact the Mayor (https://dcforms.dc.gov/webform/executive-office-mayor-ask-mayor)

- Contact Agency Directors (https://dlcp.dc.gov/page/contact-agency-directors)

- FOIA Requests (https://foia.dc.gov)

- Report Website Problems (https://dcforms.dc.gov/webform/problems-dc-government-website)

- Send Feedback (https://feedback.dc.gov)