Case 24-10023-ELG    Doc 4-1    Filed 07/04/24    Entered 07/04/24 20:43:54    Desc
Exhibit A - Motion to Quash Subpoena    Page 1 of 9

eFiled
6/26/2024 10:03:56 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Developer RE1 LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DP Capital, LLC, et al.<br><br>    Defendants. | Case No. 2022 CAB 005935<br>Judge Ebony Scott |

**MOTION TO QUASH SUBPOENA**

Comes now Daniel Huertas ("Mr. Huertas" or the "Defendant"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 45(c)(3), and moves to quash the subpoena (the "Subpoena," a copy of which is attached hereto as Exhibit A) issued by Developer RE1 LLC (the "Plaintiff") to AT&T, and in support thereof states as follows:

**I.    Introduction**

In facial contravention of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, the Plaintiff is endeavoring to obtain electronic communications, from a third party electronic communications service. This is not merely a direct violation of controlling federal law but, too, an effort to pry into privileged communications between an attorney and a client, a husband and a wife, joint defendants, and parties sharing a common litigation interest. This is, too, an effort that would reveal myriad confidences at the heart of the Washington, DC real estate development and lending communities.

For these reasons, and as extrapolated upon *infra*, the Subpoena should be quashed.

1

## II. Relevant Facts

The Subpoena is directed to AT&T, seeking records correlative to Mr. Huertas' cell phone account for the periods of September 1, 2022 through January 15, 2023 and June 1, 2023 through July 26, 2023. *See* Subpoena, Ex. A, at § A(6). Alternatively, the Subpoena seeks records for the full period between September 1, 2022 and July 26, 2023. *Id.* at § B(2).

Notably, this lawsuit was filed on December 16, 2022. *See* Complaint. As such, a large swath of the time period covered by the Subpoena runs concurrent with the pendency of this case.

The Subpoena seeks, *inter alia*, "Documents showing all Communications that occurred within the specified Date Ranges received or placed by the Subscriber." Subpoena, Ex. A, at § C(2). The word "Subscriber" is defined as Mr. Huertas. *Id.* at § A(5). "Communications," in turn, is defined to include "any form, whatsoever, of correspondence, discussion, instruction, report and/or written, electronic or oral exchange between two or more persons," *Id.* at § A(2), and is thusly inclusive of text messages and all other written forms of electronic communications.

The Subpoena also seeks *all* phone records for Mr. Huertas during the subject time period, *Id.* at § C(1), as well as all documents "received or sent by" Mr. Huertas during the same temporal range, *Id.* at § C(3).

The Subpoena appears to have been issued on or about June 13, 2024, though Mr. Huertas only became aware of the Subpoena on June 24, 2024.

## III. Standard

Familiarly, this Honorable Court is required to quash any subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies. . ." DC R. Civ. P. 45(c)(3)(A). *See also Solers, Inc. v. Doe*, 977 A.2d 941, 950 (D.C. 2009).

2

Similarly, this Honorable Court may quash a subpoena that seeks confidential commercial information. DC R. Civ. P. 45(c)(3)(B).

IV.     **Argument: The Subpoena Should be Quashed**

   a.   **The Subpoena Violates the Stored Communications Act**

As a starting point, the usual Rule 45 analysis of the Subpoena is somewhat secondary insofar as the Subpoena is a facial violation of the Stored Communications Act (the "SCA"), being the embodiment of an activity proscribed by the federal criminal code. The relevant statute expressly prohibits AT&T—and all other electronic communication service providers—from divulging written communication records to third parties, even in the face of an otherwise-lawful subpoena, absent extenuating circumstances that generally arise only in the contexts of (i) imminent death or bodily injury; (ii) missing or exploited children; or (iii) requests promulgated by the owners of the subject communications account. This case does not nearly fall within any of the expressly limited exceptions and the Subpoena is accordingly illegal on its face.

The SCA expressly provides, *inter alia*, ". . . a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service. . ." 18 U.S.C. § 2702(a)(1). As noted by the United States Court of Appeals for the Fifth Circuit:

> Generally, the SCA (1) prohibits unauthorized access to certain electronic communications; (2) restricts service providers from voluntarily disclosing the contents of customer communications or records to certain entities and individuals; and (3) permits a governmental entity to compel a service provider to disclose customer communications or records in certain circumstances.

*Alexander v. Verizon Wireless Servs., L.L.C.,* 875 F.3d 243, 250 (5th Cir. 2017) (citing 18 U.S.C. §§ 2701-03.

Precedent establishes that an "electronic communications service," for purposes of the SCA, is ". . . any service which provides to users . . . the ability to send or receive wire or electronic

3

communications. . ." *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 974 (C.D. Cal. 2017) (quoting 18 U.S.C. § 2510(15); citing *Warshak v. United States*, 532 F.3d 521, 523 (6th Cir. 2008)). And an "electronic communication" is defined to be inclusive of, *inter alia*, "any wire or oral communication. . ." 18 U.S.C. § 2510(12).

Fortunately, little analysis is needed as to whether or not AT&T falls within the prism of the SCA or, in turn, whether or not text messages qualify as "electronic communications," since both are the subject of settled precedent. As observed by the United States District Court for the Central District of California:

> Because AT & T is an "electronic communication service" within the meaning of 18 U.S.C. § 2702(a)(1), it may not disclose the content of text messages unless Defendants are "an addressee or intended recipient of such communication or an agent of such addressee or intended recipient," or unless AT & T obtains "the lawful consent of the originator or an addressee or intended recipient of such communication."

*Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 993 (C.D. Cal. 2012) (quoting 18 U.S.C. § 2702(b)).

Equally, "[t]he SCA does not contain an exception for civil discovery subpoenas." *Mintz*, 885 F. Supp. 2d at 991–92 (citing *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 976 (C.D. Cal. 2010); *Flagg v. City of Detroit*, 252 F.R.D. 346, 350 (E.D. Mich. 2008); *Viacom International Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp.2d 606, 611 (E.D. Va. 2008); *O'Grady v. Superior Court*, 139 Cal.App.4th 1423, 1447 (Cal. App. 4th 2006)). *See also Bower v. Bower*, 808 F. Supp. 2d 348, 350 (D. Mass. 2011) (noting that the SCA does not contain an exception for civil discovery).

Plainly, (i) AT&T is an electronic communications service under the SCA; (ii) text messages—and all other stored communications—fall within the scope of the SCA; (iii) this case does not concern imminent physical injury or a missing child; and (iv) the Subpoena seeks

4

precisely those forms of records precisely forbade by the SCA. For these reasons alone, it is not merely appropriate but, indeed, something of a legal necessity, to quash the Subpoena.

### b. Even if Not a Violation of the SCA, the Subpoena Should be Quashed on Grounds of Privilege and Overbreadth

One of the more harrowing aspects of the Subpoena is that the Plaintiff does not merely seek Mr. Huertas' phone records during a time period that is predominately—albeit not entirely—after this suit was commenced but, too, the Plaintiff seeks *all* of Mr. Huertas' phone records. These records will not only contain text messages with Mr. Huertas' counsel (subject to the attorney/client privilege), spouse (subject to the marital privilege), co-defendants (subject to the joint defense privilege), and persons holding a common interest in the outcome of this litigation (subject to the common interest privilege); these records will reveal the sensitive and/or privileged details of every call Mr. Huertas placed or received. Such records will show what Washington, DC developers are in talks with Mr. Huertas about obtaining loans, which borrowers are in frequent contact with the principal of their lender, and so much else—none of which is even vaguely relevant to the case at bar.

The District of Columbia recognizes each of the foregoing privileges. *See, e.g.*, *Adams v. Franklin*, 924 A.2d 993, 998 (D.C. 2007) ("The attorney-client privilege is one of the oldest recognized privileges for confidential communications, and privileged communications are traditionally deemed worthy of maximum legal protection.") (quoting *In re Public Defender Serv.*, 831 A.2d 890, 900 (D.C.2003); citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)); D.C. Code § 14-306(b) (setting forth the spousal privilege in the context of civil proceedings); *Minebea Co. v. Papst*, 228 F.R.D. 13, 15 (D.D.C. 2005) (discussing the "joint defense" and "common interest" privileges).

5

Plainly, any text messages with Mr. Huertas' counsel, spouse, and co-defendants are privileged, as are any text messages with parties with whom Mr. Huertas shares a common interest (including employees of DP Capital LLC and agents of the other entities whose interests are invoked by these proceedings). Equally, however, Mr. Huertas' phone records—showing what calls were placed, when they were placed, for how long they ensued, and so on and so forth—are, too, privileged when evidencing communications with parties falling into these categories. The District of Columbia Court of Appeals is express that privileged communications—especially between an attorney and a client—are "deemed worthy of maximum legal protection," *Adams*, 924 A.2d at 998, and such necessarily includes records showing when communications occurred, how long communications ensued, which party commenced the communications, and the general frequency of communications.

To be sure, these are enormously pertinent data points. Using a solely hypothetical example, and absolutely *not* proffering such example to be factual, if Mr. Huertas spoke to undersigned counsel in a series of five phone calls, totaling three hours and eighteen minutes, on the day he was served with this lawsuit, one might surmise that Mr. Huertas regarded this lawsuit as a point of supreme concern; rebutting that presumption—by explaining the calls actually involved unrelated cases with unrelated parties—would require delving even deeper into privileged waters. And, to the contrary, if Mr. Huertas did not speak with counsel, but for a brief three minute call, for weeks after being served with the summons and complaint herein, one might surmise that Mr. Huertas does not take seriously the issues in this case. No matter the frequency or nature of communications revealed, call records will expose information sacrosanct under the attorney/client privilege and accordingly well beyond the permissive contours of discovery.

6

The same goes for communications with Mr. Huertas' wife. Again positing a pure hypothetical that ought not be construed as a factual representation: If Mr. Huertas spoke to his wife at length on the day he was deposed in this litigation, but otherwise has phone records evidencing only short and fleeting conversations with his spouse, such would at least inferentially suggest Mr. Huertas felt the need to confer—extensively—with his spouse when facing the perils of litigation. Yet the Plaintiff is not entitled to such information; spousal communications are sacred for compelling public policy reasons and this case does not nearly present any exception to the underlying doctrine.

To be sure, the Plaintiff is seeking *all* of Mr. Huertas' phone records for a time span of as much as 328 days. These records will not only contain all of the foregoing privileged fodder but, too, the daily activities of an individual who operates a private lending business. The temporal scope is overly broad and the subject matter is even more broad; the Plaintiff is not seeking records of calls with the Plaintiff's own agents, or text messages with the Plaintiff's principal—the Plaintiff is seeking what basically amounts to a log of Mr. Huertas' personal and professional activities for a period of nearly 11 months. One could identify call counterparties to ascertain what companies are looking to refinance loans, or what borrowers may be having issues paying their loans. One could also examine text messages to see what borrowers are asking for extensions and what other borrowers are prepared to pay for new properties. This delves not merely into privileged territory but, too, highly confidential business territory; knowing from text messages that John Doe is prepared to pay X dollars to acquire a specific property, and is looking to line up financing for the acquisition, is a matter of enormous sensitivity wholly untethered to this case.

It is genuinely unclear why the Plaintiff would seek all of these records, absent some harassing or vexatious intent. The Subpoena is a patent effort to encroach on privileged

7

information, is wildly overbroad, and advances no properly-limited compelling purpose. The Plaintiff is looking for Mr. Huertas' personal communications—with *all* persons and companies—both before and after this suit was filed; this is truly an abuse of the discovery process and the Subpoena ought to be accordingly quashed.

### V.     Conclusion

WHEREFORE, Mr. Huertas respectfully prays this Honorable Court (i) quash the Subpoena; and (ii) afford such other and further relief as may be just and proper.

Dated: June 26, 2024

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for Mr. Huertas*

### CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that on Wednesday, June 25, 2024, I spoke with James Sadowski, counsel for the plaintiff herein, about concerns related to the Subpoena. I also e-mailed Mr. Sadowski on that date and he, in turn, sent me a substantive e-mail on that date, concerning the Subpoena. It does not appear the Plaintiff is willing to have the Subpoena quashed, though Mr. Sadowski and I do appear to be in accord concerning a separate, related issue, that is *not* raised in this motion because of our accord.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 26th day of June 2024, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig  
Maurice B. VerStandig, Esq.