Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: ) | |
| ) | |
| Charles Paxton Paret, ) | Case No. 23-217-ELG |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| Developer RE1 LLC, ) | |
| ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, ) | |
| ) | (Cases Consolidated) |
| v. ) | |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| 423 Kennedy St Holdings LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |

**MOTION FOR PROTECTIVE ORDER**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants" and each a

1

"Defendant"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 26(c), and move this Honorable Court to enter a protective order prohibiting Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") from taking the deposition of Mr. Drazin, counsel for WCP and DPCL,[1] and in support thereof state as follows:

## I.     Introduction

The Plaintiffs have noticed the deposition of Mr. Drazin, outside counsel to WCP and DPCL.[2] Mr. Drazin has counseled WCP and DPCL in connection with the loans at issue in this case and, as noted more extensively in a pending motion for summary judgment (the "Summary Judgment Motion," as found at DE #7) has been made a defendant hereto for reasons that appear to be rooted solely in gamesmanship.

Endeavoring to depose Mr. Drazin is facially improper for two reasons: (i) the Plaintiffs do not nearly satisfy the extraordinary burden, under applicable law, requisite to depose an opposing party's legal counsel; and (ii) even if that burden were somehow satisfied, the pendency of the Summary Judgment Motion precludes the taking of discovery from Mr. Drazin.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged a protective order be entered.

---

[1] A copy of the notice of deposition is attached hereto as Exhibit A.

[2] The deposition of Mr. Drazin—and myriad other witnesses—is scheduled for July 9, 2024. *See* Notice of Deposition, attached hereto as Exhibit A. Counsel for the Plaintiffs has indicated that he does not expect the depositions to actually proceed but, rather, that they have been noticed as placeholders. Accordingly, this motion is filed in advance of the scheduled deposition date solely to preserve Mr. Drazin's rights, though the Defendants appreciate that there is not an actual effort afoot to depose Mr. Drazin (or anyone else) on July 9, 2024.

2

## II.     Standard

The rules of this Honorable Court expressly permit parties to seek protective orders when faced with improper discovery efforts:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery. . .

Fed. R. Civ. P. 26(c)(1).

Ordinarily, "'the burden is upon the party seeking non-disclosure or a protective order' to show why it should be granted." *Office of People's Counsel v. Pub. Serv. Comm'n*, 21 A.3d 985, 993 n. 15 (D.C. 2011) (quoting *Penthouse Int'l v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981); *Plough, Inc. v. Nat'l Acad. of Sciences*, 530 A.2d 1152, 1156 n. 5 (D.C. 1987)). However, where, as here, a protective order is sought to prohibit the deposition of a party's opposing counsel, "Courts … presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise." *Coleman v. Dist. of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947); *Shelton v. Am. Motors Sales Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208–09 (5th Cir. 1999); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir.2003); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009); *Sterne Kessler Goldstein & Fox PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011)).

### III.     Argument: The Deposition of Mr. Drazin Should be Prohibited

#### a.  The Plaintiff Cannot Meet Its Burden

As noted *supra*, there exists a rebuttal presumption against permitting the deposition of a party's opposing counsel, and the burden thusly falls on the proponent of a deposition to show why such is proper. Here, the Plaintiffs cannot meet that burden. To the contrary, the record herein is such that all non-privileged information obtainable from Mr. Drazin can be obtained from other witnesses and, as such, there is no need to undertake the extraordinary measure of deposing counsel for WCP and DPCL.

The United States District Court for the District of Columbia has invoked a three prong test, established by the United States Court of Appeals for the Eighth Circuit, in assessing whether a deposition of opposing counsel ought to be permitted, requiring a proponent to demonstrate that "(1) no other means exists to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *White v. Boarman*, 2011 WL 13266589, at *2 (D.D.C. 2011) (quoting *Shelton*, 805 F.2d at 1327).

Here, Mr. Drazin has no discoverable knowledge that cannot be gleaned from WCP, DPCL and/or Mr. Huertas. While Mr. Drazin has counseled WCP and DPCL in connection with their loans to the Plaintiffs, the whole of the loan documents are possessed by his clients (which documents, through the discovery process, have now been produced to the Plaintiffs). Equally, Mr. Drazin never interacted directly with the Plaintiffs, except (a) through e-mails, which the Plaintiffs have; and (b) at a mediation held following the commencement of one of these consolidated cases. Even if some aspect of that mediation were to become discoverable (which is far-fetched), Mr.

Huertas was present for the entirety of the meeting and can accordingly testify to the events that occurred therein.

Indeed, Mr. Drazin's only knowledge relevant to these cases is directly attributable to either (i) his review of documents, furnished by his clients, all of which his clients can produce (and have produced) in discovery to the extent they are not privileged; and (ii) his communications with his clients, which are highly privileged and not subject to discovery. Mr. Drazin has no other pertinent knowledge—he has not interfaced with the Plaintiffs, except as disclosed above; he has never personally visited the buildings that are the collateral for the loans at issue in these cases; he did not personally collect payments from the Plaintiffs; and he did not elect to lend monies to the Plaintiffs.

Accordingly, in assessing the second prong of the *Shelton* test, there is no information that Mr. Drazin can uniquely produce, except for information that is either irrelevant or privileged. While he could testify to what legal advice he has given his clients and the foundation of that advice, such would be the epitome of privileged material well outside the permissive contours of discovery. And while he could testify to his other interactions with DPCL and WCP as their counsel, such would be equally privileged in nature and, too, would be starkly irrelevant to the consolidated cases at bar.

This leaves the third element—whether information is crucial to the cases at bar. Since there is no information that Mr. Drazin can uniquely provide, except for privileged information, it is difficult to fathom how that information could be crucial to the matters *sub judice*. It is not merely that Mr. Drazin lacks unique possession of discoverable information crucial to these cases; it is, too, that the only information he uniquely has is uniformly privileged in nature. Everything

else can be gleaned through WCP, DPCL, Mr. Huertas, and the troves of documents that DPCL has produced pursuant to the Plaintiffs' elastic discovery requests herein.

In short, none of the three *Shelton* elements can be satisfied, and it is accordingly appropriate to prohibit the Plaintiffs from deposing Mr. Drazin.

More macroscopically, it bears notation that case law rather strictly informs why such a high burden is imposed on a party seeking to depose an opposing attorney, recognizing the unique mischief that can be undertaken through such a process. As far back as 1947, the Supreme Court of the United States had occasion to touch upon the perils of subjecting a lawyer to discovery:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

More recently, the United States District Court for the Southern District of Mississippi—in a case invoking the same *Shelton* test as has been embraced in the District of Columbia—explained, "[a]s this court has stated in previous cases, depositions of opposing counsel are discouraged, as they disrupt the adversarial process and lower the standards of the profession. Thus, a party should not be permitted to take the deposition of another party's attorney except in

the most unusual of circumstances." *Wilson v. Scruggs*, 2003 WL 23521358, at *1 (S.D. Miss. 2003) (citing *Shelton*, 805 F.2d 1323, 1327 (8th Cir.1986), *Hickman*, 329 U.S. at 513; *Jones v. Board of Police Commissioners of Kansas City, Missouri*, 176 F.R.D. 625 (W.D. Mo. 1997); *Caterpillar Inc. v. Friedemann*, 164 F.R.D. 76 (D. Or. 1995); *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Miss. 1990).

As observed by the United States District Court for the District of Kansas, "[w]hile the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996) (quoting *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990)).

The *Wilson* and *Mike* holdings are neither random nor outliers. To the contrary, they are both cited herein because they have both been favorably cited by the United States District Court for the District of Columbia. *See Stern*, 276 F.R.D. at 381. And that local case also notes a blizzard of concurring holdings from other courts, including ones sitting in New York and Illinois. *Id.*

### b. Mr. Drazin's Ministerial Service as Substitute Trustee Does Not Alter the Impropriety of His Deposition Being Taken

It appears that at least one of the theories espoused for deposing Mr. Drazin is that he is the trustee on various deeds of trust, securing an obligation of the Plaintiffs to the Defendants. It is, however, a longstanding practice in the District of Columbia for secured parties to have their counsel serve as trustees under deeds of trust, with the resulting obligations being largely ministerial in nature. This reality does not change the analysis set forth above.

As a starting point, Mr. Drazin's service as trustee does not alter any of the *Shelton* factors discussed *supra*. In this capacity, Mr. Drazin has (i) caused a Notice of Foreclosure Sale of Real

7

Property or Condominium Unit to be mailed to all pertinent parties; (ii) scheduled foreclosure auctions; and (iii) made arrangements to have notice of those foreclosure auctions advertised in *The Washington Post*. The notices are a matter of public record and were sent to the Plaintiffs; the time and date of the foreclosures are contained in the notices; the newspaper advertisements can be found online and in the pages of the region's most-read daily newspaper. And there is, as such, nothing about Mr. Drazin's service in this role that would lend itself to his being asked questions at deposition where the answers to those questions are not readily ascertainable from other sources.

Further, though, the fact that Mr. Drazin's service as trustee does not alter the *Shelton* factors speaks volumes to the ministerial nature of such service. Under District of Columbia law:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 356 (D.D.C. 2011) (quoting *In re Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.*, 412 A.2d 1194, 1197 (D.C.1980)); *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 377 n. 21 (D.C. Cir. 1974); citing *Sheridan v. Perpetual Bldg. Ass'n*, 322 F.2d 418, 422 (D.C. Cir. 1963)). The obligations of a trustee under a deed of trust are, accordingly, quite limited in scope, consisting almost entirely of (a) properly giving notice of an auction, (b) carrying out that auction, and (c) then delivering a deed to the buyer. *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 169 (D.D.C. 2013).

Stated otherwise, Mr. Drazin's duty as trustee is to (i) obey the plain language of the deed of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as

they relate to foreclosures. Such is scantly the variety of matter upon which a deposition needs to be taken.

Equally, this is not a case where there is any allegation that Mr. Drazin has erred in his duties as trustee. To the contrary, it is facially apparent that he mailed the correct form for a Notice of Foreclosure Sale of Real Property or Condominium Unit, that he scheduled auctions, and that he caused those auctions to be advertised. He, in the words of the *Evans* Court, "faithfully executed [his] duties." And in so doing, he has most certainly not undertaken any actions that render him subject to deposition within the contours of the *Shelton* standard.[3]

### c. The Pendency of the Summary Judgment Motion Militates in Favor of Staying the Deposition

Finally, the deposition should not proceed for an altogether more common reason: Mr. Drazin has now filed a thoroughly-dispositive motion for summary judgment and, under controlling precedent, such acts as a stay on the taking of discovery from Mr. Drazin. In fairness to the Plaintiffs, the Summary Judgment Motion was not pending when the deposition was noticed. But the dispositive motion is now pending and should, accordingly, independently give rise to a stay of any efforts to depose Mr. Drazin.

As noted by the United States District Court for the District of Columbia, "[i]t is settled that entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of the court's discretion. . ." *Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (citing *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987); *Ladd v. Equicredit Corp. of Am.*, 2001 WL 175236, at *1 (E.D. La. Feb. 21, 2001); *White v. Fraternal Order of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990)). *See also Sai v.*

---

[3] Additionally, and of some palpable import, it bears notation that the auctions never actually occurred. Both were enjoined and proceeded no further. So there are not even auction-centric occurrences about which Mr. Drazin could be deposed.

9

*Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) (holding similarly); *Moore v. Castro*, 2016 WL 10674309, at *1 (D.D.C. Jan. 14, 2016) (holding similarly).

To be clear, only Mr. Drazin has moved for summary judgment and, as such, a stay of discovery is only sought as to Mr. Drazin. While the other Defendants certainly may, too, seek summary judgment at an appropriate juncture, no motions are presently pending that would be thoroughly dispositive as to the claims against them and, as such, no stay of discovery is appropriate as to those Defendants at this juncture. But Mr. Drazin has presented a motion that, if granted, would serve to sever him from this case *en toto*. And precedent is clear that such a construct does, in turn, invite a stay of correlative discovery.

### IV. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter an order prohibiting the Plaintiffs from taking the deposition of Mr. Drazin; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 8 ,2024    By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF GOOD FAITH CONFERENCE**

I HEREBY CERTIFY that on multiple occasions, I have spoken to counsel for the Plaintiffs about the permissibility, *vel non*, of deposing Mr. Drazin. Our discussions have been professional, cordial, and warm. We have not, however, found grounds upon which to reach an agreement that would narrow the issues set forth herein.

I further note that while no formal good faith conference was conducted in advance of this motion being filed, (i) a good faith conference was conducted the last time one of the plaintiffs noticed the deposition of Mr. Drazin; (ii) the issue has been discussed since, as recently as in the past few weeks; and (iii) ongoing discussions have made clear to the Plaintiffs that the Defendants would seek a protective order in advance of the noted deposition.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig