**Superior Court of the District of Columbia**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                                    Plaintiff

vs.                                              Case Number _____2023-CAB-004260_____

Daniel Huertas

_____
                                    Defendant

## SUMMONS

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006

(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
                          Deputy Clerk

Date _____July 17, 2023_____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주세요    ያማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

     IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

     If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                         Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                           Demandante

        contra

                                            Número de Caso: _____

Daniel Huertas
_____
                           Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635                              *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000                    Por: _____
_____
Dirección                                                      Subsecretario
Washington, DC  20006
_____

(202) 452-1400                                         Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202)879-4828 로 연락하십시오.            ያማርኛ ተርጓሚ ለማግኘት (202) 879-4828  ይደውሉ።

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

Superior Court of the District of Columbia
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

423 Kennedy St Holdings LLC

                                                    Plaintiff

vs.

                                                    Case Number    2023-CAB-004260

DP Capital, LLC d/b/a Washington Capital Partners

                                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006

(202) 452-1400
_____
Telephone

*Clerk of the Court*

By _____
                              Deputy Clerk

Date _____ **July 17, 2023**

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

423 Kennedy St Holdings LLC
_____
                              Demandante

        contra
                                              Número de Caso: _____

DP Capital, LLC d/b/a Washington Capital Partners
_____
                              Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC  20006
_____

(202) 452-1400
_____
Teléfono

SECRETARIO DEL TRIBUNAL

Por: _____
                                  Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202)879-4828 로 전화해주시기 바랍니다        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                                    Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                                    Plaintiff

vs.                                                     Case Number    2023-CAB-004260

WCP Fund, I, LLC

_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC 20006

(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
                                    Deputy Clerk

Date _____
                                    July 17, 2023

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요.         የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                              Demandante
        contra
                                              Número de Caso: _____
WCP Fund, I, LLC
_____
                              Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____           *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____        Por: _____
Dirección                                              Subsecretario
Washington, DC  20006
_____

(202) 452-1400
_____        Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

한국어 번역을 원하시면 (202)879-4828 로 연락하십시오.      ያማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ።

**IMPORTANTE:** SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**Superior Court of the District of Columbia**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                                    Plaintiff

vs.

Russell S. Drazin                                          Case Number _____ 2023-CAB-004260

_____
                                    Defendant

## SUMMONS

To the above named Defendant:

   You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

   You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006

(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
                                    Deputy Clerk

Date _____ **July 17, 2023**

如需翻译,请打电话 (202) 879-4828  Veuillez appeler au (202) 879-4828 pour une traduction  Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요.  ያስተረጉም ከፈለጉ ለማግኘት (202) 879-4828 ይደውሉ

   IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

   If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

423 Kennedy St Holdings LLC
<div style="text-align:center">Demandante</div>

<div style="text-align:center">contra</div>

Número de Caso: _____

Russell S. Drazin
<div style="text-align:center">Demandado</div>

<div style="text-align:center">

### CITATORIO

</div>

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC  20006
_____

(202) 452-1400
_____
Teléfono

_SECRETARIO DEL TRIBUNAL_

Por: _____
<div style="text-align:center">Subsecretario</div>

Fecha _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 통역을 원하시면 (202)879-4828 로 연락하십시오.     የአማርኛ ትርጉም ከፈለጉ በ (202) 879-4828 ይደውሉ

    IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

    Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

<div style="text-align:center">Vea al dorso el original en inglés
See reverse side for English original</div>

**Superior Court of the District of Columbia**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                                         Plaintiff

vs.                                                          Case Number    <u>2023-CAB-004260</u>

SF NU, LLC

_____
                                         Defendant

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000                          _Clerk of the_
_____
Address                                         By _____
Washington, DC  20006

(202) 452-1400
_____                          Date    **July 17, 2023**
Telephone

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주실시오          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                          Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____

                                    Demandante

          contra                                          Número de Caso: _____

SF NU, LLC
_____

                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____          Por: _____
Dirección                                                     Subsecretario
Washington, DC  20006
_____

(202) 452-1400
_____          Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202)879-4828 로 전화해주시기 바랍니다      የትርጉም አገልግሎት ከፈለጉ (202) 879-4828 ይደውሉ

**IMPORTANTE**: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

423 Kennedy St Holdings, LLC

Case Number: _____2023-CAB-004260_____

vs

Date: _____

DP Capital, LLC d/b/a Washington Capital Partners, et. al.

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)*   James D. Sadowski | Relationship to Lawsuit |
|---|---|
| Firm Name:   Greenstein Delorme & Luchs PC | [X] Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.:          Six digit Unified Bar No.:<br>202-452-1400 ext. 7805          446635 | ☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury    ☐ 6 Person Jury    [X] 12 Person Jury

Demand: $ ___1 Million___    Other: __Punitive Damages__

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _2022-CAB-005935_    Judge: _Ebony Scott_    Calendar #:_____

Case No.:_____    Judge: _____    Calendar#:_____

---

NATURE OF SUIT:    *(Check One Box Only)*

**A. CONTRACTS**            **COLLECTION CASES**
                *Implied Covenant of Good Faith and Fair Dealing*

[X] 01 Breach of Contract*      ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty        ☐ 17 OVER $25,000 Pltf. Grants Consent    ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument     ☐ 27 Insurance/Subrogation               ☐ 26 Insurance/Subrogation
☐ 07 Personal Property               Over $25,000 Pltf. Grants Consent          Over $25,000 Consent Denied
☐ 13 Employment Discrimination ☐ 07 Insurance/Subrogation               ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees          Under $25,000 Pltf. Grants Consent          Under $25,000 Consent Denied
                               ☐ 28 Motion to Confirm Arbitration
                                     Award (Collection Cases Only)

---

**B. PROPERTY TORTS**

☐ 01 Automobile              ☐ 03 Destruction of Private Property    ☐ 05 Trespass
☐ 02 Conversion              ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

---

**C. PERSONAL TORTS**   1. Tortious Interference with Business Relations ; 2. Breach of Fiduciary Duty

☐ 01 Abuse of Process           ☐ 10 Invasion of Privacy              ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection    ☐ 11 Libel and Slander                     Not Malpractice)
☐ 03 Assault and Battery        [X] 12 Malicious Interference          ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution           ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation) ☐ 14 Malpractice Legal                ☐ 20 Friendly Suit
☐ 06 False Accusation           ☐ 15 Malpractice Medical (Including Wrongful Death) ☐ 21 Asbestos
☐ 07 False Arrest               ☐ 16 Negligence- (Not Automobile,     ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                            Not Malpractice)                ☐ 23 Tobacco
                                                                      ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  - (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☒ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  - (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  - Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

Injunctive Relief - to Stop a Foreclosure

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  - Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  - Judgment [ D.C. Code §
  - 2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  - 42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  - [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  - (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
/s/ James D. Sadowski

Attorney's Signature

July 13, 2023 _____

Date

CV-496/ June 2015

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

**OPPOSITION TO PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY
RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr.

Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, pursuant to

District of Columbia Rule of Civil Procedure 12-I(e), and in opposition to the Plaintiff's Opposed

Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion,"

with the plaintiff being known as the "Plaintiff") state as follows:

**I.    Introduction**

In December 2021, the Plaintiff borrowed slightly over $4 million from WCP and DPCL,

through two loans memorialized by promissory notes and secured by deeds of trust. Some seven

months later, in July 2022, the Plaintiff defaulted on both promissory notes by failing to timely

make interest payments. The Plaintiff defaulted again in October 2022, once again failing to timely

make interest payments. Another default, for the same reason, followed in November 2022. A

fourth monetary default – again, for failure to timely make an interest payment – ensued in

December 2022.

The Plaintiff's defaults did not stop there. The Plaintiff failed to pay water and sewer bills

for the property securing the loans, causing a $44,857.93 lien to be imposed. The Plaintiff also

1

failed to timely pay more than $16,700.00 in taxes on the property, causing another lien to incur. And then, on December 23, 2022, the Plaintiff failed to pay the loans at maturity.

With more than six months having now elapsed since repayment of the loaned monies came due, and with more than a year having now elapsed since the beginning of the Plaintiff's string of defaults under the loan documents, the Plaintiff is asking for a temporary restraining order to enjoin WCP and DPCL from exercising their bargained-for rights under those documents. Or, stated otherwise, the Plaintiff endeavors to retain the monies loaned to it by WCP and DPCL, while also retaining the collateral it pledged as security for those loans. In the words of the former Municipal Court of Appeals for the District of Columbia, "[t]he plaintiff wishes to have his cake and eat it too." *Plant v. Plant*, 57 A.2d 204, 208 (D.C. 1948).

The Motion merits denial because (i) the Plaintiff cannot show a likelihood of success on the merits where the undisputed and objective record evidences myriad defaults under loan documents, including a failure to pay at maturity; (ii) the "irreparable harm" cited by the Plaintiff is nothing more than the exercise of a contractually bargained-for right; (iii) the Plaintiff has an adequate remedy at law, inasmuch as it is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code; (iv) any balancing of equities necessarily weighs against the Plaintiff being able to retain WCP and DPCL's money while also retaining WCP and DPCL's collateral, more than six months after two loans have fully matured; and (v) public policy disfavors using this Honorable Court to disrupt the District of Columbia's long history of permitting non-judicial foreclosures of commercial assets.

For these reasons, and as extrapolated upon *infra*, the Defendants ask this Honorable Court to deny the relief sought in the Motion.

## II.    Standard

The standard for a non-*ex parte* temporary restraining order is substantively comparable to that for a preliminary injunction. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009) (noting the overlapping elements of the two forms of relief); *Campbell v. U. S.*, 295 A.2d 498, 501 (D.C. 1972) (noting federal rules may be used to offer guidance where similar to the rules of this Honorable Court).

Specifically, a four prong test controls any request for non-final injunctive relief, with a "sliding scale" governing the weight afforded each such criterion:

> "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits in the underlying cause of action; (3) [whether] the "balance of injuries" favors granting an injunction; and (4) [whether] the public interest would be served by granting the injunctive relief sought."

*Ifill v. Dist. of Columbia*, 665 A.2d 185, 187–88 (D.C. 1995) (quoting *In re Antioch Univ.*, 418 A.2d 105, 109 (D.C.1980)).

Importantly, "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (citing *CFGC v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

## III.    Relevant Facts

The Defendants submit the following facts to be without genuine dispute and, where appropriate, to be evidenced by documents appended to the Motion or appended hereto:

1.      On December 24, 2021, WCP loaned the Plaintiff the sum of $3,579,000.00 (the "First Loan"). *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B.

2.      Of even date therewith, WCP loaned the Plaintiffs an additional sum of $524,000.00 (the "Second Loan"). *See* Commercial Deed of Trust Note, attached to Motion as Exhibit D.

3

3.      Both promissory notes stipulate that "[p]ayments of interest only shall be due and payable on the first day of each calendar month…" *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B, at § 3; *See* Commercial Deed of Trust Note, attached to Motion as Exhibit D, at § 3.

4.      The payments due on July 1, 2022 were not made until July 14, 2022. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

5.      The payments due on October 1, 2022 were not made until October 6, 2022. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

6.      The payments due on November 1, 2022 were not made until November 9, 2022 for one loan and November 10, 2022 for the other loan. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

7.      The payments due on December 1, 2022 were not made until December 6, 2022. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

8.      Both loans matured on December 24, 2022. *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B; Commercial Deed of Trust Note, attached to Motion as Exhibit D.

9.      Neither loan was paid at maturity, nor have any payments been made thereon at any time in the almost seven months since maturity. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

10.     Both the First Loan and the Second Loan are secured by deeds of trust on the real property commonly known as 5501 1st Street, NW, Washington, DC 20011 and 5505 1st Street, NW, Washington, DC 20011 (the "Property"). *See* Deed of Trust, attached to Motion as Exhibit A; Deed of Trust, attached to Motion as Exhibit C.

11.     Both deeds of trust require the Plaintiff to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of WCP and DPCL:

> Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

*See* Deed of Trust, attached to Motion as Exhibit A, at § 4.2; Deed of Trust, attached to Motion as Exhibit C, at § 4.2. *See also*, *Id.* at § 1.0(d) (defining "[i]mpositions" to include "real estate taxes" and "water and sewer rents and charges," among other obligations).

12.     The Plaintiff failed to pay its water and sewer bills, causing a $44,857.93 lien to be placed upon the Property in August 2022 (with the subject lien being superior to that of WCP and DPCL). Plaintiff's First Amended Complaint at ¶¶ 81(a), 83; D.C. Code § 34-2407.02(a) (providing that a certificate of delinquency for unpaid water and sewer charges "shall constitute a continuing lien against the real property"); D.C. Code § 34-2407.02(b) (providing "[a] lien for water and sanitary sewer charges shall have priority over any other lien, except a lien for District taxes").

13.     The Plaintiff also failed to timely pay more than $16,700.00 in taxes on the Property for the second half of 2022, creating another a lien on the Property superior to that of WCP and DPCL. *Id.* at ¶¶ 81(b), 91; D.C. Code § 47-1331(a) ("A tax shall automatically become a lien on

5

the real property on the date the tax was due and unpaid…"); D.C. Code § 47-1331(b) ("The lien

for a tax shall be a prior and preferred claim over all other liens and shall be perpetual.").

14.     Neither the promissory notes nor the deeds of trust require written notice of a

default, nor of acceleration upon default, being commercial loan instruments governed by District

of Columbia law. *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B, *passim*;

Commercial Deed of Trust Note, attached to Motion as Exhibit D, *passim*; Deed of Trust, attached

to Motion as Exhibit A, *passim*; Deed of Trust, attached to Motion as Exhibit C, *passim*.

15.     The promissory notes and deeds of trust expressly provide that WCP and DPCL

may temporarily forbear from exercising remedies pursuant to a default of the Plaintiff, without

waiving such remedies or the right to invoke such remedies. *See* Commercial Deed of Trust Note,

attached to Motion as Exhibit B, § 5; Commercial Deed of Trust Note, attached to Motion as

Exhibit D, § 5; Deed of Trust, attached to Motion as Exhibit A, § 11.4; Deed of Trust, attached to

Motion as Exhibit C, § 11.4.

**IV.    Argument: The Motion Merits Rejection**

**a.   The Plaintiff is Not Likely to Succeed on the Merits**

The thrust of the Plaintiff's claims in this case is that a failure to pay two promissory notes

at maturity, preceded by multiple payment defaults thereunder and the imposition of multiple

municipal liens on the collateral securing those loans, is not grounds to foreclose under standard

commercial deeds of trust. This is *reductio ad absurdum*.

**i.   Tortious Interference with Business Relations**

The heart of the claim for tortious interference with business relations (Count I) is that

WCP and DPCL should not have declared the promissory notes to be in default on December 8,

2022, when the Plaintiff had already defaulted on each of the notes and their correlative deeds of

trust at least six separate times. Rather, the Plaintiff posits, WCP and DPCL were obligated to refrain from noting the myriad defaults, so the Plaintiff could fraudulently represent to a new lender that its existing loan obligations were in good standing.

A claim for tortious interference with business relations requires a showing of "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017) (quoting *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038 (D.C. 2015) (quoting *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 345–46 (D.C. 2015))).

Here, the Plaintiff has not shown that it had a valid contractual or other business relationship with anyone aside from WCP and DPCL. The Plaintiff claims to have been in the process of endeavoring to refinance its debt, but in a case where the Plaintiff has appended an extensive array of exhibits to nearly every filing, the record is notably devoid of a loan commitment letter from a third party lender. And while ultimately immaterial because of the Plaintiff's failure to make showings of other required elements, this prong ought not be overlooked. To the contrary, this is a case where the Plaintiff claims that there is significant equity in the Property, but that it suddenly became unable to procure a refinancing (despite that significant equity) in December 2022 because WCP and DPCL declared their loans to be in default. This assertion is, on many levels, not only counterintuitive but, indeed, plainly illogical. It seems far-fetched to surmise a lender walked away from refinancing an obligation secured by a healthy equity cushion, and it is altogether suspect that the Plaintiff has never mustered any evidence of this actually occurring.

Equally, the Plaintiff has not shown that WCP and DPCL did anything to intentionally interfere with any third party relationship. All the Plaintiff alleges is that WCP and DPCL sent

7

default notices and payoff statements *to the Plaintiff*. There is no claim that any of the Defendants contacted another lender, libeled the Plaintiff, or undertook any actions whatsoever in connection with a third party. The Plaintiff's claim necessarily fails on account of this reality, as tortious interference mandates some action over and above merely communicating with the allegedly-aggrieved party itself.

Most importantly, though, the Plaintiff has not shown resulting damages. The Plaintiff defaulted – at least six times – under loan documents, leading WCP and DPCL to simply note the defaults and declare the loans to be in default. This does not invite any legally-cognizable form of damages; to the contrary, this is merely WCP and DPCL proceeding under contractually bargained-for loan documents, in accord with the express terms thereof. In fact, WCP and DPCL waited more than six months after the loans matured to notice foreclosures, permitting the Plaintiff more than the bargained-for time period to seek new financing.

In short, the Plaintiff is alleging that WCP and DPCL exercising their contractual remedies, under valid loan documents, constitutes tortious interference. The innate failure of this contention – and the resulting absence of any probability of success on the merits – is self-evident.

### ii.  Breach of the Duty of Good Faith and Fair Dealing

The Plaintiff is similarly unlikely to prevail on its claim for breach of the implied covenant of good faith and fair dealing. Only a single paragraph is devoted to this claim in the Motion, and for good reason: the Plaintiff is arguing that a lender cannot foreclose, under a deed of trust, after a borrower breaches loan documents at least seven separate times, including a failure to pay the loan at maturity. Such a holding would not only invite untold havoc upon the docket of this Honorable Court but would, too, do palpable violence to the commercial paper market writ large.

Familiarly, "… to establish a breach of the implied covenant of good faith and fair dealing in all three jurisdictions, the plaintiff must plead that (1) the defendant has taken steps, or refused to take steps, (2) which destroyed or injured the plaintiff's right to receive the fruits of the contract." *Magee v. Am. Inst. of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 112 (D.D.C. 2017) (citing *Mero v. City Segway Tours of Wash. D.C., LLC*, 826 F.Supp.2d 100, 106 (D.D.C. 2011); *Williams v. Craft Dev., LLC*, 199 N.C.App. 500, 682 S.E.2d 719, 723 (2009); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919, 923 (1991)).

Here, the Plaintiff was entitled to receive just over $4,000,000.00 in loaned monies from WCP and DPCL, pursuant to the terms of the loan documents. Those are the "fruits of the contract" insofar as the Plaintiff is concerned, and there is no dispute but that the Plaintiff received those fruits. Rather, what the Plaintiff argues is that it is entitled, too, to retain the collateral it pledged as security – notwithstanding an avalanche of defaults and a failure to pay the notes at maturity – because the Plaintiff is not fond of the terms for which it bargained.

To be clear, the "fruits of the contract" are the monies paid to the Plaintiff. In fact, it is the repayment of those monies with interest – something the Plaintiff has failed to honor – that is the fruit of the contract for WCP and DPCL. And to the extent there is a claim for breach, in this instance, such a claim may be rightfully understood to belong to the Defendants – not the Plaintiff.

### iii.  The Defaults are Not "Technical" and Do Give Rise to Foreclosure

Remarkably, the Plaintiff describes the breaches giving rise to a default under the loan documents as being "technical" in nature, not inviting foreclosure. Motion at § IV(b)(5). The Plaintiff also alleges these violations to be "pretextual," *Id.* at § IV(b)(3), and that the violations have been cured, *Id.* at § IV(b)(5). The former assertion is belied by the undisputed record; the latter assertions are plainly counter-factual in nature.

To be sure, failing to pay a loan at maturity is not a "technical" breach of the promissory note or deed of trust. Indeed, it is difficult to fathom a more substantive breach. Equally, failing to make regular payments on time is not a "technical" violation; the Plaintiff repeatedly made late payments multiple times not enumerated above – the late payments identified herein are only those where the delinquency extended for *at least* five days. And, similarly, allowing tens of thousands of dollars in senior liens to encumber a lender's collateral, because of the non-payment of water/sewer and tax bills, is most certainly not a "technical" breach of loan documents.

Vis a vis the alleged "cure" of these violations, it is undisputed that the loan balances remain unpaid, despite the notes having matured. Yes, the late payments were ultimately made on installment interest. And perhaps the senior liens were ultimately retired (that seems less clear). Those breaches would be alone sufficient to invite foreclosure under the loan documents (which do not allow for cures to void defaults of these types), but to focus on those breaches is to miss the forest for the trees: the Plaintiff owes more than $5,000,000.00 on account of loans that matured and were not repaid upon maturity. And this has been true for more than six months, with the maturity having occurred toward the end of 2022.[1]

### iv.  The Late Fee is Enforceable

The Plaintiff next argues that a late fee bargained for in the promissory notes is not enforceable, on the basis that it is a forbade liquidated damages clause. Yet this contention is without legal support, as the District of Columbia expressly allows parties to contractually bargain for damages arising on account of contractual breaches.

---

[1] The Motion also argues that an affiliate relationship does not invite a breach of the loan documents. Motion at § IV(b)(3). WCP and DPCL dispute this assertion and believe the relevant third party entities to be affiliates of the Plaintiff, but such is besides the point for purposes of the instant Motion. As noted *passim*, there are more than six separate breaches of the loan documents – not involving any affiliates – that punctuate the frivolity of the Plaintiff's claims.

The District of Columbia Court of Appeals has made clear that liquidated damages provisions of contracts are allowable in nature:

> "It is well-settled that parties to a contract may agree in advance to a sum certain to be forfeited as liquidated damages for breach of contract." This is because a liquidated damages clause serves "to simplify the resolution of a breach of contract dispute" by "giving the parties an opportunity to resolve the damages question without resorting to litigation" and by "fix[ing] the measure of damages at the outset before a breach even occurs."

*Proulx v. 1400 Pennsylvania Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019) (quoting *Burns v. Hanover Ins. Co.*, 454 A.2d 325, 237 (D.C. 1982); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 367 (D.C. 1984)).

The Plaintiff devotes but a single paragraph to this contention in its Motion (despite an agreement to exceed the page count ordinarily governing motions practice). This is problematic, inasmuch as the burden would be on the Plaintiff to establish that (i) the late fee in the loan documents is a penalty; (ii) the late fee is not reasonable compensation for a breach; and (iii) the late fee was unreasonable at the time the promissory notes were entered into. *Id.; Proulx v. 1400 Pennsylvania Ave., SE, LLC,* 199 A.3d 667, 673 (D.C. 2019). The Motion makes no such showing.

To the contrary, WCP and DPCL loaned millions of dollars, expecting those monies to be repaid in a year. It has now been nearly seven months since those debts came due and the loans remain unpaid, leaving the lenders without access to their capital. The Defendants never bargained for an indefinite loan and, to the contrary, WCP and DPCL are in the business of making short term loans and being able to then redeploy their capital accordingly. It is thusly altogether sensible that there is a late fee when payments are not timely made, and it is undisputed that the late fee was agreed to by the Plaintiff when the promissory notes were executed.

Indeed, in the words of the *Proulx* Court, "We have ... consistently adhered to a general rule that one who signs a contract has a duty to read it and is obligated according to its terms....

11

[A]bsent fraud or mistake, one who signs a contract is bound by a contract which [s]he has an opportunity to read whether [s]he does so or not." *Proulx*, 199 A.3d at 672 (quoting *Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. 2017) (quoting *Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108, 1110 (D.C. 2002))).[2]

### b.  The Motion Does Not Demonstrate Irreparable Harm

The Motion should also be denied because the Plaintiff cannot show irreparable harm. While a foreclosure would serve to alienate the Plaintiff's interest in the Property, the Plaintiff has an adequate remedy at law to forestall the foreclosure, inasmuch as the Plaintiff is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code. This is the remedy normally invoked by commercial borrowers who face a foreclosure and do not wish to see it proceed; it is altogether unclear why the Plaintiff has not travelled this relatively simple and oft-invoked route.

Under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g.*, *Dist. of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, 367 A.2d 143, 144 (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

Here, the Motion makes clear that owning the subject property is the singular purpose of the Plaintiff's operations. Motion at § I. No tangential or other operations are alleged, nor does the

---

[2] In denying a similar motion for a temporary restraining order in a sister case, this Honorable Court observed, *inter alia*, "Additionally, the Court finds Defendant has acted in accordance with the terms of the contract." *See* Order, attached hereto as Exhibit 3.

Plaintiff purport to have any other assets or affairs. *Id.* Thusly, the Plaintiff could stay a foreclosure by filing a petition for bankruptcy relief. 11 U.S.C. § 362. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

### c.   Public Policy Does Not Support Imposition of an Injunction

Rare is the defaulted commercial debtor that does not – rather vehemently – wish to stave off foreclosure of its collateral. Yet to entertain such drastic relief would be to encourage all of the defaulted borrowers of this city – commercial and consumer alike – to file cases in this Honorable Court, to allege their respective defaults are not sufficiently severe to merit foreclosure, and to point to the loss of encumbered property as an irreparable harm. As noted *supra*, the longstanding alternative course of action is to permit such controversies to be handled by bankruptcy courts, which are nearly custom-tailored to address the idiosyncrasies of such disputes. To permit otherwise, and afford injunctive relief in a case where the Plaintiff tacitly acknowledges breaches of the deed of trust but insists such should be ignored, would be to open a floodgate of vexatious filings.

13

This is all the more true where, as here, the defaulting party is an entity without any other assets or operations. The Plaintiff has, quite literally, nothing to lose by bringing this suit and seeking injunctive relief; with no unencumbered assets to be reached, the Plaintiff is without fear of the monetary sanctions that ordinarily serve to deter frivolity, and without any other business operations, the Plaintiff is without any concern about reputational harm or denigration of goodwill. Literally every similarly situated real estate holding company facing foreclosure would be incentivized to file a similar action and seek a similar injunctive remedy, if such were readily available. And yet public policy clearly disfavors such, with the bankruptcy courts being the designated venues for adjudication of such matters and with this Honorable Court's docket already being weighed down by myriad other matters.

## V.    Argument: If an Injunction is Entered, the Plaintiff Should be Required to Post a Bond

Finally, the Motion (including the proposed order appended thereto) conveniently misses that entry of injunctive relief is, as a matter of law, necessarily accompanied by the requirement that the petitioning party post appropriate security. *See, e.g.*, District of Columbia R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained…"). In this case, the Plaintiff asks that the Defendants be enjoined from exercising rights against their collateral – while also not receiving any payments, whatsoever, on the monies they have loaned – for an indefinite period of time, as this litigation plays out. Such relief would, in turn, beget appreciable economic damage – especially since the Plaintiff acknowledges having no other assets from which to collect.

The total indebtedness *sub judice* is over $5,000,000.00. The debt is accruing interest at the rate of $2,735.33 per day. *See* Payoff Statements, attached to Motion as Exhibits M and N. And

that represents the money WCP and/or DPCL would be able to make on their capital if they were not enjoined from taking contractually bargained for steps to recover that collateral. So it would be accordingly appropriate to set a bond herein at $998,395.45 – being one year of interest that will accrue while an injunction pends.

To be sure, litigation in this Honorable Court normally runs well in excess of a single year. And it may be reasonably surmised the bond will, accordingly, need to be revisited as the case progresses. But if the Plaintiff is to be permitted an injunction prohibiting WCP and DPCL from accessing their capital (an injunction that, as urged *supra*, ought not be granted in any event), a bond of one year's interest on that capital would seem the appropriate measure of security.

The Defendants are aware this number may seem palpably large. But so, too, are the ramifications injunction the Plaintiff seeks. The Plaintiff is not merely asking that a foreclosure be enjoined; the Plaintiff is – by extension – asking that WCP and DPCL be completely without access to their capital for however long this case may pend. That is an enormously expensive undertaking to ask of companies in the business of disbursing capital to the community, and the bond proposed (if an injunction is to be granted) is accordingly measured to reflect that damage. This is especially so since it is manifest, by the Plaintiff's own description of its affairs, that the Plaintiff will be wholly without monies or other assets to satisfy accruing damages should it fail to prevail in this action. Rule 65 clearly serves to ensure litigants not be afforded such an opportunity to proceed with an injunction to the financial peril of the parties against whom they seek relief.

## VI.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; (ii) alternatively, condition an injunction upon the posting of a bond in the amount of $998,395.45; and (iii) afford such other and further relief as may be just and proper.

Dated: July 17, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 17th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Developer RE1 LLC, | |
| Plaintiff, | |
| | Case No. 2022 CAB 005935 |
| v. | Judge Ebony Scott |
| DP Capital, LLC, et al. | |
| Defendants. | |

## [PROPOSED] ORDER

Upon consideration of the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion") filed by the plaintiff herein, the opposition of the defendants herein thereto, the authorities cited in the defendants' brief in opposition, and the record herein, it is, this _____ day of _____, 2023, by the Superior Court of the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, DENIED

So Ordered.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

Exhibit 1

| Name | Status Reason | Payment Due On | Days Past Due | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F... | Amount Due (Default Int... | Amount Due (P... | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Prepaid) | Amount Paid (Late Fee) | Amount Paid (Default Int... | Amount Paid (P... | Amount Paid (Total) | Beginning Princip... | Ending Principal | Cumulative Inte... | Unapplied Funds | Principal Payoff | Balance (Total) | Scheduled Payment Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111556 | Unpaid | 7/1/2023 | 13 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 71580.01 | | Unscheduled | 71580.01 |
| LPAY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 73966.00 | | Unscheduled | 73966.00 |
| LPAY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 71580.01 | | Unscheduled | 71580.01 |
| LPAY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 73966.00 | | Unscheduled | 73966.00 |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 22241.50 | 0.00 | 44566.50 | 66808.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 66808.00 | | Unscheduled | 66808.00 |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 73966.00 | | Unscheduled | 73966.00 |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 Wire | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 | | Unscheduled | |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 Wire | | Late (5-15 Days) | 23830.18 | 2383.02 | 0.00 | 26213.20 | | 23830.18 | 23830.18 | 0.00 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 2383.02 | | ACH - Closed | 0.00 |
| LPAY-096066 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 Wire | | Late (5-15 Days) | 24624.51 | 0.00 | 0.00 | 24624.51 | | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 | | Unscheduled | |
| LPAY-096801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 Stripe | | Late (5-15 Days) | 23830.18 | 2383.02 | 0.00 | 26213.20 | | 23830.18 | 23830.18 | 0.00 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 2383.02 | | ACH - Cleared | 0.00 |
| LPAY-091932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 Stripe | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 | | ACH - Cleared | |
| LPAY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 Stripe | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 | | ACH - Cleared | |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | | Late (5-15 Days) | 23830.18 | 0.00 | 0.00 | 23830.18 | | 615.39 | 23214.79 | 0.00 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 0.00 | | ACH - Cleared | |
| LPAY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | | Current | 23830.18 | 0.00 | 0.00 | 23830.18 | | 23830.18 | 0.00 | 0.00 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 0.00 | | Unscheduled | |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 | | Unscheduled | |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | | Current | 22241.50 | 0.00 | 0.00 | 22241.50 | | 22241.50 | 0.00 | 0.00 | 0.00 | 0.00 | 22241.50 | | 0.00 | 0.00 | 0.00 | | Unscheduled | |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 | | Unscheduled | |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | | Originated | 7149.05 | 0.00 | 0.00 | 7149.05 | | 7149.05 | 0.00 | 0.00 | 0.00 | 0.00 | 7149.05 | | 0.00 | 0.00 | 0.00 | | | |

WCP0708

| Name | Status Reason | Payment Due On | Days Past Due Cal | Payment Paid On | Payment Method | Servicing Status |
|------|---------------|----------------|-------------------|-----------------|----------------|------------------|
| LPAY-111556 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 | Wire | Late (5-15 Days) |
| LPAY-098044 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 | Wire | Late (5-15 Days) |
| LPAY-096801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Late (5-15 Days) |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085019 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 1

Exhibit 2

| Name | Status Reason | Payment Due On | Days Past Due C | Payment Due On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F | Amount Due (Default Int | Amount Due (Pr | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Interest) | Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Int | Amount Paid (Pr | Amount Paid (Total) | Beginning Principal | Ending Principal | Cumulative Inter | Unapplied Fund | Principal Payoff | Balance (Total) | Scheduled Payment Stat | balance (no late |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111505 | Unpaid | 7/1/2023 | -11 | | | Defaulted | 5235.63 | 0.00 | | 5244.37 | 10480.00 | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | | | | | 0.00 | 0.00 | 10480.00 Unscheduled | 10480.00 |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 5410.15 | 0.00 | | 5419.18 | 10829.33 | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | | | | | 0.00 | 0.00 | 10829.33 Unscheduled | 10829.33 |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 5235.63 | 0.00 | | 5244.37 | 10480.00 | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | | | | | 0.00 | 0.00 | 10480.00 Unscheduled | 10480.00 |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 5410.15 | 0.00 | | 5419.18 | 10829.33 | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | | | | | 0.00 | 0.00 | 10829.33 Unscheduled | 10829.33 |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 4886.59 | 0.00 | | 4894.74 | 9781.33 | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | | | | | 0.00 | 0.00 | 9781.33 Unscheduled | 9781.33 |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 5410.15 | 0.00 | | 5419.18 | 10829.33 | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 | | | | | 0.00 | 0.00 | 10829.33 Unscheduled | 10829.33 |
| LPAY-102163 | Paid | 1/1/2023 | 170 | 12/21/2022 8:00 Wire | Current | | 5410.15 | 0.00 | | 0.00 | 5410.15 | 5410.15 | | 0.00 | 0.00 | | 0.00 | 5410.15 | | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 11/6/2022 0:06 Wire | Late (6-15 Days) | | 5235.63 | 523.56 | | 0.00 | 5759.19 | 6029.96 | | 0.00 | 0.00 | | 0.00 | 6029.96 | | | | | 0.00 | 0.00 | -270.77 ACH - Cleared | |
| LPAY-099396 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 Stripe | Late (1-5 Days) | | 5410.15 | 0.00 | | 0.00 | 5410.15 | 5410.15 | | 0.00 | 0.00 | | 0.00 | 5410.15 | | | | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPAY-096668 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 Stripe | Late (1-15 Days) | | 5235.63 | 523.56 | | 0.00 | 5759.19 | 5235.63 | | 0.00 | 0.00 | | 0.00 | 5235.63 | | | | | 0.00 | 0.00 | 523.56 ACH - Cleared | 0.00 |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 Stripe | Current | | 5410.15 | 0.00 | | 0.00 | 5410.15 | 5410.15 | | 0.00 | 0.00 | | 0.00 | 5410.15 | | | | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPAY-090655 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 Stripe | Current | | 5410.15 | 0.00 | | 0.00 | 5410.15 | 5410.15 | | 0.00 | 0.00 | | 0.00 | 5410.15 | | | | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | Late (1-15 Days) | | 5235.63 | 0.00 | | 0.00 | 5235.63 | 146.30 | | 5087.33 | 0.00 | | 0.00 | 5235.63 | | | | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 Pre-Paid Interest | Current | | 5235.63 | 0.00 | | 0.00 | 5235.63 | 0.00 | | 5235.63 | 0.00 | | 0.00 | 5235.63 | | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-083305 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | Current | | 5410.15 | 0.00 | | 0.00 | 5410.15 | 0.00 | | 5410.15 | 0.00 | | 0.00 | 5410.15 | | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | Current | | 5410.15 | 0.00 | | 0.00 | 5410.15 | 0.00 | | 5410.15 | 0.00 | | 0.00 | 5410.15 | | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-079915 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | Current | | 4886.59 | 0.00 | | 0.00 | 4886.59 | 0.00 | | 4886.59 | 0.00 | | 0.00 | 4886.59 | | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | Current | | 5410.15 | 0.00 | | 0.00 | 5410.15 | 0.00 | | 5410.15 | 0.00 | | 0.00 | 5410.15 | | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-075286 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | Originated | | 1570.69 | 0.00 | | 0.00 | 1570.69 | 1570.69 | | 0.00 | 0.00 | | 0.00 | 1570.69 | | | | | 0.00 | 0.00 | 0.00 Unscheduled | |

WCP0054

| Name | Status Reason | Payment Due On | Days Past Due Ca | Payment Paid On | Payment Method | Servicing Status |
|------|---------------|----------------|------------------|-----------------|----------------|------------------|
| LPAY-111505 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102163 | Paid | 1/1/2023 | 170 | | | Current |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 12/6/2022 0:06 | Wire | Late (5-15 Days) |
| LPAY-098596 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 | Stripe | Late (5-15 Days) |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090635 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083035 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075596 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 2

Exhibit 3

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Judge-in-Chambers**

| | | |
|---|---|---|
| **423 KENNEDY ST. HOLDINGS** | : | |
| | : | |
| **Plaintiff** | : | **Case No. 2022 CAB 5903** |
| | : | **Judge-in-Chambers** |
| v. | : | |
| | : | **CLOSED CASE** |
| **DP CAPITAL, LLC, Et. Al.** | : | |
| | : | |
| **Defendant.** | | |

## ORDER

This case was set before the Court for a Temporary Restraining Order Hearing at 10:00 a.m. on the 6th day of February 2023. Counsel for Plaintiff and Defendants appeared before the Court today. Plaintiff seeks to enjoin Defendants from foreclosing on 423 Kennedy St. NW, Lot 56, Square 3260, Washington, DC. However, both Plaintiff and Defendant agree that no such foreclosure is pending or advertised. Plaintiff provided no other grounds to demonstrate imminent, irreparable harm. Additionally, the Court finds Defendant has acted in accordance with the terms of the contract.

Accordingly, the Court finds Plaintiff's injury to be too speculative and non-concrete. Plaintiff's current pleadings do not satisfy the elements for a temporary restraining order or a preliminary injunction as both forms of injunction require imminent, irreparable harm. Here, the harm is neither imminent nor irreparable. The Court reviewed Plaintiff's cited case law but found no viable reason to rule in any other way than as follows. The Court will deny Plaintiff's Motion for Temporary Restraining Order and vacate the upcoming Preliminary Injunction Hearing in this case. Plaintiff may refile when its injuries are both imminent and irreparable.

Wherefore, it is this 6th day of February 2023, hereby

**ORDERED**, that the above captioned case is **DISMISSED WITHOUT PREJUDICE.**


_____

Zinora Mitchell-Rankin, Senior Judge
Sitting in Judge-in-Chambers


Copies to:

423 Kennedy St. Holdings
Plaintiff.
Via Odyssey

DP Capital LLC
WCP Fund
Daniel Huertas
Russell Drazin
Defendant
Via Odyssey

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

|  |  |
|---|---|
| DEVELOPER RE1 LLC, <br><br>     *Plaintiff,* <br><br> v. <br><br> DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL., <br><br>     *Defendants.* | Case No. 2022-CAB-005935 <br> Judge Ebony Scott |
| 423 KENNEDY ST HOLDINGS LLC, <br><br>     *Plaintiff,* <br><br> v. <br><br> DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL., <br><br>     *Defendants.* | Case No. 2023-CAB-004260 <br> Judge Milton Lee |

## NOTICE OF RELATED CASES

Pursuant to D.C. Super. Ct. Civ. R. 40-I.(f)(2)(B), Counsel for 423 Kennedy St Holdings LLC and Developer RE1, LLC notifies the judges that the above-captioned cases are related within the meaning of Rule 40-I.(f). The two cases, the earliest of which is 2022-CAB-005935, involve common issues of facts, i.e., the Defendants alleged that the Plaintiffs were in default under similar loan documents after they sabotaged a refinance of the existing loans. The claims in both cases are also substantially the same, and refer to similar events and transactions. The

related cases also currently have four of five Defendants that are the same.  The two cases will

also have the same five Defendants (adding SF NU, LLC as a Defendant in 2022-CAB-005935)

and overlapping claims if Developer RE1 is granted leave to amend its complaint in the older

case.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date:    July 17, 2023                        /s/ James D. Sadowski
                                              James D. Sadowski, #446635
                                              Alexandria J. Smith, #1781067
                                              801 17th Street, N.W., Suite 1000
                                              Washington, D.C. 20006
                                              Telephone:  (202) 452-1400
                                              Facsimile:  (202) 452-1410
                                              E-mail:  jds@gdllaw.com
                                              *Counsel for Plaintiff 423 Kennedy St Holdings,
                                              LLC* and *Plaintiff Developer RE1 LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July 2023, a true copy of the foregoing

Notice of Related Cases was filed in both of the above-captioned cases (2022-CAB-005935 and

2023-CAB-004260) using eFileDC and that a notice of filing should be sent electronically to

counsel of record in both cases.  Before filing this notice in the newer case (2023-CAB-004260),

I also added all counsel of record for the Defendants in the older case to the service list for the

newer case.

/s/ James D. Sadowski
Janes D. Sadowski

2

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Developer RE1 LLC,<br><br>        Plaintiff,<br><br>v.<br><br>DP Capital, LLC, et al.<br><br>        Defendants. | Case No. 2022 CAB 005935<br>Judge Ebony Scott |

**PRAECIPE IN SUPPLEMENT TO OPPOSITION TO
PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY
<u>RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE</u>**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, in supplementation to their earlier-filed brief in opposition to the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion," with the plaintiff being known as the "Plaintiff"), and note as follows:

It has now come to the attention of WCP and DPCL that, during the pendency of this case, the Plaintiff has permitted yet *another* lien to accrue on the property, for failure to conform to the dictates of governing authorities. This follows other liens, discussed more fully in the defendants' prior briefing in opposition to the Motion.

Specifically, it appears that on July 13, 2023 – some two days after the Motion was filed – the District of Columbia Department of Buildings, through its Housing Regulation Administration, filed a "Certificate of Delinquent Costs for Correction of Wrongful Housing Conditions" amongst the land records of the District of Columbia. Said filing is document number 2023058959 in those

records but, due to its relatively-recent vintage, cannot yet be downloaded from the Office of Tax

and Revenue Recorder of Deeds web interface.

  As noted in the defendants' opposition to the Motion, there are myriad reasons for the

Motion to be denied. And, in the scheme of the Plaintiff's pattern and practice of breaching its

obligations and covenants under loan documents and performing as a poor steward of the property

it pledged as collateral, the additional citation enumerated herein does little to move the proverbial

needle. But, upon learning of the same, the defendants would nonetheless be remiss to not call

attention to the fact that there is now yet another government lien actively eroding their security

interest from above. And it is respectfully urged this is all the more reason to deny the Motion.


Dated: July 17, 2023       Respectfully Submitted,

           /s/ Maurice B. VerStandig
           Maurice B. VerStandig, Esq.
           DC Bar #1034066
           The VerStandig Law Firm, LLC
           9812 Falls Road, #114-160
           Potomac, Maryland 20854
           Telephone: 301-444-4600
           Facsimile: 301-444-4600
           Electronic Mail: mac@mbvesq.com
           *Counsel for the Defendants*


**[CERTIFICATE OF SERVICE ON FOLLOWING PAGE]**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 17th day of July 2023, and a notice of filing should be served on all counsel of

record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DEVELOPER RE1 LLC,<br><br>     *Plaintiff,*<br><br>v.<br><br>DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,<br><br>     *Defendants.* | Case No. 2022-CAB-005935<br>Judge Ebony Scott |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>     *Plaintiff,*<br><br>v.<br><br>DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,<br><br>     *Defendants.* | Case No. 2023-CAB-004260<br>Judge Milton Lee |

## NOTICE OF RELATED CASES

Pursuant to D.C. Super. Ct. Civ. R. 40-I.(f)(2)(B), Counsel for 423 Kennedy St Holdings LLC and Developer RE1, LLC notifies the judges that the above-captioned cases are related within the meaning of Rule 40-I.(f).  The two cases, the earliest of which is 2022-CAB-005935, involve common issues of facts, i.e., the Defendants alleged that the Plaintiffs were in default under similar loan documents after they sabotaged a refinance of the existing loans.  The claims in both cases are also substantially the same, and refer to similar events and transactions.  The

related cases also currently have four of five Defendants that are the same.  The two cases will also have the same five Defendants (adding SF NU, LLC as a Defendant in 2022-CAB-005935) and overlapping claims if Developer RE1 is granted leave to amend its complaint in the older case.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date:    July 17, 2023

/s/ James D. Sadowski
James D. Sadowski, #446635
Alexandria J. Smith, #1781067
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone:  (202) 452-1400
Facsimile:  (202) 452-1410
E-mail:  jds@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings, LLC* and *Plaintiff Developer RE1 LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July 2023, a true copy of the foregoing Notice of Related Cases was filed in both of the above-captioned cases (2022-CAB-005935 and 2023-CAB-004260) using eFileDC and that a notice of filing should be sent electronically to counsel of record in both cases.  Before filing this notice in the newer case (2023-CAB-004260), I also added all counsel of record for the Defendants in the older case to the service list for the newer case.

/s/ James D. Sadowski
Janes D. Sadowski

2

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

      Plaintiff,

           Case No. 2022 CAB 005935

v.             Judge Ebony Scott

DP Capital, LLC, et al.

      Defendants.

---

**OPPOSED MOTION FOR PROTECTIVE ORDER TO
PREVENT PLAINTIFF FROM DEPOSING DEFENDANTS' COUNSEL**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 26(c), and move this Honorable Court to enter a protective order prohibiting Developer RE1 LLC (the "Plaintiff") from taking the deposition of Mr. Drazin, counsel for WCP and DPCL,[1] and in support thereof state as follows:

**I.    Introduction**

The Plaintiff has noticed the deposition of Mr. Drazin, outside general counsel to WCP and DPCL. Mr. Drazin has counseled WCP and DPCL in connection with the loans at issue in this case and has been joined as a co-defendant in this case for reasons that continue to evade understanding. Indeed, while the Plaintiff has sued Mr. Drazin (perhaps with designs of using such as a pretext for taking his deposition), the Plaintiff has not actually made Mr. Drazin a party to any substantive

---

[1] A copy of the notice of deposition is attached hereto as Exhibit A.

1

cause of action herein. Rather, Mr. Drazin is merely named as a defendant on a claim for

"injunctive relief," which case law has long held to be a remedy but not a cause of action.[2]

      This effort of the Plaintiff is improper and appears to be undertaken for solely harassing

and vexatious purposes. Case law teaches that the deposing of opposing lawyers is not only

frowned upon but, indeed, fodder for the entry of a protective order in most situations. This case

is no different, and the facts *sub judice* well lend themselves to entry of an order prohibiting the

subject deposition from occurring.

## II.    Standard

      The rules of this Honorable Court, modeled after the analogous Federal Rules of Civil

Procedure, expressly permit, *inter alia*:

> A party or any person from whom discovery is sought may move for a protective
> order in this court… The court may, for good cause, issue an order to protect a party
> or person from annoyance, embarrassment, oppression, or undue burden or
> expense, including one or more of the following: (A) forbidding the disclosure or
> discovery…

D.C. Super. Ct. R. Civ. P. 26(c). *See also*, Fed. R. Civ. P. 26(c) (providing substantially identically,

save for interlineating the words "in the court where the action is pending" for the words "this

court").

---

[2] . *See, e.g.*, *Equitas Disability Advocates, LLC v. Bryant*, 134 F. Supp. 3d 209, 222 (D.D.C. 2015)
("…the claim for injunctive relief must also be dismissed as injunctive relief is a type of remedy,
not a freestanding cause of action.") (citing *Base One Techs., Inc. v. Ali*, 78 F.Supp.3d 186, 199
(D.D.C. 2015); *Johnson v. District of Columbia*, 49 F.Supp.3d 115, 117 n. 1 (D.D.C. 2014);
*Guttenberg v. Emery*, 41 F.Supp.3d 61, 70 & n. 5 (D.D.C. 2014)); *Butler v. Georgetown Univ.*,
2022 WL 1773479, at *2 (D.D.C. 2022) ("A request for injunctive relief is 'a remedy and does not
assert any separate cause of action.'") (quoting *Dentons US LLP v. Republic of Guinea*, 208 F.
Supp. 3d 330, 341 (D.D.C. 2016)); *C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*, 308 F. Supp. 3d
145, 152 (D.D.C. 2018) ("Injunctive relief, however, ' 'is not a freestanding cause of action, but
rather ...a form of relief to redress' ' a plaintiff's other claims.") (quoting *Johnson v. Mao*, 174
F.Supp.3d 500, 523–524 (D.D.C. 2016) (quoting *Base One Techs., Inc.*, 78 F.Supp.3d at 199)).

Ordinarily, "'the burden is upon the party seeking non-disclosure or a protective order' to show why it should be granted." *Office of People's Counsel v. Pub. Serv. Comm'n*, 21 A.3d 985, 993 n. 15 (D.C. 2011) (quoting *Penthouse Int'l v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981); *Plough, Inc. v. Nat'l Acad. of Sciences*, 530 A.2d 1152, 1156 n. 5 (D.C. 1987)). However, where, as here, a protective order is sought to prohibit the deposition of a party's opposing counsel, "Courts … presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise." *Coleman v. Dist. of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947); *Shelton v. Am. Motors Sales Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208–09 (5th Cir. 1999); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir.2003); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009); *Sterne Kessler Goldstein & Fox PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011)).[3]

### III.    Argument: The Deposition of Mr. Drazin Should be Prohibited

#### a.    The Plaintiff Cannot Meet Its Burden

As noted *supra*, there exists a rebuttal presumption against permitting the deposition of a party's opposing counsel, and the burden thusly falls on the proponent of a deposition to show why such is proper. Here, the Plaintiff cannot meet that burden. To the contrary, the record herein is such that all non-privileged information obtainable from Mr. Drazin can be obtained from other

---

[3] There are numerous references to precedent from federal courts herein, inasmuch as District of Columbia Rule 26 is to be interpreted in accord with Federal Rule of Civil Procedure 26. *See, e.g.*, *Plough Inc.*, 530 A.2d at 1156, n. 5 ("Super. Ct. Civ. R. 26(c) is identical to its federal counterpart. 'In interpreting the applicable discovery rules, we are guided generally by decisions construing the Federal Rules of Civil Procedure, which are substantially the same as the rules of the trial court.'") (quoting *Dunn v. Evening Star Newspaper Co.*, 232 A.2d 293, 295 (D.C. 1967)).

witnesses and, as such, there is no need to undertake the extraordinary measure of deposing counsel for WCP and DPCL.

The United States District Court for the District of Columbia has invoked a three prong test, established by the United States Court of Appeals for the Eighth Circuit, in assessing whether a deposition of opposing counsel ought to be permitted, requiring a proponent to demonstrate that "(1) no other means exists to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *White v. Boarman*, 2011 WL 13266589, at *2 (D.D.C. 2011) (quoting *Shelton*, 805 F.2d at 1327).

Here, Mr. Drazin has no discoverable knowledge that cannot be gleaned from WCP, DPCL and/or Mr. Huertas (who is scheduled to be deposed on Wednesday, July 19, 2023). While Mr. Drazin has counseled WCP and DPCL in connection with their loans to the Plaintiff, the whole of the loan documents are possessed by his clients (which documents, through the discovery process, have now been produced to the Plaintiff). Equally, Mr. Drazin never interacted directly with the Plaintiff, except (a) through e-mails, which the Plaintiff has; and (b) at a mediation held following the commencement of this case; even if some aspect of that mediation were to become discoverable (which is far-fetched), Mr. Huertas was present for the entirety of the meeting and can accordingly testify to the events that occurred therein.

Indeed, Mr. Drazin's only knowledge relevant to this case is directly attributable to either (i) his review of documents, furnished by his clients, all of which his clients can produce (and have produced) in discovery to the extent they are not privileged; and (ii) his communications with his clients, which are highly privileged and not subject to discovery. Mr. Drazin has no other pertinent knowledge – he has not interfaced with the Plaintiff, except as disclosed above; he has never

4

personally visited the building that is the collateral for the loans at issue in this case; he did not personally collect payments from the Plaintiff; and he did not elect to lend monies to the Plaintiff.

Accordingly, in assessing the second prong of the *Shelton* test, there is no information that Mr. Drazin can uniquely produce, except for information that is either irrelevant or privileged. While he could testify to what legal advice he has given his clients and the foundation of that advice, such would be the epitome of privileged material well outside the permissive contours of discovery. And while he could testify to his other interactions with DPCL and WCP as their counsel, such would be equally privileged in nature and, too, would be starkly irrelevant to the case at bar.

This leaves the third element – whether information is crucial to the case at bar. Since there is no information that Mr. Drazin can uniquely provide, except for privileged information, it is difficult to fathom how that information could be crucial to the matter *sub judice*. It is not merely that Mr. Drazin lacks unique possession of discoverable information crucial to this case; it is, too, that the only information he uniquely has is uniformly privileged in nature. Everything else can be gleaned through WCP, DPCL, Mr. Huertas, and the troves of documents that DPCL has produced pursuant to the Plaintiff's elastic discovery requests herein.

In short, none of the three *Shelton* elements can be satisfied, and it is accordingly appropriate to prohibit the Plaintiff from deposing Mr. Drazin.

More macroscopically, it bears notation that case law rather strictly informs why such a high burden is imposed on a party seeking to depose an opposing attorney, recognizing the unique mischief that can be undertaken through such a process. As far back as 1947, the Supreme Court of the United States had occasion to touch upon the perils of subjecting a lawyer to discovery:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and

5

their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

More recently, the United States District Court for the Southern District of Mississippi – in a case invoking the same *Shelton* test as has been embraced in the District of Columbia – explained, "As this court has stated in previous cases, depositions of opposing counsel are discouraged, as they disrupt the adversarial process and lower the standards of the profession. Thus, a party should not be permitted to take the deposition of another party's attorney except in the most unusual of circumstances." *Wilson v. Scruggs*, 2003 WL 23521358, at *1 (S.D. Miss. 2003) (citing *Shelton*, 805 F.2d 1323, 1327 (8th Cir.1986), *Hickman*, 329 U.S. at 513; *Jones v. Board of Police Commissioners of Kansas City, Missouri*, 176 F.R.D. 625 (W.D. Mo. 1997); *Caterpillar Inc. v. Friedemann*, 164 F.R.D. 76 (D. Or. 1995); *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Miss. 1990).

As observed by the United States District Court for the District of Kansas, "While the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." *Mike v. Dymon, Inc.*, 169 F.R.D.

6

376, 378 (D. Kan. 1996) (quoting *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990)).

The *Wilson* and *Mike* holdings are neither random nor outliers. To the contrary, they are both cited herein because they have both been favorably cited by the United States District Court for the District of Columbia. *See Stern*, 276 F.R.D. at 381. And that local case also notes a blizzard of concurring holdings from other courts, including ones sitting in New York and Illinois. *Id.*

### b. Mr. Drazin's Ministerial Service as Substitute Trustee Does Not Alter the Impropriety of His Deposition Being Taken

Following a good faith conference with counsel for the Plaintiff, it is understood that at least one of the theories espoused for deposing Mr. Drazin is that he is the substitute trustee on a deed of trust, securing an obligation of the Plaintiff to WCP, that is set to be foreclosed. It is, however, a longstanding practice in the District of Columbia for secured parties to have their counsel serve as trustees under deeds of trust, with the resulting obligations being largely ministerial in nature. This reality does not change the analysis set forth above.

As a starting point, Mr. Drazin's service as trustee does not alter any of the *Shelton* factors discussed *supra*. In this capacity, Mr. Drazin has (i) filed an Notice of Foreclosure Sale of Real Property or Condominium Unit, on the official form issued by the District of Columbia; (ii) caused that form to be served on all pertinent parties (including the Plaintiff and its counsel of record); (iii) scheduled a foreclosure auction; and (iv) made arrangements to have notice of that foreclosure auction advertised in the Washington Post. The notice is a matter of public record and was sent to the Plaintiff and its counsel; the time and date of the foreclosure are contained in the notice; the newspaper advertisements can be found online and in the pages of the region's most-read daily newspaper. And there is, as such, nothing about Mr. Drazin's service in this role that would lend

itself to his being asked questions at deposition where the answers to those questions are not readily ascertainable from other sources.

Further, though, the fact that Mr. Drazin's service as trustee does not alter the *Shelton* factors speaks volumes to the ministerial nature of such service. Under District of Columbia law:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 356 (D.D.C. 2011) (quoting *In re Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co*., 412 A.2d 1194, 1197 (D.C.1980)); *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 377 n. 21 (D.C. Cir. 1974); citing *Sheridan v. Perpetual Bldg. Ass'n*, 322 F.2d 418, 422 (D.C. Cir. 1963)). The obligations of a trustee under a deed of trust are, accordingly, quite limited in scope, consisting almost entirely of (a) properly giving notice of an auction, (b) carrying out that auction, and (c) then delivering a deed to the buyer. *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 169 (D.D.C. 2013).

Stated otherwise, Mr. Drazin's duty as trustee is to (i) obey the plain language of the deed of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as they relate to foreclosures. This is a case where the underlying promissory note matured in December 2022 and has not been paid off; the deed of trust plainly provides for a foreclosure to occur in such an instance. And Mr. Drazin, as an experienced local attorney, is familiar with the laws governing how that procedure is to accordingly be executed.

To be sure, there is no contention in this case that the Plaintiff has not defaulted under the deed of trust. To the contrary, it is manifest the underlying loan matured without payment after a

preceding series of independent defaults that include (i) the Plaintiff failing to make at least four payments in a timely fashion; (ii) the Plaintiff allowing a water/sewer lien to accrue on the real estate; and (iii) the Plaintiff allowing a tax lien to accrue on the real estate. So Mr. Drazin proceeding with a foreclosure, under the deed of trust, is both ministerial in nature and uninformed by any discoverable information not held by others.

Equally, this is not a case where there is any allegation that Mr. Drazin has erred in his duties as trustee. To the contrary, it is facially apparent that he filed the correct form for a Notice of Foreclosure Sale of Real Property or Condominium Unit, that he gave proper notice thereof, that he has scheduled an auction, and that he has caused that auction to be advertised. He has, in the words of the *Evans* Court, "faithfully executed [his] duties." And in so doing, he has most certainly not undertaken any actions that render him subject to deposition within the contours of the *Shelton* standard.

## IV.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter an order prohibiting the Plaintiff from taking the deposition of Mr. Drazin; and (ii) afford such other and further relief as may be just and proper.

Dated: July 17, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

9

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

I HEREBY CERTIFY that on Tuesday, July 11, 2023, I spoke with James Sadowski, counsel for the plaintiff herein, about whether or not his client would agree to not depose Russell Drazin. Mr. Sadowski and I spoke cordially and had a substantive, professional discussion concerning the issue. We were not, however, able to reach an agreement as to the entry of a protective order barring the plaintiff from deposing Mr. Drazin.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 17th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

10

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

      Plaintiff,

v.

DP Capital, LLC, et al.

      Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## [PROPOSED] PROTECTIVE ORDER

Upon consideration of the Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel (the "Motion") filed by DP Capital, LLC, WCP Fund I LLC, Daniel Huertas, and Russell Drazin (collectively, the "Defendants"), any opposition thereto, the authorities cited in the Motion, and the record herein, it is, this _____ day of _____, 2023, by the Superior Court of the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED; and it is further

ORDERED, that the plaintiff herein is prohibited from taking the deposition of Russell Drazin, Esq.

So Ordered.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

Exhibit A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

      *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

      *Defendants.*

2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery – 8/10/23

## NOTICE OF DEPOSITION OF RUSSELL DRAZIN

Please take notice that the Plaintiff, Developer RE1 LLC ("Developer RE1"), by undersigned counsel, will take the deposition of Russell Drazin before an officer duly authorized to administer oaths, commencing at the following time and continuing thereafter until completed or recessed.

| Deponent | Date & Time |
|---|---|
| Russell Drazin | Wednesday, July 19, 2023 at 9:30 a.m. |

The deposition will take place at the offices of Greenstein DeLorme & Luchs, P.C., 801 17th Street, N.W., Suite 1000, Washington, D.C. 20006, and will continue day-to-day until completed.  The deposition is being taken for the purposes of discovery and/or for use at trial and for such other purposes as are permitted under applicable law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 9, 2023

/s/ James D. Sadowski

James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Russell

Drazin was served on July 9, 2023, using eFileDC, and a notice of service should be served on

all counsel of record in this case.

/s/ Alexandria J. Smith

Alexandria J. Smith

2

eFiled
07/18/2023 5:12:39 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2023-CAB-004260
Judge Milton Lee
Next Event:  Initial Conference
          10/13/2023 at 9:30 am

## PLAINTIFF'S CONSENT MOTION TO EXCEED THE PAGE LIMIT IN AN EMERGENCY MOTION

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), by counsel, moves this Court to allow 423 Kennedy to exceed the page limit in an Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Emergency Motion") that will soon be filed by 423 Kennedy.  In support of its Motion, 423 Kennedy represents to the Court that:

1.      This case primarily involves a dispute concerning a Trustee's conflict of interest, allegations of defaults under mortgage loan documents, whether certain provisions of those loan documents include unenforceable liquidated damages provisions, and trying to stop an imminent foreclosure.

2.      423 Kennedy filed this case because the Defendants, who 423 Kennedy believes are acting in concert, recently issued a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").  A copy of the Foreclosure Notice is attached as Exhibit A.

4894-3367-7681

3.      In Count V of the Complaint, 423 Kennedy seeks injunctive relief to prevent, among other things, any foreclosure under the loan documents while this case is being litigated. *See* Compl. at page 27 (subpart "(c)" of the request for relief).

4.      The Foreclosure Notice sets the date of the foreclosure sale on July 25, 2023 at 2:10 p.m. – less than one week away.   The foreclosure is being requested by an unknown (to 423 Kennedy) company called "SF NU, LLC".

5.      423 Kennedy will be filing an opposed emergency motion that seeks the issuance of a temporary restraining order to stop the foreclosure sale on July 25, 2023 (the "Emergency Motion").

6.      The Emergency Motion contains a detailed factual background to assist the Court with understanding the factual background, the factual and legal basis for the claims, and the provisions of the loan documents that are being challenged.  The factual background portion runs about nine pages.

7.      The Emergency Motion also contains a thorough legal argument section that explains why 423 Kennedy meets the standard for injunctive relief.

8.      The Emergency Motion also includes multiple, important exhibits.  Those exhibits are included with the Emergency Motion so that the Court does not have to sift through the Complaint to find the important documents.

9.      Given the lengthy factual background, the number of claims in this case, the number of exhibits, and the exigency of the relief requested, the Emergency Motion may exceed twenty pages by just a few, including the signature page and required certifications.

4894-3367-7681

10.     The Court's January 3, 2023, Supplemental General Order requires leave of court to file any motion or opposition with a legal memorandum exceeding twenty (20) double-spaced pages in pages in length.

11.     No party will be prejudiced by the relief requested in this Motion.

12.     Good cause exists to allow 423 Kennedy to file its Emergency Motion, which should not exceed twenty-three pages, including the signature page, the required certifications, and excluding the exhibits.

13.     Counsel for the Defendants consents to this motion so long as any opposition that is filed may exceed the page limit on an equal basis.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 18, 2023                    /s/ Alexandria J. Smith
                                         Alexandria J. Smith (D.C. Bar. No. 1781067)
                                         James D. Sadowski (D.C. Bar. No. 446635)
                                         801 17th Street, NW, Suite 1000
                                         Washington, DC 20006
                                         Telephone:  (202) 452-1400
                                         Email:  jds@gdllaw.com
                                         *Counsel for Plaintiff 423 Kennedy St Holdings LLC*

## CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this Motion by sending an email to counsel for the Defendants on July 18, 2023.  Counsel for all Defendants consented to the instant Motion over the phone.

/s/ Alexandria J. Smith
Alexandria J. Smith

3

## Certificate of Service

I HEREBY CERTIFY that a copy of Plaintiff's Consent Motion to Exceed Page Limit in an Emergency Filing was served by the Court's electronic filing system this 18th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Alexandria J. Smith
Alexandria J. Smith

4894-3367-7681

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

       *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

       *Defendants*.

Case No. 2023-CAB-004760
Judge Milton Lee
Next Event:  Initial Conference
             10/13/2023 at 9:30 am

## [PROPOSED] ORDER GRANTING PLAINTIFF'S CONSENT MOTION TO EXCEED PAGE LIMIT

UPON CONSIDERATION of the Plaintiff's Consent Motion to Exceed Page Limit in an Emergency Filing ("Motion"), and any opposition thereto, the Court funds good cause to grant the relief requested in the Motion.

Accordingly, it is this _____ day of _____, 2023, hereby

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the Plaintiff may file an Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale that does not exceed twenty-three (23) pages, including the signature page, the request for a hearing, the certificate of consent, and the certificate of service. The Exhibits are excluded from the page count. The Opposition may also exceed the page limit by an equal number of pages as the Emergency Motion.

SO ORDERED.

_____
The Honorable Milton Lee
Superior Court of the District of Columbia

4894-3367-7681

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

# EXHIBIT A



**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square [ 3260 ]   Suffix [        ]   Lot [ 0056 ]
List Name and adress of each owner of the real property encumbered by said
deed of trust, mortgage, or security instrument.)

TO:   [ 423 KENNEDY ST HOLDINGS LLC                    ]
[ See Exhibit A                                        ]
[                                                      ]
[                                                      ]

FROM: [ WCP Fund I LLC              ]   PHONE: [ (703) 727-5464 ]

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT
SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER
SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM
UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE
TO BE HELD ON [ July 25                          ] , 20 [ 23 ] , AT
THE OFFICE OF [ Harvey West Auctioneers, Inc.             ]
[ 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015 ]
[ 2:10 ]  P.M.     THIS SALE DATE IS SUBJECT TO POSTPONEMENT
FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM
THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS
NOTICE OF FORECLOSURE SHALL EXPIRE.

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260

Security Instrument recorded in the land records of the District of Columbia at the
Recorder of Deed on [ April 8                    ] , 20 [ 22 ] .

Liber: [                ]   Folio: [              ]   Instrument No: [ 2022038745 ]
Maker(s) of the Note secured by the instrument: [ 423 KENNEDY ST HOLDINGS LLC ]
[ See Exhibit A ]        [ See Exhibit A ]
    Phone            Last Known Address
Description
of Property: [ Multi-Family Residential Building              ]
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)
Address: [ 423 Kennedy Street, NW, Washington, DC 20011      ]
Square: [ 3260          ]   Lot: [ 0056      ]   or Parcel No: [        ]
Holder of the Note (Name): [ WCP Fund I LLC          ]
Phone: [ (703) 727-5464 ]   Address: [ 8401 Greensboro Drive, Suite 960, McLean, VA 22102 ]
Balance owed on the Note: $ [         1,598,839.60         ] **
Minimum balance required to cure default obligation pursuant to D.C. Law 5-82
ìRight to Cure a Residential Mortgage DefaultAct of 1984.î
$ [ N/A commercial loan              ]
Name of person to contact to stop foreclosure sale: [ Russell S. Drazin         ]
Address: [ 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015 ]   Phone: [ (202) 223-7900 ]

** as of June 23, 2023

★ ★ ★

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square [ 3260 ]   Suffix [    ]   Lot [ 0056 ]

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on [ June 23 ] ,20 [ 23 ] ; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

[ 06/23/2023 ]
Date

_RD_

(Signature of Noteholder or his agent)

I, [ Deborah A. Stewart ] , a Notary Public in and for the
[ District of Columbia ] ,
DO HEREBY CERTIFY THAT [ Russell S. Drazin ]
who is personally well known to me as a party(ies) to this Notice of Foreclo-sure Sale bearing on the [ 23rd ] day of [ June ] , 20 [ 23 ] , personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be [ his ] act and deed.

Given under my hand and seal this [ 23rd ] day of [ June ] , 20 [ 23 ] .

_Deborah A Stewart_
Notary Public

My Commission Expires: [ 09/30/2025 ]
mmddyyyy

DEBORAH A. STEWART
NOTARY PUBLIC
MY COMMISSION
EXPIRES
9/30/2025
DISTRICT OF COLUMBIA

# EXHIBIT A

<u>Borrower, Grantor, Record Owner</u>:

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC

**Russell S. Drazin, Attorney**
**4400 Jenifer Street, NW, Suite 2**
**Washington, DC 20015**
**202-223-7900**

**TRUSTEE'S SALE**
**OF REAL PROPERTY**

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

**JULY 25, 2023 AT 2:10 PM**

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE:  A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



**AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE**

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo                              [name], Vice President of Finance [title]

of WCP Fund I LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC                              is the holder of the mortgage
recorded as Instrument Number 2022038745                       in the District
of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined
by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to
mandatory mediation and, therefore, does not require a Mediation Certificate issued by the
Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and
correct to the best of my knowledge, information and belief.

SSL:

3260/0056

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

Recording requested by:
Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on
this 21st                    day of June         , 20 23
by Christina Araujo                              (name of person) as
Vice President of Finance                        (type of authority, e.g. officer,
trustee, etc.) of WCP Fund I LLC
(name of party on behalf of whom instrument was executed)

When recorded mail to:
Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

Notary Public

My Commission Expires:



MUHAMMAD T BILAL
NOTARY PUBLIC
REG. #7637841
MY COMMISSION EXPIRES
JUNE 30, 2023
COMMONWEALTH OF VIRGINIA

```
Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $25.00
  SURCHARGE               $6.50
TOTAL:                    $31.50
```

eFiled
07/18/2023 5:19:56 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

2023-CAB-004260

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL D/B/A WASHINGTON CAPITAL
PARTNERS, ET AL.

    *Defendants.*

2023-CAB-004260
Judge Milton Lee
Emergency Relief Requested
Initial Conf. - 10/13/23 (9:30 a.m.)

## PLAINTIFF'S OPPOSED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy") by counsel, hereby requests that the Court enjoin the Defendants from moving forward with a scheduled foreclosure sale to preserve the status quo and prevent irreparable harm to 423 Kennedy. The Trustee under the deeds of trust at issue in this case has a direct conflict of interest that prevents him from acting as Trustee and from participating in any foreclosure sale until he proves that he has been faithful to his fiduciary duties as trustee. The Defendants here deliberately prevented 423 Kennedy from obtaining a refinancing loan, and they now seek to further their misconduct by foreclosing on real property owned by 423 Kennedy on July 25, 2023. The Court should grant injunctive relief suspending any foreclosure sale to prevent an injustice.

I.    DETAILED FACTUAL BACKGROUND

    423 Kennedy, the Property, and the Defendants and Their Roles.

423 Kennedy is a domestic, sole purpose, limited liability company that owns real property known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "Property"). Compl. ¶¶ 10-11. 423 Kennedy is co-owned 50/50 by Mel Negussie and the Brighton KSDC, LLC

1

("Brighton Group").  *Id.* ¶ 13.[1]  There are five defendants.  DP Capital, LLC ("DP Capital"), is a

Virginia company that uses the trade name "Washington Capital Partners" ("WCP").  *Id.* ¶ 2.

The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending

business.  *Id.* ¶ 3.  Daniel Huertas ("Mr. Huertas") is an individual that controls WCP, and WCP

controls the WCP Fund.  *Id.* ¶¶ 4-5.  SF NU, LLC ("SF NU") is a New Mexico limited liability

that appears to have been assigned rights under the deeds of trust from the WCP Fund.  *Id.* ¶ 6.

Russell Drazin ("Mr. Drazin"), is an individual who is also counsel to the WCP and Trustee

under two deeds of trust that he drafted.  *Id.* ¶ 7.  SF NU sent 423 Kennedy a notice of

foreclosure sale signed by Mr. Drazin that scheduled a foreclosure sale on July 25, 2023 at 2:10

p.m.  *Id.* ¶¶ 134-35.

<u>Before Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide
Construction Draws to Fund the Project.</u>

As part of the refinancing, the WCP and the WCP Fund agreed that they would provide

construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project

progressed, which agreement was memorialized in writing in multiple places.  *Id.* ¶¶ 17, 19.  423

Kennedy relied upon the agreement to provide construction draws before signing the loan

documents.  *Id.* ¶¶ 18-19.

<u>The Loan Documents.</u>

In January of 2020, the WCP helped 423 Kennedy obtain a construction finance loan for

the Property, which original loan was later refinanced.  *Id.* ¶ 15.  As part of that refinancing,

423 Kennedy signed the following documents:

---

[1]    The Brighton Group is comprised of forty-one individual investors, many of whom used their
personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.  *Id.* ¶
14.

- a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;

- a Commercial Deed of Trust Note (the "First Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund.

- a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.

- a second Commercial Deed of Trust Note (the "Second Note") in the amount of $1,256.000.00, as "Borrower".

*Id.* ¶¶ 20, 23, 26, and 29 (the "loan documents"). *See* Exhibit A and B (copies of the First DOT and the First Note).[2] The loan documents were form documents prepared by Mr. Drazin that 423 Kennedy was not allowed to modify. *Id.* ¶¶ 21-31. The loan documents provided security to the WCP Fund for the construction financing loans to 423 Kennedy.

<u>The Lender Defendants Begin Their Corrupt Plan to Foreclose on the Property by Starving 423 Kennedy of Construction Draw Funds.</u>[3]

By October 6, 2022, 423 Kennedy had paid all amounts due to the WCP Fund under the First and Second Note. *Id.* ¶ 38. Around that date, Mr. Huertas told 423 Kennedy that the WCP would no longer provide construction draws. *Id.* ¶ 39. The reason that Mr. Huertas gave for not funding construction draws was because Mr. Negussie was involved with Mr. Charles Paret in projects that were unrelated to the Property and the Defendants were "disappointed" that those other projects "were not constructed well". *Id.* ¶ 40. The Defendants knew that without construction draws, 423 Kennedy could not complete construction. *Id.* ¶ 41.

---

[2] Because the First and Second DOT contain nearly identical terms, as do the First and Second Note, only the First DOT and First Note are attached as Exhibits. The Second DOT and the Second Note were attached to the Complaint as Exhibits B and D.

[3] For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU are referred to as the "Lender Defendants". Compl. ¶ 6.

<u>The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of "Default"
Under Any of the Loan Documents.</u>

The Defendants knew that 423 Kennedy was in the process of obtaining a refinancing

loan to fully pay the debts to the WCP Fund.  *Id.* ¶ 51.  Around October 24, 2022, the WCP sent

Payoff Statements listing the amounts needed to pay the balances owed under the loans.  *Id.*

¶¶ 42-43.  *See* Exhibits C and D (copies of the Payoff Statements).  As of October 24, 2022, 423

Kennedy had made all payments to the WCP Fund that were due under the loan documents, and

at that time there was no allegation that any default existed.  *Id.* ¶¶ 44-45.  On November 3,

2022, Mr. Huertas emailed 423 Kennedy to inquire about the status of the loan payoffs, in which

he stated that WCP "would not provide any construction loan draws to 423 Kennedy".  *Id.* ¶ 46.

*See* Exhibit E (copy of the email).  By that date, 423 Kennedy had made all payments that were

due under the Notes.  *Id.* ¶ 48.  On November 15, 2022, Mr. Huertas sent another email to 423

Kennedy restating that WCP would not release any more construction draws.  *Id.* ¶ 49.  *See*

Exhibit F (copy of the email).  By that date, there was no allegation made that any default by 423

Kennedy existed either the loan documents.  *Id.* ¶ 50.

By November 17, 2022, the Defendants knew that 423 Kennedy had arranged for a

refinancing of the two loans with Main Street Bank, and that 423 Kennedy expected to close on

that loan in December of 2022.  *Id.* ¶ 51.  Three days later, WCP transmitted another two Payoff

Statements to 423 Kennedy.  *Id.* ¶¶ 52-53.  Exhibit G and H (copies of the Payoff Statements).

By that time, there was still no claim made that any default existed under any of the loan

documents.  *Id.* ¶ 54.  WCP sent the Payoff Statements because WCP knew that 423 Kennedy

was attempting to go to closing on the refinance loan.  *Id.* ¶ 55.  None of the Payoff Statements

included default fees, default interest, or any other amount based upon any default claim.  *Id.* ¶

56.

4

<u>After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr. Huertas
Then Demands that Either 423 Kennedy or Mr. Negussie Resolve Another Debt Owed to the
WCP for Another, Unrelated Project, "Or Else".</u>

By December 8, 2022, 423 Kennedy had made all payments due under the Notes

($514,560.80 in interest payments) in addition to prior payments made by 423 Kennedy of

approximately $378,818.53 in interest under the original loan. *Id.* ¶ 57. That day, Mr. Huertas

told 423 Kennedy that the Defendants and an unnamed investor were displeased with how the

development of another, unrelated property located at 2507 I Street, NW had turned out (the

"2507 I Street Project"). *Id.* ¶ 58. During that call, Mr. Huertas told Mr. Negussie that WCP

was "withdrawing the payoff statements recently issued and that he was defaulting all loans that

Mr. Negussie was associated with at WCP, including 423 Kennedy." *Id.* ¶ 60. Mr. Huertas

further stated that the 2507 I Street Project has "turned out very bad and that the person who lent

the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed

off' with the quality of the work done". *Id.* Mr. Huertas further stated that the Investor Lender

"is very wealthy and will make life hard for you", and "has now bought the notes" on 423

Kennedy and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* Mr.

Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St

to make things right" or have them "take care of the $700,000" shortfall on that project. *Id.*

Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the

$700,000 shortfall to be paid, then the Defendants and the unnamed investor "would make

trouble for you on all of your other projects". *Id.* ¶ 61.

Mr. Negussie told Mr. Huertas that his threats to cause trouble to either Mr. Negussie or

to any development projects were improper. *Id.* ¶ 62. After Mr. Negussie refused to accede to

Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all

prior Payoff Statements that were sent "were withdrawn" and that he would place 423 Kennedy

4862-3427-3137

and the borrower on another, unrelated project named Developer RE1, LLC ("Developer RE1")

in default under their loan documents. *Id.* ¶ 63.

The Defendants knew that 423 Kennedy was not involved in the 2507 I Street Project,

that there is no legal or other business relationship between 423 Kennedy and either the

developer for the 2507 I Street Project or Developer RE1, and that Developer RE1 was a sole

purpose entity involved with a development project at 5501 1st Street, NW. *Id.* ¶¶ 64-68. Mr.

Huertas provided no basis for why or how the Defendants could put 423 Kennedy in default

under the loan documents. *Id.* ¶ 69.

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to 423 Kennedy By Improperly
Demanding Payment of More than $1.5 Million in "Default Penalties" and "Default Interest" and
By Threatening 423 Kennedy With Foreclosure.</u>

Later that day (December 8, 2022), Mr. Huertas followed through with his threats to

"make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie

Calderas to send two letters, each called a "Notice of Default" to Mr. Negussie by email. Compl.

*Id.* ¶ 77. *See* Exhibits I and J (copies of the default notices). Each "Notice of Default" was

unsigned and failed to include either a description of the alleged "default" or a referenced "copy

of the first page of the Deed of Trust as Exhibit A". *Id.* ¶¶ 79-80, 82. Email is also not listed as

a permissible means to send a default notice. Compl. Ex. A (First DOT) at pages 17-18.

With the December 8, 2022 email, the WCP included two new Payoff Statements. *Id.*

¶ 85. *See* Exhibits K and L (copies of the Payoff Statements). The new Payoff Statement for the

first loan included a demand that 423 Kennedy pay $456,927.95 in "Default Interest" and a

"Default Penalty" of $868,969.30, while the new Payoff Statement for the second loan including

a demand that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default

Penalty". Compl. ¶¶ 86-87. There were no charges for either "Default Interest" or a "Default

Penalty" listed on any prior Payoff Statements sent by the WCP. *Id.* ¶ 87.

Mr. Huertas "Lawyers Up" and Asks Mr. Drazin to Come Up with A Cover Story.

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default" claims.  *Id.* ¶ 88.  Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to contact the WCP's counsel.  *Id.*  423 Kennedy believes that Mr. Huertas then instructed Mr. Drazin to review every provision of the loan documents to try to find a reason to justify the decision to declare that 423 Kennedy was in "default".  *Id.* ¶ 89.  423 Kennedy also believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact that there was no valid basis for declaring 423 Kennedy to be in default and to conceal the real reason why 423 Kennedy was improperly placed in default -- because the Defendants were angry about the 2507 I Street Project.  *Id.* ¶¶ 90, 94.

Mr. Drazin's Conflict of Interest with His Fiduciary Duty as Trustee.

Mr. Drazin knew, as Trustee, that he had a fiduciary duty to both the borrower (423 Kennedy) and to the lender under the First and Second DOT.  *Id.* ¶ 91.  Mr. Drazin also knew that his representation of the WCP and the WCP Fund as counsel created an actual conflict of interest with his fiduciary duty as Trustee to 423 Kennedy, as borrower.  *Id.* ¶¶ 91-92. Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.  Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to 423 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.  *Id.* ¶ 93.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a "commission" of 2.50% of the "total amount then due", and a another "commission" of 5.00% of the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts that are claimed to be due.  *Id.*  ¶ 95-96.  The Defendants knew that by improperly alleging

7

defaults after-the-fact, and by adding $1.5 million more in "Default Interest" and "Default

Penalt[ies]", 423 Kennedy would not be able to go to closing on the refinance loan.  *Id.* ¶¶ 98-99.

The Defendants deliberately interfered with the refinancing loan to prevent 423 Kennedy from

being able to go to closing and to set them up for foreclosure.  *Id.* ¶ 99.  The Defendants also sent

the "Notice of Default" to improperly pressure 423 Kennedy, Developer RE1, and/or Mr.

Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project).  *Id.* ¶ 100.  The

Defendants also knew that they had no right to demand that someone else correct, or pay for, any

problems at the 2507 I Street Project, and that they had no legitimate basis to claim that 423

Kennedy was in default.  *Id.*  ¶¶ 101-02.  The Defendants are trying to inflict damages upon 423

Kennedy and its members, and their misconduct is a form of extortion.  *Id.* ¶ 103.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the
Second DOT.</u>

     After being asked by counsel for 423 Kennedy to provide a basis for the "default" claims,

Mr. Drazin sent the cover story that Mr. Huertas had asked for.  In a reply email, Mr. Drazin

claimed that 423 Kennedy was in "default" because:

- "[T]he District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185";

- 423 Kennedy was not entitled to any notice of any default;

- there was "<u>no right to cure</u>", "<u>no right to deceleration</u>", <u>no right to reinstatement</u>, and that the '<u>Loans are in default and are accelerated</u>."; and that

- "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".

*See* Exhibit M (copy of the email) (emphasis in original); *Id.* ¶¶ 104 and 116.

The "Certificate of Delinquent Fines" relates to Notice of Infraction dated December 3, 2021 ("NOI") issued by D.C. Department of Consumer and Regulatory Affairs ("DCRA").  *Id.* ¶ 105.  The violation alleged in the NOI was:  "Prohibitive Excessive Vegetative Growth" that carried with it a $500.00 fine.  *Id*.  423 Kennedy did not get timely notice of the NOI because the DCRA sent a copy to the wrong email address.  *Id*. ¶ 106.  On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI.  *Id*. ¶ 107.  *See* Exhibit N (copy of the Final Order).  423 Kennedy noted an appeal of the Final Order on September 12, 2022.  *Id* ¶ 108.  *See* Exhibit O (copy of the appeal).

Under Section 7.6 of the First and Second DOT, 423 Kennedy arguably has a right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").  *Id*. ¶ 109.  423 Kennedy had planned to wait for the District to respond to its appeal of the NOI, but after 423 Kennedy received the "Notice of Default", and even though it believed that the "Notice of Default" was improper and was sent as a pretext, 423 Kennedy paid the District $1,657.43 to discharge that fine and any resulting lien.  *Id*. ¶ 110.  *See* Exhibit P (copy of payment confirmation).  On December 11, 2022, the Office of Administrative Hearings vacated the Final Order.  *Id*. ¶ 112.  *See* Exhibit Q.  There are currently no outstanding fines owed by 423 Kennedy to the District.  *Id*. ¶ 113.

The defaults by 423 Kennedy that have been alleged were all claimed after-the-fact as a pre-text.  The "Certificate of Delinquent Fines" was paid, and 423 Kennedy has no affiliates.  *Id*. ¶¶ 110-24.  Even though there was no valid basis under any provision of the loan documents that would permit the Defendants to foreclose on the Property, they first threatened to take that step.  *See* Ex. J ("our legal counsel will commence foreclosure proceedings"); *Id*. ¶ 127.

The Irreparable Harm to 423 Kennedy is Now Imminent.

The initial threat of foreclosure in December 2022 has turned into a reality.  On June 23, 2023, SF NU and Drazin sent a Notice of Foreclosure to 423 Kennedy scheduling a foreclosure sale on July 25, 2023 at 2:10 p.m. *Id.* ¶¶ 134-35.  *See* Exhibit R (Notice of Foreclosure).  423 Kennedy improved the Property by building a mixed use, six level building with thirty-three residential units and one commercial unit comprising 36,512 total square feet. *Id.* ¶ 128.  The improvements are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Defendants' misconduct. *Id.* ¶ 129.  The Property has a current value of $11.9 million. *Id.* ¶ 130.  If the Property is sold at a foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors will be irreparably harmed because they could lose their entire investment.

## II.   PROCEDURAL HISTORY

On July 13, 2023, 423 Kennedy filed a Complaint that includes claims for breach of contract (Count I), tortious interference with business relations (Count II), breach of the duty of good faith and fair dealing (Count III), and breach of fiduciary duty by the Trustee (Count VI). The Complaint also seeks a declaratory judgment as to the meaning of certain provisions in two Deeds of Trust, that the foreclosure notice is invalid, and that certain provisions of the loan documents contain unenforceable liquidated damages provisions that constitute a penalty (Counts IV) and a claim for injunctive relief to stop the foreclosure sale (Count V).  The Complaint also seeks a declaratory judgment that Mr. Drazin cannot serve as Trustee due to his actual conflict of interest (Count VII).  Because the Defendants are trying to sell the Property, 423 Kennedy asks this Court to preserve the status quo by issuing an injunction that prevents the Defendants from trying to enforce the "death penalty" remedy of foreclosure at least until there

is a preliminary injunction hearing.  A temporary delay of fourteen days will cause no harm to the Defendants.

## III.    THE LEGAL STANDARD FOR INJUNCTIVE RELIEF

In determining whether to grant a temporary restraining order or a preliminary injunction, the Court considers four factors:  (1) the likelihood of irreparable harm in the absence of the requested injunction; (2) the likelihood of success on the merits on the underlying action; (3) whether the balance of injuries favors granting an injunction; and (4) whether the public interest would be served by granting the injunction.  *Ifill v. District of Columbia*, 665 A.2d 185, 187-88 (D.C. 1995).  The most important inquiry is that concerning irreparable injury.  *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 22 (D.C. 1993).  These four injunctive relief factors each weigh in favor of 423 Kennedy.

## IV.    LEGAL ARGUMENT

A.    423 Kennedy Will Be Irreparably Harmed if the Property is Sold at a Foreclosure Sale.

A foreclosure sale of the Property is scheduled for July 25, 2023.  Without a restraining order, the Property will be sold, and 423 Kennedy and its members will lose their interest in the Property and the improvements to the Property (valued at nearly $12 million).  The law considers property to be unique, so 423 Kennedy's potential loss of the Property, without more, is sufficient to show irreparable harm.  *See Peterson v. D.C. Lottery & Charitable Games Control Bd.*, No. 94-1643, 1994 U.S. Dist. LEXIS 10309, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury.").  Because the foreclosure sale is already scheduled, there is an emergency need for injunctive relief to prevent 423 Kennedy from losing its interest in the Property.  *See Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540

11

F. Supp. 2d 66, 74 (D.D.C. 2008) ("First, the injury must be both certain and great, actual and

not theoretical . . . [t]he court must bear in mind whether the movant has substantiated the claim

that irreparable injury is "likely" to occur.").  The first injunctive relief factor weighs heavily in

favor of 423 Kennedy.

B.       423 Kennedy Is Likely to Succeed on the Merits as to Its Claims.

(1)   423 Kennedy is Likely to Prevail on Its Argument that Mr. Drazin Has a
Conflict of Interest That Prevents Him from Serving as Trustee and From
Upholding His Fiduciary Duty to 423 Kennedy.

As a trustee Mr. Drazin has fiduciary duties *to both the borrowers and the lenders* under

the deeds of trust.  *Perry v. Virginia Mortg. & Inv. Corp.,* 412 A 2d 1194 (D.C. 1980).  It is not

possible for Mr. Drazin to be faithful to his fiduciary duty owed to 423 Kennedy, as borrower,

while at the same time consulting exclusively with, and being counsel to, the Lender Defendants.

Case law in the District is unyielding as to a Trustee with a conflict of interest.  "When it is

shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden

of proving that he has been faithful to his trust."  *Sheridan v. Perpetual Building Assoc.,* 299

F.2d 463, 465 (1962) (en banc) (*Sheridan I*); *accord*, *Johnson v. Inter-City Mortg. Corp.,* D.C.

App., 366 A.2d 435, 437 (1976) and *Sheridan v. Perpetual Building Assoc.,* 322 F.2d 418, 420

(1963) (*Sheridan II*).  The *Sheridan I* decision recommended, in clear and express terms, that a

substitute trustee should be appointed whenever a trustee that has an obvious conflict of interest

gets involved in issues seriously affecting a borrower's rights such as a foreclosure, as is the case

here.  *Sheridan I*, 299 F 2d. at 465, n.4 ("We think that the [burden shifting] rule applies

wherever a trustee with conflicting interests takes action, such as foreclosure, seriously affecting

the borrower's interests.  Substitution of independent trustees *prior to the taking of any such*

*action* would seem to offer a measure of protection to all concerned.") (italic emphasis added).

Because Mr. Drazin has had a clear conflict of interest since as early as December 8, 2022, under

12

"ancient" law, the burden shifts to Mr. Drazin to prove that he has been faithful to his duties as

Trustee. Mr. Drazin cannot meet that burden because all of the actions that he took here were on

behalf of the Lender Defendants.[4] As a result, 423 Kennedy is likely to prevail on its breach of

fiduciary claims against Mr. Drazin in Count VI and the declaratory judgment claims in Count

VII. The actions taken by Mr. Drazin to foreclose must be suspended until he proves that he has

been faithful to his role as trustee. *Sheridan I* at 465.

<div align="center">(2)  <u>423 Kennedy is Likely to Succeed on its Breach of Contract Claims.</u></div>

To prevail on a claim of breach of contract, a party must establish: (1) a valid contract

between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty;

(4) damages caused by that breach. *See Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 186

(D.C. 2009). Here, the Lender Defendants stopped funding construction draws as promised for

no valid reason, so 423 Kennedy will easily prevail on its breach of contract claim.

<div align="center">(3)  <u>423 Kennedy is Likely to Succeed on its Intentional Interference with a
Business Relationship Claim.</u></div>

To prevail on a tortious interference with business relations claim, 423 Kennedy must

establish: (1) the existence of a valid contractual or other business relationship; (2) the

defendant's knowledge of the relationship; (3) intentional interference with that relationship by

the defendant; and (4) damages. *See Onyeoziri v. Spivok*, 44 A.3d 279 (D.C. 2012). 423

Kennedy has alleged sufficient facts to show that the Defendants' actions amount to a tortious

interference with business relations. The conduct alleged to have occurred here shows that the

---

[4]    In the related case, Mr. Drazin has filed a motion for a protective order to prevent his deposition from being taken. *See* Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel dated July 17, 2023 filed in *Developer RE1, LLC v. DP Capital, LLC, et al.,* 2022-CA-005095) (the "Related Case") (arguing that everything that Mr. Drazin knows is privileged and not subject to discovery). This filing contains an admission regarding Mr. Drazin's clear conflict, and that he took no action, as Trustee, to protect the borrower's interests.

Defendants are attempting to extort money from 423 Kennedy (and others) by raising pre-textual defaults at a time when 423 Kennedy was on the verge of closing on a refinancing loan.  423 Kennedy's Complaint has easily demonstrated the elements of a tortious interference with business relations claim.[5]

      (4)   <u>423 Kennedy is Likely to Succeed on its Breach of the Duty of Good Faith and Fair Dealing Claim.</u>

In the District, all contracts contain an implied duty of good faith and fair dealing.  *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006).  In essence, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *White v. WCP Fund I, LLC (In re ETS of Wash., LLC)*, Nos. 20-00397-ELG, 21-10005, 2022 Bankr. LEXIS 96, at *25-26 (Bankr. D.D.C. Jan. 14, 2022).  Here, 423 Kennedy has alleged facts showing that WCP and the WCP Fund breached the implied duty of good faith and fair dealing.  Making up defaults after the fact in order to put pressure on someone, whether that pressure is to pay someone else's debt, or to extract exorbitant "default" fees and unenforcable penalties, are textbook examples of bad faith.  423 Kennedy has also shown that the Defendants are taking improper actions under the loan documents for the purpose of injuring the rights of 423 Kennedy (and others) and to try to deprive 423 Kennedy of the value of the Property.

      (5)   <u>423 Kennedy Is Likely to Prevail on Its Claims that the Defendants' Allegations of Default Are Pretextual – and that the Alleged Defaults Could Not Form a Valid Basis for a Foreclosure Sale.</u>

The facts alleged by 423 Kennedy demonstrate that Mr. Huertas declared 423 Kennedy in default for pre-textual reasons.  More importantly, the default claims that were alleged were

---

[5]   In the related case, Judge Ebony Scott has already denied the Defendants' motion to dismiss similar claims.  *See* Order dated April 7, 2023 in the Related Case.

<div align="center">14</div>

4862-3427-3137

either incorrect as a matter of law, were subsequently cured, or were so trivial in nature that they

could not be used as a basis upon which to invoke the "death penalty" remedy of foreclosure.

The loan documents themselves support 423 Kennedy's position because a foreclosure sale is

expressly conditioned upon the "continuance of" an Event of Default.  *See* Ex. A (First DOT) at

page 13, Section 8.0 (a) ("During the continuance of any Event of Default, the Trustee [may

conduct a foreclosure sale]" and Section 8.0 (b) (also conditioning the exercise of other remedies

upon "the continuance of any Event of Default") (italic emphasis added).

      (6)   <u>423 Kennedy is Likely to Prevail on Its Claim that It Is Not an Affiliate of
Developer RE1 (or Any Other Entity).</u>

WCP, the WCP Fund, and Mr. Drazin appear to claim that Section 7.9 of in the First

DOT and the Second DOT allow them to declare a default because they claim that 423 Kennedy

is an "affiliate" of Developer RE1 – a separate entity that is only partially owned by Mr.

Negussie.  Section 7.9 in each deed of trust states:

> <u>Other Indebtedness</u>.  Any default under or breach of any document or instrument
> evidencing or securing any indebtedness, obligation, or liability of any kind or
> nature - *other than the Indebtedness and the Obligations secured hereby - of*
> *Grantor* or any guarantor of the Indebtedness<u>, *or any of their affiliates, to*</u>
> *Beneficiary,* whether now existing or hereafter created or arising, direct or
> indirect, material or immaterial, and whether absolute or contingent, joint, several
> or joint and severally and howsoever owned, held, or acquired.

*See* Ex. A (First DOT) at pages 11-12 (italic and underlined emphasis added).  Although the First

DOT does not define the term "affiliate", under federal banking law, the term "affiliate" means

"any company that controls, is controlled by, or is under common control with another

company."  15 U.S. Code § 6809(6).  But 423 Kennedy is not under common control with

Developer RE1 or any other entity.  423 Kennedy is a sole purpose entity that has two, fifty-

percent owners:  Mr. Negussie and the Brighton KSDC, LLC.  *See* Compl. at ¶ 13.  Mr. Negussie

and the Brighton Group are also co-managing members of 423 Kennedy, so any decisions made

<div align="center">15</div>

must be agreed to be both co-members.  *See id.* ¶¶ 13-14.  There is no business or other

relationship between 423 Kennedy and Developer RE1.  Although Mr. Negussie does have a

partial interest in Developer RE1, he does not have a controlling interest in 423 Kennedy.  423

Kennedy does not control Developer RE1 and vice versa.  Both entities are sole purpose limited

liability companies whose businesses are separate.  Cross-default provisions have also been

found to be inherently suspect.  *See, e.g., JP Morgan Chase Bank, N.A. v. Charter Communs.*

*Operating, LLC (In Re Charter Communs.),* 419 B.R. 221; 2009 Bankr. LEXIS 3609 (SDNY

2009) (noting that "cross default provisions are inherently suspect" and that "[b]efore enforcing

them, a court should carefully scrutinize the facts and circumstances surrounding the particular

transaction . . .").  The Defendants cannot rely upon the "affiliate" language in the cross-default

provision (Section 7.9) to declare a default by 423 Kennedy.

      (7)   <u>423 Kennedy is Likely to Prevail on Its Argument that a Fine That Caused
No Damages, and Has Since Been Paid, Cannot Be Used as a Basis to
Foreclose on the Property.</u>

It is settled law in the District that "equity abhors forfeitures . . . [and] so indeed does the

law."  *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American*

*Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted).  As the *Tsintolas*

*Realty* decision noted by using a sports analogy, technical violations of a contract that cause no

harm cannot be used to justify a forfeiture:

> [T]his case falls within the 'no harm no foul' rule." To paraphrase an analogous
> passage in *In re DiMartino,* 108 B.R. 394, 403 (D.R.I.1989),
>
> [t]he no-harm-no-foul rule of the basketball court should be applied in this law
> court.  Since [the landlord] has suffered no monetary harm from any alleged
> breach [of the settlement agreement], the [tenants are] not liable and there can be
> no set-off to the sum[ ] owed on the [settlement agreement] by [the landlord].

*Tsintolas Realty,*  984 A.2d at 186-87 (citing with approval *Mira v. Nuclear Measurements*

*Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

4862-3427-3137

Just like the landlord in *Tsintolas Realty,* here the Defendants are claiming a technical default (nonpayment of a $500.00 fine) to justify the forfeiture of property, after the fact, for which they could not have suffered any actual damages.  As the *Tsintolas Realty* court further elaborated:

> It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira,* 107 F.3d at 473 (citing *Brock v. Robbins,* 830 F.2d 640, 647 (7th Cir.1987)). "[M]ere breach without proof of monetary loss is *injuria absque dam-no," Cagle v. Southern Bell Tel. & Tel. Co.,* 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977*) i.e.,* "a wrong which results in no loss or damage, and thus cannot sustain an action."  *Mira,* 107 F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)).

*Tsintolas Realty,*  984 A.2d at 187.

423 Kennedy is likely to prevail on its argument that a technical default that caused no harm – here a $500.00 fine that blossomed into a $1,657.43 fine -- cannot serve as a basis for the foreclosure on a Property worth almost $12 million.  *See Allen v. United States,* 603 A.2d 1219, 1227 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227 (1992) ("Proportionality is of consummate importance in judicious adjudication[.]").  Other courts have also refused to allow a forfeiture based upon an inconsequential breach.  In *Miller v. Cain Partnership, Ltd.,* No. 1993 Tenn. App. LEXIS 485, (Tenn. Ct. App. July 20, 1993), the court noted several, general rules regarding forfeitures, such as:  "Every reasonable presumption is against forfeiture and every intendment or presumption is against the party seeking to enforce the forfeiture", (citing 17A C.J.S. Contracts § 407 (1963)) and that "[f]orfeitures are not favored in equity and unless the penalty is fairly proportionate to the damages suffered by the breach, relief will be granted when the [party seeking forfeiture] can, by compensation or otherwise, be placed in the same condition as if the breach had not occurred.") (quoting *Hooten v. Nacarto GMC Truck, Inc.,* 772 S.W.2d 41, 46

17

(Tenn. Ct. App. 1989)).[6]  Because equity abhors a forfeiture, especially when the party trying to

effectuate the forfeiture has suffered no damages, the third injunctive relief factor weighs in 423

Kennedy's favor.

> (8)    423 Kennedy is Likely to Prevail on Its Argument that the Claimed "Default
> Penalties" Are Unenforceable.

"The common law views liquidated damages clauses with a gimlet eye." *District*

*Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 723 (D.C. 2003).  The D.C. Court of Appeals

has generally upheld the enforcement of a liquidated damages provision "unless it is found to be

a penalty". *Burns v. Hanover Ins. Co.,* 454 A.2d 325, 237 (D.C. 1982).  And if the agreement

"to pay fixed sums plainly [is] without reasonable relation to any probable damage which may

follow a breach [, the provision] will not be enforced". *Order of AHEPA v. Travel Consultants,*

*Inc.,* 367 A.2d 119, 126 (D.C. 1976).  Here, the lender Defendants have admitted that part of the

amounts that the lender is trying to force 423 Kennedy to pay to avoid a foreclosure sale are, in

fact, a penalty because they have actually described those charges as such.  *See* Ex. K (seeking

payment of a "Default Penalty" of $868,969.30 under the First DOT) and Ex. L (seeking a

"Default Penalty" of $125,608 under the Second DOT).[7]  Given these two admissions, 423

Kennedy is likely to prevail on part of its declaratory judgment claim in Count IV, *i.e.,* that the

loan documents contain identical liquidated damage provisions that are unenforceable as a matter

of law, and that the nonpayment of an unenforceable penalty cannot be used as the basis for a

foreclosure sale.

---

[6]    See also *Arrowroot v. Natural Pharm. v. Std. Homeopathic Co.,* 1998 U.S. Dist. Lexis 1327, *39-42 ("Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one." ) (issuing an injunction to prevent the termination of a Joint Venture agreement based upon inconsequential violations and when there was substantial performance under the contract).

[7]    The "Default Penalty" is ten percent (10%) of the principal loan balance.  The loan documents also provide for a twenty-four percent (24%) default interest rate, the highest interest rate allowed by law.

C.     <u>The Balance of the Injuries is Tipped in 423 Kennedy's Favor.</u>

The irreparable harm to 423 Kennedy greatly outweighs any potential injury to the

Defendants, who really can prove no injury because, but for their improper conduct, 423

Kennedy would have gone to closing in December 2022 and repaid the loans.  The Defendants

have suffered no identifiable injuries to date, and any harm that the WCP or the WCP Fund could

arguably claim that 423 Kennedy has caused them are wounds that are self-inflicted.  By refusing

to provide constructions draws, pre-textually placing 423 Kennedy in default, trying to

improperly extort money from 423 Kennedy (and others), trying to collect unenforceable

penalties, and by directly interfering with, and delaying indefinitely, 423 Kennedy's closing on a

refinance loan, the Defendants have effectively shot themselves in the foot.  The third injunctive

relief factor, the "balance of the injuries", also weighs in favor of 423 Kennedy.

D.     <u>The Public Interest is Firmly in Favor of Stopping a Wrongful Foreclosure.</u>

The public interest will be served by stopping a foreclosure where the trustee has a

conflict of interest and the lender has engaged in predatory lending practices.  The public interest

is served by ensuring that debtors who are on a clear path to repay their debts are rewarded, not

penalized.  The public interest is not served by rewarding wrongdoers.  Here, 423 Kennedy had

paid all amounts owed to the WCP and the WCP Fund before they issued "new" Payoff

Statements demanding $1.5 million in "default" penalties.  At best, the default alleged by the

Defendants was a technical violation of the First and Second DOT by not initially paying a $500

fine, which caused no damages to the lender.  The public interest is not served if the Court, using

another sports analogy (tennis), were to allow a "foot fault" to decide an entire tennis match.

This is especially true in a case like this one involving a trustee with a clear conflict of interest

who carries a heavy burden of proof, and that also involves predatory lending practices.

Allowing the Defendants to move forward with a foreclosure would harm the public as it would

embolden the Defendants to engage in even more improper lending practices. The "public interest" factor also favors 423 Kennedy.

V.    CONCLUSION

For these reasons and any reasons that may be advanced at a hearing on this motion, the Plaintiff, 423 Kennedy St Holdings LLC, requests that this Honorable Court: (a) schedule an emergency hearing on this motion; (b) enter the attached proposed order enjoining any foreclosure sale; and (c) award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 18, 2023

/s/ Alexandria J. Smith
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings LLC*

20

<p style="text-align:center">R<small>EQUEST FOR AN</small> E<small>MERGENCY</small> O<small>RAL</small> H<small>EARING</small></p>

The Plaintiff requests that its Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale be set for a hearing on an expedited basis prior to July 25, 2023.

/s/ Alexandria J. Smith
Alexandria J. Smith

<p style="text-align:center">C<small>ERTIFICATE OF</small> S<small>ERVICE</small></p>

I H<small>EREBY</small> C<small>ERTIFY</small> that a copy of this Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale was served by the Court's electronic filing system this 18th day of July 2023, and a notice of filing should be served on all counsel of record.  I also served a copy of this motion by email on counsel for the Defendants in the related case (*Developer RE1, LLC v. DP Capital, LLC, et al.,* 2022-CA-005095).

/s/ Alexandria J. Smith
Alexandria J. Smith

<p style="text-align:center">C<small>ERTIFICATE</small> R<small>EGARDING</small> N<small>O</small> C<small>ONSENT</small></p>

The Plaintiff attempted to seek consent to the relief requested in this motion by speaking with counsel for the Defendants in the related case, who confirmed that this motion should be filed as an opposed motion.

/s/ Alexandria J. Smith
Alexandria J. Smith

4862-3427-3137

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

     *Plaintiff*,

v.

DPA CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants*.

2023-CAB-004260

## [PROPOSED] ORDER

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale ("Emergency Motion"), any opposition thereto, the facts and arguments presented at the hearing, and a review of the record of this case, this Court finds that the Plaintiff has met the standards required for the issuance of temporary injunctive relief.  Accordingly, it is this _____ day of July, 2023, hereby

ORDERED that the Emergency Motion is GRANTED; and it is

FURTHER ORDERED that Defendants must immediately stop taking any action to foreclose on the Property located at 423 Kennedy Street, N.W., Lot 56, Square 3260 pending further order of this Court, and it is

FURTHER ORDERED, that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order.

SO ORDERED.

_____
The Honorable _____
Superior Court of the District of Columbia

1

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

4862-3427-3137

# EXHIBIT A

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

ARTICLE V

NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE IX

### THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to:  **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to:  **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at:  **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder.   Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement.  Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person.  Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

     This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

     **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_[signature]_ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

By:    Brighton Capital LLC
Its:    Managing Member

_[signature]_ (SEAL)
By:    Mel Melaku Negussie
Its:    Authorized Signer, on behalf
of Balakrishnarao Sure and
Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

    I hereby certify on this __31st__ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_[signature]_
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016                                                                 Page **23** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

# EXHIBIT A

# LEGAL DESCRIPTION

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

# EXHIBIT B

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                    **$8,689,693.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC,** a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                              Page 1 of 9

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.   **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3.   **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.  BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.  BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

    a.  If default be made in any payment due under this Note;

    b.  If default be made in the performance of any other covenant contained in this Note;

    c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

    d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

1228 Kennedy St NW Washington DC
LOAN-006491
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.    WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.    GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                    Page 5 of 9

LOAN-006491
1st Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**).  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

   By:    Brighton Capital LLC
   Its:    Managing Member
   _(signature)_ (SEAL)
   By:    Mel Melaku Negussie
   Its:    Authorized Signer, on behalf
      of Balakrishnarao Sure and
      Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____ )

   I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(notary seal: JEFFREY DARRAH, NOTARY PUBLIC, MY COMMISSION EXPIRES 5/14/2025, DISTRICT OF COLUMBIA)_

_____
NOTARY PUBLIC

My commission expires: _____ _5/14/2025_ _____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                                                      Page **9** of 9

# EXHIBIT C





# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,015,335.18 as of 10/30/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $276,849.94 |
| Interest Paid: | ($247,771.80) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,015,335.18** |

**Payoff good through 10/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

|  |  |  |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ▉▉▉▉▉▉ |
| | **Falls Church, VA  22043** | **Account Number:** ▉▉▉▉▉▉ |

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT D




# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,610.00 as of 10/30/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $89,594.68 |
| Interest Paid: | ($77,034.68) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,610.00** |

**Payoff good through 10/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ███████ |
| | **Falls Church, VA 22043** | **Account Number:** ███████ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT E

Thursday, December 15, 2022 at 19:23:28 Eastern Standard Time

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:**  Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:**  Daniel Huertas

**To:**  mel negussie

**CC:**  Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project
**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time
**From:** Daniel Huertas
**To:** mel negussie
**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT G





# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,031,153.71 as of 11/30/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $323,191.50 |
| Interest Paid: | ($278,344.83) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,031,153.71** |

**Payoff good through 11/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT postclosing@wcp.team.**

| | |
|---|---|
| Payable to: **WCP Servicing LLC** | **Bank Name: United Bank** |
| **8401 Greensboro Dr Suite 960** | **Routing Number: ▮▮▮▮** |
| **McLean, VA  22102** | **Account Number: ▮▮▮▮** |

When sending the wire please reference our loan number, LOAN-006491 and borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT H





# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,660.00 as of 11/30/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $102,573.35 |
| Interest Paid: | ($90,013.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,660.00** |

**Payoff good through 11/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | |
|---|---|
| **Payable to:** WCP Servicing LLC | **Bank Name: United Bank** |
| 8401 Greensboro Dr Suite 960 | **Routing Number:** ▮▮▮▮▮▮ |
| McLean, VA  22102 | **Account Number:** ▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT I

8401 Greensboro Dr, Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

Re:     **NOTICE OF DEFAULT**

419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the Loan regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - servicing@wcp.team**

# EXHIBIT J

**WASHINGTON**
CAPITAL PARTNERS

8401 Greensboro Dr, Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**


Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

  Re:  **NOTICE OF DEFAULT**

   5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

  I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

  This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

  Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

  As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners
Servicing Department
8401 Greensboro Dr Suite 960
McLean, VA 22102
Office - (703)-348-0549 ext. 924
Email - <u>servicing@wcp.team</u>**

# EXHIBIT K





# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $7,174,724.51 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of 8/30/22): | $185,661.72 |
| Default Interest Owed (as of payoff date): | $456,927.95 |
| Interest Paid: | ($323,191.50) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $868,969.30 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$7,174,724.51** |

**Payoff good through 12/23/2022. Per diem $3,990.80.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:   WCP Servicing LLC**          **Bank Name: United Bank**
**8401 Greensboro Dr Suite 960**      **Routing Number:** ▉▉▉▉▉
**McLean, VA 22102**                **Account Number:** ▉▉▉▉▉

When sending the wire please reference our loan number, LOAN-006491
and borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT L





# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,439,944.65 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of 8/30/2022): | $63,637.33 |
| Default Interest Owed (as of payoff date): | $97,130.67 |
| Interest Paid: | ($102,573.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $125,600.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,439,944.65** |

Payoff good through 12/23/2022. Per diem $837.33.

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:**  WCP Servicing LLC          **Bank Name:** United Bank
8401 Greensboro Dr Suite 960    **Routing Number:** ███████
McLean, VA  22102              **Account Number:** ███████

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT M

**James D. Sadowski**

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |

| | |
|---|---|
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

### 5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

### 423 Kennedy Street, NW (Lot 0056 in Square 3260)

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

-----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

-----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

-----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

-----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** | **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document.  Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default".  Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy.  As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today.  I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400, x5407
Fax:  202.452.1410
E-mail:  jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU.  FOR MESSAGES TO CONSUMER DEBTORS:  THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie

---

> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners
https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT N

District of Columbia

<div align="center">

**OFFICE OF ADMINISTRATIVE HEARINGS**

One Judiciary Square

441 Fourth Street, NW, Suite 450N

Washington, DC 20001-2714

TEL: (202) 442-9094 · FAX: (202) 442-4789 · EMAIL: oah.filing@dc.gov

</div>

---

**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Petitioner,**

**v.**

**423 KENNEDY ST HOLDINGS LLC, Respondent.**

Case No.: 2021-DCRA-VR22-00182

---

<div align="center">

**FINAL ORDER**

</div>

The Department of Consumer and Regulatory Affairs (the Government) mailed the attached

Notice of Infraction (NOI) to Respondent on December 3, 2021.  Respondent failed to answer the NOI.

When a respondent fails to answer, an Administrative Law Judge may find the respondent in default

and impose a fine and penalty if two conditions are met: The NOI must be valid on its face, and the

Government must have submitted evidence that it properly served the NOI on Respondent.[1]

The NOI is valid on its face.  The Government filed a certificate of service stating that the NOI

was mailed to Respondent and filed an affidavit stating that the U.S. Postal Service has not returned

the NOI undelivered.   The Government also filed evidence of Respondent's last known home or

business address.   This administrative court concludes that Respondent had adequate notice of the

charges.[2]

The deadline for Respondent's answer has expired.[3]  The NOI states that a respondent who fails

to answer by the deadline "**will be subject to a penalty equal to twice the amount of the fine, in**

---

[1] OAH Rule 2805.5.

[2] D.C. Official Code §§ 2-1802.01 and 2-1802.05; *see Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C. 2007) (due process requires notice "reasonably calculated to afford the party an opportunity to be heard"); *Dusenberry v. United States*, 534 U.S. 161, 170 (2002).

[3] D.C. Official Code §§ 2-1802.02(e) and 2-1802.05; OAH Rule 2812.5.

**addition to the fine itself, and the entry of a default order without additional notice**." The penalty is authorized by statute,[4] and the conditions for issuing a default order have been met.

Therefore, it is hereby:

**ORDERED**, that Respondent is in **DEFAULT** and is **LIABLE** for the violation charged in the NOI; it is further

**ORDERED**, that Respondent must pay fines and penalties in the total amount of **$1590** in accordance with the **Payment Instructions** below within 20 calendar days of the mailing date of this Order; it is further

**ORDERED**, that if Respondent fails to pay within 20 calendar days of the mailing date of this Order, interest shall accrue on the unpaid amount at the rate of 1½ % per month or portion thereof, starting 20 calendar days after the mailing date of this Order, pursuant to D.C. Official Code § 2-1802.03(i)(1); it is further

**ORDERED**, that failure to pay may result in additional sanctions, including the suspension of Respondent's licenses or permits, the placement of a lien on Respondent's real and personal property, and the sealing of Respondent's business premises or work sites, under D.C. Official Code § 2-1801.03; and it is further

**ORDERED,** that any party may ask for reconsideration or relief from this Order as stated below;[5] and it is further

**ORDERED,** that any party may appeal this Order as stated below.

---

[4] D.C. Official Code §§ 2-1801.04(a)(2) and 2-1802.02(f).

[5] Parties are encouraged to provide an email address with any filing. During the Mayor's Declaration of a Public Health Emergency, parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

**This Final Order is dated when it is served, as certified on the Certificate of Service found at the end of this decision.**


_____
Claudia A. Crichlow
Principal Administrative Law Judge

Case No.: 2021-DCRA-VR22-00182

---

## PAYMENT INSTRUCTIONS

### STARTING IMMEDIATELY ALL PAYMENTS MUST BE MADE DIRECTLY TO THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.

Online payment can be made with a credit or debit card only. If you wish to pay by check, please mail or bring the check with the Notice of Infraction / Special Assessment / Re-Inspection bill to DCRA Office of Civil Infractions, located at 1100 4th Street, SW, 2nd Floor, Washington DC, 20024. Make your check payable to "DC Treasurer." Please write your Notice of Infraction / Special Assessment / Re-Inspection number on the check.

**Online payment** can be made using the following link: **https://govservices.dcra.dc.gov/paymentportal**. Please enter the Notice of Infraction Number.  When paying for multiple fines that have been consolidated, please enter the first number listed in the Final Order.

**Walk-In payment** is available at the **District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4ᵗʰ Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.**   The walk-in cashier's office requires payment be accompanied with a payment voucher that the respondent  must secure from DCRA's Office of Civil Infractions.   To request a payment voucher, please email DCRA.Civilinfractions@dc.gov with reference to the Notice of Infraction Number.

**Mail payment** to **Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4ᵗʰ Street, S.W. Suite E510, Washington, DC 20024.**

To ensure payments are applied accurately, record the Notice of Infraction number on the front of any check or money order and correspondence.

A $65.00 FINE WILL BE IMPOSED ON CHECKS DISHONORED BY THE BANK.

INTEREST
D.C. Official Code § 2-1802.03.(i)(1) provides that fines be paid in full with interest from the date levied.  For each month or portion thereof that a fine and/or assessment remain unpaid interest is accrued at 1.5%.  Interest begins 30 calendar days after the fine and/or assessment is levied.

District of Columbia
Office of Administrative Hearings
One Judiciary Square
441 Fourth Street, NW
Washington, DC  20001-2714


423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

---

**Certificate of Service:**

**By First-Class Mail (Postage Paid):**

423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

**By Email:**

Esther Yong McGraw
General Counsel
Dep't of Consumer and Regulatory Affairs
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov


I hereby certify that on September 7, 2022 this document was served upon the parties named on this page at the address(es) and by the means stated.


//s W. Green

_____
Clerk / Deputy Clerk

Case No.: 2021-DCRA-VR22-00182

### APPEAL RIGHTS

**After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.**

**COVID-19 NOTICE:** The deadlines described below may be temporarily suspended or extended due to the COVID-19 pandemic. For up-to-date information about any changes to these deadlines, please visit the Office of Administrative Hearings website at https://oah.dc.gov and the D.C. Court of Appeals website at https://www.dccourts.gov/court-of-appeals.

### HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[6]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days if OAH mailed the Final Order to you). HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS**

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

<div align="center">
Clerk<br>
District of Columbia Court of Appeals<br>
430 E Street, NW, Room 115<br>
Washington, DC 20001
</div>

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[6] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

## IMPORTANT NOTICES:

- **The amount of a lawfully imposed fine cannot be modified or reduced on appeal.  D.C. Official Code § 2-1831.16(g).**
- **Filing an appeal does not stay (stop) the requirement to comply with a Final Order, including any requirement to pay a fine, penalty or other monetary sanction imposed by a Final Order.  If you wish to request a stay, you must first file a written motion for a stay with the Office of Administrative Hearings.  If the presiding Administrative Law Judge denies a stay, you then may seek a stay from the Court of Appeals or the Board as appropriate.**



Government of the District of Columbia
Department of Consumer and Regulatory Affairs
Office of Civil Infractions

**AFFIDAVIT THAT NOTICE OF INFRACTION HAS NOT BEEN RETURNED**

**Notice of Infraction Number: <u>VR22-00182</u>**

The Notice of Infraction referred to above was:

<u>X</u> Emailed to the Respondent on **December 3, 2021** using the email address(es) provided
by the Respondent. The email included a delivery confirmation receipt,

<u>and/or</u>

☐ Mailed to the Repsondent on **N/A** First Class U.S. Mail Postage Prepaid to the address(es)
recorded on the Certificate of Service.  The evenlope(s) included the return address for
the this agency.

At least 15 calendar days have passed since the email or mailing date described above.  My
review of DCRA records to determine whether or not the email was returned as undeliverable or
whether the U.S. Postal Service has returned the mailing to this agency confirmed that the Notice
of Infraction was not returned at any time subsequent to the the time it was either emailed or
mailed to the respondent as reflected in the Certificate of Service.

I declare under penalty of perjury that this information is correct.

_____ *Patrice Derricott* _____          ___**December 24, 2021**_____
Signature                                      Date

Patrice Derricott
Program Supports Speclist
Office of Civil Infractions
Department of Consumer and Regulatory Affairs
1100 4th St., SW, Suite E510
Washington, DC 20024



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

**Notice of Infraction Number: <u>VR22-00182</u>**

**CERTIFICATE OF SERVICE**

I hereby certify that the attached Notice of Infraction **<u>VR22-00182</u>** and
accompanying exhibits were served via email and/or via first class U.S. Mail
Postage Prepaid on the parties named on this page at the address(es) below on
**December 3, 2021.**

**<u>cb@colomariver.com</u>**

<u>*Patrice Derricott*</u>
PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



### GOVERNMENT OF THE DISTRICT OF COLUMBIA
# NOTICE OF INFRACTION

**Notice No. VR22-00182**
**12-3-2021**
Date of Service

**Issuing Agency:** D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other _____ |

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

| Business/Company Name | Charge as Respondent (check): ☒ YES ☐ NO |

| Individual/Agent Name | Charge as Respondent (check): ☐ YES ☒ NO |

1215 1ST ST NE

cb@colomariver.com

| Mailing Address | | Email Address |
| WASHINGTON | DC | 20002-7935 |
| City | State | Zip Code |

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. **Instructions are on the reverse side of this Notice.**

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day. If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation 12G DCMR SUB-SECTION 302.4 | Fine for Infraction $530.00 | Penalty (if applicable) $ |
| --- | --- | --- |

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**    Time of Infraction: **07:37 AM**    Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
| --- | --- | --- |

Nature of Infraction:

Date of Infraction:    Time of Infraction: _____    Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

| DCRA Employee Signature | GERARD ANDERSON | 10-13-2021 | 1018 |
| | Print Name | Date | Badge/Identification Number |

### SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

**1. Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

- **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
- In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.* **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.Civilinfractions@dc.gov.
- Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.*

**2. Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the other side of this Notice and check the **ADMIT WITH EXPLANATION** box. Do not send payment. Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: (202) 442-9094; **or send electronically to OAH.Filing@dc.gov.**

**3. To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. Do not send payment. Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: 202-442-9094; **or send electronically to OAH.Filing@dc.gov.** A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE**_____

# EXHIBIT O

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**

**Cover Sheet for Electronic Filing**

I am filing the attached papers at the Office of Administrative Hearings.

**1. Check one of the boxes below.**

☒The case number is:  ___2021-DCRA-VR22-00182___ .          ☐ This is a new case, and a case number has not yet been assigned.

**2. Briefly describe the paper that you are filing:**

Request to Change Final Order for Case # 2021-DCRA-VR22-00182

3. **My name, mailing address, telephone number, and e-mail address are:**

Name: Mel Negussie                                      Telephone: 202-271-5046
Mailing Address: _____          E-mail address: cbp@harkenbuilders.com
1629 K St NW. Suite 300                                Representing: 423 Kennedy St Holdings LLC
City, State, Zip: Washington, DC 20006

I agree to receive documents from the court at my email address  [ Yes ]   No

4. You should complete this form, save it to your computer, and then attach it to an e-mail, along with the papers you are filing. The e-mail address for filing papers at OAH is oah.filing@dc.gov. Papers sent to any other e-mail address will **not** be accepted for filing.

**I sent a copy of the attached papers to all other parties or their representatives as listed below.**

Person to Whom the Papers Were Sent:
_____
Address _____
City, State, Zip Code_____
Date the papers were sent:_____

Method of sending:
☐ Mail  ☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____)

Person to Whom the Papers Were Sent:
_____
Address _____
City, State, Zip Code_____
Date the papers were sent:_____

Method of sending:
☐ Mail  ☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____)

**If you sent the papers to more than two people, provide the above information for the additional people on a separate sheet.**

**DISTRICT OF COLUMBIA**

**OFFICE OF ADMINISTRATIVE HEARINGS**

One Judiciary Square
441 Fourth Street, NW, 450 North
Washington, DC 20001-2714
TEL: (202) 442-9094    FAX: (202) 442-9451

# REQUEST TO CHANGE A FINAL ORDER
## ("I want the decision changed")

You may use this form to ask the Administrative Law Judge to change a Final Order **after** it has been issued.

My Name: Mel Negussie          My Case No.: 2021-DCRA-VR22-00182

My Address: 1629 K St NW. Suite 300          My Telephone No.: 202-271-5046

City/State/Zip Code: Washington, DC 20006          My Fax No.:_____

If you lost because the Final Order said you did not file something (such as an answer to a Notice of Violation, an answer to a Notice of Infraction, or a Claims Examiner's Determination), explain why you did not file it.

We did not file it because we did not know that this infraction existed. The only notice we received was the Final Order via email. The mailing address on the notice was incorrect and was mailed to the old property owner.

Why do you think that the Final Order is wrong or unfair?  Why should the Administrative Law Judge change the Final Order?

We did not get the notice and did not know that this case was still active. We also have been under construction for the past 12 months and have made improvements to the site and cleaned up the area that we were fined for.

The OAH Resource Center, which has a variety of tools to assist you, is open during regular OAH business hours.  The OAH website is available at www.oah.dc.gov.  It includes the text of the rules, forms, and other helpful information.  The OAH Rules concerning requests for reconsideration and requests for relief from a final order can be found at OAH Rule 2828.

# EXHIBIT P

**James D. Sadowski**

| | |
|---|---|
| **From:** | DOB/DLCP Payment Confirmation <DoNotReply-DCRA@dc.gov> |
| **Sent:** | Saturday, December 10, 2022 6:38 AM |
| **To:** | mel@ntconstruction.net |
| **Subject:** | Payment Confirmation for DOB Code Enforcement Fine |
| **Importance:** | High |

This email is generated automatically. Please do not reply.

**Your Payment has been accepted.**

Thank you for your recent payment submitted via online payment portal. Please make sure you keep a copy of this email for your records.

**Payment Details:**

Notice of Infraction (NOI) Number: VR22-00182

| | |
|---|---|
| Payment date: | 12/10/2022 |
| Amount Charged: | $ 1657.43 |
| Card number ending in: | 8755 |
| Transaction ID: | AP1C7F27E550 |

Thank you,
DOB/DLCP



# EXHIBIT Q

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
One Judiciary Square
441 Fourth Street, NW
Washington, DC 20001-2714
TEL: (202) 442-9094
FAX: (202) 442-4789
oah.filing@dc.gov

| | |
|---|---|
| DISTRICT OF COLUMBIA DEPARTMENT OF BUILDINGS AS SUCCESSOR AGENCY TO THE DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS,[1] Petitioner, v. 423 KENNEDY ST HOLDINGS LLC, Respondent. | Case No.: 2021-DCRA-VR22-00182 NOI No.: VR22-00182 |

**ORDER VACATING FINAL ORDER**
**AND**
**DISMISSING CASE WITHOUT PREJUDICE**

## I. Introduction

I issued a Final Order in this case, which was served on September 7, 2022, (the "Final Order"), finding Respondent in default for failing to answer Notice of Infraction No. VR22-00182 (the "NOI"). I imposed the authorized fine and late answer penalty. For the reasons set forth below, I now vacate the Final Order and dismiss Case No. 2021-DCRA-VR22-00182 and the NOI, each without prejudice.

---

[1] In accordance with the Department of Buildings Establishment Act of 2020, D.C. Code 10-561.01 et seq., OAH Rule 2816.6, and Mayor's Order 2022-149, OAH retains jurisdiction over the Department of Buildings and the Department of Licensing and Consumer Protection as successor agencies to the Department of Consumer and Regulatory Affairs (DCRA). This matter has been recaptioned to refer to the applicable successor agency to DCRA.

On December 12, 2022, the Petitioner, DOB, filed a Motion of Dismissal with the Office of Administrative Hearings.

*OAH rule 2817.1 The party initiating the case may move to dismiss the case at any time, and the Administrative Law Judge may grant the motion without waiting for a response from the opposing side.*

The District of Columbia Department of Buildings (the "Government") may, at its discretion and as authorized by law, issue a new Notice of Infraction and begin a new case before this administrative court, for the same alleged infraction(s).

It is therefore this 12th day of December, 2022:

**ORDERED**, that the Final Order is **VACATED** and of no further effect whatsoever; and it is further

**ORDERED**, that Notice of Infraction No. VR22-00182 is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED**, that the appeal rights of any party aggrieved by this Order are stated below; and it is further

*(s) Claudia A. Crichlow*
Claudia A. Crichlow
Principal Administrative Law Judge

## Certificate of Service:

**By Email:**

Esther Yong McGraw
General Counsel
Department of Buildings
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov
         dob.filing@dc.gov

**By First-Class Mail (Postage Paid) and
Email:**

Chapman Paret
629 K St NW
Ste 300
Washington, DC 20006
ecbp@harkenbuilders.com

I hereby certify that on December 12, 2022,
this document was served upon the parties
named on this page at the address(es) and by
the means stated.

*(s) Joseph Harrison*

Joseph Harrison
Paralegal Specialist

Case No.: 2021-DCRA-VR22-00182

### APPEAL RIGHTS

**After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.**

### HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[2]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days if OAH mailed the Final Order to you).**

### HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[2] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

EXHIBIT R



**Government of the District of Columbia**

Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202)727-5374**

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square: 3260    Suffix: [ ]    Lot: 0056

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO:  423 KENNEDY ST HOLDINGS LLC

See Exhibit A

FROM: WCP Fund I LLC    PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON July 25 , 20 23 , AT THE OFFICE OF Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:10 P.M.    THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on April 8 , 20 22 .

Liber: [ ]    Folio: [ ]    Instrument No: 2022038745

Maker(s) of the Note secured by the instrument: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A    See Exhibit A
Phone    Last Known Address

Description of Property: Multi-Family Residential Building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 423 Kennedy Street, NW, Washington, DC 20011

Square: 3260    Lot: 0056    or Parcel No: [ ]

Holder of the Note (Name): WCP Fund I LLC

Phone: (703) 727-5464    Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 1,598,839.60 **

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 ìRight to Cure a Residential Mortgage DefaultAct of 1984.î

$ N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin

Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015    Phone: (202) 223-7900

** as of June 23, 2023

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260



**NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
OR CONDOMINIUM UNIT**

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square [ 3260 ]   Suffix [        ]   Lot [ 0056 ]

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on [ June 23 ] ,20 [ 23 ]; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

[ 06/23/2023 ]
Date

RD

(Signature of Noteholder or his agent)

I, [ Deborah A. Stewart ] , a Notary Public in and for the
[ District of Columbia ] ,
DO HEREBY CERTIFY THAT [ Russell S. Drazin ]
who is personally well known to me as a party(ies) to this Notice of Foreclo-sure Sale bearing on the [ 23rd ] day of [ June ] , 20 [ 23 ],
personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be [ his ] act and deed.

Given under my hand and seal this [ 23rd ] day of [ June ] , 20 [ 23 ].

Deborah A Stewart
Notary Public

My Commission Expires: [ 09/30/2025 ]
mmddyyyy



# EXHIBIT A

<u>Borrower, Grantor, Record Owner</u>:

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC
**Russell S. Drazin, Attorney**
**4400 Jenifer Street, NW, Suite 2**
**Washington, DC 20015**
**202-223-7900**

### TRUSTEE'S SALE
### OF REAL PROPERTY

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

### JULY 25, 2023 AT 2:10 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same — except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE:  A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

-----------------------------------------------------------------------------------------------------------------

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



**AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE**

**Government of the
District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374**

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)
0056/3260
Lot/Square Number:

I, Christina Araujo                    [name], Vice President of Finance [title]

of WCP Fund I LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC                                    is the holder of the mortgage
recorded as Instrument Number 2022038745                         in the District
of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined
by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to
mandatory mediation and, therefore, does not require a Mediation Certificate Issued by the
Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and
correct to the best of my knowledge, information and belief.

Signature:

Printed Name:   Christina Araujo

Title:  Vice President of Finance

Date:  June 21, 2023

State of   Virginia

County of   Fairfax

SSL:

3260/0056

Recording requested by:
Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on

this 21st                     day of June           , 20 23

by Christina Araujo                                (name of person) as

Vice President of Finance                          (type of authority, e.g. officer,

trustee, etc.) of WCP Fund I LLC
(name of party on behalf of whom instrument was executed)

Notary Public

My Commission Expires:



MUHAMMAD T BILAL
NOTARY PUBLIC
REG. #7637841
MY COMMISSION
EXPIRES
JUNE 30, 2023
COMMONWEALTH OF VIRGINIA

```
Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
   RECORDING FEES          $25.00
   SURCHARGE               $6.50
TOTAL:                     $31.50
```

**Case Caption:**    423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**  SF NU, LLC                                    **Case Number:**    2023-CAB-004260

### NOTICE OF IN PERSON TEMPORARY RESTRAINING ORDER- FURTHER HEARING

Your case is scheduled for a(n) **Temporary Restraining Order- Further Hearing** on **07/21/2023** at **1:30 PM**

Courtroom Number:

Courtroom Address:


For questions, please contact the Civil Actions Branch Clerk's Office at 202-879-1133.

To change your method of hearing participation, visit www.dccourts.gov/services/remote-hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

SF NU, LLC
1455 Research BLVD STE 510
Rockville MD  20850

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

eFiled
07/20/2023 1:54:50 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

423 Kennedy St Holdings LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2023 CAB 004260
Judge Milton Lee

Hearing on Motion for Temporary Restraining
Order: July 21, 2023 at 1:30 pm

**OPPOSITION TO PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY
RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr.

Huertas"), and Russell Drazin ("Mr. Drazin") (DPCL, WCP, Mr. Huertas and Mr. Drazin being

collectively known as the "Defendants"),[1] by and through undersigned counsel, pursuant to

District of Columbia Rule of Civil Procedure 12-I(e), and in opposition to the Plaintiff's Opposed

Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion,"

with the plaintiff being known as the "Plaintiff") state as follows:

**I.        Introduction**

"[T]he court finds Defendant has acted in accordance with the terms of the contract," this

Honorable Court (Mitchell-Rankin, J.) concluded when presented with a similar – albeit not

identical – motion for a temporary restraining order, by 423 Kennedy St Holdings LLC (the

"Plaintiff") in February 2023. *See* Order, attached hereto as Exhibit A. In that instance, the

---

[1] There is a fifth defendant to this action: SF NU, LLC ("SNL"). Undersigned counsel has not, as of present, been engaged to represent SNL. Accordingly, references to the "Defendants" are in exclusion of SNL. However, it appears the inclusion of SNL in this lawsuit is either grossly errant or an act of manifest bad faith, as SNL has – quite literally – nothing to do with the loans at issue *sub judice* and, equally, is an entity wholly independent and separate from the Defendants.

1

Plaintiff's request for injunctive relief was denied and the Plaintiff's case was *sua sponte* dismissed. Now, with a foreclosure of its eponymous property scheduled, the Plaintiff seeks a second bite at the proverbial apple.

The Motion merits denial this time as well. This is a case where the Plaintiff borrowed $9,945,693.00 from WCP on March 31, 2022, through two loans memorialized by promissory notes and secured by deeds of trust. Barely a month later, the Plaintiff defaulted when it failed to make a timely interest payment. A month later, the Plaintiff again defaulted by failing to make another interest payment on time. A third default followed – for the same reason – on July 1, 2022.

A fourth default came a few months later when, on November 17, 2022, the Plaintiff's failure to pay a government fine resulted in a senior lien being imposed on the property securing the debt. A fifth default followed two weeks after, when the Plaintiff did not make its December 1, 2022 interest payment on time. And seventh and eighth defaults ensued on February 1, 2023 and March 1, 2023 when the Plaintiff, yet again, failed to make interest payments.

It is the ninth default, however, that is the most significant. The loans matured on March 31, 2023 and were not repaid. It is not that the Plaintiff only repaid the principal or paid the principal with some portion of the interest; it is, rather, that the Plaintiff altogether failed to repay the loans at maturity.[2]

---

[2] Given the number of defaults, the defendants have created a demonstrative exhibit setting forth the details of each such breach of the loan documents correlative to the second loan, together with the monetary impact of each breach, the correlative provisions of loan documents giving rise to the breach, and the date of each breach. Some of the breaches were missed payments that were later made; many of the missed payments – including the maturity payment – were never made at all. Where a payment was eventually made, that, too, is indicated on the exhibit. *See* Demonstrative Exhibit, attached hereto as Exhibit B. This exhibit does *not* include the breaches of the loan documents for the first loan, since it is the second loan's security interest that is currently scheduled for foreclosure.

With more than three months having now elapsed since repayment of the loaned monies came due, and with more than a year having now elapsed since the beginning of the Plaintiff's string of defaults under the loan documents, the Plaintiff is asking for a temporary restraining order to enjoin WCP and DPCL from exercising their bargained-for rights under those documents. Or, stated otherwise, the Plaintiff endeavors to retain the monies loaned to it by WCP and DPCL, while also retaining the collateral it pledged as security for those loans. In the words of the former Municipal Court of Appeals for the District of Columbia, "[t]he plaintiff wishes to have his cake and eat it too." *Plant v. Plant*, 57 A.2d 204, 208 (D.C. 1948).

The Motion merits denial because (i) the Plaintiff cannot show a likelihood of success on the merits where the undisputed and objective record evidences myriad defaults under loan documents, including a failure to pay at maturity; (ii) the "irreparable harm" cited by the Plaintiff is nothing more than the exercise of a contractually bargained-for right; (iii) the Plaintiff has an adequate remedy at law, inasmuch as it is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code; (iv) any balancing of equities necessarily weighs against the Plaintiff being able to retain WCP and DPCL's money while also retaining WCP and DPCL's collateral, more than three months after two loans have fully matured; and (v) public policy disfavors using this Honorable Court to disrupt the District of Columbia's long history of permitting non-judicial foreclosures of commercial assets.

For these reasons, and as extrapolated upon *infra*, the Defendants ask this Honorable Court to deny the relief sought in the Motion.

## II.    Standard

The standard for a non-*ex parte* temporary restraining order is substantively comparable to that for a preliminary injunction. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F.

3

Supp. 2d 67, 74 (D.D.C. 2009) (noting the overlapping elements of the two forms of relief); *Campbell v. U. S.*, 295 A.2d 498, 501 (D.C. 1972) (noting federal rules may be used to offer guidance where similar to the rules of this Honorable Court).

Specifically, a four prong test controls any request for non-final injunctive relief, with a "sliding scale" governing the weight afforded each such criterion:

> "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits in the underlying cause of action; (3) [whether] the "balance of injuries" favors granting an injunction; and (4) [whether] the public interest would be served by granting the injunctive relief sought."

*Ifill v. Dist. of Columbia*, 665 A.2d 185, 187–88 (D.C. 1995) (quoting *In re Antioch Univ.*, 418 A.2d 105, 109 (D.C.1980)).

Importantly, "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (citing *CFGC v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

## III. Relevant Facts

The Defendants submit the following facts to be without genuine dispute and, where appropriate, to be evidenced by documents appended to the Motion or appended hereto:

1. On March 31, 2022, WCP loaned the Plaintiff the sum of $8,689,693 (the "First Loan"). *See* Commercial Deed of Trust Note, attached to Complaint (the "Complaint") as Exhibit B.

2. Of even date therewith, WCP loaned the Plaintiffs an additional sum of $1,256,000.00 (the "Second Loan"). *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit D.

3.        Both promissory notes stipulate that "[p]ayments of interest only shall be due and payable on the first day of each calendar month…" *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, at § 3; *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit D, at § 3.

4.        The interest-only payment of $12,560.00, on the Second Loan, due on May 1, 2022, was not made until July 14, 2022 – some 74 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.[3]

5.        The interest-only payment of $12,978.67, on the Second Loan, due on June 1, 2022, was not made until July 14, 2022 – some 43 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

6.        The interest-only payment of $12,560.00, on the Second Loan, due on July 1, 2022, was not made until July 14, 2022 – some 13 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

7.        On November 17, 2022, the Plaintiff permitted a government lien to encumber the real property securing the loans (the "Property") by failing to pay fines and penalties to the District of Columbia Department of Buildings. *See* Lien Notice, attached hereto as Exhibit D.

8.        The interest-only payment of $12,560.00, on the Second Loan, due on December 1, 2022, was not made until December 8, 2022 – some 7 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

---

[3] The exhibit has two pages. The first page is an excerpt of the pertinent portions of the payment history. The second page is the full payment history. This is done because of the size of the second page and resulting concerns about readability.

9.      The interest-only payment of $44,846.67, on the First Loan, due on December 1, 2022, was not made until December 8, 2022 – some 7 days after the obligation came due. *See* First Loan Payment History, attached hereto as Exhibit E.[4]

10.      The interest-only payment of $12,978.67, on the Second Loan, due on January 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

11.      The interest-only payment of $46,341.56, on the First Loan, due on January 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

12.      The interest-only payment of $12,978.67, on the Second Loan, due on February 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

13.      The interest-only payment of $46,341.56, on the First Loan, due on February 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

14.      The interest-only payment of $11,722.67, on the Second Loan, due on March 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

15.      The interest-only payment of $41,856.89, on the First Loan, due on March 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

16.      Both loans matured on March 31, 2023. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B; Commercial Deed of Trust Note, attached to Complaint as Exhibit D.

17.      Neither loan was paid at maturity, nor have any payments been made thereon at any time in the almost seven months since maturity. *See* Payment History for Second Loan, attached hereto as Exhibit C; Payment History for First Loan, attached hereto as Exhibit E.

---

[4] See, *supra*, n. 3.

18.     Both the First Loan and the Second Loan are secured by deeds of trust on the real

property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (previously

defined as the "Property"). *See* Deed of Trust, attached to Complaint as Exhibit A; Deed of Trust,

attached to Complaint as Exhibit C.

19.     Both deeds of trust require the Plaintiff to pay any "fine" or "penalty" in a timely

manner, so as to ensure there is no accrual of statutory liens senior to those of WCP and DPCL:

> Grantor will pay and discharge, or cause to be paid and discharged, not later than
> the due date thereof or the date any fine, penalty, interest or cost may be added
> thereto or imposed by or pursuant to law for the nonpayment thereof (whichever
> date shall first occur) or, at the direction of the Beneficiary, as soon as the same
> become liens, whether or not then due and payable, any Impositions upon or
> assessed against the Mortgaged Property or arising in respect of the occupancy, use
> or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver
> to the Beneficiary from time to time receipts evidencing the payment of all such
> Impositions.

*See* Deed of Trust, attached to Complaint as Exhibit A, at § 4.2; Deed of Trust, attached to

Complaint as Exhibit C, at § 4.2.

20.     Neither the promissory notes nor the deeds of trust require written notice of a

default, nor of acceleration upon default, being commercial loan instruments governed by District

of Columbia law. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, *passim*;

Commercial Deed of Trust Note, attached to Complaint as Exhibit D, *passim*; Deed of Trust,

attached to Complaint as Exhibit A, *passim*; Deed of Trust, attached to Complaint as Exhibit C,

*passim*.

21.     The promissory notes and deeds of trust expressly provide that WCP and DPCL

may temporarily forbear from exercising remedies pursuant to a default of the Plaintiff, without

waiving such remedies or the right to invoke such remedies. *See* Commercial Deed of Trust Note,

attached to Complaint as Exhibit B, § 5; Commercial Deed of Trust Note, attached to Complaint

as Exhibit D, § 5; Deed of Trust, attached to Complaint as Exhibit A, § 11.4; Deed of Trust, attached

to Complaint as Exhibit C, § 11.4.

## IV.    Argument: The Motion Merits Rejection

### a.  The Plaintiff is Not Likely to Succeed on the Merits

The thrust of the Plaintiff's claims in this case is that a failure to pay two promissory notes

at maturity, preceded by multiple payment defaults thereunder and the imposition of a municipal

lien on the collateral securing those loans, is not grounds to foreclose under standard commercial

deeds of trust. This is *reductio ad absurdum*.

### i.  Breach of Contract

The Plaintiff's first claim (Count I) is for breach of contract. Notably, the Motion devotes

only two sentences to this cause of action, observing (i) the elements of such a claim; and (ii) that

"the Lender Defendants stopped funding constructions draws as promised for no valid reason…"

Motion at § IV(B)(2). The threadbare nature of this assertion – in a filing where the Defendants

agreed that the Plaintiff could exceed the ordinary page count – is notable.

The Plaintiff is correct about the governing elements for a breach of contract claim. *See*

Motion at § IV(B)(2) (noting the elements to be "(1) a valid contract between the parties; (2) an

obligation or duty arising out of the contract; (3) a breach of that duty; (4) damages caused by that

breach.") (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 186 (D.C. 2009)).

The first core problem with this claim, though, is that there is no such contract. The

Complaint posits that "The WCP and WCP Fund's agreement to provide construction draws was

memorialized on the HUD 1 Settlement Statement signed at closing." Complaint at ¶ 17. Yet a

review of the settlement statements reveals no such agreement. *See* Settlement Statements, attached hereto as Exhibit F.

Nor is this surprising. A HUD-1 Settlement Statement is a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing. It is not a contract, as a matter of law. *See, e.g.*, *Regions Bank v. Commonwealth Land Title Ins. Co.*, 977 F. Supp. 2d 1237, 1265 (S.D. Fla. 2013) ("…a closing statement is not a contract…") (citing *Cornelius v. Fidelity Nat. Title Co.*, 2009 WL 596585, at *3 (W.D. Wash. 2009) *Kirby v. Bank of Am., N.A.*, 2012 WL 1067944, at *8 (S.D. Miss. 2012); *Jankanish v. First Am. Title Ins. Co.*, 2009 WL 779330, at *2 (W.D. Wash. 2009); *Deutsch Tane Waterman & Wurtzel, P.C. v. Hochberg*, 890 N.Y.S.2d 755, 757 (N.Y. App. Div. 2009)); *Koschene v. Hutchinson*, 2007 WL 6013037, at *2 (Va. Cir. 2007) ("…it is apparent to the Court that the HUD–1 is not a contract, but is really a statement as to how funds shall be distributed."); *Jankanish*, 2009 WL 779330, at *2 ("…the current settlement statements do not include terms and conditions, reflect no fee paid as consideration for a separate HUD–1 contract, and contain no contractual promise to perform (or refrain from performing) some act. The Court therefore finds that the HUD–1 statements are not contracts and dismisses count two.") (citing *Cornelius* at 5-6) (citing *DePhillips v. Zolt Constr. Co.*, 959 P.2d 1104 (Wash. 1998)); *Garland v. ServiceLink L.P.*, 2013 WL 5428716, at *1 (D. Md. 2013) ("Despite the arrangement, the Garlands do not allege to having signed a formal agreement, noting only that the terms were detailed in a HUD–1 Settlement Statement (the 'HUD–1 Statement'), which the Garlands concede is not a contract").

The Plaintiff also theorizes some agreement to fund constructions draws may have been set forth in a draw budget or a term sheet. Complaint at ¶ 19. Yet the Plaintiff has not appended these documents and, to the contrary, does not point to any provision of either document where

WCP, DPCL, or any other person or entity expressly agrees to fund construction draws. And it is

thusly difficult to appreciate why the Plaintiff believes either of these documents could form a

binding contract – especially in the context of two loans that are memorialized by formal

promissory notes (neither of which so much as references a promise to fund construction draws)

and deeds of trust (which are also wholly silent on the issue).

Though perhaps the biggest issue with this claim, in the prism of the Motion, is that it is a

claim that – should the cause of action survive a motion to dismiss – would invite litigation of

monetary damages. The "contract" allegedly breached, to the extent one can be surmised from the

Complaint (with the Motion being topically silent), would be an agreement to fund construction –

not an agreement to buy or sell real estate. And this would, accordingly, be an agreement for which

solely monetary damages could be awarded.

Yet, under District of Columbia law, injunctive relief is not available for a claim that can

be remedied through the award of a monetary payment. *See, e.g. Karriem v. Gray*, 623 A.2d 112,

115 (D.C. 1993) ("Because this harm could, conceivably, be cured by a monetary payment an

injunction is not needed to avoid irreparable harm to appellant.") (citing *In re Antioch University*,

418 A.2d 105, 109–10 (D.C. 1980)).

To be sure, the Plaintiff does *not* seek a permanent injunction in connection with Count I

of its Complaint, asking instead for solely-monetary damages. And this is thusly a claim that (i) is

addressed in only two sentences of the Motion; (ii) that appears to be untethered to any legally-

cognizable contract; and (iii) that cannot support injunctive relief.

### ii.  Tortious Interference with Business Relations

The heart of the claim for tortious interference with business relations (Count II) is that

WCP and DPCL should not have declared the promissory notes to be in default on December 8,

2022, when the Plaintiff had already defaulted on the notes and their correlative deeds of trust at least six separate times. Rather, the Plaintiff posits, WCP and DPCL were obligated to refrain from noting the myriad defaults, so the Plaintiff could fraudulently represent to a new lender that its existing loan obligations were in good standing.

A claim for tortious interference with business relations requires a showing of "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017) (quoting *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038 (D.C. 2015) (quoting *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 345–46 (D.C. 2015))).

Here, the Plaintiff has not shown that it had a valid contractual or other business relationship with anyone aside from WCP and DPCL. The Plaintiff claims to have been in the process of endeavoring to refinance its debt, but in a case where the Plaintiff has appended an extensive array of exhibits to nearly every filing, the record is notably devoid of a loan commitment letter from a third party lender. And while ultimately immaterial because of the Plaintiff's failure to make showings of other required elements, this prong ought not be overlooked. To the contrary, this is a case where the Plaintiff claims that there is significant equity in the Property, but that it suddenly became unable to procure a refinancing (despite that significant equity) in December 2022 because WCP and DPCL declared their loans to be in default. This assertion is, on many levels, not only counterintuitive but, indeed, plainly illogical. It seems far-fetched to surmise a lender walked away from refinancing an obligation secured by a healthy equity cushion, and it is altogether suspect that the Plaintiff has never mustered any evidence of this actually occurring.

11

Equally, the Plaintiff has not shown that WCP and DPCL did anything to intentionally interfere with any third party relationship. All the Plaintiff alleges is that WCP and DPCL sent default notices and payoff statements *to the Plaintiff*. There is no claim that any of the Defendants contacted another lender, libeled the Plaintiff, or undertook any actions whatsoever in connection with a third party. The Plaintiff's claim necessarily fails on account of this reality, as tortious interference mandates some action over and above merely communicating with the allegedly-aggrieved party itself.

Most importantly, though, the Plaintiff has not shown resulting damages. The Plaintiff defaulted – at least six times – under loan documents, leading WCP and DPCL to simply note the defaults and declare the loans to be in default. This does not invite any legally-cognizable form of damages; to the contrary, this is merely WCP and DPCL proceeding under contractually bargained-for loan documents, in accord with the express terms thereof. In fact, WCP and DPCL waited until at least four more defaults occurred – including a failure to pay both loans at maturity – before noticing a foreclosure, permitting the Plaintiff more than the bargained-for time period to seek new financing.

In short, the Plaintiff is alleging that WCP and DPCL exercising their contractual remedies, under valid loan documents, constitutes tortious interference. The innate failure of this contention – and the resulting absence of any probability of success on the merits – is self-evident.

### iii.  Breach of the Duty of Good Faith and Fair Dealing

The Plaintiff is similarly unlikely to prevail on its claim for breach of the implied covenant of good faith and fair dealing (Count III). Only a single paragraph is devoted to this claim in the Motion, and for good reason: the Plaintiff is arguing that a lender cannot foreclose, under a deed of trust, after a borrower breaches loan documents at least nine separate times, including a failure

to pay the loan at maturity. Such a holding would not only invite untold havoc upon the docket of this Honorable Court but would, too, do palpable violence to the commercial paper market writ large.

Familiarly, "… to establish a breach of the implied covenant of good faith and fair dealing in all three jurisdictions, the plaintiff must plead that (1) the defendant has taken steps, or refused to take steps, (2) which destroyed or injured the plaintiff's right to receive the fruits of the contract." *Magee v. Am. Inst. of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 112 (D.D.C. 2017) (citing *Mero v. City Segway Tours of Wash. D.C., LLC*, 826 F.Supp.2d 100, 106 (D.D.C. 2011); *Williams v. Craft Dev., LLC*, 199 N.C.App. 500, 682 S.E.2d 719, 723 (2009); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919, 923 (1991)).

Here, the Plaintiff was entitled to receive loaned monies from WCP and DPCL, pursuant to the terms of the loan documents. Those are the "fruits of the contract" insofar as the Plaintiff is concerned, and there is no dispute but that the Plaintiff received loaned monies. Rather, what the Plaintiff argues is that it is entitled, too, to retain the collateral it pledged as security – notwithstanding an avalanche of defaults and a failure to pay the notes at maturity – because the Plaintiff is not fond of the terms for which it bargained.

To be clear, the "fruits of the contract" are the monies paid to the Plaintiff. In fact, it is the repayment of those monies with interest – something the Plaintiff has failed to honor – that is the fruit of the contract for WCP and DPCL. And to the extent there is a claim for breach, in this instance, such a claim may be rightfully understood to belong to the Defendants – not the Plaintiff.

### iv.  Breach of Fiduciary Duty

The Plaintiff also theorizes that Mr. Drazin, a respected local attorney, has a conflict of interest and cannot serve as the trustee foreclosing the second deed of trust, since he is also counsel

13

to WCP and DPCL. In so doing, the Plaintiff not only ignores that the District of Columbia has a longstanding tradition of having creditors' attorneys act as trustees in connection with foreclosure proceeding but, too – and more importantly – that no actual breach of his fiduciary obligations has been alleged. The Plaintiff insists there is a conflict of interest, but does not – and cannot – point to a single action taken by Mr. Drazin that is not in precise conformity with his obligations as expressly set forth in the correlative deed of trust.

In his capacity as trustee, Mr. Drazin has (i) filed a Notice of Foreclosure Sale of Real Property or Condominium Unit, on the official form issued by the District of Columbia; (ii) caused that form to be served on all pertinent parties (including the Plaintiff and its counsel of record); (iii) scheduled a foreclosure auction; and (iv) made arrangements to have notice of that foreclosure auction advertised in the Washington Post. The notice is a matter of public record and was sent to the Plaintiff and its counsel; the time and date of the foreclosure are contained in the notice; the newspaper advertisements can be found online and in the pages of the region's most-read daily newspaper.

Further, Mr. Drazin's service as a trustee is largely ministerial in nature, being intentionally devoid of latitude to make decisions beyond the date/time of a foreclosure sale and where to publish advertisements for the sale. Under District of Columbia law:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 356 (D.D.C. 2011) (quoting *In re Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.*, 412 A.2d 1194, 1197 (D.C.1980)); *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 377

n. 21 (D.C. Cir. 1974); citing *Sheridan v. Perpetual Bldg. Ass'n*, 322 F.2d 418, 422 (D.C. Cir.

1963)). The obligations of a trustee under a deed of trust are, accordingly, quite limited in scope,

consisting almost entirely of (a) properly giving notice of an auction, (b) carrying out that auction,

and (c) then delivering a deed to the buyer. *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162,

169 (D.D.C. 2013).

Stated otherwise, Mr. Drazin's duty as trustee is to (i) obey the plain language of the deed

of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as

they relate to foreclosures. This is a case where the underlying promissory note matured in March

2023 and has not been paid off; the deed of trust plainly provides for a foreclosure to occur in such

an instance. And Mr. Drazin, as an experienced local attorney, is familiar with the laws governing

how that procedure is to accordingly be executed.

To be sure, there is no contention in this case that the Plaintiff has not defaulted under the

deed of trust. To the contrary, it is manifest the underlying loan matured without payment after a

preceding series of independent defaults that include (i) the Plaintiff failing to make various

payments in a timely fashion; (ii) the Plaintiff failing to make other payments altogether; and (iii)

the Plaintiff allowing a municipal lien to accrue on the real estate. So Mr. Drazin proceeding with

a foreclosure, under the deed of trust, is both ministerial in nature and uninformed by any pertinent

information not held by others.

Equally, this is not a case where there is any allegation that Mr. Drazin has erred in his

duties as trustee. To the contrary, it is facially apparent that he filed the correct form for a Notice

of Foreclosure Sale of Real Property or Condominium Unit, that he gave proper notice thereof,

that he has scheduled an auction, and that he has caused that auction to be advertised. He has, in

the words of the *Evans* Court, "faithfully executed [his] duties." And in so doing, he has most certainly not undertaken any actions that render him subject to suit herein.

### v.   The Defaults are Not "Technical" and Do Give Rise to Foreclosure

Remarkably, the Plaintiff describes the breaches giving rise to a default under the loan documents as being "technical" in nature, not inviting foreclosure. Motion at § IV(b)(7). The Plaintiff also alleges these violations to be "pretextual," *Id.* at § IV(b)(5), and that the violations have been cured, *Id.* at § IV(b)(7). The former assertion is belied by the undisputed record; the latter assertions are plainly counter-factual in nature.

To be sure, failing to pay a loan at maturity is not a "technical" breach of the promissory note or deed of trust. Indeed, it is difficult to fathom a more substantive breach. Equally, failing to make regular payments on time is not a "technical" violation. Nor is altogether failing to make interest payments, for multiple months (without ever paying those obligations, even tardily) a "technical" violation. And, similarly, allowing a senior to encumber a lender's collateral, because of the non-payment of a government fine, is most certainly not a "technical" breach of loan documents.

Vis a vis the alleged "cure" of these violations, it is undisputed that the loan balances remain unpaid, despite the notes having matured. Yes, *some* of the late payments were ultimately made on installment interest, but several were not. And perhaps the senior lien was ultimately retired (that seems less clear). Still, as this Honorable Court has previously observed, those breaches would be alone sufficient to invite foreclosure under the loan documents (which do not allow for cures to void defaults of these types); yet, to focus on those breaches is to miss the forest for the trees: the Plaintiff owes more than $8.5 million on account of loans that matured and were

not repaid upon maturity. And this has been true for more than three months, with the maturity

having occurred toward the end of March 2023.[5]

### vi.   The Late Fee is Enforceable

The Plaintiff next argues that a late fee bargained for in the promissory notes is not

enforceable, on the basis that it is a forbade liquidated damages clause. Yet this contention is

without legal support, as the District of Columbia expressly allows parties to contractually bargain

for damages arising on account of contractual breaches.

The District of Columbia Court of Appeals has made clear that liquidated damages

provisions of contracts are allowable in nature:

> "It is well-settled that parties to a contract may agree in advance to a sum certain to
> be forfeited as liquidated damages for breach of contract." This is because a
> liquidated damages clause serves "to simplify the resolution of a breach of contract
> dispute" by "giving the parties an opportunity to resolve the damages question
> without resorting to litigation" and by "fix[ing] the measure of damages at the
> outset before a breach even occurs."

*Proulx v. 1400 Pennsylvania Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019) (quoting *Burns v.*

*Hanover Ins. Co.*, 454 A.2d 325, 237 (D.C. 1982); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d

359, 367 (D.C. 1984)).

The Plaintiff devotes but a single paragraph to this contention in its Motion (despite an

agreement to exceed the page count ordinarily governing motions practice). This is problematic,

inasmuch as the burden would be on the Plaintiff to establish that (i) the late fee in the loan

documents is a penalty; (ii) the late fee is not reasonable compensation for a breach; and (iii) the

---

[5] The Motion also argues that an affiliate relationship does not invite a breach of the loan
documents. Motion at § IV(b)(6). WCP and DPCL dispute this assertion and believe the relevant
third party entities to be affiliates of the Plaintiff, but such is besides the point for purposes of the
instant Motion. As noted *passim*, there are more than six separate breaches of the loan documents
– not involving any affiliates – that punctuate the frivolity of the Plaintiff's claims.

late fee was unreasonable at the time the promissory notes were entered into. *Id.; Proulx v. 1400 Pennsylvania Ave., SE, LLC,* 199 A.3d 667, 673 (D.C. 2019). The Motion makes no such showing.

To the contrary, WCP and DPCL loaned millions of dollars, expecting those monies to be repaid in a year. It has now been nearly seven months since those debts came due and the loans remain unpaid, leaving the lenders without access to their capital. The Defendants never bargained for an indefinite loan and, to the contrary, WCP and DPCL are in the business of making short term loans and being able to then redeploy their capital accordingly. It is thusly altogether sensible that there is a late fee when payments are not timely made, and it is undisputed that the late fee was agreed to by the Plaintiff when the promissory notes were executed.

Indeed, in the words of the *Proulx* Court, "We have ... consistently adhered to a general rule that one who signs a contract has a duty to read it and is obligated according to its terms.... [A]bsent fraud or mistake, one who signs a contract is bound by a contract which [s]he has an opportunity to read whether [s]he does so or not." *Proulx*, 199 A.3d at 672 (quoting *Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. 2017) (quoting *Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108, 1110 (D.C. 2002))).

### b. The Motion Does Not Demonstrate Irreparable Harm

The Motion should also be denied because the Plaintiff cannot show irreparable harm. While a foreclosure would serve to alienate the Plaintiff's interest in the Property, the Plaintiff has an adequate remedy at law to forestall the foreclosure, inasmuch as the Plaintiff is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code. This is the remedy normally invoked by commercial borrowers who face a foreclosure and do not wish to see it proceed; it is altogether unclear why the Plaintiff has not travelled this relatively simple and oft-invoked route.

Under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g.*, *Dist. of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, 367 A.2d 143, 144 (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

Here, the Motion makes clear that owning the subject property is the singular purpose of the Plaintiff's operations. Motion at § I. No tangential or other operations are alleged, nor does the Plaintiff purport to have any other assets or affairs. *Id.* Thusly, the Plaintiff could stay a foreclosure by filing a petition for bankruptcy relief. 11 U.S.C. § 362. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

### c. Public Policy Does Not Support Imposition of an Injunction

Rare is the defaulted commercial debtor that does not – rather vehemently – wish to stave off foreclosure of its collateral. Yet to entertain such drastic relief would be to encourage all of the defaulted borrowers of this city – commercial and consumer alike – to file cases in this Honorable Court, to allege their respective defaults are not sufficiently severe to merit foreclosure, and to point to the loss of encumbered property as an irreparable harm. As noted *supra*, the longstanding alternative course of action is to permit such controversies to be handled by bankruptcy courts, which are nearly custom-tailored to address the idiosyncrasies of such disputes. To permit otherwise, and afford injunctive relief in a case where the Plaintiff tacitly acknowledges breaches of the deed of trust but insists such should be ignored, would be to open a floodgate of vexatious filings.

This is all the more true where, as here, the defaulting party is an entity without any other assets or operations. The Plaintiff has, quite literally, nothing to lose by bringing this suit and seeking injunctive relief; with no unencumbered assets to be reached, the Plaintiff is without fear of the monetary sanctions that ordinarily serve to deter frivolity, and without any other business operations, the Plaintiff is without any concern about reputational harm or denigration of goodwill. Literally every similarly situated real estate holding company facing foreclosure would be incentivized to file a similar action and seek a similar injunctive remedy, if such were readily available. And yet public policy clearly disfavors such, with the bankruptcy courts being the designated venues for adjudication of such matters and with this Honorable Court's docket already being weighed down by myriad other matters.

**V.    Argument: If an Injunction is Entered, the Plaintiff Should be Required to Post a Bond**

Finally, the Motion (including the proposed order appended thereto) conveniently misses that entry of injunctive relief is, as a matter of law, necessarily accompanied by the requirement that the petitioning party post appropriate security. *See, e.g.*, District of Columbia R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained…"). In this case, the Plaintiff asks that the Defendants be enjoined from exercising rights against their collateral – while also not receiving any payments, whatsoever, on the monies they have loaned – for an indefinite period of time, as this litigation plays out. Such relief would, in turn, beget appreciable economic damage – especially since the Plaintiff acknowledges having no other assets from which to collect.

The total indebtedness *sub judice* is over $8.5 million. The debt is accruing interest at the rate of $4,828.13 per day. *See* Payoff Statements, attached to Motion as Exhibits K and L. And that represents the money WCP and/or DPCL would be able to make on their capital if they were not enjoined from taking contractually bargained for steps to recover that collateral. So it would be accordingly appropriate to set a bond herein at $1,762,267.45 – being one year of interest that will accrue while an injunction pends.

To be sure, litigation in this Honorable Court normally runs well in excess of a single year. And it may be reasonably surmised the bond will, accordingly, need to be revisited as the case progresses. But if the Plaintiff is to be permitted an injunction prohibiting WCP and DPCL from accessing their capital (an injunction that, as urged *supra*, ought not be granted in any event), a bond of one year's interest on that capital would seem the appropriate measure of security.

The Defendants are aware this number may seem palpably large. But so, too, are the ramifications injunction the Plaintiff seeks. The Plaintiff is not merely asking that a foreclosure be enjoined; the Plaintiff is – by extension – asking that WCP and DPCL be completely without access to their capital for however long this case may pend. That is an enormously expensive undertaking to ask of companies in the business of disbursing capital to the community, and the bond proposed (if an injunction is to be granted) is accordingly measured to reflect that damage. This is especially so since it is manifest, by the Plaintiff's own description of its affairs, that the Plaintiff will be wholly without monies or other assets to satisfy accruing damages should it fail to prevail in this action. Rule 65 clearly serves to ensure litigants not be afforded such an opportunity to proceed with an injunction to the financial peril of the parties against whom they seek relief.

## VI.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; (ii) alternatively, condition an injunction upon the posting of a bond in the amount of $1,762,267.45; and (iii) afford such other and further relief as may be just and proper.

Dated: July 20, 2023                               Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 20th day of July 2023, and a notice of filing should be served on all counsel of

record.

<div align="right">

<u>/s/ Maurice B. VerStandig</u>
Maurice B. VerStandig, Esq.

</div>

Exhibit A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Judge-in-Chambers**

|  |  |  |
|---|---|---|
| **423 KENNEDY ST. HOLDINGS** | : | |
| | : | |
| **Plaintiff** | : | **Case No. 2022 CAB 5903** |
| | : | **Judge-in-Chambers** |
| v. | : | |
| | : | **CLOSED CASE** |
| **DP CAPITAL, LLC, Et. Al.** | : | |
| | : | |
| **Defendant.** | | |

<div align="center"><u>**ORDER**</u></div>

This case was set before the Court for a Temporary Restraining Order Hearing at 10:00 a.m. on the 6th day of February 2023. Counsel for Plaintiff and Defendants appeared before the Court today. Plaintiff seeks to enjoin Defendants from foreclosing on 423 Kennedy St. NW, Lot 56, Square 3260, Washington, DC. However, both Plaintiff and Defendant agree that no such foreclosure is pending or advertised. Plaintiff provided no other grounds to demonstrate imminent, irreparable harm. Additionally, the Court finds Defendant has acted in accordance with the terms of the contract.

Accordingly, the Court finds Plaintiff's injury to be too speculative and non-concrete. Plaintiff's current pleadings do not satisfy the elements for a temporary restraining order or a preliminary injunction as both forms of injunction require imminent, irreparable harm. Here, the harm is neither imminent nor irreparable. The Court reviewed Plaintiff's cited case law but found no viable reason to rule in any other way than as follows. The Court will deny Plaintiff's Motion for Temporary Restraining Order and vacate the upcoming Preliminary Injunction Hearing in this case. Plaintiff may refile when its injuries are both imminent and irreparable.

Wherefore, it is this 6th day of February 2023, hereby

**ORDERED**, that the above captioned case is **DISMISSED WITHOUT PREJUDICE.**

_____

Zinora Mitchell-Rankin, Senior Judge
Sitting in Judge-in-Chambers

Copies to:

423 Kennedy St. Holdings
Plaintiff.
Via Odyssey

DP Capital LLC
WCP Fund
Daniel Huertas
Russell Drazin
Defendant
Via Odyssey

Exhibit B

### 423 KENNEDY ST HOLDINGS, LLC HISTORY OF LOAN DOCUMENT DEFAULTS
### $1,256,000.00 LOAN FROM WCP FUND I LLC

**First Default**
$12,560.00 Interest Payment
Due: May 1, 2022
Paid: July 14, 2022
Payment Made 74 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Fifth Default**
$12,560.00 Interest Payment
Due: December 1, 2022
Paid: December 8, 2022
Payment Made 7 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Second Default**
$12,978.67 Interest Payment
Due: June 1, 2022
Paid: July 14, 2022
Payment Made 43 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Sixth Default**
$12,978.67 Interest Payment
Due: January 1, 2023
Paid: n/a
Payment Never Made
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Third Default**
$12,560.00 Interest Payment
Due: July 1, 2022
Paid: July 14, 2022
Payment Made 13 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Seventh Default**
$12,978.67 Interest Payment
Due: February 1, 2023
Paid: n/a
Payment Never Made
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Fourth Default**
$1,590.00 Lien Placed on Property
November 17, 2022
Lienor: DC Department of Buildings
Reason: "Failure to Pay Fines and Penalties"
Land Records Document #2022114185
*See* Deed of Trust §§ 1.0; 4.1; 4.2; 5.1; 7.2

**Eighth Default**
$11,722.67 Interest Payment
Due: March 1, 2023
Paid: n/a
Payment Never Made
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Ninth Default**
Payment of Full Sum at Maturity
Due: March 31, 2023
Paid: n/a
Payment Never Made
Amount Now Due: $1,569,730.80
*See* Promissory Note § 3;
Deed of Trust § 7.1

Exhibit C

| Name | Status Reas | Payment Due On | Days Past | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late Fee) | Amount Due (Default Interest) |
|------|-------------|----------------|-----------|-----------------|----------------|------------------|----------------------|----------------------|------------------------------|
| LPAY-113012 | Unpaid | 8/1/2023 | -13 | | | REO | 12978.67 | 0.00 | 12978.67 |
| LPAY-111259 | Unpaid | 7/1/2023 | 18 | | | Defaulted | 12560.00 | 0.00 | 12560.00 |
| LPAY-109379 | Unpaid | 6/1/2023 | 48 | | | Defaulted | 12978.67 | 0.00 | 12978.67 |
| LPAY-108293 | Unpaid | 5/1/2023 | 79 | | | Defaulted | 12560.00 | 0.00 | 12560.00 |
| LPAY-106376 | Unpaid | 4/1/2023 | 109 | | | Defaulted | 12978.67 | 0.00 | 12978.67 |
| LPAY-104932 | Unpaid | 3/1/2023 | 140 | | | Defaulted | 11722.67 | 0.00 | 11722.67 |
| LPAY-103819 | Unpaid | 2/1/2023 | 168 | | | Defaulted | 12978.67 | 0.00 | 12978.67 |
| LPAY-102228 | Unpaid | 1/1/2023 | 199 | | | Defaulted | 12978.67 | 0.00 | 12978.67 |
| LPAY-100115 | Paid | 12/1/2022 | 230 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 12560.00 | 0.00 | 0.00 |
| LPAY-098554 | Paid | 11/1/2022 | 260 | 11/4/2022 14:05 | Stripe | Current | 12978.67 | 0.00 | 0.00 |
| LPAY-096476 | Paid | 10/1/2022 | 291 | 9/26/2022 8:00 | Wire | Current | 12560.00 | 0.00 | 0.00 |
| LPAY-093144 | Paid | 9/1/2022 | 321 | 9/1/2022 8:00 | ACH | Current | 12978.67 | 0.00 | 0.00 |
| LPAY-090203 | Paid | 8/1/2022 | 352 | 8/1/2022 8:00 | Wire | Current | 12978.67 | 0.00 | 0.00 |
| LPAY-087896 | Paid | 7/1/2022 | 383 | 7/14/2022 8:00 | Wire | Late (5-15 Days) | 12560.00 | 0.00 | 0.00 |
| LPAY-085179 | Paid | 6/1/2022 | 413 | 7/14/2022 8:00 | Wire | Delinquent (30-60 D | 12978.67 | 0.00 | 0.00 |
| LPAY-083482 | Paid | 5/1/2022 | 444 | 7/14/2022 8:00 | Wire | Delinquent (60-90 D | 12560.00 | 0.00 | 0.00 |
| LPAY-082525 | Paid | 3/31/2022 | 475 | 3/31/2022 0:00 | HUD | Originated | 418.67 | 0.00 | 0.00 |

| Name | Status Reason | Payment Due On | Days Past Due ( | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late | Amount Due (Default In | Amount Due (P | Amount Due (Total) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-113012 | Unpaid | 8/1/2023 | -13 | | | REO | 12978.67 | 0.00 | 12978.67 | | 25957.34 |
| LPAY-111259 | Unpaid | 7/1/2023 | 18 | | | Defaulted | 12560.00 | 0.00 | 12560.00 | | 25120.00 |
| LPAY-109379 | Unpaid | 6/1/2023 | 48 | | | Defaulted | 12978.67 | 0.00 | 12978.67 | | 25957.34 |
| LPAY-108293 | Unpaid | 5/1/2023 | 79 | | | Defaulted | 12560.00 | 0.00 | 12560.00 | | 25120.00 |
| LPAY-106376 | Unpaid | 4/1/2023 | 109 | | | Defaulted | 12978.67 | 0.00 | 12978.67 | | 25957.34 |
| LPAY-104932 | Unpaid | 3/1/2023 | 140 | | | Defaulted | 11722.67 | 0.00 | 11722.67 | | 23445.34 |
| LPAY-103819 | Unpaid | 2/1/2023 | 168 | | | Defaulted | 12978.67 | 0.00 | 12978.67 | | 25957.34 |
| LPAY-102228 | Unpaid | 1/1/2023 | 199 | | | Defaulted | 12978.67 | 0.00 | 12978.67 | | 25957.34 |
| LPAY-100115 | Paid | 12/1/2022 | 230 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 12560.00 | 0.00 | 0.00 | | 12560.00 |
| LPAY-098554 | Paid | 11/1/2022 | 260 | 11/4/2022 14:05 | Stripe | Current | 12978.67 | 0.00 | 0.00 | | 12978.67 |
| LPAY-096476 | Paid | 10/1/2022 | 291 | 9/26/2022 8:00 | Wire | Current | 12560.00 | 0.00 | 0.00 | | 12560.00 |
| LPAY-093144 | Paid | 9/1/2022 | 321 | 9/1/2022 8:00 | ACH | Current | 12978.67 | 0.00 | 0.00 | | 12978.67 |
| LPAY-090203 | Paid | 8/1/2022 | 352 | 8/1/2022 8:00 | Wire | Current | 12978.67 | 0.00 | 0.00 | | 12978.67 |
| LPAY-087896 | Paid | 7/1/2022 | 383 | 7/14/2022 8:00 | Wire | Late (5-15 Days) | 12560.00 | 0.00 | 0.00 | | 12560.00 |
| LPAY-085179 | Paid | 6/1/2022 | 413 | 7/14/2022 8:00 | Wire | Delinquent (30-60 Days) | 12978.67 | 0.00 | 0.00 | | 12978.67 |
| LPAY-083482 | Paid | 5/1/2022 | 444 | 7/14/2022 8:00 | Wire | Delinquent (60-90 Days) | 12560.00 | 0.00 | 0.00 | | 12560.00 |
| LPAY-082525 | Paid | 3/31/2022 | 475 | 3/31/2022 0:00 | HUD | Originated | 418.67 | 0.00 | 0.00 | | 418.67 |

| Name | Amount Paid (Interest) | Amount Paid (Interest) Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Ir | Amount Paid (F | Amount Paid (Total) | Beginning Princ | Ending Principa | Cumulative Int | Unapplied Func | Principal Paydo | Balance (Total) | Scheduled Payment Sta | balance (no late |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-113012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 25957.34 | Unscheduled | 25957.34 |
| LPAY-111259 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 25120.00 | Unscheduled | 25120.00 |
| LPAY-109379 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 25957.34 | Unscheduled | 25957.34 |
| LPAY-108293 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 25120.00 | Unscheduled | 25120.00 |
| LPAY-106376 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 25957.34 | Unscheduled | 25957.34 |
| LPAY-104932 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 23445.34 | Unscheduled | 23445.34 |
| LPAY-103819 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 25957.34 | Unscheduled | 25957.34 |
| LPAY-102228 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 25957.34 | Unscheduled | 25957.34 |
| LPAY-100115 | 12560.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12560.00 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-098554 | 12978.67 | 0.00 | 0.00 | 0.00 | 0.00 | 12978.67 | | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | |
| LPAY-096476 | 12560.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12560.00 | | | | 0.00 | 0.00 | 0.00 | ACH - Failed | |
| LPAY-093144 | 12978.67 | 0.00 | 0.00 | 0.00 | 0.00 | 12978.67 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-090203 | 12978.67 | 0.00 | 0.00 | 0.00 | 0.00 | 12978.67 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-087896 | 12560.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12560.00 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-085179 | 12978.67 | 0.00 | 0.00 | 0.00 | 0.00 | 12978.67 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-083482 | 12560.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12560.00 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-082525 | 418.67 | 0.00 | 0.00 | 0.00 | 0.00 | 418.67 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |

Exhibit D

Filed & Recorded
11/17/2022 05:07 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS



**GOVERNMENT OF THE
DISTRICT OF COLUMBIA**
DC DEPARTMENT OF
BUILDINGS
OFFICE OF CIVIL
INFRACTIONS

**CERTIFICATE OF DELINQUENT FINES**
FOR FAILURE TO PAY FINES AND PENALTIES ASSESSED PURSUANT TO
THE CIVIL INFRACTIONS ACT OF 1985, AS AMENDED

DISTRICT OF COLUMBIA

vs.

423 KENNEDY ST HOLDINGS LLC

Owner of Record

1629 K ST NW STE 300

Washington, DC 20006

Date: 11/17/2022

Square: 3260  Suffix:  Lot: 0056

NOI No. :  VR22-00182

Address of Premises:

423 KENNEDY ST NW

**This Certificate is filed under the authority of and pursuant to Section 2-1802.03(i)(1)
of the D.C. Code, which establishes a continuing lien upon the real property
(including improvements) and personal property of an owner in the District of
Columbia who fails to pay all outstanding fines, penalties or other costs associated
with a final adjudication of a Notice of Infraction issued pursuant to the Civil
Infractions Act of 1985, as amended.**

**This Certificate, from the date of its filing, has the force and effect, as against the
aforesaid delinquent party or parties, of a lien created by a judgment granted by the
Superior Court of the District of Columbia. This lien remains in force and effect until
the entire assessed amount set forth below, together with penalties and other costs
(including, but not limited to, court costs and administrative fees) are paid. Failure to
pay the outstanding amount within ninety (90) days after the date to appeal the final
decision and order, if no appeal has been filed, may result in the sale of the owner's
property for costs at the next tax sale in the same manner and under the same
conditions as property sold for delinquent general taxes.**

**Document No: 1**

**Assessed Amount: $1590.00**

By

Elizabeth Harshaw
Office of Civil Infractions
DC Department of Buildings

Exhibit E

| Name | Status Reason | Payment Due On | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late Fee) | Amount Due (Default Interest) | Amount Due (Total) |
|------|---------------|----------------|-----------------|----------------|------------------|----------------------|----------------------|------------------------------|--------------------|
| LPAY-113319 | Unpaid | 8/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 |
| LPAY-111607 | Unpaid | 7/1/2023 | | | Defaulted | 44,846.67 | | 74,877.47 | 119,724.14 |
| LPAY-109740 | Unpaid | 6/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 |
| LPAY-108036 | Unpaid | 5/1/2023 | | | Defaulted | 44,846.67 | | 74,877.47 | 119,724.14 |
| LPAY-106114 | Unpaid | 4/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 |
| LPAY-104722 | Unpaid | 3/1/2023 | | | Defaulted | 41,856.89 | - | 69,885.64 | 111,742.53 |
| LPAY-103615 | Unpaid | 2/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 |
| LPAY-102023 | Unpaid | 1/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 |
| LPAY-100623 | Paid | 12/1/2022 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 44,846.67 | - | - | 44,846.67 |
| LPAY-098385 | Paid | 11/1/2022 | 11/1/2022 8:00 | ACH | Current | 46,166.18 | - | - | 46,166.18 |
| LPAY-096363 | Paid | 10/1/2022 | 10/1/2022 0:00 | Pre-Paid Interest | Current | 43,025.07 | - | - | 43,025.07 |
| LPAY-093110 | Paid | 9/1/2022 | 9/1/2022 0:00 | Pre-Paid Interest | Current | 42,427.02 | - | - | 42,427.02 |
| LPAY-090197 | Paid | 8/1/2022 | 8/1/2022 0:00 | Pre-Paid Interest | Current | 40,014.28 | - | - | 40,014.28 |
| LPAY-087965 | Paid | 7/1/2022 | 7/1/2022 0:00 | Pre-Paid Interest | Current | 37,151.17 | - | - | 37,151.17 |
| LPAY-085266 | Paid | 6/1/2022 | 6/1/2022 0:00 | Pre-Paid Interest | Current | 36,924.24 | - | - | 36,924.24 |
| LPAY-083485 | Paid | 5/1/2022 | 5/1/2022 0:00 | Pre-Paid Interest | Current | 31,628.07 | - | - | 31,628.07 |
| LPAY-080468 | Paid | 3/31/2022 | 3/31/2022 0:00 | HUD | Originated | 1,008.80 | - | - | 1,008.80 |

| Note | Status Reason | Payment Due On | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late Fee) | Amount Due (Default Interest) | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Interest Prepaid) | Amount Paid (Late Fee) | Amount Paid (Default Interest) | Amount Paid (Principal) | Amount Paid (Total) | Balance (Total) | Balance Inc Mo Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111919 | Unpaid | 8/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 | - | - | - | - | - | - | 123,714.95 | 123,714.95 |
| LPAY-111687 | Unpaid | 7/1/2023 | | | Defaulted | 44,846.67 | - | 74,877.47 | 119,724.14 | - | - | - | - | - | - | 119,724.14 | 119,724.14 |
| LPAY-109790 | Unpaid | 6/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 | - | - | - | - | - | - | 123,714.95 | 123,714.95 |
| LPAY-108036 | Unpaid | 5/1/2023 | | | Defaulted | 44,846.67 | - | 74,877.47 | 119,724.14 | - | - | - | - | - | - | 119,724.14 | 119,724.14 |
| LPAY-106114 | Unpaid | 4/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 | - | - | - | - | - | - | 123,714.95 | 123,714.95 |
| LPAY-104722 | Unpaid | 3/1/2023 | | | Defaulted | 41,856.89 | - | 69,885.64 | 111,742.53 | - | - | - | - | - | - | 111,742.53 | 111,742.53 |
| LPAY-103612 | Unpaid | 2/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 | - | - | - | - | - | - | 123,714.95 | 123,714.95 |
| LPAY-102211 | Unpaid | 1/1/2023 | | | Defaulted | 46,341.56 | - | 77,373.39 | 123,714.95 | - | - | - | - | - | - | 123,714.95 | 123,714.95 |
| LPAY-100823 | Paid | 12/1/2022 | 11/8/2022 8:00 | Wire | Late (1-15 Days) | 44,846.67 | - | - | 44,846.67 | 44,846.67 | - | - | - | - | 44,846.67 | - | - |
| LPAY-096365 | Paid | 11/1/2022 | 11/1/2022 8:00 | ACH | Current | 46,166.18 | - | - | 46,166.18 | 30,573.03 | 15,593.15 | - | - | - | 46,166.18 | - | - |
| LPAY-092122 | Paid | 10/1/2022 | 9/1/2022 0:00 | Pre-Paid Interest | Current | 43,021.07 | - | - | 43,021.07 | 43,021.07 | - | - | - | - | 43,021.07 | - | - |
| LPAY-092122 | Paid | 9/1/2022 | 8/1/2022 0:00 | Pre-Paid Interest | Current | 42,427.02 | - | - | 42,427.02 | 42,427.02 | - | - | - | - | 42,427.02 | - | - |
| LPAY-087997 | Paid | 8/1/2022 | 7/1/2022 0:00 | Pre-Paid Interest | Current | 40,014.28 | - | - | 40,014.28 | 40,014.28 | - | - | - | - | 40,014.28 | - | - |
| LPAY-087965 | Paid | 7/1/2022 | 7/1/2022 0:00 | Pre-Paid Interest | Current | 37,151.17 | - | - | 37,151.17 | 37,151.17 | - | - | - | - | 37,151.17 | - | - |
| LPAY-085365 | Paid | 6/1/2022 | 5/1/2022 0:00 | Pre-Paid Interest | Current | 36,624.24 | - | - | 36,624.24 | 36,624.24 | - | - | - | - | 36,624.24 | - | - |
| LPAY-085465 | Paid | 5/1/2022 | 5/1/2022 0:00 | Pre-Paid Interest | Current | 31,628.07 | - | - | 31,628.07 | 31,628.07 | - | - | - | - | 31,628.07 | - | - |
| LPAY-083468 | Paid | 3/31/2022 | 3/31/2022 0:00 | HUD | Originated | 1,008.60 | - | - | 1,008.60 | 1,008.60 | - | - | - | - | 1,008.60 | - | - |

Exhibit F

**A. Settlement Statement**

U.S. Department of Housing and Urban Development

OMB Approval No 2502-0265

### B. Type of Loan

| | | | | | |
|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No. 22-0210 | 7. Loan No. | 8. Mortgage Insurance Case No. |
| 4. ☐ VA | 5. ☐ Conv Ins. | | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| 423 Kennedy St Holdings LLC 1629 K Street Northwest Washington, DC 20006 | | WCP Fund I, LLC 2815 Hartland Road Suite 200 Falls Church, VA 22043 |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
|---|---|---|
| 419-423 Kennedy Street, NW Washington, DC 20011 3260-0000-0056 | District Title | 03/31/2022 |
| | Place of Settlement: 1775 I Street Northwest #560 Washington, DC 20006 | Funding Date: 03/31/2022 Disbursement Date: 03/31/2022 |

### J. Summary of Borrower's Transaction

| 100. Gross Amount Due from Borrower | |
|---|---|
| 101. Contract sales price | |
| 102. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $5,319,912.45 |
| 104. Payoff to Washington Capital Partners | $4,546,765.88 |
| 105. | |
| Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | |
| 107. County Taxes | |
| 108. Assessments | |
| 109. | |
| 110. | |
| 111. | |
| 112. | |
| 120. Gross Amount Due from Borrower | $9,866,678.33 |
| 200. Amount Paid by or in Behalf of Borrower | |
| 201. Deposit | |
| 202. Principal amount of new loan(s) | $8,689,693.00 |
| 203. Existing loan(s) taken subject to | |
| 204. Transfer from 22-0210A | $1,176,985.33 |
| 205. | |
| 206. | |
| 207. | |
| 208. | |
| 209. | |
| Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | |
| 211. County Taxes | |
| 212. Assessments | |
| 213. | |
| 214. | |
| 215. | |
| 216. | |
| 217. | |
| 218. | |
| 219. | |
| 220. Total Paid by/for Borrower | $9,866,678.33 |
| 300. Cash at Settlement from/to Borrower | |
| 301. Gross amount due from borrower (line 120) | $9,866,678.33 |
| 302. Less amounts paid by/for borrower (line 220) | $9,866,678.33 |
| 303. Cash  ☐ From  ☒ To Borrower | |

### K. Summary of Seller's Transaction

| 400. Gross Amount Due to Seller | |
|---|---|
| 401. Contract sales price | |
| 402. Personal property | |
| 403. | |
| 404. | |
| 405. | |
| Adjustment for items paid by seller in advance | |
| 406. City/Town Taxes | |
| 407. County Taxes | |
| 408. Assessments | |
| 409. | |
| 410. | |
| 411. | |
| 412. | |
| 420. Gross Amount Due to Seller | |
| 500. Reductions In Amount Due to Seller | |
| 501. Excess deposit (see instructions) | |
| 502. Settlement charges to seller (line 1400) | |
| 503. Existing loan(s) taken subject to | |
| 504. Payoff of first mortgage loan | |
| 505. Payoff of second mortgage loan | |
| 506. | |
| 507. | |
| 508. | |
| 509. | |
| Adjustments for items unpaid by seller | |
| 510. City/Town Taxes | |
| 511. County Taxes | |
| 512. Assessments | |
| 513. | |
| 514. | |
| 515. | |
| 516. | |
| 517. | |
| 518. | |
| 519. | |
| 520. Total Reduction Amount Due Seller | |
| 600. Cash at Settlement to/from Seller | |
| 601. Gross amount due to seller (line 420) | |
| 602. Less reductions in amounts due seller (line 520) | |
| 603. Cash  ☒ To  ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to provide this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

Certified True Copy

**L. Settlement Charges**

| | | |
|---|---|---|
| **700.** | | |
| Division of commission (line 700) as follows : | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800.** | | |
| 801. Our origination charge payable to DP Capital, LLC | $217,242.33 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee to CL Group LLC | $2,950.00 | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Construction Draw to WCP Fund I LLC | $4,650,000.00 | |
| 808. Loan Processing Fee to DP Capital LLC - POC by $1,000.00 | $2,000.00 | |
| 809. | | |
| 810. | | |
| **900.** | | |
| 901. Daily interest charges from 03/31/2022 to 04/01/2022 @ $1008.8000 /day | $1,008.80 | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's Insurance to Chenault Insurance Services, LLC | $22,185.00 | |
| 904. Prepaid interest to WCP Fund I LLC | $246,763.00 | |
| **1000.** | | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| **1100. Title Charges** | | |
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's title insurance to Fidelity National Title Insurance Company | $20,796.05 | |
| 1104. Lender's title policy limit $10,862,116.25 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settlement Fee to District Title | $495.00 | |
| 1107. Title Commitment Fee to District Title | $738.56 | |
| 1108. Release Tracking Fee to Require | $38.49 | |
| 1109. E- Recording Fee to Simplifile | $5.02 | |
| 1110. Abstract Fee to Executive Abstracting Company | $160.00 | |
| 1111. Draw Fees 6 @ $100 to District Title | $600.00 | |
| 1112. CPL (Lender) to Fidelity National Title Insurance Company | $50.00 | |
| 1113. Notary Fees to Bancserv | $200.00 | |
| **1200.** | | |
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $0.00 Mortgage $116,250.00 to District of Columbia District Recording Office | $116,250.00 | |
| 1204. | | |
| **1300. Additional Settlement Charges** | | |
| 1301. Property Taxes GT 04/01/2022 to DC Treasurer | $37,547.52 | |
| 1302. Special Assessment Due - A2200101 to DC Treasurer | $726.18 | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | $5,319,912.45 | |

See signature addendum

**Signature Addendum**

423 Kennedy St Holdings LLC, a District of Columbia Limited
Liability Company

By: _____ 3/31/2022

By: Mel Melaku Negussie, Manager

_____   Date
                                    Date

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

_____   3/31/2022

Settlement Agent                    Date

A. Settlement Statement    U.S. Department of Housing and Urban Development    OMB Approval No 2502-0265

**B. Type of Loan**

| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No. 22-0210-A | 7. Loan No. | 8. Mortgage Insurance Case No. |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv Ins. | | | | |

C. Note:    This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| 423 Kennedy St Holdings LLC 1629 K Street Northwest Washington, DC 20006 | | WCP Fund I, LLC 2815 Hartland Road Suite 200 Falls Church, VA 22043 |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: 03/31/2022 |
|---|---|---|
| 419-423 Kennedy Street, NW Washington, DC 20011 3260-0000-0056 | District Title Place of Settlement: 1775 I Street Northwest #560 Washington, DC 20006 | Funding Date: 03/31/2022 Disbursement Date: 03/31/2022 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $79,014.67 | 403. | |
| 104. Transfer to 22-0210 | $1,176,985.33 | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due from Borrower** | $1,256,000.00 | **420. Gross Amount Due to Seller** | |
| **200. Amount Paid by or in Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $1,256,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | $1,256,000.00 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | $1,256,000.00 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $1,256,000.00 | 602. Less reductions in amounts due seller (line 520) | |
| 303. Cash ☐ From ☒ To Borrower | | 603. Cash ☒ To ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

*Certified True Copy*

| L. Settlement Charges | Paid from Funds at Settlement | Paid from Funds at Settlement |
|---|---|---|
| **700. Total Real Estate Broker Fees** | | |
| Division of commission (line 700) as follows : | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800. Items Payable in Connection with Loan** | | |
| 801. Our origination charge to DP Capital, LLC (3.5%) | $43,960.00 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee | | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Processing Fee to DP Capital LLC | $1,250.00 | |
| 808. | | |
| 809. | | |
| 810. | | |
| **900. Items Required by Lender to be Paid in Advance** | | |
| 901. Daily Interest charges from 03/31/2022 to 04/01/2022 @ $418.6667 /day | $418.67 | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's insurance | | |
| 904. | | |
| **1000. Reserves Deposited with Lender** | | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| **1100. Title Charges** | | |
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's title insurance to Fidelity National Title Insurance Company | $1,334.50 | |
| 1104. Lender's title policy limit $1,570,000.00 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settlement Fee to District Title | $495.00 | |
| 1107. | | |
| 1108. | | |
| **1200. Government Recording and Transfer Charges** | | |
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $ Mortgage $31,400.00 to District of Columbia District Recording Office | $31,400.00 | |
| 1204. | | |
| **1300. Additional Settlement Charges** | | |
| 1301. Property Taxes to DC Treasurer – POC by borrower $34263.90 | | |
| 1302. | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | $79,014.67 | |

See signature addendum

Signature Authorization

**423 Kennedy St Holdings LLC, a District of Columbia Limited Liability Company**

By: _____ _____
                                                              Date

By: Mel Melaku Negussie, Manager

_____
Date

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

_____ _____
Settlement Agent                                              Date

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2023-CAB-004760
Judge Milton Lee
Next Event:  Initial Conference
                10/13/2023 at 9:30 am

## [PROPOSED] ORDER GRANTING PLAINTIFF'S CONSENT MOTION TO EXCEED PAGE LIMIT

UPON CONSIDERATION of the Plaintiff's Consent Motion to Exceed Page Limit in an Emergency Filing ("Motion"), and any opposition thereto, the Court funds good cause to grant the relief requested in the Motion.

Accordingly, it is this __21st__ day of ____July____, 2023, hereby

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the Plaintiff may file an Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale that does not exceed twenty-three (23) pages, including the signature page, the request for a hearing, the certificate of consent, and the certificate of service. The Exhibits are excluded from the page count. The Opposition may also exceed the page limit by an equal number of pages as the Emergency Motion.

SO ORDERED.

*M. Lee*
_____
The Honorable Milton Lee
Superior Court of the District of Columbia

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| 423 Kennedy St Holdings LLC, | |
| Plaintiff, | |
| v. | Case No. 2023 CAB 004260 |
| | Judge Milton Lee |
| DP Capital, LLC, et al. | |
| Defendants. | |

**SUPPLEMENT TO OPPOSITION TO PLAINTIFF'S
OPPOSED MOTION FOR TEMPORARY RESTRAINING
ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (DPCL, WCP, Mr. Huertas and Mr. Drazin being collectively known as the "Defendants"), by and through undersigned counsel, in supplement to their prior opposition to the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion," with the plaintiff being known as the "Plaintiff") and state as follows:

At a hearing on the Motion on July 21, 2023, the Plaintiff's claim for breach of contract – which had previously received minimal attention in the Motion – was highlighted in some detail, with the core of said claim being a contention that WCP was required to advance constructions draws under a promissory note secured by a first deed of trust. It accordingly bears observation that the subject promissory – admitted into evidence by stipulation at the same hearing – provides, *inter alia*:

> Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on

the loan amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion.

*See* Promissory Note, attached hereto as Exhibit A, at § 1.

In light of the foregoing, the record makes evident that (i) the parties had agreed in the loan documents that WCP was under no obligation to advance any construction draws, and (ii) as a consequence of such, the Plaintiff's claim for breach of contract fails as a matter of law.

Dated: July 22, 2023                             Respectfully Submitted,

                                                 /s/ Maurice B. VerStandig
                                                 Maurice B. VerStandig, Esq.
                                                 DC Bar #1034066
                                                 The VerStandig Law Firm, LLC
                                                 9812 Falls Road, #114-160
                                                 Potomac, Maryland 20854
                                                 Telephone: 301-444-4600
                                                 Facsimile: 301-444-4600
                                                 Electronic Mail: mac@mbvesq.com
                                                 *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 22nd day of July 2023, and a notice of filing should be served on all counsel of record.

                                                 /s/ Maurice B. VerStandig
                                                 Maurice B. VerStandig, Esq.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **423 KENNEDY ST HOLDINGS LLC,** | : |
| **Plaintiff** | : |
| | : |
| | : |
| **vs** | : **Docket No. 2023 CAB 4260** |
| | : |
| | : |
| **DP CAPITAL /D/B/A WASHINGTON** | : |
| **PARTNERS, ET. AL.** | : |
| **Defendant** | : |

**ORDER**

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of

Contract (Count 1); tortious interference with business relations (Court II); breach of

duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee

(Count VI).  The Complaint also seeks declaratory judgments regarding the meaning

of provisions in the two Deeds of Trusts and a determination that the liquidated

damages provisions are unenforceable because those provisions constitute a penalty

(Count IV).  Plaintiff also makes a claim that the trustee cannot serve in that position

because of the existence of a conflict (Count VII).  Finally, in Count V plaintiff's

seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count

V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary

Restraining Order to Prevent an Imminent Foreclosure Sale.  On July, 20, 2023

defendants filed an opposition.  The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order,

plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3)

that the balance of injuries favors granting an injunction, and 4) that the public

interest would be served by granting the request for an injunction.  *Ifill v. District of*

*Columbia,* 665 A.2d 185, 187-88 (D.C. 1995).  The moving party has the burden to

demonstrate that each of the factors, taken together, weigh in favor of issuing an

injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

### I.   Likelihood of Success on the Merits

### A.  The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the

existence of a valid contract between the parties; 2) an obligation or duty arising out

of the contract; 3) a breach of that duty; 4) damages caused by the breach.  *Tsintolas*

*Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009).  There is no real dispute

regarding whether there was a valid contract between the parties.  The parties do not

agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants

improperly discontinued performance of the contract by stopping construction draws

for the 423 Kennedy Street property (the project).  When defendants discontinued

construction draws, they knew that plaintiff would not be able to move forward with

the project.  Shortly after the construction draws stopped, defendant gave notice of

default to plaintiffs.  Plaintiffs claim that there is no basis for the default because

plaintiffs had complied with the terms of both deeds of trust and the reasons advanced

by defendants for the default is nothing more than a pretext.  According to plaintiff,

the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain

control of the 423 Kennedy Street project before its completion.  Plaintiffs argues that

it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to

continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust

because plaintiffs continually made late payments the loan.  In addition, defendant

argues that plaintiff was in default because the District of Columbia Department of

Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine

due on that infraction remained unpaid causing a lien to be placed on the 423

property.  Based on the terms of the deed of trust, defendants argue, that this failure to

cure the lien caused by the failure to pay the infraction created a basis to default

loan.[1]  Lastly, defendants claim that plaintiffs have defaulted on the loan because they

failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423

Kennedy ST. Holdings along with several small investors known as Brighton KSDC

that owns the remaining shares.  423 Kennedy ST. Holdings is a sole purpose, limited

liability company that owns and has developed the 423 Kennedy Street property.

According to Mr. Negussie, his company entered into a construction financing loan

with the defendants and executed two deeds of trusts and two commercial deeds of

trust for each deed on March 31, 2022.  Approximately 50% of the project was

completed at the time of the refinancing.  The first commercial deed of trust was for

$8,689,693.00 and the second deed of trust was for $1,256.000.00.  Defendants claim

that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project.  According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.  Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy.  According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble.  423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance.  Those payoff statements did not reflect a default or late fees.[3]  On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development.  Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6]  When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin.  On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7]  The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868.969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the borrower or borrower's affiliates is an Event of Default."  Immediately below that passage, the email referenced the issuance of a District of Columbia Certificate of Delinquent Fines dated November 17, 2022.  Drazin further indicated that any unpaid principal, accrued interest, and any other charges would become immediately due and payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract claim because defendants' basis for default are a pretext and the stoppage of construction draws was an improper, purposeful act undertaken by defendant to cause the default on the loan because plaintiff would not be able to continue with the project without the construction draws.  Once construction draws ceased, plaintiff could not make interest payments in 2023 and would not be able to make payments necessary by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on March 31, 2023 and that plaintiffs had made no payments since the December 2022 interest payment.  Negussie also agreed that defendants' Exhibit 7 reflected the payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the loan were consistently late each month, 2) of the Certificate of Delinquent Fines issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs made no interest payments in 2023 and did not satisfy the loan by the maturity date of March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street.  There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction. Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan.  Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws.  Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws.  In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11]  Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022. Defendants provided notice there would be no further construction draws after October 2022.[13] In that same email Daniel Huertas inquired about the "status of the payoffs of both loans." Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14] The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96. There is no reference to a construction draw for the second deed of trust. A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15] The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022. Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing. Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id,* at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022. The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street. Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18] Neither notice identifies the basis for the default. Each of the payoff statements make no reference to unpaid late fees. Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants. While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement. In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws. Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.? What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced payments as construction draws.  Perhaps some of the most compelling evidence supporting the fact that the construction draws were part of the contract is that the payoff statements that reflect the terms of payments between the parties includes a reference to a construction draw balance that remained due.  In addition, Negussie testified that construction draws were consistently distributed for five or six months following each request made by plaintiffs with the last payment occurring in October 2022.  These facts are sufficient to establish that the parties acted as if the construction draws were part of the agreement that obligated the parties and that the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs.  Defendants argue that the failure of defendants to make construction draws does not excuse plaintiffs' noncompliance with the second deeds because there was no requirement for a construction draw on that agreement.  Defendants' argument glosses over the point that both deeds and their commercial counterparts were identical in almost all respects, were executed at the same time and were part and parcel of the same objective of the parties: the refinancing and development of the 423 Kennedy Street mixed use project.  Too conclude otherwise is to simply ignore the uncontroverted testimony of Negussie on each of these points and the objective facts that support that testimony.  The testimony further established that the parties treated the construction draws as a part of the contract and plaintiffs relied on those terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date.  In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default.  First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments.  It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem. Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments.  According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current.  Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately.  Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]  As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.

[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's
connection as an affiliate of Developer REI.  This does order not address that basis for the default
because the only testimony on this point was received from Mr. Negussie who indicated under oath
that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record
indicates that there was no basis for a default based on an affiliation.

creation.  This Court concludes that there is sufficient reliable evidence to conclude

that plaintiffs would have continued to make interest payments on the loan but for

defendants' unilateral decision to discontinue the agreed upon construction draws.

Even after the construction draws were discontinued, plaintiffs continued to make

monthly until the end of 2022.  There is no reason to believe that plaintiffs would not

have made payments by the maturity date given that the project was 75-80%

completed when the construction draws stopped.  Negussie's testimony that Huertas

discontinued the construction draws because the lenders were unhappy with work on

the Charles Paret project further supports plaintiffs' contention that the default was

actually a pretext.  Negussie testified that Huertas wanted 423 Kennedy to rescue the

Paret project by covering a $700,000 shortfall.  When Negussie refused to address the

shortfall created in a project that he was not involved with, it was not until then that

construction draws were discontinued, payoff statements were withdrawn and default

notices were issued.  It is more than curious that defendants issued a default notice on

the second deed that did not contain a construction draw provision while at the same

time included default notice on the 5501 1st Street project also under construction by

Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach

of contract.  The evidence presented by plaintiffs is more than sufficient to support

the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a

pretext.  A breach of the terms of a contract means an unjustified failure to perform

all of any part of what is promised in the contract.  *District Cablevision v. Limited

Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003).  The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the

parties and that initial breach caused plaintiff to be unable to make future payments

on the loan.

### B.  The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate

1) the existence of a valid contractual or other business relationship; 2) the

defendant's knowledge of the relationship; 3) intentional interference with that

relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279

(D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in

November 2022 that plaintiffs were engaged in efforts to refinance the loan.  The

email exchanges between Negussie and Huertas demonstrates this knowledge.  As

Negussie testified, defendants provided "clean" payoff statements  that were

necessary for the completion of the refinancing on two occasions close in time to the

Huertas emails and prior to December 2022.  The closing with Main Street Bank was

scheduled to take place prior to Thanksgiving but was delayed because of the holiday.

When the closing was delayed, defendants issued new payoff statements on

December 8, 2022 that reflected for the first time the default as well as default interest

and penalties that were due.  As Negussie testified these new payoff statements would

prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were

engaged in business relationship with Main Street Bank that included the creation of a

term sheet for a new loan.  Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank. The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank. The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan. As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere. Defendants have failed to

produce any evidence that would indicate otherwise.

### C.  The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale. Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association.,* 299 F.2d 463,

465 (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding.  There is some support for this position in

that the deeds of trust in Section 8.0 details the obligations of the trustee in the event

of a default and foreclosure.  Defendants further argue that the trustee's service is

largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of

default in December 2022, he had no contact with Mr. Drazin in connection with his

duties as trustee.  Contact with Drazin was suggested by Dan Huertas when Negussie

sought an explanation for the default.  According to Negussie, Huertas indicated that

additional information regarding the default would have to come from WCP's

attorney, Russell Drazin.  In a December 9th email, Drazin indicated that he

represented WCP in connection with the loans and went on to explain the basis for

the default issued on December 8, 2022.  The record does not indicate that plaintiffs

had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and
> duties imposed by the trust instrument itself, coupled with
> the applicable statute governing foreclosure sales in the
> District of Columbia."  Trustees on deeds must exercise
> their powers "with religious fidelity to ethical principles."
> Where a trustee has conflicting interest, the trustee bears
> the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In*

*re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994).  The trustee has a duty to both

the borrower and the lender.  Here, the record establishes that Drazin served as trustee

under the terms of the deed and had a fiduciary duty to act faithfully to both.  The

record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default.  At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure.  Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee.  *Sheridan,* 299 F.2d at 465  Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits.  Plaintiffs seek the appointment of substitute trustee given the existence of the conflict.  The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

## II.  Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them.  Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project.  In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units.  A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project.  As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money.  The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III.  Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant.  The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023.  In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well.  In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action.  As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project.  The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project.  While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

### V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the rule creates a mandatory imposition of a bond for the protection of the enjoined party has not been directly addressed by the District of Columbia Court of appeals.  The local rule is almost identical to the federal version, so federal precedent is instructive. The circuits are split on this issue and the circuits that have interpreted the rule as being discretionary have recognized several exceptions to the mandatory language. The District of Columbia Court of Appeals has suggested that the security requirement is phrased in mandatory terms with the amount of any bond imposed being left to the discretion of the trial court.  If the trial court exercises its discretion to waive the bond requirement, it is important that the trial judge states the reasons for taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354 A.2d 233, 237 (D.C. 1976).

Considering the underlying facts discussed in this order, the Court declines to impose a bond for the following reasons.  First, defendant have not provided any evidence of what an appropriate bond might be under the circumstances.  While defendants' counsel made a proffer of what might be appropriate, that proffer was not accompanied by any direct evidence that would demonstrate that the suggested bond was rationally related to any potential harm.  Second, plaintiffs testified that they made payments on the loan through the end of December 2022 even though defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward.  The clear import of that testimony was that plaintiffs had limited

funds available to continue in the project.  If the bond requirement were interpreted as

a mandatory requirement, the inability of a moving party to pay a bond would

effectively deny access to judicial review.  Lastly, equity would support the waiver of

the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary

injunction hearing with the trial on the merits.  It is the Court's intention to schedule

this matter for a combined hearing on a date convenient to the Court and available to

the parties.

### VI. Conclusion

The Court concludes that plaintiffs have made the showing necessary to

support the issuance of an order enjoining defendants from foreclosing on the 423

Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is

concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear

from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits

defendants from conducting a foreclosure sale on the property located at 423

Kennedy Street until further order of this Court or at any time before the conclusion

of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what

track should be used for a scheduling order.  The parties should also consider a more

expedited discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.


| __July 24, 2023__ | _____/s/_____ |
| Date | MILTON C. LEE, JR. |
| | ASSOCIATE JUDGE |


cc:  James D. Sadowski, Esq.
     Alexandria J. Smith, Esq.
     Counsel for Plaintiffs
     jds@gdllaw.com

     Maurice B. Versandig
     Counsel for Defendants
     mac@mbvesq.com

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No. 2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*, | **Next Event: Remote Emergency Motion Hearing** **July 25, 2023 at 10:30 A.M.** |
| **Defendant.** | |

## ORDER SETTING MOTION HEARING

This matter is before the Court on (1) Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023; and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on July 11, 2023. The Court shall set a Motion Hearing for July 25, 2023, at 10:30 a.m., and shall resolve the pending matters above.

Accordingly, based upon the entire record herein, it is this 24th day of July 2023, hereby:

**ORDERED** that the parties **SHALL APPEAR** for a Motion Hearing on Tuesday, July 25, 2023, at 10:30 a.m., before Judge Ebony M. Scott in courtroom 219. Instructions for participation in the Hearing are below.

**SO ORDERED**.

*Ebony M. Scott*

**Associate Judge Ebony M. Scott**

*(Signed in Chambers)*

**Copies via Odyssey to:**

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants*

## <u>VIRTUAL COURTROOM INSTRUCTIONS FOR COURTROOM 219</u>

During the period of remote operation, as determined by the Chief Judge of the Superior Court, some proceedings in matters on Calendar 8 will take place in <u>Virtual Courtroom 219</u>, which the parties and counsel may access in the following ways:

(1) Going to the WebEx website at https://dccourts.webex.com/meet/ctb219 or going to https://dccourts.webex.com and entering meeting ID number 129 315 2924; or

(2) Downloading the WebEx Meetings app, opening the app, selecting Join Meeting, and entering https://dccourts.webex.com/meet/ctb219; or

(3) Calling 1-844-992-4726 or 202-860-2110, then entering meeting ID number 129 315 2924#, then pressing # again to enter the meeting.

Parties having trouble connecting to their remote hearing may contact chambers at judgescottchambers@dcsc.gov as staff will be monitoring the e-mails closely during hearings.

<span style="color:red">**Failure to appear at a remote proceeding may result in the Court entering an unfavorable ruling against you, including dismissal of a case or entry of default.**</span>

## <u>COURTROOM PROTOCOL</u>

**Guidelines**:  When entering the virtual courtroom (by dialing in on a phone, or signing in through the website or app), a party or counsel should not attempt to speak because another hearing may be underway.  Each party should be automatically muted by the courtroom clerk when you first arrive.  If you are using the WebEx website or the app, you may check in with the courtroom clerk using the "chat" function.  If you are on a telephone, you should wait for your case to be called.

**Option to Appear In-Person for Remote Hearings**:  Even though your case has been set as a remote hearing, you have the choice to come in person to the Court for your hearing. If you would like to participate in person, please try to notify the Court before your hearing date. Whether you come in person or participate remotely, your case will still be fully heard by the Judge. Instructions for participation in remote hearings may be found above and here: https://www.dccourts.gov/services/remote-hearing-information.

**Exhibits**:  If you intend to rely on exhibits or other documents during the hearing, you must e-mail the exhibits to the Court at judgescottchambers@dcsc.gov, copying all sides, <u>no later than 5:00 p.m. three business days before the hearing</u>.  You must also file the exhibits on the docket and provide a copy of the exhibits to any witness before the hearing.  The <u>exhibits must be separately labeled</u> so that they can be easily identified by all parties and the Court during the remote hearing

Case 24-10023-ELG    Doc 19-1    Filed 08/09/24    Entered 08/09/24 15:40:07    Desc
Main Document    Page 263 of 637

eFiled
07/24/2023 7:53:18 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| 423 KENNEDY ST HOLDINGS LLC,<br><br>  *Plaintiff*,<br><br>v.<br><br>DP CAPITAL D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.<br><br>  *Defendants*. | 2023-CAB-004260<br>Judge Milton Lee<br>TRO Hearing Held:  7/21/23<br>Initial Conf. - 10/13/23 (9:30 a.m.) |

## PLAINTIFF'S OBJECTION AND RESPONSE TO THE "SUPPLEMENT" FILED BY THE DEFENDANTS

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy") by counsel, hereby objects to, and responds to, the "Supplement" that was filed by the Defendants on Saturday, July 22, 2023 to the Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("TRO Motion").

  1.  Preliminarily, 423 Kennedy notes that this Court's procedural rules do not generally allow for the filing of a "supplement".  The allowed filings are a motion, a response, and a reply.  What the Defendants filed was neither of those three things.

  2.  423 Kennedy further notes that the TRO motion was heard and argued on Friday, July 21, 2023.  At no point during the hearing, or after the hearing was concluded, did any party request leave to file a "Supplement".  The Court also did not request any supplemental briefing (on any issue).  As a result, the Supplement is not properly before the Court.

  3.  Nevertheless, the new argument raised for the first time in the Supplement, *i.e,* that Section 1 of the Notes bars a claim for breach of contract "as a matter of law", is easily dispatched.

1

4.      First, the loan documents were prepared by counsel for one or more of the Lender

Defendants and were not negotiable.  Compl. ¶¶ 24 and 30.[1]  As a result, the Court must construe

the loan documents against the Lender Defendants.  *See Cowal v. Hopkins,* D.C. App., 229 A.2d

452, 454 (1967) ("It is generally the law that any ambiguity in a contract must be construed

against the party who drafted it . . .") (internal citations omitted).

5.      Second, the full paragraph of Section 1 of the Deed of Trust Notes that was

quoted in the Supplement provides that:

> Borrower expressly and specifically agrees that the entire original
> principal balance of this Note, or any part thereof, may be withheld
> from Borrower *at the closing* on the loan amount memorialized by
> *this Note* and may be funded, if at all, in Lender's sole and absolute
> discretion.  Borrower further expressly and specifically agrees that
> interest shall accrue on only the total amount of the original
> principal balance that is disbursed and released from Lender to
> Borrower, until repaid.  If the loan Amount memorialized by this
> Note is not funded in whole or in part, so much of it as is unfunded
> shall be deemed repaid at the Maturity Date (defined below),
> applied in accordance with this Note.  **[FUNDING]**

Note at pages 1-2, Section 1 (italic and underlined emphasis added).

6.      There is no reference to either "construction" or to "construction draws" in

Section 1.  Section 1 states that "the entire principal balance, or any part thereof" may be

withheld "at the closing".  But "at the closing" here, the Lender Defendants did not avail

themselves of a potential option to not fund "the entire principal balance, or any part thereof",

rather, the loans went to closing and the loan was funded at closing.  After closing, most

construction draws contemplated by the loans were also funded.

---

[1]      These facts were confirmed by Mr. Negussie's testimony at the TRO Hearing.  Mr. Negussie
also testified, without any objection, that all of the facts stated in both the Complaint and the TRO
motion were true and correct.  As a result, the Court can accept those factual allegations as true.

2

7.      More importantly, at the TRO Hearing the undisputed testimony of Mr. Negussie

established that:

- this loan transaction involved a *construction* loan that was approved to allow 423 Kennedy to complete *construction* at the Property (emphasis added);

- there was an agreement (and an expectation) between 423 Kennedy and the Lender Defendants, both before and after the loan documents were signed, that construction draws would take place and would be funded by the lender and its servicing agent (the WCP);

- such an agreement/expectation was a common practice for a construction loan as it had occurred on all other construction loans that Mr. Negussie was involved with regarding the WCP;

- the agreement/expectation was memorialized in writing in multiple places (on the HUD-1 form signed by the lender at closing, in term sheets, on WCP's website portal, which contains a construction draw schedule, and in the payoff statements that were sent to 423 Kennedy (showing a remaining construction draw balance); and

- the Lender Defendants confirmed the agreement/expectation by actually funding construction draws up until the time that the WCP (via Mr. Daniel Huertas) unilaterally made his first move to torpedo the project by cutting off the funding of construction draws for no legitimate reason.

7.      The HUD-1 shows that the WCP Fund I, LLC was paid $4,650,000.00 at closing

for a "Construction Draw". *See* snip below from the HUD-1 (line 807):

| Items Payable in Connection with Loan | | |
|---|---|---|
| 801. Our origination charge payable to DP Capital, LLC | $217,242.33 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee to CL Group LLC | $2,950.00 | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Construction Draw to WCP Fund I LLC | $4,650,000.00 | |
| 808. Loan Processing Fee to DP Capital LLC - POC by $1,000.00 | $2,000.00 | |
| 809. | | |
| 810. | | |

Judge Exhibit F from the TRO Hearing at 2 (a copy of Exhibit F of the Opposition).[2]

---

[2]    The HUD-1 was introduced as "Judge Exhibit F" at the TRO hearing -- and is also a copy of Exhibit F to the Defendants' Opposition. That exhibit somehow found its way into the litigation bag of the undersigned, probably because it was not put into the exhibit binder by mistake at the conclusion of Mr. Negussie's testimony. Attached is a scanned copy of Judge Exhibit F.

3

8.      If it is true, as the Defendants now argue after failing at the TRO hearing to offer

any testimony to dispute Mr. Negussie's testimony, that the Lender Defendants had no obligation

to fund the loan or any construction draws, then the notes (and the entire loan transaction) would

fail for a different reason:  lack of mutuality.  In order for the notes to be a contract, the lender

must have had some performance obligations to 423 Kennedy.  Put another way, the notes

cannot be a contract if 423 Kennedy was required to make payments under the loans and the

Lender Defendant had no obligations to 423 Kennedy.  *See, e.g., Ghahremani v. Uptown*

*Partners, L.L.C.,* 2005 U.S. Dist. LEXIS 46348, *48 ("When there is no consideration or

mutuality of obligation, courts within the District of Columbia have held that equity cannot be

invoked to enforce a contract that lacks consideration."); *Dyer v. Bilaal,* 983 A.2d 349, 357

("Mutuality exists when each party agrees to do something it otherwise is under no legal

obligation to do, or to refrain from doing something it has a legal right to do.") (internal citations

omitted).

9.      For the foregoing reasons, the Court should reject the arguments in the

Supplement, both procedurally and substantively.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 23, 2023                        /s/ James D. Sadowski
                                                 James D. Sadowski (D.C. Bar No. 446635)
                                                 Alexandria J. Smith (D.C. Bar. No. 1781067)
                                                 801 17th Street, NW, Suite 1000
                                                 Washington, DC 20006
                                                 Telephone:  (202) 452-1400
                                                 Email:  jds@gdllaw.com
                                                 *Counsel for Plaintiff 423 Kennedy St Holdings LLC*

4862-9037-7330

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of this Plaintiff's Objection and Response to the

"Supplement" filed by the Defendants was served by the Court's electronic filing system this

24th day of July 2023, and a notice of filing should be served on all counsel of record.


/s/ James D. Sadowski
James D. Sadowski

4862-9037-7330

Exhibit F

## A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB Approval No 2502-0265

### B. Type of Loan

| | | | |
|---|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No. 22-0210 |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 7. Loan No. |
| | | | 8. Mortgage Insurance Case No. |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| 423 Kennedy St Holdings LLC 1629 K Street Northwest Washington, DC 20006 | | WCP Fund I, LLC 2815 Hartland Road Suite 200 Falls Church, VA 22043 |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
|---|---|---|
| 419-423 Kennedy Street, NW Washington, DC 20011 3260-0000-0056 | District Title | 03/31/2022 |
| | Place of Settlement: 1775 I Street Northwest #560 Washington, DC 20006 | Funding Date: 03/31/2022 Disbursement Date: 03/31/2022 |

### J. Summary of Borrower's Transaction · K. Summary of Seller's Transaction

| 100. Gross Amount Due from Borrower | | 400. Gross Amount Due to Seller | |
|---|---|---|---|
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $5,319,912.45 | 403. | |
| 104. Payoff to Washington Capital Partners | $4,546,765.88 | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due from Borrower | $9,866,678.33 | 420. Gross Amount Due to Seller | |
| 200. Amount Paid by or in Behalf of Borrower | | 500. Reductions In Amount Due to Seller | |
| 201. Deposit | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $8,689,693.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Transfer from 22-0210A | $1,176,985.33 | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid by/for Borrower | $9,866,678.33 | 520. Total Reduction Amount Due Seller | |
| 300. Cash at Settlement from/to Borrower | | 600. Cash at Settlement to/from Seller | |
| 301. Gross amount due from borrower (line 120) | $9,866,678.33 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $9,866,678.33 | 602. Less reductions in amounts due seller (line 520) | |
| 903. Cash ☐ From ☒ To Borrower | | 603. Cash ☒ To ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

Certified True Copy

**L. Settlement Charges**

| | | |
|---|---|---|
| Division of commission (line 700) as follows : | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800. Items Payable in Connection with Loan** | | |
| 801. Our origination charge payable to DP Capital, LLC | $217,242.33 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee to CL Group LLC | $2,950.00 | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Construction Draw to WCP Fund I LLC | $4,650,000.00 | |
| 808. Loan Processing Fee to DP Capital LLC - POC by $1,000.00 | $2,000.00 | |
| 809. | | |
| 810. | | |
| **900. Items Required by Lender to be Paid in Advance** | | |
| 901. Daily Interest charges from 03/31/2022 to 04/01/2022 @ $1008.8000 /day | $1,008.80 | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's Insurance to Chenault Insurance Services, LLC | $22,185.00 | |
| 904. Prepaid Interest to WCP Fund I LLC | $246,763.00 | |
| **1000. Reserves Deposited with Lender** | | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| **1100. Title Charges** | | |
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's title insurance to Fidelity National Title Insurance Company | $20,796.05 | |
| 1104. Lender's title policy limit $10,862,116.25 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settlement Fee to District Title | $495.00 | |
| 1107. Title Commitment Fee to District Title | $738.56 | |
| 1108. Release Tracking Fee to Require | $38.49 | |
| 1109. E- Recording Fee to Simplifile | $5.02 | |
| 1110. Abstract Fee to Executive Abstracting Company | $160.00 | |
| 1111. Draw Fees 6 @ $100 to District Title | $600.00 | |
| 1112. CPL (Lender) to Fidelity National Title Insurance Company | $50.00 | |
| 1113. Notary Fees to Bancserv | $200.00 | |
| **1200. Government Recording and Transfer Charges** | | |
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $0.00 Mortgage $116,250.00 to District of Columbia District Recording Office | $116,250.00 | |
| 1204. | | |
| **1300. Additional Settlement Charges** | | |
| 1301. Property Taxes GT 04/01/2022 to DC Treasurer | $37,547.52 | |
| 1302. Special Assessment Due - A2200101 to DC Treasurer | $726.18 | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | $5,319,912.45 | |

**See signature addendum**

Signature Addendum

423 Kennedy St Holdings LLC, a District of Columbia Limited
Liability Company

By: _Mel Negussie_ 3/31/2022                                        _____
                                                                                                      Date
By: Mel Melaku Negussie, Manager                    Date

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the
funds to be disbursed in accordance with this statement

_____                                        3/31/2022
Settlement Agent                                                                    Date

## A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB Approval No 2502-0265

### B. Type of Loan

| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No.<br>22-0210-A | 7. Loan No. | 8. Mortgage Insurance Case No. |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower:<br>423 Kennedy St Holdings LLC<br>1629 K Street Northwest<br>Washington, DC 20006 | E. Name & Address of Seller: | F. Name & Address of Lender:<br>WCP Fund I, LLC<br>2815 Hartland Road<br>Suite 200<br>Falls Church, VA 22043 |
|---|---|---|
| G. Property Location:<br>419-423 Kennedy Street, NW<br>Washington, DC 20011<br>3260-0000-0056 | H. Settlement Agent:<br>District Title<br><br>Place of Settlement:<br>1775 I Street Northwest #560 Washington,<br>DC 20006 | I. Settlement Date:<br>03/31/2022<br>Funding Date:<br>03/31/2022<br>Disbursement Date:<br>03/31/2022 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due from Borrower | | 400. Gross Amount Due to Seller | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $79,014.67 | 403. | |
| 104. Transfer to 22-0210 | $1,176,985.33 | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due from Borrower | $1,256,000.00 | 420. Gross Amount Due to Seller | |
| 200. Amount Paid by or in Behalf of Borrower | | 500. Reductions in Amount Due to Seller | |
| 201. Deposit | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $1,256,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid by/for Borrower | $1,256,000.00 | 520. Total Reduction Amount Due Seller | |
| 300. Cash at Settlement from/to Borrower | | 600. Cash at Settlement to/from Seller | |
| 301. Gross amount due from borrower (line 120) | $1,256,000.00 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $1,256,000.00 | 602. Less reductions in amounts due seller (line 520) | |
| 303. Cash ☐ From ☒ To Borrower | | 603. Cash ☒ To ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

**Certified True Copy**

**L. Settlement Charges**

| | | |
|---|---|---|
| **700. Total Sales/Broker's Commission based on price $ @ % =** | | |
| Division of commission (line 700) as follows : | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800. Items Payable in Connection with Loan** | | |
| 801. Our origination charge to DP Capital, LLC (3.5%) | $43,960.00 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee | | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Processing Fee to DP Capital LLC | $1,250.00 | |
| 808. | | |
| 809. | | |
| 810. | | |
| **900. Items Required by Lender to be Paid in Advance** | | |
| 901. Daily interest charges from 03/31/2022 to 04/01/2022 @ $418.6667 /day | $418.67 | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's insurance | | |
| 904. | | |
| **1000. Reserves Deposited with Lender** | | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| **1100. Title Charges** | | |
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's title insurance to Fidelity National Title Insurance Company | $1,334.50 | |
| 1104. Lender's title policy limit $1,570,000.00 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settlement Fee to District Title | $495.00 | |
| 1107. | | |
| 1108. | | |
| **1200. Government Recording and Transfer Charges** | | |
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $ Mortgage $31,400.00 to District of Columbia District Recording Office | $31,400.00 | |
| 1204. | | |
| **1300. Additional Settlement Charges** | | |
| 1301. Property Taxes to DC Treasurer - POC by borrower $34263.90 | | |
| 1302. | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | $79,014.67 | |

See signature addendum

Signature Addendum

423 Kennedy St Holdings LLC, a District of Columbia Limited
Liability Company

By: _____  _____   Date
By: Mel Melaku Negussie, Manager           Date

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the
funds to be disbursed in accordance with this statement

_____   3/31/2022
Settlement Agent                                        Date

eFiled
07/24/2023 2:36:13 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

>    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

>    *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
8/10/2023

### PLAINTIFF'S REPLY TO THE DEFENDANTS' OPPOSITION TO THE OPPOSED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

The Plaintiff, Developer RE1 LLC ("Developer RE1"), hereby files its reply to the Defendants' Opposition to the pending emergency motion to stop a foreclosure sale. Because time is of the essence as the foreclosure sale that Developer RE1 is trying to stop will take place tomorrow, July 25, 2023 at 2:00 p.m., and because today Judge Milton Lee issued an order granting a temporary restraining order in the related case, this Reply will be a short one.

1.    Developer RE1 filed its motion for a temporary restraining order on July 11, 2023 ("Emergency Motion"). The gravamen of Developer RE1's arguments were that the Defendants deliberately sabotaged Developer RE1's refinancing to try to force Developer RE1 to pay it more money under two loans under a threat of foreclosure. Developer RE1 also argues that the Defendants allegations of a default were pretextual. The Emergency Motion was verified by Mel Negussie.

2.    On July 17, 2023, Developer RE1 filed a notice of related cases to alert the Court that there were two cases pending involving similar facts, similar loan documents, and nearly all

1

of the same Defendants.  The related case is *423 Kennedy St Holdings, LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.* (2023-CAB-004260).  On July 18, 2023, the Plaintiff in the related case filed a nearly identical motion for a temporary restraining order as the TRO Motion in this case.

3.        The Defendants filed an Opposition to the TRO Motion in this case on July 17, 2023 and in the related case on July 20, 2023.   In both Oppositions, the Defendants did not include any affidavit or other sworn testimony to contradict the facts that were verified by Mr. Negussie.  Rather, the Defendants made legal arguments only as to why the borrowers were not likely to prevail and why injunctive relief was not appropriate.  The legal arguments made by the Defendants in the related case were almost identical to the legal arguments made in the Opposition in this case.

4.        On Friday, July 21, 2023, Judge Milton Lee held a hearing on the TRO motion in the related case.  At that hearing, Mr. Negussie testified and was subject to cross-examination by counsel for the Defendants.  In opposing the TRO motion in the related case, Counsel for the Defendants made many of the same arguments that have been made in this case.

5.        This morning, Judge Lee issued an order granting the TRO motion filed by 423 Kennedy that stops the foreclosure in the related case until the related case is concluded.  In that detailed, twenty-two page decision, Judge Lee found that evidence before him – which included many facts identical to the facts alleged in this case -- supported 423 Kennedy's position that the defaults alleged by the lender (WCP Fund I, LLC) and its servicing agent (DP Capital, LLC), both of whom are defendants in this case, were pretextual.  Judge Lee further found that 423 Kennedy had met all of the required elements for granting injunctive relief.  A copy Judge Lee's

2

July 24, 2023 order granting a temporary restraining order in the related case is attached as
Exhibit A.

6.      Although Judge Lee's decision in the related case is not binding, Developer RE1
requests that the Court take judicial notice of that decision.  Given that Judge Lee found that, on
nearly similar facts involving a different borrower, that (a) the same Defendants in this case
engaged in inequitable conduct and (b) all of the elements necessary for injunctive relief were
present, at a minimum this Court should issue a temporary restraining order to stop the pending
foreclosure sale until an evidentiary hearing can be scheduled in this case.

7.      A temporary stay of the foreclosure sale until this Court can schedule an
evidentiary hearing will cause no harm to the Defendants.  Such a stay would also allow both
judges and the parties to consider whether judicial resources can be preserved by a consolidation
of the two cases.  Alternatively, given that some discovery has already been completed in this
case, the Court could issue an order enjoining the foreclosure sale, then consolidate the
preliminary injunction hearing with the trial in this case.

For these reasons, and for any reasons that may be advanced at a hearing on the
Emergency Motion, the Plaintiff, Developer RE1 LLC, requests that this Honorable Court:  (a)
schedule an emergency hearing on this Motion, or (b) enter an order enjoining any foreclosure
sale until this case is concluded.

4866-9264-3442

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 24, 2022

/s/ James D. Sadowski
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Reply was served by the Court's

electronic filing system this 24th day of July 2023, and a notice of filing should be served on all

counsel of record.

/s/ James D. Sadowski
James D. Sadowski

4

# EXHIBIT A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **423 KENNEDY ST HOLDINGS LLC,** | : |
| **Plaintiff** | : |
| | : |
| | : |
| **vs** | : **Docket No. 2023 CAB 4260** |
| | : |
| | : |
| **DP CAPITAL /D/B/A WASHINGTON** | : |
| **PARTNERS, ET. AL.** | : |
| **Defendant** | : |

**ORDER**

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of

Contract (Count 1); tortious interference with business relations (Court II); breach of

duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee

(Count VI).  The Complaint also seeks declaratory judgments regarding the meaning

of provisions in the two Deeds of Trusts and a determination that the liquidated

damages provisions are unenforceable because those provisions constitute a penalty

(Count IV).  Plaintiff also makes a claim that the trustee cannot serve in that position

because of the existence of a conflict (Count VII).  Finally, in Count V plaintiff's

seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count

V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary

Restraining Order to Prevent an Imminent Foreclosure Sale.  On July, 20, 2023

defendants filed an opposition.  The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order,

plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3)

that the balance of injuries favors granting an injunction, and 4) that the public

interest would be served by granting the request for an injunction.  *Ifill v. District of

Columbia,* 665 A.2d 185, 187-88 (D.C. 1995).  The moving party has the burden to

demonstrate that each of the factors, taken together, weigh in favor of issuing an

injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

### I.   Likelihood of Success on the Merits

### A.  The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the

existence of a valid contract between the parties; 2) an obligation or duty arising out

of the contract; 3) a breach of that duty; 4) damages caused by the breach.  *Tsintolas

Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009).  There is no real dispute

regarding whether there was a valid contract between the parties.  The parties do not

agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants

improperly discontinued performance of the contract by stopping construction draws

for the 423 Kennedy Street property (the project).  When defendants discontinued

construction draws, they knew that plaintiff would not be able to move forward with

the project.  Shortly after the construction draws stopped, defendant gave notice of

default to plaintiffs.  Plaintiffs claim that there is no basis for the default because

plaintiffs had complied with the terms of both deeds of trust and the reasons advanced

by defendants for the default is nothing more than a pretext.  According to plaintiff,

the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain

control of the 423 Kennedy Street project before its completion.  Plaintiffs argues that

it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to

continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust

because plaintiffs continually made late payments the loan.  In addition, defendant

argues that plaintiff was in default because the District of Columbia Department of

Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine

due on that infraction remained unpaid causing a lien to be placed on the 423

property.  Based on the terms of the deed of trust, defendants argue, that this failure to

cure the lien caused by the failure to pay the infraction created a basis to default

loan.[1]  Lastly, defendants claim that plaintiffs have defaulted on the loan because they

failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423

Kennedy ST. Holdings along with several small investors known as Brighton KSDC

that owns the remaining shares.  423 Kennedy ST. Holdings is a sole purpose, limited

liability company that owns and has developed the 423 Kennedy Street property.

According to Mr. Negussie, his company entered into a construction financing loan

with the defendants and executed two deeds of trusts and two commercial deeds of

trust for each deed on March 31, 2022.  Approximately 50% of the project was

completed at the time of the refinancing.  The first commercial deed of trust was for

$8,689,693.00 and the second deed of trust was for $1,256.000.00.  Defendants claim

that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

 Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project.  According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.  Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy.  According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble.  423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance.  Those payoff statements did not reflect a default or late fees.[3]  On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development.  Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6]  When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin.  On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7]  The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868.969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the borrower or borrower's affiliates is an Event of Default."  Immediately below that passage, the email referenced the issuance of a District of Columbia Certificate of Delinquent Fines dated November 17, 2022.  Drazin further indicated that any unpaid principal, accrued interest, and any other charges would become immediately due and payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract claim because defendants' basis for default are a pretext and the stoppage of construction draws was an improper, purposeful act undertaken by defendant to cause the default on the loan because plaintiff would not be able to continue with the project without the construction draws.  Once construction draws ceased, plaintiff could not make interest payments in 2023 and would not be able to make payments necessary by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on March 31, 2023 and that plaintiffs had made no payments since the December 2022 interest payment.  Negussie also agreed that defendants' Exhibit 7 reflected the payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the loan were consistently late each month, 2) of the Certificate of Delinquent Fines issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs made no interest payments in 2023 and did not satisfy the loan by the maturity date of March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street.  There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction.  Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan.  Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws.  Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws.  In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11]  Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022.  Defendants provided notice there would be no further construction draws after October 2022.[13]  In that same email Daniel Huertas inquired about the "status of the payoffs of both loans."  Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14]  The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96.  There is no reference to a construction draw for the second deed of trust.  A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15]  The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022.  Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing.  Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id,* at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022.  The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street.  Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18]  Neither notice identifies the basis for the default.  Each of the payoff statements make no reference to unpaid late fees.  Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants.  While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement.  In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws.  Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.?  What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced payments as construction draws.  Perhaps some of the most compelling evidence supporting the fact that the construction draws were part of the contract is that the payoff statements that reflect the terms of payments between the parties includes a reference to a construction draw balance that remained due.  In addition, Negussie testified that construction draws were consistently distributed for five or six months following each request made by plaintiffs with the last payment occurring in October 2022.  These facts are sufficient to establish that the parties acted as if the construction draws were part of the agreement that obligated the parties and that the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs.  Defendants argue that the failure of defendants to make construction draws does not excuse plaintiffs' noncompliance with the second deeds because there was no requirement for a construction draw on that agreement.  Defendants' argument glosses over the point that both deeds and their commercial counterparts were identical in almost all respects, were executed at the same time and were part and parcel of the same objective of the parties: the refinancing and development of the 423 Kennedy Street mixed use project.  Too conclude otherwise is to simply ignore the uncontroverted testimony of Negussie on each of these points and the objective facts that support that testimony.  The testimony further established that the parties treated the construction draws as a part of the contract and plaintiffs relied on those terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date.  In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default.  First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments.  It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem. Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments.  According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current.  Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately.  Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]  As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.

[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's
connection as an affiliate of Developer REI.  This does order not address that basis for the default
because the only testimony on this point was received from Mr. Negussie who indicated under oath
that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record
indicates that there was no basis for a default based on an affiliation.

creation.  This Court concludes that there is sufficient reliable evidence to conclude

that plaintiffs would have continued to make interest payments on the loan but for

defendants' unilateral decision to discontinue the agreed upon construction draws.

Even after the construction draws were discontinued, plaintiffs continued to make

monthly until the end of 2022.  There is no reason to believe that plaintiffs would not

have made payments by the maturity date given that the project was 75-80%

completed when the construction draws stopped.  Negussie's testimony that Huertas

discontinued the construction draws because the lenders were unhappy with work on

the Charles Paret project further supports plaintiffs' contention that the default was

actually a pretext.  Negussie testified that Huertas wanted 423 Kennedy to rescue the

Paret project by covering a $700,000 shortfall.  When Negussie refused to address the

shortfall created in a project that he was not involved with, it was not until then that

construction draws were discontinued, payoff statements were withdrawn and default

notices were issued.  It is more than curious that defendants issued a default notice on

the second deed that did not contain a construction draw provision while at the same

time included default notice on the 5501 1st Street project also under construction by

Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach

of contract.  The evidence presented by plaintiffs is more than sufficient to support

the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a

pretext.  A breach of the terms of a contract means an unjustified failure to perform

all of any part of what is promised in the contract.  *District Cablevision v. Limited

Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003).  The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the

parties and that initial breach caused plaintiff to be unable to make future payments

on the loan.

### B.  The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate

1) the existence of a valid contractual or other business relationship; 2) the

defendant's knowledge of the relationship; 3) intentional interference with that

relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279

(D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in

November 2022 that plaintiffs were engaged in efforts to refinance the loan.  The

email exchanges between Negussie and Huertas demonstrates this knowledge.  As

Negussie testified, defendants provided "clean" payoff statements  that were

necessary for the completion of the refinancing on two occasions close in time to the

Huertas emails and prior to December 2022.  The closing with Main Street Bank was

scheduled to take place prior to Thanksgiving but was delayed because of the holiday.

When the closing was delayed, defendants issued new payoff statements on

December 8, 2022 that reflected for the first time the default as well as default interest

and penalties that were due.  As Negussie testified these new payoff statements would

prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were

engaged in business relationship with Main Street Bank that included the creation of a

term sheet for a new loan.  Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank.  The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank.  The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan.  As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere.  Defendants have failed to

produce any evidence that would indicate otherwise.

### C.  The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale.  Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association.,* 299 F.2d 463,

465 (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding.  There is some support for this position in

that the deeds of trust in Section 8.0 details the obligations of the trustee in the event

of a default and foreclosure.  Defendants further argue that the trustee's service is

largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of

default in December 2022, he had no contact with Mr. Drazin in connection with his

duties as trustee.  Contact with Drazin was suggested by Dan Huertas when Negussie

sought an explanation for the default.  According to Negussie, Huertas indicated that

additional information regarding the default would have to come from WCP's

attorney, Russell Drazin.  In a December 9th email, Drazin indicated that he

represented WCP in connection with the loans and went on to explain the basis for

the default issued on December 8, 2022.  The record does not indicate that plaintiffs

had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and
> duties imposed by the trust instrument itself, coupled with
> the applicable statute governing foreclosure sales in the
> District of Columbia."  Trustees on deeds must exercise
> their powers "with religious fidelity to ethical principles."
> Where a trustee has conflicting interest, the trustee bears
> the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In*

*re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994).  The trustee has a duty to both

the borrower and the lender.  Here, the record establishes that Drazin served as trustee

under the terms of the deed and had a fiduciary duty to act faithfully to both.  The

record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default.  At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure.  Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee.  *Sheridan,* 299 F.2d at 465  Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits.  Plaintiffs seek the appointment of substitute trustee given the existence of the conflict.  The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

### II.  Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them.  Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project.  In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units.  A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project.  As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money.  The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III.  Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant.  The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023.  In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well.  In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action.  As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project.  The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project.  While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

### V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the

rule creates a mandatory imposition of a bond for the protection of the enjoined party

has not been directly addressed by the District of Columbia Court of appeals.  The

local rule is almost identical to the federal version, so federal precedent is instructive.

The circuits are split on this issue and the circuits that have interpreted the rule as

being discretionary have recognized several exceptions to the mandatory language.

The District of Columbia Court of Appeals has suggested that the security

requirement is phrased in mandatory terms with the amount of any bond imposed

being left to the discretion of the trial court.  If the trial court exercises its discretion

to waive the bond requirement, it is important that the trial judge states the reasons for

taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354

A.2d 233, 237 (D.C. 1976).

　　　　Considering the underlying facts discussed in this order, the Court declines to

impose a bond for the following reasons.  First, defendant have not provided any

evidence of what an appropriate bond might be under the circumstances.  While

defendants' counsel made a proffer of what might be appropriate, that proffer was not

accompanied by any direct evidence that would demonstrate that the suggested bond

was rationally related to any potential harm.  Second, plaintiffs testified that they

made payments on the loan through the end of December 2022 even though

defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward.  The clear import of that testimony was that plaintiffs had limited

funds available to continue in the project.  If the bond requirement were interpreted as

a mandatory requirement, the inability of a moving party to pay a bond would

effectively deny access to judicial review.  Lastly, equity would support the waiver of

the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary

injunction hearing with the trial on the merits.  It is the Court's intention to schedule

this matter for a combined hearing on a date convenient to the Court and available to

the parties.

### VI.  Conclusion

The Court concludes that plaintiffs have made the showing necessary to

support the issuance of an order enjoining defendants from foreclosing on the 423

Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is

concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear

from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits

defendants from conducting a foreclosure sale on the property located at 423

Kennedy Street until further order of this Court or at any time before the conclusion

of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what

track should be used for a scheduling order.  The parties should also consider a more

expedited discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.


| _____July 24, 2023_____ | _____/s/_____ |
|:-:|:-:|
| Date | MILTON C. LEE, JR.
ASSOCIATE JUDGE |

cc:  James D. Sadowski, Esq.
     Alexandria J. Smith, Esq.
     Counsel for Plaintiffs
     jds@gdllaw.com

     Maurice B. Versandig
     Counsel for Defendants
     mac@mbvesq.com

eFiled
07/25/2023 8:12:06 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## DEFENDANTS' EXHIBIT LIST FOR JULY 25, 2023 HEARING

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, and furnish he attached exhibit list – with the subject exhibits attached hereto – for the hearing in this matter set for July 25, 2023:

1. Payment history for first loan

2. Payment history for second loan

3. First promissory note

4. First deed of trust

5. Second promissory note

6. Second deed of trust

7. Water lien

8. Department of Building lien

9. February 15, 2023 tax bill

Dated: July 25, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 25th day of July 2023, and a notice of filing should be served on all counsel

of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

Exhibit 1

| Name | Status Reason | Payment Due On | Days Past Due | C | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F) | Amount Due (Default Int) | Amount Due (Pr) | Amount Due (Total) | Amount Paid (Interest) | Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Int) | Amount Paid (Pr) | Amount Paid (Total) | Beginning Principal | Ending Principal | Cumulative Inter | Unapplied Funds | Principal Paydo | Balance (Total) | Scheduled Payment Stat | Balance (to late) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111316 | Unpaid | 7/1/2023 | -31 | | | | Defaulted | 23830.18 | 0.00 | 47749.83 | | 71580.01 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | | 0.00 | 0.00 | 71580.01 Uncheduled | | 71580.01 |
| LPAY-109715 | Unpaid | 6/1/2023 | -19 | | | | Defaulted | 24624.51 | 0.00 | 45941.49 | | 73966.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | | 0.00 | 0.00 | 73966.00 Uncheduled | | 73966.00 |
| LPAY-108082 | Unpaid | 5/1/2023 | 10 | | | | Defaulted | 23830.18 | 0.00 | 47749.83 | | 71580.01 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | | 0.00 | 0.00 | 71580.01 Uncheduled | | 71580.01 |
| LPAY-106199 | Unpaid | 4/1/2023 | 40 | | | | Defaulted | 24624.51 | 0.00 | 45941.49 | | 73966.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | | 0.00 | 0.00 | 73966.00 Uncheduled | | 73966.00 |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | | Defaulted | 22241.50 | 0.00 | 44566.50 | | 66808.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | | 0.00 | 0.00 | 66808.00 Uncheduled | | 66808.00 |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | | Defaulted | 24624.51 | 0.00 | 45941.49 | | 73966.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | | 0.00 | 0.00 | 73966.00 Uncheduled | | 73966.00 |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 Wire | | | Current | 24624.51 | 0.00 | 0.00 | | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | | 24624.51 | | 0.00 | 0.00 | 0.00 Uncheduled | | |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 Wire | | Late (5-15 Days) | | 23830.18 | 2383.02 | 0.00 | | 26213.20 | 23830.18 | 0.00 | 0.00 | 0.00 | | 23830.18 | | 0.00 | 0.00 | 2383.02 ACH - Cleared | | 0.00 |
| LPAY-096044 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 Wire | | Late (5-15 Days) | | 24624.51 | 0.00 | 0.00 | | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | | 24624.51 | | 0.00 | 0.00 | 0.00 Uncheduled | | |
| LPAY-094801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 Stripe | | Late (5-15 Days) | | 23830.18 | 2383.02 | 0.00 | | 26213.20 | 23830.18 | 0.00 | 0.00 | 0.00 | | 23830.18 | | 0.00 | 0.00 | 2383.02 ACH - Cleared | | 0.00 |
| LPAY-092932 | Paid | 9/1/2022 | 292 | 9/2/2022 13:35 Stripe | | Current | | 24624.51 | 0.00 | 0.00 | | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | | 24624.51 | | 0.00 | 0.00 | 0.00 ACH - Cleared | | |
| LPAY-090137 | Paid | 8/1/2022 | 323 | 8/3/2022 15:05 Stripe | | Current | | 24624.51 | 0.00 | 0.00 | | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | | 24624.51 | | 0.00 | 0.00 | 0.00 ACH - Cleared | | |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | | Late (5-15 Days) | | 23830.18 | 615.39 | 0.00 | | 23830.18 | 615.39 | 23214.79 | 0.00 | 0.00 | | 23830.18 | | 0.00 | 0.00 | 0.00 ACH - Cleared | | |
| LPAY-083197 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | | Current | | 24624.51 | 0.00 | 0.00 | | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | | 23830.18 | | 0.00 | 0.00 | 0.00 Uncheduled | | |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | | Current | | 24624.51 | 0.00 | 0.00 | | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | | 24624.51 | | 0.00 | 0.00 | 0.00 Uncheduled | | |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | | Current | | 22241.50 | 0.00 | 0.00 | | 22241.50 | 0.00 | 22241.50 | 0.00 | 0.00 | | 22241.50 | | 0.00 | 0.00 | 0.00 Uncheduled | | |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | | Current | | 24624.51 | 0.00 | 0.00 | | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | | 24624.51 | | 0.00 | 0.00 | 0.00 Uncheduled | | |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | | Originated | | 7149.05 | 0.00 | 0.00 | | 7149.05 | 7149.05 | 0.00 | 0.00 | 0.00 | | 7149.05 | | 0.00 | 0.00 | 0.00 Uncheduled | | |

| Name | Status Reason | Payment Due On | Days Past Due Cal | Payment Paid On | Payment Method | Servicing Status |
|------|---------------|----------------|-------------------|-----------------|----------------|------------------|
| LPAY-111556 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 | Wire | Late (5-15 Days) |
| LPAY-098044 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 | Wire | Late (5-15 Days) |
| LPAY-096801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Late (5-15 Days) |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085019 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 1

Exhibit 2

| Name | Status Reason | Payment Due On | Days Past Due | C Payment Due On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F | Amount Due (Default Int | Amount Due (Pr | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Interest) | Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Int | Amount Paid (Pr | Amount Paid (Total) | Beginning Principal | Ending Principal | Cumulative Inter | Unapplied Fund | Principal Paydow | Balance (Total) | Scheduled Payment Stat | Balance (Incid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111505 | Unpaid | 7/1/2023 | 11 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | | 10480.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 10480.00 Unscheduled | 10480.00 |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | | 10829.33 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 10829.33 Unscheduled | 10829.33 |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | | 10480.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 10480.00 Unscheduled | 10480.00 |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | | 10829.33 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 10829.33 Unscheduled | 10829.33 |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 4886.59 | 0.00 | 4894.74 | | 9781.33 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 9781.33 Unscheduled | 9781.33 |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | | 10829.33 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 10829.33 Unscheduled | 10829.33 |
| LPAY-102163 | Paid | 1/1/2023 | 170 | 12/21/2022 8:00 Wire | | Current | 5410.15 | 0.00 | 0.00 | | 5410.15 | 5410.15 | | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 11/9/2022 0:06 Wire | | Late (5-15 Days) | 5235.63 | 523.56 | 0.00 | | 5759.19 | 5759.19 | 6029.96 | 0.00 | 0.00 | 0.00 | 0.00 | 6029.96 | | | | 0.00 | 0.00 | -270.77 ACH - Cleared | |
| LPAY-098036 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 Stripe | | Late (5-15 Days) | 5410.15 | 0.00 | 0.00 | | 5410.15 | 5410.15 | | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 Stripe | | Current | 5410.15 | 523.56 | 0.00 | | 5759.19 | 5235.63 | | 0.00 | 0.00 | 0.00 | 0.00 | 5235.63 | | | | 0.00 | 0.00 | 523.56 ACH - Cleared | 0.00 |
| LPAY-082751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 Stripe | | Current | 5410.15 | 0.00 | 0.00 | | 5410.15 | 5410.15 | | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPAY-090655 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 Stripe | | Current | 5410.15 | 0.00 | 0.00 | | 5410.15 | 5410.15 | | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | | Late (5-15 Days) | 5235.63 | 0.00 | 0.00 | | 5235.63 | 148.30 | 5087.33 | 0.00 | 0.00 | 0.00 | 0.00 | 5235.63 | | | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 Pre-Paid Interest | | Current | 5410.15 | 0.00 | 0.00 | | 5410.15 | 0.00 | | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-081105 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | | Current | 5235.63 | 0.00 | 0.00 | | 5235.63 | 0.00 | | 5235.63 | 0.00 | 0.00 | 0.00 | 5235.63 | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | | Current | 5410.15 | 0.00 | 0.00 | | 5410.15 | 0.00 | | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | | Current | 4886.59 | 0.00 | 0.00 | | 4886.59 | 0.00 | | 4886.59 | 0.00 | 0.00 | 0.00 | 4886.59 | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | | Current | 5410.15 | 0.00 | 0.00 | | 5410.15 | 0.00 | | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPAY-071596 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | | Originated | 1570.69 | 0.00 | 0.00 | | 1570.69 | 1570.69 | | 0.00 | 0.00 | 0.00 | 0.00 | 1570.69 | | | | 0.00 | 0.00 | 0.00 Unscheduled | |

WCP0054

| Name | Status Reason | Payment Due On | Days Past Due Ca | Payment Paid On | Payment Method | Servicing Status |
|------|--------------|----------------|------------------|-----------------|----------------|------------------|
| LPAY-111505 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102163 | Paid | 1/1/2023 | 170 | | | Current |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 12/6/2022 0:06 | Wire | Late (5-15 Days) |
| LPAY-098596 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 | Stripe | Late (5-15 Days) |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090635 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083035 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075596 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 2

Exhibit 3

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$3,579,000.00**

## IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.  BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.  **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                              Page **1** of 9

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

until repaid.  If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note.  **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees.  **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference.    In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control.  **[LOAN COMMITMENT]**

**2.      INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

**3.      PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

  a.  If default be made in any payment due under this Note;
  b.  If default be made in the performance of any other covenant contained in this Note;
  c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
  d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                                          Page **3** of **9**

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment.  In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Lender may enforce its rights under this Note against each person individually or against all of such persons together.  This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

5501 1st St Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    **SUCCESSORS AND ASSIGNS**

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.   Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.   Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**10.   SEVERABILITY; RULES OF CONSTRUCTION**

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

<div align="center">

**CONFESSION OF JUDGMENT**

</div>

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

**[SIGNATURE PAGE TO FOLLOW]**

5501 1st St Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:    Solomone Abebaw Desta
Its:    Member

COUNTY OF _____
STATE OF _____

I hereby certify on this **24** day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 12.2015                                         Page **9** of 9

Exhibit 4

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<center>ARTICLE I</center>

<center>DEFINITIONS</center>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016                                                                    Page **7** of **25**

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

## 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

## 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

## 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

## 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

## 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<div align="center">ARTICLE V</div>

<div align="center">NEGATIVE COVENANTS</div>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

### EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                          Page **12** of 25

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**8.2 Conveyance by Trustee.**

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

**8.3 Purchase by Beneficiary.**

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

**8.4 Waiver of Redemption - Exemptions Waived.**

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016                                                        Page **15** of **25**

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

     (a) If to the Grantor, then to:  **1629 K Street NW Suite 300, Washington, DC 20006**

     (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

     (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

     In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

     (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

     (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016                                                        Page **19** of 25

11.7 Applicable Law.

 This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

 Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

 Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

 (a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

 (b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

 (c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia    Limited Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

    I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 5.2016

Page **23** of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust



**Government of the
District of Columbia**

Office of Tax and
Revenue
Recorder of Deeds
**1101 4th St. Street, SW
Washington, DC 20024**
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

[X] Deed   [ ] Deed of Trust   [ ] Lease for a Term of 30 years or more

[ ] Re-recording   [ ] Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0137 | | | |
|------|------|------|------|------|------|
| Square | Suffix | Lot | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum:

**Square and/or Parcel** _____  **Lot(s)** _____

**Property Address:** | 5501 | 1st Street | NW | Unit No.
Street Number | Street Name | Quadrant

**Property Use:** [ ] Dwelling Units ≤ 5   [ ] Apartment   [ ] Commercial

**Is any part of the <u>entire</u> building commercial (Class 2)?**

[X] Yes*   [ ] No   [ ] Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
[ ] Yes†   [ ] No

† If Yes, this instrument will be taxed as commercial.

**Fee Interest % Conveyed:** 100 %

Was personal property included in this transfer?   [ ] Yes*   [ ] No

*If Yes, what type? _____   Estimated Value $ _____

### PART C - Instrument Submitted by or Contact Person

Name Steve Oxman   Firm District Title

Address 1775 I Street Northwest, #560

City Washington   State DC   Zip 20006

### PART D - Return Instrument To

Name Developer RE1 LLC   Firm _____

Address 1629 K Street NW, Suite 300   Phone No. ((202) 271-5046

City Washington   State DC   Zip 20006

### PART E – Grantor(s) Information

Grantor 71 Kennedy ST Holdings LLC   Grantor _____

Grantor _____   Grantor _____

Address 1629 K Street NW, Suite 300   Phone No. (202) 271-5046

City Washington   State DC   Zip 20006

**Grantor(s) Tenancy** [ ] Tenants in Common   [ ] Joint Tenants   [ ] Trustee
[ ] Tenants by Entirety   [ ] Sole

ROD 1 Revised 08/2019

★ ★ ★

**Government of the
District of Columbia**
Office of Tax and
Revenue
**1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374**

| 3389 | 0137 (formerly 0822 |
|------|------|
| Square | Suffix | Lot |

**PART F – Grantee(s) Information**

Grantee `Developer RE1 LLC`   Grantee `_____`

Grantee `_____`   Grantee `_____`

Address `1629 K Street #300`   Phone No. `(202) 271-5046`

City `Washington`   State `DC`   Zip `20006`

**Grantee(s) Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee

☐ Tenants by Entirety   ☒ Sole

**PART G - Mailing Address for Grantee** (If different from Part F)

| Last Name | First Name | Middle Name |
|-----------|-----------|-------------|

Address `_____`   Unit No. `_____`

City `_____`   State `_____`   Zip `_____`

Phone `_____`

**PART H- Consideration and Financing**
"complete all items; insert zero if no amount"

**Tax Exemption Application
Recordation Tax/Transfer Tax**
(Cite to Specific DC Code Provision)

**I. Deed**

| | | | Recordation | Transfer |
|---|---|---|---|---|
| 1. | Acquisition Price | | / | |
| | Cash | | / | |
| | *Amount of 1st Deed of Trust* | | | |
| | Purchase Money Amount | | | |
| | Other Exempt Amount | | | |
| | Nonexempt Amount: | | | |
| | *Amount of 2nd Deed of Trust* | | | |
| | Purchase Money Amount | | | |
| | Other Exempt Amount | | | |
| | Nonexempt Amount: | | | |
| | *Amount of 3rd Deed of Trust* | | | |
| | Purchase Money Amount | | | |
| | Other Exempt Amount | | | |
| | Nonexempt Amount: | | | |
| 2. | Current Tax Year Assessed Value (If No or Nominal Consideration) | 1,190,630.00 | / | |

ROD 1 Revised 08/2019



**Government of the District of Columbia**

Office of Tax and Revenue
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

| | |
|---|---|
| 3389 | 0137 |
| Square | Suffix  Lot |

## II. Deeds of Trust (no transfer of title)

Amount of Deed of Trust _____

   Exempt Amount (s) _____

   Nonexempt Amount(s) _____

3. Total Amount of all Nonexempt Deeds of Trust (I & II) _____

Tax Exemption Application
Recordation Tax
(Cite to Specific DC Code Provision)

_____

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ 17,264.14 |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ 17,264.13 |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ 39,369.00 |
| 7. | Recordation Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 8. | Transfer Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | **Total** | | $ 34,528.27 |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.



| **Grantor(s)** | **Grantee(s)** |
|---|---|
| 71 Kennedy ST Holdings LLC | Developer RE1 LLC |
| Typed Name | Typed Name |
| _Signature_ | _Signature_ |
| Date  December 23, 2021 | Date  December 23, 2021 |

Subscribed to and sworn to before me by Grantor(s) this 23rd day of December, 2021

_____
Notary Public

My Commission Expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Subscribed to and sworn to before me by Grantee(s) this 23rd day of December, 2021

_____
Notary Public

My Commission Expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

ROD 1 Revised 08/2019

**This information is subject to audit.**
**Please keep all supporting documentation.**

File No.: **21-1983 (5501 1ˢᵗ)**
DEED – SHORT FORM D.C.

## 𝕿𝖍𝖎𝖘 𝕯𝖊𝖊𝖉, made this **23rd day of December, 2021**, by and between

**71 Kennedy St Holdings LLC**, party of the first part, and **Developer RE1 LLC**, party of the second part.

WITNESSETH, that in consideration of the sum of ZERO DOLLARS (**$0.00**), the party of the first part do hereby grant unto the party of the second part, in fee simple, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Being the same property conveyed from MST Kennedy Hodlings LLC dated 03/14/2008 and recorded with District of Columbia District Recording Office on 03/26/2018 as Instrument #2018030042

SUBJECT TO Deeds of trust of record.

AND the said party of the first part covenant that they will warrant specially the property hereby conveyed; and that they will execute such further assurances of said land as may be requisite.

WITNESS the hand and seal the day and year first hereinbefore written.

IN PRESENCE OF:                                    **71 Kennedy St Holdings LLC**

_____        _____ {SEAL}
                                                                By: NT Group LLC, sole member
                                                                By: Mel Negussie, sole member

DISTRICT OF COLUMBIA
This instrument was acknowledged before me on this 23rd day of December, 2021, by Mel Negussie, sole member of NT Group LLC, sole member of 71 Kennedy St Holdings, LLC..

_____
Signature of Notarial Officer
Title and Rank  Notary Public

My Commission Expires:          ROSA M. GREEN
                              NOTARY PUBLIC DISTRICT OF COLUMBIA
                              My Commission Expires September 30, 2024

After Recording MAIL TO:                      Grantee's Address:
**1629 K Street NW**                              **1629 K Street NW**
**Suite 300**                                     **Suite 300**
**Washington, DC 20006**                          **Washington, DC 20006**



**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

---

**Real Property Recordation and Transfer Tax Form FP-7/C**

**PART A - Type of Instrument**

[X] Deed    [ ] Deed of Trust    [ ] Lease for a Term of 30 years or more

[ ] Re-recording    [ ] Other: _____

**PART B - Property Description/Data/Property Being Conveyed**

| 3389 | | 0071 | | 3389 | | 0072 |
|---|---|---|---|---|---|---|
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum:

**Square and/or Parcel** [_____]    **Lot(s)** [_____]

**Property Address:** [ 55015 ] [ 1st Street ] [ NW ] **Unit No.**
　　　　　　　　　　　Street Number　　Street Name　　Quadrant

**Property Use:** [ ] Dwelling Units ≤ 5    [ ] Apartment    [X] Commercial

**Is any part of the <u>entire</u> building commercial (Class 2)?**
[X] Yes*    [ ] No    [ ] Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
[ ] Yes†    [ ] No

† If Yes, this instrument will be taxed as commercial.

**Fee Interest % Conveyed:** [ 100 ] %

Was personal property included in this transfer?    [ ] Yes*  [ ] No

*If Yes, what type? [_____]    Estimated Value $ [_____]

**PART C - Instrument Submitted by or Contact Person**
Name [ Steve Oxman ]    Firm [ District Title ]
Address [ 1775 I Street Northwest, #560 ]
City [ Washington ]    State [ DC ]    Zip [ 20006 ]

**PART D - Return Instrument To**
Name [ Developer RE1 LLC ]    Firm [_____]
Address [ 1629 K Street NW, Suite 300 ]    Phone No. [ ((202) 271-5046 ]
City [ Washington ]    State [ DC ]    Zip [ 20006 ]

**PART E – Grantor(s) Information**
Grantor [ 5505 1st ST Holdings LLC ]    Grantor [_____]
Grantor [_____]    Grantor [_____]
Address [ 1629 K Street NW, Suite 300 ]    Phone No. [ (202) 271-5046 ]
City [ Washington ]    State [ DC ]    Zip [ 20006 ]

**Grantor(s) Tenancy**    [ ] Tenants in Common  [ ] Joint Tenants  [ ] Trustee
　　　　　　　　　　　　[ ] Tenants by Entirety  [ ] Sole

ROD 1 Revised 08/2019

★ ★ ★

**Government of the
District of Columbia**

Office of Tax and
Revenue

**1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374**

| 3389 | 0137 (formerly 0822 |
|---|---|
| Square | Suffix | Lot |

**PART F – Grantee(s) Information**

Grantee: Developer RE1 LLC    Grantee: 

Grantee:     Grantee: 

Address: 1629 K Street #300    Phone No.: (202) 271-5046

City: Washington    State: DC    Zip: 20006

**Grantee(s) Tenancy**    ☐ Tenants in Common  ☐ Joint Tenants  ☐ Trustee

☐ Tenants by Entirety  ☒ Sole

**PART G - Mailing Address for Grantee** (If different from Part F)

| Last Name | First Name | Middle Name |
|---|---|---|

Address:     Unit No.: 

City:     State:     Zip: 

Phone: 

**PART H- Consideration and Financing**
"complete all items; insert zero if no amount"

**Tax Exemption Application
Recordation Tax/Transfer Tax**
(Cite to Specific DC Code Provision)

**I. Deed**

| | | |
|---|---|---|
| 1. Acquisition Price | | / |
| Cash | | / |
| *Amount of 1st Deed of Trust* | | |
| Purchase Money Amount | | |
| Other Exempt Amount | | |
| Nonexempt Amount: | | |
| *Amount of 2nd Deed of Trust* | | |
| Purchase Money Amount | | |
| Other Exempt Amount | | |
| Nonexempt Amount: | | |
| *Amount of 3rd Deed of Trust* | | |
| Purchase Money Amount | | |
| Other Exempt Amount | | |
| Nonexempt Amount: | | |
| 2. Current Tax Year Assessed Value (If No or Nominal Consideration) | 605,580.00 | / |

ROD 1 Revised 08/2019

★ ★ ★
**Government of the
District of Columbia**
Office of Tax and
Revenue
**1101 4th St. Street, SW
Washington, DC 20024**
Phone (202)727-5374

| 3389 | | 0137 |
|------|------|------|
| Square | Suffix | Lot |

**II. Deeds of Trust (no transfer of title)**

Amount of Deed of Trust

   Exempt Amount (s)

   Nonexempt Amount(s)

3. Total Amount of all Nonexempt Deeds of Trust (I & II)

**Tax Exemption Application
Recordation Tax**
(Cite to Specific DC Code Provision)

**PART I: Computation of Tax**
For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | | |
|---|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ | |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ | |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ | |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ | 8,780.91 |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ | 8,780.91 |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ | |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ | |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ | |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ | |
| 10. | **Total** | | $ | 17,561.82 |

**PART J: Affidavit (Part A to J)**

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.

| Grantor(s) | Grantee(s) |
|---|---|
| 5505 1st ST Holdings LLC | Developer RE1 LLC |
| Typed Name | Typed Name |
| *signature* | *signature* |
| Signature | Signature |
| Date  December 23, 2021 | Date  December 23, 2021 |

Subscribed to and sworn to before me
by Grantor(s) this 23rd day of December, 2021

Notary Public

My Commission Expires ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Subscribed to and sworn to before me
by Grantee(s) this 23rd day of December, 2021

Notary Public

My Commission Expires ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

ROD 1 Revised 08/2019

**This information is subject to audit.
Please keep all supporting documentation.**

File No.: **21-1983 (5505 1ˢᵗ)**
DEED – SHORT FORM D.C.

# This Deed, made this **23rd day of December, 2021,** by and between

**5505 1st St Holdings LLC,** party of the first part, and **Developer RE1 LLC,** party of the second part.

WITNESSETH, that in consideration of the sum of ZERO DOLLARS (**$0.00**), the party of the first part do hereby grant unto the party of the second part, in fee simple, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.

Being the same property conveyed from Lemiem W. Debelie and Mussie M. Tesfaye dated 07/19/2017 and recorded with the District of Columbia Recording Office on 07/25/2017 as Instrument #2017081391.

SUBJECT TO deeds of trust of record.

AND the said party of the first part covenant that they will warrant specially the property hereby conveyed; and that they will execute such further assurances of said land as may be requisite.

WITNESS the hand and seal the day and year first hereinbefore written.

IN PRESENCE OF:                    **5505 1st St Holdings LLC**

_____        _____ {SEAL}
                                   By: NT Group LLC, sole member
                                   By: Mel Negussie, sole member


DISTRICT OF COLUMBIA
This instrument was acknowledged before me on this ~~23rd~~ 24th day of December, 2021, by Mel Negussie, sole member of NT Group LLC, sole member of 71 Kennedy St Holdings LLC..

_____
Signature of Notarial Officer
Title and Rank _____
                        ROSA M. GREEN
My Commission Expires:    NOTARY PUBLIC DISTRICT OF COLUMBIA
                        My Commission Expires September 30, 2024

After Recording MAIL TO:          Grantee's Address:
**1629 K Street NW**              **1629 K Street NW**
**Suite 300**                     **Suite 300**
**Washington, DC 20006**          **Washington, DC 20006**



**Government of the
District of Columbia**
Office of Tax and
Revenue
Recorder of Deeds
**1101 4th St. Street, SW
Washington, DC 20024**
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

[ ] Deed   [x] Deed of Trust   [ ] Lease for a Term of 30 years or more

[ ] Re-recording   [ ] Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0137 | | 3389 | | 71/72 |
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum.

**Square and/or Parcel** [_____]   **Lot(s)** [_____]

**Property Address:** [5501-5505]   [1st Street]   [NW] **Unit No.**
Street Number      Street Name      Quadrant

**Property Use:** [ ] Dwelling Units ≤ 5   [ ] Apartment   [ ] Commercial

**Is any part of the _entire_ building commercial (Class 2)?**
[X] Yes*   [ ] No   [ ] Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
[ ] Yes†   [ ] No

† If Yes, this instrument will be taxed as commercial.

**Fee Interest % Conveyed:** [100] %

Was personal property included in this transfer?   [ ] Yes*   [ ] No

*If Yes, what type? [_____]   Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person

Name [Steven Oxman]   Firm [District Title]

Address [1775 I Street Northwest, #560]

City [Washington]   State [DC]   Zip [20006]

### PART D - Return Instrument To

Name [Steven Oxman]   Firm [District Title]

Address [1775 I Street Northwest, #560]   Phone No. [(202) 518-9300 ext. 309]

City [Washington]   State [DC]   Zip [20006]

### PART E – Grantor(s) Information

Grantor [Developer RE1 LLC]   Grantor [_____]

Grantor [_____]   Grantor [_____]

Address [1629 K Street NW, Suite 300]   Phone No. [(202) 271-5046]

City [Washington]   State [DC]   Zip [20006]

**Grantor(s) Tenancy**   [ ] Tenants in Common   [ ] Joint Tenants   [ ] Trustee
[ ] Tenants by Entirety   [ ] Sole

ROD 1 Revised 08/2019

★ ★ ★

**Government of the
District of Columbia**
Office of Tax and
Revenue
**1101 4th St. Street,
SW Washington, DC
20024    Phone**
(202)727-5374

| 3389 | | 0137, 71, 72 |
|---|---|---|
| Square | Suffix | Lot |

## PART F – Grantee(s) Information

Grantee WCP Fund I LLC          Grantee

Grantee                        Grantee

Address 2815 Hartland Road, Suite 200    Phone No. (703) 344-1733

City Falls Church       State VA       Zip 22043

**Grantee(s) Tenancy**    ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee

☐ Tenants by Entirety   ☐ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

Last Name | First Name | Middle Name

Address _____ Unit No. _____

City _____ State _____ Zip _____

Phone _____

## PART H- Consideration and Financing
**"complete all items; insert zero if no any"**

**I. Deed**

Tax Exemption Application
Recordation Tax/Transfer Tax
*(Cite to Specific DC Code Provision)*

1. Acquisition Price _____ _____ / _____

   Cash _____ _____ / _____

   *Amount of 1st Deed of Trust* _____

   Purchase Money Amount _____ _____

   Other Exempt Amount _____ _____

   Nonexempt Amount: _____

   *Amount of 2nd Deed of Trust* _____

   Purchase Money Amount _____ _____

   Other Exempt Amount _____ _____

   Nonexempt Amount: _____

   *Amount of 3rd Deed of Trust* _____

   Purchase Money Amount _____ _____

   Other Exempt Amount _____ _____

   Nonexempt Amount: _____

2. Current Tax Year Assessed Value _____ _____ / _____
   (If No or Nominal Consideration)

**Government of the District of Columbia**

Office of Tax and
Revenue
**1101 4th St. Street, SW
Washington, DC 20024**
Phone (202)727-5374

**II. Deeds of Trust (no transfer of title)**

Tax Exemption Application
Recordation Tax
(Cite to Specific DC Code Provision)

| | | |
|---|---|---|
| Amount of Deed of Trust | $ 3,579,000.00 | |
| Exempt Amount (s) | $ 3,200,923.90 | payoff |
| Nonexempt Amount(s) | $378,076.10 | trusts |

3. Total Amount of all Nonexempt Deeds of Trust (I & II)    $378,076.10

| Square | Suffix | Lot |
|---|---|---|
| 3389 | | 0137 ,71, 72 |

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ |
| 7. | Recordation Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $9,451.90 |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| **10.** | **Total** | | $9,451.90 |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.



| Grantor(s) | Grantee(s) |
|---|---|
| Developer RE1 LLC | WCP Fund I LLC |
| Typed Name | Typed Name |
| Signature | Signature |
| Date   December 24, 2021 | Date   December 23, 2021 |

Subscribed to and sworn to before me

by Grantor(s) this 23rd day of December, 2021

_____
Notary Public

My Commission Expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Subscribed to and sworn to before me

by Grantee(s) this 23rd day of December, 2021

_____
Notary Public

My Commission Expires:

STEVEN M. SUSHNER
NOTARY PUBLIC DISTRICT OF COLUMBIA
Commission Expires February 28, 2023

ROD 1 Revised 08/2019

**This information is subject to audit.
Please keep all supporting documentation.**

Exhibit 5

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                     **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.   BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

until repaid.  If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note.  **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees.  **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference.   In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control.  **[LOAN COMMITMENT]**

2.     <u>**INTEREST**</u>

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

3.     <u>**PAYMENTS**</u>

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a.   If default be made in any payment due under this Note;
b.   If default be made in the performance of any other covenant contained in this Note;
c.   If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d.   If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment.  In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Lender may enforce its rights under this Note against each person individually or against all of such persons together.  This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.    WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.    GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at: 1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

3301 1st St NW Washington DC 20011
3301 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**").  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## 10.     SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

**[SIGNATURE PAGE TO FOLLOW]**

5305 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _City of Washington_ SS:
STATE OF _District of Columbia_

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_

NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Exhibit 6

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

Case 24-10023-ELG   Doc 19-1   Filed 08/09/24   Entered 08/09/24 15:40:07   Desc
Main Document   Page 371 of 637
5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<p style="text-align:center">ARTICLE II</p>

<p style="text-align:center">GRANT</p>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

5305 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Rev 5.2016                                                                            Page **5** of **25**

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<u>ARTICLE IV</u>

<u>AFFIRMATIVE COVENANTS</u>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same becomes liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Rev 5.2016                                                                                    **Page 6 of 25**

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

## 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

## 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<div style="text-align:center">

## ARTICLE V

### NEGATIVE COVENANTS

</div>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

<div align="center">ARTICLE VI

EMINENT DOMAIN – CONDEMNATION</div>

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

Case 24-10023-ELG    Doc 19-1    Filed 08/09/24    Entered 08/09/24 15:40:07    Desc
Main Document    Page 378 of 637

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Case 24-10023-ELG    Doc 19-1    Filed 08/09/24    Entered 08/09/24 15:40:07    Desc
Main Document    Page 379 of 637
3505 1st St NW Washington DC 20011
3501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

### ARTICLE VIII

### DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## ARTICLE IX

### THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016                                                    Page **16** of 25

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016                                             Page 17 of 25

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

      (a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

      (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

      (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

      In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

      (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

      (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

11.7 Applicable Law.

      This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

      Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

      Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

      (a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

      (b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

      (c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

<div align="center">ARTICLE XII</div>

<div align="center">STATUTORY PROVISIONS</div>

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

<div align="center">**[Signature Page to Follow]**</div>

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited  Liability
Company

_(signature)_ (SEAL)

By:   Mel Melaku Negussie

Its:    Managing Member

COUNTY OF _(handwritten)_ ) SS:
STATE OF _(handwritten)_

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**        **December 23, 2021**

**Borrower(s):**         **Developer RE1 LLC**

**Property Address:**    **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st
ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the
Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and
Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now
known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the
Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor
for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in
Square numbered 3389.



**Government of the
District of Columbia**
Office of Tax and
Revenue
Recorder of Deeds
**1101 4th St. Street, SW
Washington, DC 20024**
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

☐ Deed   ☒ Deed of Trust   ☐ Lease for a Term of 30 years or more

☐ Re-recording   ☐ Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0137 | | 3389 | | 71/72 |
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum.

Square and/or Parcel [_____]   Lot(s) [_____]

Property Address: [5501-5505] [1st Street] [NW] Unit No.
Street Number      Street Name      Quadrant

Property Use:   ☐ Dwelling Units ≤ 5   ☐ Apartment   ☐ Commercial

**Is any part of the <u>entire</u> building commercial (Class 2)?**
☒ Yes*   ☐ No   ☐ Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
☐ Yes†   ☐ No

† If Yes, this instrument will be taxed as commercial.

**Fee Interest % Conveyed:** [100] %

Was personal property included in this transfer?   ☐ Yes*  ☐ No

*If Yes, what type? [_____]   Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person

Name [Steven Oxman]   Firm [District Title]

Address [1775 I Street Northwest, #560]

City [Washington]   State [DC]   Zip [20006]

### PART D - Return Instrument To

Name [Steven Oxman]   Firm [District Title]

Address [1775 I Street Northwest, #560]   Phone No. [(202) 518-9300 ext. 309]

City [Washington]   State [DC]   Zip [20006]

### PART E – Grantor(s) Information

Grantor [Developer RE1 LLC]   Grantor [_____]

Grantor [_____]   Grantor [_____]

Address [1629 K Street NW, Suite 300]   Phone No. [(202) 271-5046]

City [Washington]   State [DC]   Zip [20006]

**Grantor(s) Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
☐ Tenants by Entirety   ☐ Sole

ROD 1 Revised 08/2019

★ ★ ★

**Government of the District of Columbia**

Office of Tax and Revenue
**1101 4th St. Street, SW Washington, DC 20024        Phone**
**(202)727-5374**

| 3389 |  | 0137, 71, 72 |
|------|------|------|
| Square | Suffix | Lot |

## PART F – Grantee(s) Information

Grantee: WCP Fund I LLC     Grantee:

Grantee:     Grantee:

Address: 2815 Hartland Road, Suite 200     Phone No. (703) 344-1733

City: Falls Church     State: VA     Zip: 22043

**Grantee(s) Tenancy**    ☐ Tenants in Common  ☐ Joint Tenants  ☐ Trustee

☐ Tenants by Entirety  ☐ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| | | |
|---|---|---|
| Last Name | First Name | Middle Name |

Address:     Unit No.

City:     State:     Zip:

Phone:

## PART H- Consideration and Financing
**"complete all items; insert zero if no amount"**

**I. Deed**

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

1. Acquisition Price _____     _____ / _____

   Cash _____     _____ / _____

   *Amount of 1st Deed of Trust* _____

   Purchase Money Amount _____     _____

   Other Exempt Amount _____     _____

   Nonexempt Amount: _____

   *Amount of 2nd Deed of Trust* _____

   Purchase Money Amount _____     _____

   Other Exempt Amount _____     _____

   Nonexempt Amount: _____

   *Amount of 3rd Deed of Trust* _____

   Purchase Money Amount _____     _____

   Other Exempt Amount _____     _____

   Nonexempt Amount: _____

2. Current Tax Year Assessed Value _____     _____ / _____
   (If No or Nominal Consideration)

ROD 1 Revised 08/2019

**Government of the District of Columbia**

**Office of Tax and Revenue**
1101 4th St. SW, SW
Washington, DC 20024
Phone (202)727-5374

**II. Deeds of Trust** (no transfer of title)

Tax Exemption Application Recordation Tax
(Cite to Specific DC Code Provision)

| | |
|---|---|
| Amount of Deed of Trust | $ 524,000.00 |
| Exempt Amount (s) | 0.00 |
| Nonexempt Amount(s) | $524,000 |

| | | |
|---|---|---|
| 3389 | 0137 ,71, 72 | |
| Square | Suffix | Lot |

3. Total Amount of all Nonexempt Deeds of Trust (I & II)    $524,000.00

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ 13,100.00 |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | **Total** | | $ 13,100.00 |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.



| Grantor(s) | Grantee(s) |
|---|---|
| Developer RE1 LLC | WCP Fund I LLC |
| Typed Name | Typed Name |
| Signature | Signature |
| Date December 23, 2021 | Date December 23, 2021 |

Subscribed to and sworn to before me

by Grantor(s) this 23rd day of December, 2021

Notary Public

My Commission Expires: ROSA M GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Subscribed to and sworn to before me

by Grantee(s) this 23rd day of December, 2021

Notary Public

My Commission Expires:

STEVEN M. SUSHNER
NOTARY PUBLIC DISTRICT OF COLU
My Commission Expires Feb

ROD 1 Revised 08/2019

**This information is subject to audit.
Please keep all supporting documentation.**

Exhibit 7

Filed & Recorded
#1 2020000797
08/30/2022 10:15 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
Customer Service
202-354-3750



**dc**
*water is life*

# DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 Canal Street, SE | Washington, DC 20003

## DELINQUENT ACCOUNTS SECTION

DC Water and Sewer Authority
Vs
DEVELOPER RE1 LLC
1629 K ST NW, STE 300
WASHINGTON, DC 20006

Date: 2022-08-29
Account No.: 2002583-9
Service Address: 5501 1ST ST NW
Square: 3389
Suffix:
Lot: 0138

### Amount Due (including penalties, if any): $43,956.32
## CERTIFICATE OF DELINQUENT WATER/SEWER CHARGES

This is to certify that, pursuant to D.C. Official Code, 2001, Section 34-2407.02 and Section 34-2110, the Water and Sewer Authority has a continuing lien for delinquent water/sewer service charges upon the land and the improvements thereon at the above service address. From the date of its filing, this certificate shall have the force and effect of a lien created by a judgment entered by the Superior Court of the District of Columbia and will remain in force and effect until the water/sewer charges, plus any interest and penalties thereon, shall have been fully paid by cash, certified check or money order to the Water and Sewer Authority.

By:

Manager, Credit & Collections Customer Service Department DC Water and Sewer Authority.

## ACKNOWLEDGEMENT

This is to acknowledge that the foregoing certificate was filed with the Recorder of Deeds of the District of Columbia on the _____.

By: _____
Recorder of Deeds Government of the District of Columbia

DEVELOPER RE1 LLC
C/O
1629 K ST NW, STE 300
WASHINGTON, DC 20006

Exhibit 8

2023059959
Filed & Recorded
07/13/2023 01:30 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS



**GOVERNMENT OF THE
DISTRICT OF COLUMBIA**
DC DEPARTMENT OF
BUILDINGS
HOUSING REGULATION
ADMINISTRATION

## CERTIFICATE OF DELINQUENT COSTS
## FOR CORRECTION OF WRONGFUL HOUSING CONDITIONS

DISTRICT OF COLUMBIA

vs.

DEVELOPER RE1 LLC
1629 K ST NW STE 300
Washington, DC 20006

Date: 7/13/2023

Square - 3389  Suffix -  Lot - 0138

Assmt Control #: A2303814

Address of Premises:

5501 1st Street NW

**This Certificate is filed under the authority of and pursuant to Title 42, Chapter 42, Section 3131 of the D.C. Code, 2002 Edition, as amended. The District of Columbia shall have a continuing lien for taxes against the property for correction of wrongful conditions including administrative, contracting, and advertising costs, if any.**

**This Certificate, from the date of its filing, has the force and effect, as against the aforesaid delinquent party or parties, of a lien created by a judgment granted by the Superior Court of the District of Columbia. This lien remains in force and effect until all fines set forth below, together with penalties and interest thereon, shall be paid.**

**Assessed Amount: $690.75**

By:

Elizabeth Harshaw
Office of Civil Infractions
DC Department of Buildings

Exhibit 9



Government of the District of Columbia
Office of the Chief Financial Officer
Office of Tax and Revenue
1101 4th Street, SW
Washington, DC 20024



DEVELOPER RE1 LLC
1629 K ST NW STE 300
WASHINGTON DC  20006-1631

*Below are instructions for individuals with limited English Proficiency who need assistance. All others please turn to the next page for important information from the Office of Tax and Revenue.*



**Language Assistance**

Si necesita ayuda en Español, por favor llame al **(202) 727-4829** para proporcionarle un intérprete **de manera gratuita**.

Nếu quý vị cần giúp đỡ về tiếng Việt, xin gọi **(202) 727-4829** để chúng tôi thu xếp có thông dịch viên đến giúp quý vị **miễn phí**.

Si vous avez besoin d'aide en Français appelez-le **(202) 727-4829** et l'assistance d'un interprete vous sera **fournie gratuitement**.

በአማርኛ እርዳታ ከፈለጉ በ **(202) 727-4829** ይደውሉ። የነጻ አስተርጓሚ ይመደብልዎታል።

한국어로 언어 지원이 필요하신 경우 **(202) 727-4829** 로 연락을 주시면 **무료로** 통역이 제공됩니다.

如果您需要用(中文)接受幫助，請電洽 **(202) 727-4829** 將免費向您提供口譯員服務。

**Office of the Chief Financial Officer
Office of Tax & Revenue
Customer Service Administration
1101 4th Street, SW Suite W270
Washington, DC 20024**





Government of the District of Columbia
Office of the Chief Financial Officer
Office of Tax and Revenue

1101 4th Street, SW
Washington, DC 20024

Date of Notice:    February 15, 2023

Notice Number:    L0008925602

### PROPERTY TAX BILL

| Square | Suffix | Lot | Property Address | Bill Year | Assessment |
|--------|--------|-----|------------------|-----------|------------|
| 3389 | | 0138 | 5501 1ST ST NW | 2023 | $1,808,220 |

| Description | Class | Tax | Penalty | Interest | Credit | Total |
|-------------|-------|-----|---------|----------|--------|-------|
| 2023 First Half Tax | 2 | $14,917.82 | $0.00 | $0.00 | $0.00 | $14,917.82 |
| **Total** | | **$14,917.82** | **$0.00** | **$0.00** | **$0.00** | **$14,917.82** |
| **Amount Due By March 31, 2023** | | | | | | **$14,917.82** |

| **Additional Information** | (Please see reverse side for important information.) |
|---|---|

- Real Property Tax is based on the Taxable Assessment of $1,808,220.00 at a rate of $1.65 per $100. Estimated annual tax amount $29,835.63.
- 18% of your Tax Year 2023 Real Property Tax is used to pay the General Obligation Bonds debt service requirement.
- Your real property is **NOT** receiving Homestead Deduction/Senior/Disabled Tax Relief or Disabled Veterans Homestead.

**Forecasted Amounts for Late Payments**

| If paid by: | Apr 1, 2023 | Amount Due | $16,633.37 | If paid by: | Jun 1, 2023 | Amount Due | $17,080.91 |
|---|---|---|---|---|---|---|---|
| If paid by: | May 1, 2023 | Amount Due | $16,857.14 | If paid by: | Jul 1, 2023 | Amount Due | $17,304.68 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RETURN THIS PORTION WITH YOUR REMITTANCE AND/OR CORRESPONDENCE

DEVELOPER RE1 LLC
1629 K ST NW STE 300
WASHINGTON DC  20006-1631

| Media Number: | 130313771 |
|---|---|
| Notice Number: | L0008925602 |
| Tax Type: | Real Property Tax |
| Account ID: | 700-001484236 |
| SSL: | 3389-   -0138 |
| Due Date: | 31-Mar-2023 |
| Amount Due: | $14,917.82 |

OFFICE OF TAX AND REVENUE
REAL PROPERTY TAX
ADMINISTRATION
P.O. BOX 98095
WASHINGTON, DC 20090-8095

Amount
Enclosed:    $ ____ , ____ , ____ . __

**Make check or money order payable to: DC TREASURER**

Please use the enclosed envelope and include your SSL

3389XXXX01380130313771700001484236000149178Z7

## TAX BILL INFORMATION

**PAYMENTS:**

**Your first half real property tax payment is due by March 31.** If the due date falls on a weekend or holiday, the payment will be due the next business day.

Pay Online

Make a secure **ACH** or **Credit Card** payment through the *MyTax.DC.gov* online portal:

1. From the *MyTax.DC.gov* homepage, click on the "Make a Real Property Payment" link and enter the Square, Suffix, Lot number, or Street Address.
2. Select the desired payment method (ACH or Credit Card).
3. Select the tax account for which you would like to make a payment.
4. Enter the appropriate information and submit the payment.
5. Retain the confirmation number for your records.

Pay by Check

1. Make your check payable to the "DC Treasurer."
2. To ensure your payment is recorded accurately, you **must** write your **Square, Suffix, Lot (SSL) number** on your check or money order.
3. If you are submitting payments for more than one property, you **must** include separate checks for each payment voucher.
4. Mail your check with the voucher at the bottom of this notice to: Office of Tax and Revenue, P.O. Box 98095, Washington, DC 20090-8095.
   Payments postmarked on or before the due date will be considered timely.

**Please note:** OTR accepts MasterCard, Visa, American Express, and Discover cards for credit card payments. There is a 2.5 percent non-refundable convenience fee, charged by the processor, when making a credit card payment. The convenience fee does not apply to ACH payments. Also, the credit card payment amount is not to exceed $100,000.00 (inclusive of 2.5 percent non-refundable convenience fee) per transaction and is limited to a maximum of two (2) transactions per month.

**TAX SALE:**

Properties delinquent in the payment of real property tax, BID tax, vault rent, special assessments, or other certified liens may be subject to sale at the District's annual tax sale.

**PENALTY, INTEREST, AND FEES:**

The law provides that if your real property and/or BID tax is not paid in full by the due date on the tax bill, the Office of Tax and Revenue **must** charge a penalty equal to 10% of the delinquent tax, as well as interest at the rate of 1.5% per month (or part thereof) until paid in full. Furthermore, a $65 fee will be assessed for each dishonored payment. Waiver requests can be submitted via MyTax.DC.gov for consideration.

**BILL QUESTIONS:**

For assistance with billing related inquiries as well as MyTax.DC.gov, please contact our e-Services Unit at (202) 759-1946 or email e-services.otr@dc.gov, 8:15 am to 5:30 pm, Monday through Friday. For assistance with property classification III (3) and IV (4), please contact the Office of Residential Inspection Unit of the Department of Building at (202) 671-3500 or email vacantbuildings@dc.gov.

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

       *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

       *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
           11/10/2023

## NOTICE OF APPEARANCE

Please note the appearance of Spencer B. Ritchie, Esq., of the law firm of Greenstein

DeLorme & Luchs, P.C., as co-counsel for Plaintiff in the above-captioned matter.


GREENSTEIN DELORME & LUCHS, P.C.

/s/ Spencer B. Ritchie

Dated:  July 31, 2022

James D. Sadowski (D.C. Bar No. 446635)
Spencer B. Ritchie (D.C. Bar No. 1673542)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

8161\4880-7114-0468.v1

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 31st day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Spencer B. Ritchie
Spencer B. Ritchie

eFiled
07/31/2023 5:09:22 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
11/10/2023

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

The Plaintiff, Developer RE1 LLC ("Developer RE1") hereby files its Opposition to

Defendants DP Capital, LLC, WCP Fund I LLC, Daniel Huertas, and Russell Drazin's

(collectively, "Defendants") Motion for Protective Order (the "Motion").  This case involves a

dispute over loan documents, including two deeds of trust for which Mr. Russell Drazin ("Mr.

Drazin") serves as the Trustee.  Mr. Drazin is a fact witness.  Mr. Drazin can be deposed as to

what actions he took in his capacity as Trustee, if any, whether he was dominated and controlled

by the Defendants (as Trustee), and as to other facts related to his role as Trustee.  There is no

basis for a protective order in this situation and the Motion should be denied.

## I.  RELEVANT FACTUAL BACKGROUND

This case centers on two deeds of trust and alleged defaults related thereto.[1]  The

gravamen of the Complaint in this matter is that the Defendants manufactured pretextual defaults

---

[1]    For brevity, the complete factual history is omitted from the instant Opposition.  For a full
recitation of the facts of this matter, *see* Plaintiff's Opposed Emergency Motion for a Temporary
Restraining Order to Prevent an Imminent Foreclosure Sale, filed July 11, 2023.

1

under a Deed of Trust (the "First DOT"), a Commercial Deed of Trust Note (the "First Note"), a

second, additional Deed of Trust ("Second DOT"), and a second Commercial Deed of Trust Note

(the "Second Note").

There are four defendants in this case.  DP Capital, LLC ("DP Capital"), is a Virginia

company that uses the trade name "Washington Capital Partners".  Am. Compl. ¶ 2.  For

convenience, this Opposition refers to DP Capital as  the "WCP".  The WCP Fund I, LLC

("WCP Fund"), is a Delaware company that engages in a lending business in the District.  *Id.* ¶ 3.

Daniel Huertas ("Mr. Huertas") is an individual that resides in Virginia.  *Id.* ¶ 5.  Mr. Huertas

controls WCP, and WCP controls the WCP Fund.  *Id.* ¶¶ 4-5.  Russell Drazin ("Mr. Drazin"), is

an individual and counsel to the WCP and the WCP Fund.  *Id.* ¶ 6.  Mr. Drazin is also the

Trustee under the First and Second DOT.  *Id.*

## II.   Procedural  History

Developer RE1 filed its Complaint on December 16, 2022, which was subsequently

amended to correct a few errors.  Plaintiff filed a Motion for a Temporary Restraining order on

December 23, 2022, which was subsequently withdrawn primarily for settlement purposes.  On

July 17, 2023, Developer RE1 renewed its Motion for a Temporary Restraining Order ("TRO")

to prevent a foreclosure sale set for July 25, 2023.  The Court granted that renewed motion after

an emergency hearing was held on the TRO on July 25, 2023.  On Friday, July 21, 2023, Judge

Milton Lee held a hearing on a nearly identical Motion for a Temporary Restraining order in a

related case (*423 Kennedy St Holdings, LLC v. DP Capital, LLC d/b/a Washington Capital

Partners, et al.* (2023-CAB-004260)) and issued an Order granting that motion on July 24, 2023.

In the 423 Kennedy Order, Judge Lee noted that Mr. Drazin had a conflict of interest in

December of 2002.  423 Kennedy Order at 16-17 ("Drazin's position as counsel to WCP created

2

a conflict because Negussie and his partners were now adversaries over the disposition of the

423 Kennedy Street property.).  The facts in the 423 Kennedy case and this case are intertwined,

in part because Mr. Drazin invoked a cross-default provision in the DOTs as to both Developer

RE1 and 423 Kennedy.

III.   THE LEGAL STANDARD FOR A PROTECTIVE ORDER

When a party employs a counsel to represent it in a case where the attorney has played a

role in the underlying facts, both the attorney and the party have every reason to expect that the

attorney's deposition may be requested.  *See, e.g.*, *White v. Boarman*, 2011 U.S. Dist. LEXIS

173132 at *5 (D.D.C. June 20, 2011).  The discovery rules of the District of Columbia are to be

accorded a broad and liberal treatment.  *See, e.g.*, *White v. Wash. Met. Area Transit Auth.*, 432

A.2d 726, 728 (D.C. 1981) (citing *Dunn v. Evening Star Newspaper Co.*, 232 A.2d 293, 295

(D.C. 1967)).  Accordingly, a party "may obtain discovery regarding any matter, not privileged,

which is relevant to the subject matter involved in the pending action, including the existence,

description, nation, custody, condition, and location of any books, documents, or other tangible

things and the identify and location of persons having knowledge of any discoverable matter."

*See id.*; *cf. Organic Consumers Ass'n v. Handsome Brook Farm, LLC*, 2017 D.C. Super. LEXIS

27 at *4 (D.C. Super. Ct., Jan. 10, 2017) ("The simplified notice pleading standard relies on

*liberal discovery rules* and summary judgment motions") (emphasis added).

IV.   LEGAL ARGUMENT

Plaintiff seeks to depose Mr. Drazin in regard to his role as Trustee under the deeds of

trust and as to whether he breached the fiduciary duties that he owed to both Developer RE1 and

423 Kennedy.  Under well-established case law in the District, as a trustee, Mr. Drazin has

fiduciary duties to both the borrowers and the lenders under the deeds of trust.  *See, e.g.*, *Perry v.*

3

*Virginia Mortg. & Inv. Corp.*, 412 A.2d 1194 (D.C. 1980). Defendants point to inapposite case law for the proposition that Plaintiff is seeking to depose opposing counsel for harassment or vexatious purposes. Those cited cases are largely nonbinding, federal cases that are factually distinguishable from the instant case. In the case that Defendants principally rely on, *Coleman v. D.C.*, 284 F.R.D. 16, 18 (D.D.C., July 13, 2012), the plaintiff sought to depose an opposing attorney concerning communications between plaintiff's counsel and the attorney, as well as emails disclosed by that attorney, and conversations that the attorney had with a doctor regarding the plaintiff's fitness for duty examinations. *See id.* The Court declined to allow a deposition to proceed, but granted the Plaintiff leave to issue five interrogatories on certain issues related to the attorney's conversations with the doctor. Here, Developer RE1 is seeking to depose Mr. Drazin about his conflict of interest, whether he was dominated and controlled by the Defendants, how he complied, if at all, with this fiduciary obligations to Developer RE1 (as Trustee), and other facts regarding his role as Trustee under the loan documents.

A.    The Plaintiff Has Met its Burden

Trial counsel may be deposed on non-privileged factual information. *See. e.g.*, *Sadowski v. Gudmundsson*, 206 F.R.D. 25, 26 (D.D.C. 2002). Under the framework set forth in *White v. Boarman*, Developer RE1 has easily met each of the relevant factors that a court considers in determining whether to allow the deposition of opposing counsel. *See* 2011 U.S. Dist. LEXIS 173132 at *5 (D.D.C. June 20, 2011) (listing the relevant factors: (1) no other means exists to obtain the information that to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case).

First, Mr. Drazin is the only Trustee under the deeds of trust at issue in this case, Mr. Drazin is the only individual who can state firsthand which actions, if any, he took as Trustee under the loan documents. This information cannot be gleaned from WCP, DPCL, or Mr.

4

Huertas.  This information is separate from his role as counsel for WCP, DPCL, and Mr. Huertas and is not directly attributable to either his review of documents furnished by his clients and/or communications with his clients.

Second, the information sought from Mr. Drazin is highly relevant and nonprivileged.  As Developer RE1 noted at the TRO hearing, Developer RE1 will be filing a motion for leave to amend the First Amended Complaint to add a claim for breach of fiduciary duty against Mr. Drazin and additional claims for declaratory judgment.[2]  Mr. Drazin's actions, if any, that he took in regard to the deeds of trust will be highly relevant (indeed, essential) for Developer RE1 to recover under its soon-to-be filed breach of fiduciary duty claim.  *See, e.g.*, *Sheridan v. Perpetual Building Assoc.*, 299 F.2d 463, 465 (D.C. Cir. 1962) ("When it is shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden of proving that he has been faithful to his trust."); *accord Johnson v. Inter-City Mortg. Corp.*, 366 A.2d 435, 437 (D.C. 1976); *Sheridan v. Perpetual Building Assoc.*, 322 F.2d 418, 420 (D.C. Cir. 1963). Mr. Drazin can be questioned about actions he took in his capacity as Trustee, not as counsel to WCP, DPCL, or Mr. Huertas.  Moreover, Judge Lee has already determined that 423 Kennedy is likely to prevail on a breach of fiduciary duty claim against Mr. Drazin vis-à-vis a different borrower under nearly identical facts.  *See* 423 Kennedy Order at 15-17 (Part C).

Third, as noted above, the testimony sought from Mr. Drain is crucial to Developer RE1's theory of the case, that Mr. Drazin was controlled by the WCP, the DPCL, and Mr. Huertas, and that Mr. Drazin breached his fiduciary duty to the borrowers under the deeds of trust.  *See Sheridan*, 299 F.2d at 465.

---

[2]   If Mr. Drazin cannot meet his burden of proving that he was faithful to his duties as Trustee, the actions that he took against Developer RE1 while clouded by a conflict of interest could be set aside as improper.

Defendants' reliance on federal cases from Missouri is belied by the fact that the D.C. Cases they rely on state plainly that when a party employs a counsel to represent it in a case where the attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested. *Compare* Mot. for Prot. Ord. at 6 (citing *Wilson v. Scruggs*, 2003 WL 2351358, at *1 (S.D. Mo. 2003) (citing *Shelton*, 805 F.2d 1323, 1327 (9th Cir. 1986); *Hickman*, 329 U.S. at 513, *Jones v. Board of Police Commissioners of Kansas City, Missouri*, 176 F.R.D. 625 (W.D. Mo. 1997); *Caterpillar Inc. v. Friedemann*, 164 F.R.D. 76 (D. Or. 1995); *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Mo. 1990)); *with.*, *White v.*, 2011 U.S. Dist. LEXIS 173132 at *5. Mr. Drazin, in choosing to involve himself as trustee under the deeds of trust and as counsel for the lender, and in choosing to not to name a substitute trustee after this litigation was initiated, was on notice that he would likely be deposed. As an attorney practicing real estate law, Mr. Drazin is further presumed to know the law regarding his fiduciary duty to the borrower and the suggested path for a trustee that has an obvious conflict of interest. *See, e.g.*, *Sheridan*, 299 F.2d at 465.

B.    <u>Mr. Drazin Cannot Have It Both Ways</u>

Mr. Drazin cannot enjoy the benefit of injecting himself factually into the subject matter of this case as trustee under the deeds of trust and shield himself from discovery due to his role as counsel for the lender. In support of the proposition that Mr. Drazin cannot be deposed, Defendants essentially argue that Mr. Drazin has complied with the terms of the deeds of trust and his duties to (i) obey the plain language of the deed of trust which he is foreclosing; and (ii) obey the dictated of District of Columbia law as they relate to foreclosures. *See* Mot. for Prot. Ord. at 8-9. Developer RE1 is not obligated to take the Defendants at their word regarding whether Mr. Drazin faithfully exercised his duties under the deeds of trust and District of

6

Columbia law; rather, Developer RE1 is entitled to fact discovery to evaluate those assertions.
*See. e.g.*, *White*, 432 A.2d at 728.

The Defendants provided a long string cite about the duties of trustees, none of which shield a trustee from being deposed. *See Evans v. First Mount Vernon, ILA*, 786 F. Supp 2d 347, 356 (D.D.C. 2011) (quoting *In re Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.,* 412 A.2d 1194, 1197, D.C. 1980)); *S&G Inv. Inc. v. Home Fed,* 505 F.2d 370, 377 *n. 21* (D.C. Cir. 1974) (citing *Sheridan v. Perpetual Bld Ass'n*, 322 F.2d 418, 422 (D.C. Cir. 1963)); *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 169 (D.D.C. 2013). Indeed, these cases articulate the legal roles and responsibilities of a trustee – the very same issues that Developer RE1 is entitled to explore in written discovery requests and by taking Mr. Drazin's deposition.

Finally, the remedy sought by the Defendants – *i.e.,* that Mr. Drazin cannot be deposed on any issue -- is not proportional to the alleged potential harm. Mr. Drazin is now represented by a highly competent attorney. The appropriate time to raise objections regarding any questions to Mr. Drazin that may implicate him having to divulge attorney-client privileged material can be made on a question-by-question basis at his deposition. A blanket prohibition on Mr. Drazin providing any deposition testimony is clearly not warranted under the facts present here.

V.    CONCLUSION

For the foregoing reasons, the Motion for a Protective Order should be denied. A proposed order is attached.

7

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 31, 2022                      /s/ Spencer B. Ritchie
                                           Alexandria J. Smith (D.C. Bar. No. 1781067)
                                           Spencer B. Ritchie (D.C. Bar No. 1673542)
                                           James D. Sadowski (D.C. Bar No. 446635)
                                           801 17th Street, NW, Suite 1000
                                           Washington, DC 20006
                                           Telephone:  (202) 452-1400
                                           Email:  jds@gdllaw.com | ajs@gdllaw.com
                                           *Counsel for Plaintiff Developer RE1 LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition was served by the Court's electronic filing system this 31st day of July 2023, and a notice of filing should be served on all counsel of record.

                                           /s/ Spencer B. Ritchie
                                           Spencer B. Ritchie


8

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
              8/10/2023

## [PROPOSED] ORDER

Upon Consideration of Defendants' Opposed Motion for a Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel, and the Plaintiff's Opposition thereto, and for the reasons set forth in that Opposition, it is this _____ day of _____, 2023, hereby

ORDERED that the Motion is DENIED.

SO ORDERED.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

***Copies to counsel of record via EfileDC.***



Superior Court of the District of Columbia
Multi-Door Dispute Resolution – Civil ADR Branch
410 E Street NW, Washington, DC 20001
202-879-1549 | https://www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Spencer B Ritchie
GREENSTEIN DELORME & LUCHS  PC
801 17th Street NW
Suite 1000
WASHINGTON DC  20006

**Case Caption:**   Developer RE1 LLC v. DP Capital, LLC d/b/a Washington Capital Partners et. al.

**To:**   Spencer B Ritchie                          **Case Number:**   2022-CAB-005935

### NOTICE OF REMOTE MEDIATION

Your case is scheduled for online mediation on 11/16/2023 at 1:30 PM. The mediation session will be conducted via a video conference platform. Multi-Door will reach out to you with information on how to access your session. Attorneys are required to submit a Mediation Readiness Certificate (MRC) and Confidential Settlement Statement (CSS) no later than 21 days prior to the mediation date. Pro se parties are required to submit a CSS no later than 21 days prior to the mediation date. MRC and CSS forms can be found on the Civil Mediation page of the Superior Court's website (https://www.dccourts.gov/services/mediation-matters/civil) and submitted to CivilMRC-CSS@DCSC.GOV.

**Parties that do not submit MRC and CSS paperwork 14 days before the scheduled mediation date, will result in Multi-Door canceling the mediation and notifying the court, including identifying the party or parties, and any attorney, who did not provide the documents which may result in a show cause order and fines.**

To reschedule this mediation:  If your request for a continuance is *by consent* of all parties and made *30 days or more in advance* of the mediation date, please contact the Civil Actions Branch (202-879-1133).  If you wish to reschedule *within 30 days* of mediation, you must file a motion for a continuance with the calendar judge.  Attorneys receiving this notice are deemed counsel of record.  For additional instructions review the Mediation Procedures received at the scheduling conference, and also located on the Superior Court's website (dccourts.gov) or contact the Multi-Door Dispute Resolution Division at 202-879-1549.

*(For non-attorney parties: Multi-Door Case Managers will be communicating important information about your mediation primarily through email. To ensure that you do not miss any vital information, please call 202-879-1549 to verify your email address with the Case Manager assigned to your case.)*

To request a change in your method of participation in mediation, visit www.dccourts.gov/services/remote-hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities**:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción**:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች**:

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩትን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Case 24-10023-ELG    Doc 19-1    Filed 08/09/24    Entered 08/09/24 15:40:07    Desc    eFiled
08/07/2023 6:04:23 PM
Superior Court
of the District of Columbia

Main Document      Page 419 of 637

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

Next Event: Close of Discovery
             November 10, 2023

**REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER TO
PREVENT PLAINTIFF FROM DEPOSING DEFENDANTS' COUNSEL**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr.

Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, in reply to the

opposition (the "Opposition") of Developer RE1 LLC (the "Plaintiff") to the Opposed Motion for

Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel (the "Motion"), and state

as follows:

**I.**    **Introduction**

The Plaintiff appears to be in agreement concerning the controlling standard for deposing

an opposing party's counsel, but – rather critically – fails to make a showing under that standard.

Rather, the Opposition is reliant upon generalized, threadbare arguments that ignore the myriad

less-intrusive options available to the Plaintiff and the sound rationale for insisting those options

be first pursued before a deposition of Mr. Drazin is even considered. Equally, the Plaintiff does

not demonstrate how the information sought is critical (or even relevant) in nature. And for these

reasons, as noted in the underlying Motion, it is appropriate to enter a protective order *sub judice*.

1

## II.    Argument: The *White/Shelton* Standard is Not Satisfied

All parties appear to be in accord that the Motion is governed by the standard set forth in *White v. Boardman*, which adopts a conjunctive three prong test to be applied when a litigant seeks to take the deposition of its adversary's legal counsel. While the Plaintiff acknowledges these rigors and endeavors to argue for their satisfaction, the Opposition ultimately fails on at least two of the three prongs – if not all three.

The *White* standard, as summarized by the Plaintiff itself, holds that an adverse attorney may only be deposed where "(1) no other means exists to obtain the information that to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Opposition at § IV(A) (p. 4) (summarizing *White v. Boarman*, 2011 WL 13266589, at *2 (D.D.C. 2011)). The standard, in turn, is adopted from the United States Court of Appeals for the Eighth Circuit, which has observed:

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (citing *Fireman's Fund Insurance Co. v. Superior Court*, 140 Cal.Rptr. 677, 679 (Cal. App. 3d 1977))

Here, the Plaintiff cannot – and does not – make a showing sufficient to clear the first prong of the *White/Shelton* test. The Opposition insists that Mr. Drazin "is the only individual who can state firsthand which actions, if any, he took as Trustee under the loan documents…" Opposition at § IV(A) (p. 4). Yet this is plainly not the case. The underlying deeds of trust are clear that the trustee is to act "upon the instruction of the Beneficiary," and authorize the trustee to (i) sell property at public auction; (ii) advertise the subject sale; and (iii) ensure such advertisements

2

are placed "in at least one newspaper published or having a general circulation in the country, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks…" *See* Deed of Trust, attached hereto as Exhibit A, at § 8.0.

To be sure, aside from executing a document that is recorded amongst the land records, and execute a deed following a successful auction, this is *all* Mr. Drazin is authorized to do in his ministerial role as trustee. And every element of that work can be readily discovered through another party to this case and/or through a review of public records. WCP is capable of indicating whether or not it instructed Mr. Drazin to commence a foreclosure. WCP is capable of producing ads run in newspapers of general circulation. WCP is capable of showing if those ads were run in successive weeks. And the land records reveal whether or not a proper notice was recorded in advance of a planned (and since-stayed) foreclosure auction.

Indeed, it is not merely that there exist other means of ascertaining this information; it is, too, that the other means are not even difficult or invasive in nature. WCP is a party to this action and can have its corporate designee deposed (just as it can be sent interrogatories or issued document requests). If the Plaintiff does not believe WCP, the Plaintiff is free to subpoena the Washington Post for a copy of advertisements run amongst its pages. If the Plaintiff does not believe a proper notice was placed in the land records, the Plaintiff can check those land records – for free – online. And there is thusly absolutely no information held by Mr. Drazin that is not readily discoverable, with appreciable ease, from other sources.

Equally, the Plaintiff cannot meet – and has not met – the third rigor of the *White/Shelton* test: showing the information "is crucial to the preparation of the case." To the contrary, this is *not* a case where the Plaintiff alleges an improper foreclosure occurred, where an auction was not properly advertised, where a notice was not timely placed in the land records, or anything of the

sort. This is, rather, a case where the Plaintiff has succeeded in staying a foreclosure and where, even prior to the stay being obtained, no one ever suggested the auction to be without proper advertisement or notice. The Plaintiff takes plentiful issue with WCP, DPCL and Mr. Huertas, urging they ought not have declared a loan to be in default and then instructed Mr. Drazin to foreclose. But nowhere in the record of this case may be found so much as a suggestion that once Mr. Drazin was instructed to foreclose, he did so in any manner other than one wholly in accord with the deed of trust and governing law.

With the foreclosure stayed, it is altogether unclear how information about the now-cancelled auction could be "crucial to the preparation of the case." None of the Plaintiff's claims sound in the technical formalities of how a foreclosure sale was to be conducted. To the contrary, the gravamen of the Plaintiff's case is that once it failed to pay a loan at maturity, WCP and DPCL were not entitled to exercise their rights under deeds of trust. The mechanics of a foreclosure that never occurred could not possibly be any less relevant to such a case.

### III.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter an order prohibiting the Plaintiff from taking the deposition of Mr. Drazin; and (ii) afford such other and further relief as may be just and proper.

Dated: August 7, 2023                    Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

4

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 7th day of August 2023, and a notice of filing should be served on all counsel

of record.

<div align="right">
<u>/s/ Maurice B. VerStandig</u>
Maurice B. VerStandig, Esq.
</div>

Exhibit A

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's  heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

3505 1st St NW Washington DC 20011
3501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

ARTICLE II

GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

Rev 5.2016                                                          Page **4** of 25

Case 24-10023-ELG   Doc 19-1   Filed 08/09/24   Entered 08/09/24 15:40:07   Desc
Main Document   Page 429 of 637
3505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

<center>ARTICLE III</center>

<center>REPRESENTATIONS AND WARRANTIES</center>

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

### AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
**2nd Trust**

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

ARTICLE VI

EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

Rev 5.2016

Page **10** of **25**

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016                                                                                      Page **15** of **25**

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon  a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

ARTICLE XII

STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _(handwritten)_ ) SS:
STATE OF _(handwritten)_

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_

NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

# EXHIBIT A

## LEGAL DESCRIPTION

5005 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**        **December 23, 2021**

**Borrower(s):**         **Developer RE1 LLC**

**Property Address:**    **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.



**Government of the
District of Columbia**
Office of Tax and
Revenue
Recorder of Deeds
**1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374**

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

☐ Deed    ☒ Deed of Trust    ☐ Lease for a Term of 30 years or more

☐ Re-recording    ☐ Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0137 | | 3389 | | 71/72 |
|---|---|---|---|---|---|---|
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum.

Square and/or Parcel [_____]    Lot(s) [_____]

**Property Address:** [5501-5505] [1st Street] [NW] Unit No.
Street Number    Street Name    Quadrant

**Property Use:** ☐ Dwelling Units ≤ 5    ☐ Apartment    ☐ Commercial

**Is any part of the _entire_ building commercial (Class 2)?**
☒ Yes*    ☐ No    ☐ Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
☐ Yes†    ☐ No

† If Yes, this instrument will be taxed as commercial.

**Fee Interest % Conveyed:** [100] %

Was personal property included in this transfer?    ☐ Yes*  ☐ No
*If Yes, what type? [_____]    Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person

Name [Steven Oxman]    Firm [District Title]

Address [1775 I Street Northwest, #560]

City [Washington]    State [DC]    Zip [20006]

### PART D - Return Instrument To

Name [Steven Oxman]    Firm [District Title]

Address [1775 I Street Northwest, #560]    Phone No. [(202) 518-9300 ext. 309]

City [Washington]    State [DC]    Zip [20006]

### PART E – Grantor(s) Information

Grantor [Developer RE1 LLC]    Grantor [_____]

Grantor [_____]    Grantor [_____]

Address [1629 K Street NW, Suite 300]    Phone No. [(202) 271-5046]

City [Washington]    State [DC]    Zip [20006]

**Grantor(s) Tenancy**  ☐ Tenants in Common  ☐ Joint Tenants  ☐ Trustee
☐ Tenants by Entirety  ☐ Sole

ROD 1 Revised 08/2019

★ ★ ★

**Government of the District of Columbia**

Office of Tax and Revenue
1101 4th St. Street, SW Washington, DC 20024      Phone (202)727-5374

| Square | Suffix | Lot |
|--------|--------|-----|
| 3389 | | 0137, 71, 72 |

## PART F – Grantee(s) Information

Grantee: WCP Fund I LLC      Grantee: _____

Grantee: _____      Grantee: _____

Address: 2815 Hartland Road, Suite 200      Phone No. (703) 344-1733

City: Falls Church      State: VA      Zip: 22043

**Grantee(s) Tenancy**      ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee

☐ Tenants by Entirety   ☐ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| Last Name | First Name | Middle Name |
|-----------|------------|-------------|
| | | |

Address: _____   Unit No. _____

City: _____   State: _____   Zip: _____

Phone: _____

## PART H- Consideration and Financing
"complete all items; insert zero if no amount"

### I. Deed

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

1. Acquisition Price _____   _____/_____

   Cash _____   _____/_____

   *Amount of 1st Deed of Trust* _____

   Purchase Money Amount _____

   Other Exempt Amount _____   _____

   Nonexempt Amount: _____

   *Amount of 2nd Deed of Trust* _____

   Purchase Money Amount _____

   Other Exempt Amount _____   _____

   Nonexempt Amount: _____

   *Amount of 3rd Deed of Trust* _____

   Purchase Money Amount _____

   Other Exempt Amount _____   _____

   Nonexempt Amount: _____

2. Current Tax Year Assessed Value _____   _____/_____
   (If No or Nominal Consideration)

ROD 1 Revised 08/2019

**Government of the District of Columbia**

Office of Tax and Revenue
1101 4th St. SW
Washington, DC 20024
Phone (202)727-5374

## II. Deeds of Trust (no transfer of title)

Tax Exemption Application
Recordation Tax
(Cite to Specific DC Code Provision)

| | |
|---|---|
| Amount of Deed of Trust | $ 524,000.00 |
| Exempt Amount (s) | 0.00 |
| Nonexempt Amount(s) | $524,000 |

3. Total Amount of all Nonexempt Deeds of Trust (I & II)    $524,000.00

| 3389 | | 0137 ,71, 72 |
|---|---|---|
| Square | Suffix | Lot |

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ 13,100.00 |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | Total | | $ 13,100.00 |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.

| Grantor(s) | Grantee(s) |
|---|---|
| Developer RE1 LLC | WCP Fund I LLC |
| Typed Name | Typed Name |
| _(signature)_ | _(signature)_ |
| Signature | Signature |
| Date  December 23, 2021 | Date  December 23, 2021 |

Subscribed to and sworn to before me

by Grantor(s) this 23rd day of December, 2021

Notary Public

My Commission Expires  ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Subscribed to and sworn to before me

by Grantee(s) this 23rd day of December, 2021

Notary Public

My Commission Expires: 

STEVEN M. SUSHNER
NOTARY PUBLIC DISTRICT OF COLU
My Commission Expires Feb. 28...

ROD 1 Revised 08/2019

**This information is subject to audit.**
**Please keep all supporting documentation.**

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | |
| **Plaintiff,** | **Case No.        2022 CAB 005935** |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.***,** | **Next Event: Remote Mediation Session November 16, 2023 at 1:30 P.M.** |
| **Defendant.** | |

<u>**HEARING ORDER**</u>

This matter was before the Court on July 25, 2023 to consider: (1) Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Motion For TRO"), filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023; and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on July 11, 2023.

In the Motion for TRO, the Plaintiff sought to prevent a Foreclosure Sale of the Property at issue, which was scheduled for 2:00 p.m. the same day.  The source of the controversy is Defendants' allegation that Plaintiff defaulted on two loans, which matured on December 24, 2022. According to the Defendant, the failure to resolve the alleged default entitled Defendants to foreclose upon property, located at 5501 1st Street, N.W., Lot 138, Square 3389, pursuant to the operative Commercial Deeds of Trust signed by the parties on December 21, 2021.[1]

---

[1] The "1st Trust" was in the amount of $3,579,000.00 and the "2nd Trust" was in the amount of $524,000.00.

At the Hearing, the Plaintiff called Mr. Mel Negussie as a witness, Plaintiff's project developer. Mr. Negussie credibly testified that he has a 10% ownership interest in Plaintiff LLC and the LLC was created to develop 5501 1st Street, NW, Lot 138 (the Project"), exclusively. Mr. Negussie became involved in the Project in 2019 and brought in investors. In 2021, the Defendants agreed to refinance the Project and provided the Plaintiff with a loan for approximately $4,000,000.00. Mr. Negussie testified that no construction loan was attached to property so amounts to be paid were "always the same" because the Plaintiff was only making interest payments. Although he admitted that four or five loan payments were untimely, he testified that the Defendants always accepted the payments. Mr. Negussie testified that on November 30, 2022, he requested a payoff statement from the Defendants so that the Plaintiff could refinance, and that he began taking steps to refinance in August 2022 with different banks. Although he advised Defendant Daniel Huertas of his intent to refinance, he never received payoff statements for the Project. Soon after he requested these statements, the relationship began to breakdown. On December 6, 2022, Mr. Negussie had a conversation with Mr. Huertas and asked about the requested payoff statements. The next day, according to Mr. Negussie, Mr. Huertas advised that because of how the 2501 I Street project turned out, the investors for the Project were unhappy and unless Mr. Negussie did right by that project, he will "make life difficult for [him]," which Mr. Negussie considered to be a threat as Mr. Huertas was the "decisionmaker". That same evening, Mr. Negussie received an unsigned default notice, for the first time, via email, showing a new payoff dated December 8, 2022 with default interest. Mr. Negussie testified that given the default, the Plaintiff could not complete the refinancing and stopped construction on the Project. According to Mr. Negussie, the basis given for the alleged default was: (1) a water lien, which was

removed prior to the foreclosure notice was sent;[2] (2) real estate taxes, which were paid by the time Plaintiff received the default email; and (3) a breach of the deed of trust as a result of default. On June 23, 2023, a company called "SF NU, LLC" sent to Plaintiff a Notice of Foreclosure Sale of Real Property or Condominium Unit, setting the date of the foreclosure sale on July 25, 2023, at 2:00 p.m.

The Court reviewed the facts in light of Super. Ct. Civ. R. 65 to determine if an injunction is proper in this matter. In determining whether a Temporary Restraining Order should be issued, the Court must consider the following factors: (1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits of the underlying cause of action; (3) that the "balance of injuries" favors granting an injunction; and (4) that the public interest would be served by granting the injunctive relief sought. *In re Antioch University*, 418 A.2d 105, 109 (D.C. 1980).

At the onset, the Court found Mr. Negussie to be credible and credited his testimony in full.  As to the first element, certainly the deprivation of property is the one of the hallmarks of irreparable harms.  The Court noted that if the foreclosure went forward, the Plaintiff would lose its interests in the property and the improvements.  The Court found that the likelihood of irreparable harm is significant and cannot be addressed through other means.  Thus, the first element weighed in favor of the Plaintiff.

As to the second element, the Court noted that on July 17, 2023, the parties filed a Notice of Related Case in parallel matter 2023 CAB 4260.  In the Notice, the Parties stated that the claims in both cases are substantially the same, they involve the same five Defendants, and the events are

---

[2] Defendant's  counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water bills were being sent to the to the wrong address.

overlapping.  In the parallel matter, the Honorable Milton Lee granted the Plaintiff's request for an injunction to stop an immediate foreclosure initiated by the Defendants.   Judge Lee, in his Order dated July 24, 2023, found a likelihood of success on the merits of the claims plead, which includes tortious interference.  While not the law of the case in this case, the Court found Judge Lee's opinion quite persuasive.  As to Count I, the Tortious Interference with Business Relations claim, for the reasons stated on the record, the Court found that soon after Mr. Negussie demanded a payoff statement to refinance the Project loan, the Defendants intentionally frustrated the refinancing and caused a termination of the Project.  In terms of the breach of duty of good faith and fair dealing claim, the Court found that the Plaintiff would likely succeed on this claim as well because of Mr. Negussie's testimony – namely that the Defendants evaded the spirt of the contract, willfully rendered imperfect performance, and interfered with Plaintiff's ability to perform under the contract.  Thus, for the reasons more elucidated on the record, the Court found that the second element weighed in favor of the Plaintiff.

As to the third element, the Court found that the Plaintiff would be harmed more if the Court were to deny the instant Motion.  The record demonstrates that the Defendants "torpedoed" the Plaintiff's efforts to perform under the deed of trust.  As to the fourth element, the Court found that the public interest is best served when there is no tortious interference in property and in fair business dealings, especially here where there is evidence of a pretextual basis for the default.  Thus, for the reasons more elucidated on the record, the Court found that the third and fourth elements also weighed in favor of the Plaintiff.

Finally, as to the Bond, the Court agreed with Judge Lee that Defendants failed to provide evidence of what the bond might be, and Plaintiff testified that they made payments on the loan through the end of December 2022 even though Defendants discontinued the construction draws

that were necessary for the project to move forward.   Judge Lee stated that Plaintiffs clearly had limited funds to continue the project and if the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review, and equity would support the waiver of the bond requirement given the overall strength of the Plaintiff's case.  This Court agrees.

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, the Opposition thereto, the facts and arguments presented at the Hearing, and a review of the entire record herein, the Court granted the Motion, stopping the imminent foreclosure sale.  Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion was declared to be unopposed pursuant to a Praecipe filed by the Defendants and Defendants' representations at the Hearing.  Additionally, given the Court's ruling, the Court granted the Plaintiff's Oral Motion to Extend the Scheduling Order Deadlines, and the new deadlines shall be enumerated below.

Accordingly, based upon the entire record herein, it is this 15th day of August 2023, hereby:

**ORDERED** that the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale is **GRANTED**; it is further

**ORDERED** that Defendants must immediately stop taking any action to foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further order of this Court, it is further

**ORDERED** that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order; it is further

**ORDERED** that Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion is **GRANTED**; it is further

**ORDERED** that Plaintiff's Oral Motion to Extend Scheduling Order Deadlines is

**GRANTED** and the new deadlines are as follows:

| | |
|---|---|
| Close of Discovery | November 10, 2023 |
| Motions Deadline | December 8, 2023 |
| Motions Decided Deadline | January 12, 2024 |
| Trial Readiness Hearing | September 6, 2024, at 2:00 p.m. |
| Jury Trial | September 9, 2024, at 9:30 a.m. |

**SO ORDERED**.

_____

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

**<u>Copies via Odyssey to</u>:**

James D. Sadowski, Esq.
<u>jds@gdllaw.com</u>
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
<u>mac@mbvesq.com</u>
*Counsel for Defendants*

eFiled
09/03/2023 9:30:42 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

423 Kennedy St Holdings LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2023 CAB 004260
Judge Milton Lee

## ANSWER AND AFFIRMATIVE DEFENSES

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 8, and in answer to the First Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), as well as the assertion of affirmative defenses thereto, state as follows:

### Answer

1.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants generally deny all allegations in the Complaint except for those specifically admitted herein.

2.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(5), the Defendants lack information or knowledge sufficient to form a belief about the truth of the allegations set forth in paragraphs 1, 6, 14, and 16 of the Complaint.

3.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants admit the allegations set forth in paragraphs 2-3, 5, 8, 10-13, 15, 20, 23, 26, 29, 32-33, 46, 49, 64, 78-80, 85-87, 105, 107-108, 111-112, 116-117, 128, 135, 153-156, and 160-163 of the Complaint.

4.     Per paragraph 7 of the Complaint, the Defendants deny that Mr. Drazin acts as counsel to SFNU, except the Defendants admit that Mr. Drazin does sometimes act as counsel to WCP in its capacity as servicer of certain loans owned by SFNU.

5.     Paragraph 84 of the Complaint is admitted but it is noted the deeds of trust do not require various occurrences be memorialized by formal (or informal) notice.

6.     Paragraphs 139, 144, 151, 159, 167, 172 and 181 of the Complaint do not set forth contentions that call for an admission or denial.

7.     Various paragraphs in the Complaint set forth assertions that are contentions of law; an answer is an improper vehicle to admit or deny assertions of law. To the extent a further answer is required, the Defendants deny the same.

8.     Certain allegations in the Complaint speculate about the existence of privileged attorney/client communications; the Defendants do not specifically answer those allegations herein but, instead, generally note that (i) they will not waive the attorney/client privilege; (ii) the invocation of such privilege ought not be construed as an admission of any of the allegations in the Complaint; and (iii) to the extent necessary to preserve said privilege, the Defendants generally deny the subject allegations.

**Affirmative Defenses**

1.     The Complaint fails to state a claim for which relief may be granted.

2.     The plain language of the promissory notes and deeds of trust appended to the Complaint control the relationship between the Plaintiff and the Defendants.

3.     The Complaint fails to plead damages in a legally cognizable manner.

4.     The Plaintiff is barred from recovering herein by the economic loss rule.

5.     Injunctive relief is not a stand-alone cause of action in the District of Columbia.

6.      The Plaintiff is barred from recovering herein by the doctrine of unclean hands.

7.      The Plaintiff is barred from recovering herein by the doctrine of setoff.

8.      The Plaintiff is barred from recovering herein by the doctrine of recoupment.

9.      The Plaintiff is barred from recovering herein by the doctrine of first breach.


Dated: September 3, 2023                    Respectfully Submitted,

                                            /s/ Maurice B. VerStandig
                                            Maurice B. VerStandig, Esq.
                                            DC Bar #1034066
                                            The VerStandig Law Firm, LLC
                                            9812 Falls Road, #114-160
                                            Potomac, Maryland 20854
                                            Telephone: 301-444-4600
                                            Facsimile: 301-444-4600
                                            Electronic Mail: mac@mbvesq.com
                                            *Counsel for the Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 3rd day of September, 2023, and a notice of filing should be served on all counsel

of record.


                                            /s/ Maurice B. VerStandig
                                            Maurice B. VerStandig, Esq.

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No. 2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS, *et al.*,** | **Next Court Event: Remote Mediation Session, November 16, 2023, at 1:30 p.m.** |
| **Defendants.** | |

**ORDER GRANTING DEFENDANTS' OPPOSED MOTION FOR PROTECTIVE
ORDER TO PREVENT PLAINTIFF FROM DEPOSING DEFENDANTS' COUNSEL**

This matter is before the Court on Defendants' Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel, filed on July 17, 2023; Plaintiff's Opposition to Defendants' Motion for a Protective Order, filed on July 31, 2023; and Defendants' Reply to Opposition to Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel, filed on August 7, 2023. In the Motion, the Defendants move this Court to enter a Protective Order prohibiting Plaintiff, Developer RE1 LLC, from deposing attorney Russell Drazin ("Mr. Drazin"), who serves as counsel for Defendants WCP Fund I LLC and DP Capital, LLC.

The Complaint in this case was filed on December 16, 2022 against Defendants DP Capital, LLC, WCP Fund I LLC, Daniel Huertas, and Mr. Drazin. *See* Compl. The Plaintiff alleges: (1) Tortious Interference With Business Relations, against Defendants DP Capital, LLC, WCP Fund I LLC, and Daniel Huertas (COUNT I); (2) Breach of the Duty of Good Faith and Fair Dealing, against WCP Fund I LLC only (COUNT II); (3) Declaratory Judgment, against WCP Fund I LLC

(COUNT III); and (4) Permanent Injunctive Relief to Stop Enforcement of The First Deed of Trust,

The Second Deed Of Trust, and Any Foreclosure Actions, against all Defendants (COUNT IV).

Compl. at ¶¶ 112–135.  Plaintiff filed an Amended Complaint on January 12, 2023, though the

original counts were left undisturbed.  *See* Am. Compl. at ¶¶ 113–136.

In the Defendants' Motion for Protective Order, Defendants largely seek to prohibit the

Plaintiff's deposition of Mr. Drazin because Mr. Drazin serves as outside counsel to both

Defendants DP Capital, LLC and WCP Fund I LLC.  *See* Defs.' Mot. at 1, 3.  Defendants argue

that the Plaintiff seeks Mr. Drazin's deposition for "solely harassing and vexatious purposes," *id.*

at 2, and that the effort to depose Mr. Drazin is an extraordinary measure that is neither necessary

nor appropriate in this case, *see id.* at 4–5.

The Defendants point out that deposing counsel is an extraordinary measure that requires

the Plaintiff to meet a high burden of showing why a deposition would be proper in this case.  *See*

*id.* at 5–7.  The Defendants argue that this issue is governed by the standards laid out in *White v.*

*Boarman*, 2011 U.S. Dist. LEXIS 173132 (D.D.C. 2011) and *Shelton v. American Motors*

*Corporation* 805 F.2d 1323 (8th Cir. 1986) (adopted by the United State District Court for the

District of Columbia), which sets forth a three-prong test, the *Shelton/White* test, that must be met

when a party seeks to depose the counsel of one of the adversary parties.  The standard considers

whether the information sought can be discoverable through other means, whether the information

would be relevant and non-privileged, and whether the information is crucial to the argument the

party is attempting to make.  *See Shelton*, 805 F.2d at 1327; *White*, 2011 U.S. Dist. LEXIS 173132,

at *5.

Defendants state that, as counsel to DP Capital, LLC and WCP Fund I LLC, Mr. Drazin

holds no discoverable knowledge that cannot be discovered through depositions of other

individuals in the case, such as Defendant Daniel Huertas.  *Id.* at 4.  The Defendants contend that any information the Plaintiff would seek to obtain from a deposition can be discovered through other means and any other unique information would be highly privileged by attorney-client confidentiality, and therefore, non-discoverable.  *Id.*  Further, the Defendants argue that, because the only relevant information can be found through other discovery matters, any information sought from Mr. Drazin would not add to the already discoverable information and would not be a crucial addition to the matter.  *Id.* at 5.

Defendants further emphasize that even though Mr. Drazin served as trustee of the deed of trust that secured Plaintiff's obligation to Defendant WCP Fund I LLC, this ministerial duty does not negate the fact that Mr. Drazin still serves as counsel to two Defendants, nor does it alter any of the *Shelton* factors.  *Id.* at 7.  Additionally, Defendants contend that Mr. Drazin's actions as trustee are ascertainable by resources available on the public record or by depositions with other witnesses.  *Id.*

In the Opposition, Plaintiff argues that Mr. Drazin has played a unique role in the underlying facts of the case as counsel to two other Defendants and sole trustee of the deeds at issue.  *See* Pl.'s Reply at 3.  Plaintiff contends that the deposition of Mr. Drazin is relevant because they intend on bringing a claim against Mr. Drazin for breach of fiduciary duties while serving as trustee.  *Id.*  Moreover, Plaintiff contends that the request to depose Mr. Drazin is to allow Plaintiff to discover information about his actions as the sole Trustee of the two deeds at issue, and indeed not to ask about questions related to his position as counsel to DP Capital, LLC and WCP Fund I LLC.  *Id.* at 4.

Plaintiff argues that they have met the high burden required for deposing the counsel of an opposing party when considering the facts of this case.  *Id.*  Plaintiff states that because Mr. Drazin

is the only trustee for the deeds of trust, he alone has the information about which actions he took as trustee, and the beneficiaries of the trust are not a suitable substitute for obtaining this information. *Id.* at 4. Additionally, Plaintiff contends that the information they seek to gain from Mr. Drazin is highly relevant, as they seek information relating to Mr. Drazin's actions as the Trustee and how it relates to Plaintiff's proposed claim for breach of fiduciary duty. *Id.* at 5. Plaintiff further argues that the information they seek is not privileged, as they are not seeking information about what legal advice or counsel Mr. Drazin provided to DP Capital, LLC and WCP Fund I LLC, nor any information about the documents he reviewed or clients he communicated with in his role as counsel. *Id.* at 5. Finally, Plaintiff argues that the information they seek is in fact crucial to the case, as they contend that Mr. Drazin was "controlled" by Defendants DP Capital, LLC and WCP Fund I LLC, and as a result, Plaintiff seeks information related to whether this caused Mr. Drazin to breach his fiduciary duty. *Id.*

Moreover, Plaintiff argues that because Mr. Drazin inserted himself into the facts at issue as Trustee, he cannot claim his role as counsel to DP Capital, LLC and WCP Fund I LLC because it creates a blanket prohibition against his deposition. *Id.* at 6–7. Plaintiff states that caselaw does not support prohibiting the deposition of a trustee and argues the Defendants' sought remedy of prohibiting any deposition of Mr. Drazin is too extreme of a measure. *Id.* at 7.

In the Reply to Plaintiff's Opposition, Defendants again emphasize that the Plaintiff has failed to meet the three prongs of the *Shelton/White* standard and failed to prove that the deposition of Mr. Drazin would be appropriate in this matter. *See* Defs.' Reply at 1. Defendants contest Plaintiff's claim that any actions of Mr. Drazin as Trustee are unable to be discovered by other means. *Id.* at 2. Defendants contend that, in fact, the deed of the trust states that the Trustee's actions are "upon the instruction of the Beneficiary," and thus, any actions taken by Mr. Drazin

are discoverable by other individuals or from the public record. *Id.* at 2–3. Furthermore, Defendants again emphasize that a deposition of Mr. Drazin would be invasive and inappropriate, given there are other means by which Plaintiff can ascertain the information they seek or because the information would be highly privileged. *Id.* at 3.

Here, this Court finds that the deposition of an opposing party's counsel is an extreme measure that must satisfy a high bar to be considered an appropriate course of action. The District of Columbia Superior Court Civil Rule 26 allows for parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Super. Ct. Civ. R. 26(b)(2)1). However, the Court must "limit the extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Super. Ct. Civ. R. 26(b)(2)(C).

Super. Ct. Civ. R. 26(c) allows for a party to seek protection from the court "on matters relating to a deposition" whereby the Court "may, for good cause, issue an order to protect . . . a person from annoyance, embarrassment, oppression, or undue burden or expense . . . including (A) forbidding the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery, or (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Super. Ct. Civ. R. 26(c)(1)(A), (C), (D). In showing "good cause," a movant must provide "specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998). Further, as courts generally disfavor the deposition of opposing counsel, a court must take a detailed, fact-intensive approach when deciding whether a disposition of the opposing counsel

would be appropriate. *See Dist. of Columbia v. Beech-Nut Nutrition Co.*, 2022 D.C. Super. LEXIS 51, at *3.

As noted by the parties, the *Shelton/White* standard requires a movant to show that (1) no other means exists to obtain the information than to depose opposing counsel. . . ; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *White*, 2011 U.S. Dist. LEXIS 173132, at *5 (D.D.C. 2011) (citing *Shelton*, 805 F.2d at 1327). In reviewing the arguments and facts of this case in light of these three factors, the Court does not find that Plaintiff has met this standard. Considering the first factor, while Plaintiff contends that they seek to obtain information relating to Mr. Drazin's role as Trustee and whether his actions may have breached his fiduciary duties as such, Plaintiff fails to specify just what information they are seeking to obtain that is not discoverable by other less-intrusive measures. Second, considering the relevancy of the information sought and the attorney-client privilege Mr. Drazin holds as counsel to DP Capital, LLC and WCP Fund I LLC, Defendants make a strong showing that any information that Mr. Drazin may hold is either readily discoverable by other means or covered by attorney-client privilege. Third, while the Plaintiff claims that the information they seek is crucial to a possible claim of breach of fiduciary duties, the Plaintiff fails to state, with specificity, the actual information sought and why such information cannot be obtained through some other source.

While the Court understands that in this case, Mr. Drazin played the role of both counsel to two other Defendants, DP Capital, LLC and WCP Fund I LLC, as well as Trustee in the two deeds of trust at issue in the matter, the Court still recognizes the extreme nature of deposing a party's counsel. Acknowledging the potential harms inherent in allowing the deposition of opposing counsel and taking into consideration the facts and arguments laid out by both parties,

the Court finds that the Plaintiff's contentions fail to meet the high burden set out in *Shelton/White*

and grants the Defendant's Motion for a Protective Order preventing the deposition of Mr. Drazin.

Accordingly, on this **19ᵗʰ day of September, 2023**, it is hereby:

**ORDERED** that Defendants' Motion for Protective Order to Prevent Plaintiff from

Deposing Defendants' Counsel shall be, and the same hereby is, **GRANTED**; and it is further

**ORDERED** that the Plaintiff herein is prohibited from taking the deposition of attorney

Russell Drazin.

**SO ORDERED.**

_____
 **Associate Judge Ebony M. Scott**
 *(Signed in Chambers)*

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin,
Daniel Huertas, & WCP Fund I LLC*

**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**2023-CAB-004260**

**423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.**

### TRACK II SCHEDULING ORDER

This Order may not be modified except by leave of Court upon a showing of good cause. Stipulations by counsel will not be effective to change any deadlines in the Order without court approval. Failure to comply with this Order and the deadlines set forth herein may result in dismissal, default judgment, refusal to let witnesses testify, refusal to admit exhibits, or the assessment of costs and expenses, including attorney's fees, or other sanctions.

A Joint Pretrial Statement is required unless otherwise ordered by the Court.

#### Pretrial Deadlines

| | |
|---|---|
| Exchange Lists of Fact Witnesses: | 12/12/2023 |
| Proponent's Rule 26(a)(2)(B) Report: | 12/19/2023 |
| Opponent's Rule 26(a)(2)(B) Report: | 01/11/2024 |
| Discovery Requests: | 01/25/2024 |
| Close of Discovery[1]: | 02/26/2024 |
| Filing Motions[2]: | 03/25/2024 |
| Dispositive Motions Decided: | 04/24/2024 |
| Mediation Date: | 05/09/2024 - 06/10/2024 |
| Pretrial Date[3]: | 07/08/2024-08/07/2024 |

Date: 10/13/2023

Milton C Lee, Associate Judge

---

[1] No motion relating to discovery and no deposition or other discovery may be had after this date, except by leave of court. Notices of deposition must be served not less than 5 days before the date scheduled for the deposition, and no deposition may be noticed to take place after the close of discovery date.

[2] This deadline does not apply (1) to motions relating to discovery, which must be filed by the close of discovery, or (2) to motions in limine, motions to bifurcate, or any other motion respecting the conduct of the trial, which must be filed at least 4 weeks prior to the pretrial conference.

[3] A Joint Pretrial Statement is required unless otherwise ordered by the Court.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| DEVELOPER RE1 LLC, | ) | |
|          Plaintiff, | ) | |
| | ) | Civil Case No. 2022 CAB 005935 |
| v. | ) | |
| | ) | Judge Ebony M. Scott |
| DP CAPITAL, LLC d/b/a | ) | |
| WASHINGTON CAPITAL | ) | Next Court Event:  Remote Status Hearing |
| PARTNERS, *et al.*, | ) | January 5, 2024 at 10:00 a.m. |
|          Defendants. | ) | |

---

<u>**ORDER SETTING STATUS HEARING**</u>

This matter was scheduled for Mediation on November 16, 2023, at 1:30 p.m.  Mediation was cancelled due to the Parties' failure to submit the Mediation Readiness Certificate. Accordingly, it is this 6th day of November 2023, hereby:

**ORDERED** that the parties shall appear for a **Remote Status Hearing** on **January 5, 2024, at 10:00 a.m.**, in Courtroom 219 before Judge Ebony M. Scott.  Instructions for remote participation are attached.

**SO ORDERED**.

_____
**Ebony M. Scott**
Associate Judge

<u>**Copies Via Odyssey to:**</u>

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin, Daniel Huertas, & WCP Fund I LLC*

## <u>VIRTUAL COURTROOM INSTRUCTIONS FOR COURTROOM 219</u>

During the period of remote operation, as determined by the Chief Judge of the Superior Court, some proceedings in matters on Calendar 8 will take place in <u>Virtual Courtroom 219</u>, which the parties and counsel may access in the following ways:

Going to the WebEx website at https://dccourts.webex.com/meet/ctb219 or going to https://dccourts.webex.com and entering meeting ID number 129 315 2924; or

(1)     Downloading the WebEx Meetings app, opening the app, selecting Join Meeting, and entering https://dccourts.webex.com/meet/ctb219; or

(3)     Calling 1-844-992-4726 or 202-860-2110, then entering meeting ID number 129 315 2924#, then pressing # again to enter the meeting.

Parties having trouble connecting to their remote hearing may contact chambers at judgescottchambers@dcsc.gov as staff will be monitoring the e-mails closely during hearings.

**Failure to appear at a remote proceeding may result in the Court entering an unfavorable ruling against you, including dismissal of a case or entry of default.**

## <u>COURTROOM PROTOCOL</u>

**Guidelines**:  When entering the virtual courtroom (by dialing in on a phone, or signing in through the website or app), a party or counsel should not attempt to speak because another hearing may be underway.  Each party should be automatically muted by the courtroom clerk when you first arrive.  If you are using the WebEx website or the app, you may check in with the courtroom clerk using the "chat" function.  If you are on a telephone, you should wait for your case to be called.

**Option to Appear In-Person for Remote Hearings**:  Even though your case has been set as a remote hearing, you have the choice to come in person to the Court for your hearing. If you would like to participate in person, please try to notify the Court before your hearing date. Whether you come in person or participate remotely, your case will still be fully heard by the Judge. Instructions for participation in remote hearings may be found above and here: https://www.dccourts.gov/services/remote-hearing-information.

**Exhibits**:  If you intend to rely on exhibits or other documents during the hearing, you must e-mail the exhibits to the Court at judgescottchambers@dcsc.gov, copying all sides, <u>no later than 5:00 p.m. three business days before the hearing</u>.  You must also file the exhibits on the docket and provide a copy of the exhibits to any witness before the hearing.  The <u>exhibits must be separately labeled</u> so that they can be easily identified by all parties and the Court during the remote hearing.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

     *Defendants*.

2022-CAB-005935
Judge Ebony M. Scott
Discovery Closed – 11/10/23

## CONSENT MOTION TO EXTEND THE SCHEDULING ORDER DEADLINES TO ALLOW THE PARTIES TO PARTICIPATE IN A PRIVATE MEDIATION

The Plaintiff, Developer RE1 LLC ("Developer RE1"), and all of the Defendants, jointly move this Court to modify the Scheduling Order pursuant to District of Columbia Superior Court Rule 16(b)(7)(A).  In support of this Consent Motion, the parties state as follows:

1.     This case primarily involves a dispute between a developer, its lender, and persons affiliated with the lender.

2.     Rather than continue to run up legal fees and costs in discovery, the parties have decided to devote their time and resources toward a private mediation before the Honorable Richard Levy (Ret.), a private mediator with JAMS.  JAMS has a high success rate in helping resolve contested litigation.

3.     The current discovery closed deadline is November 10, 2023.  There is also a court ordered mediation set for November 16, 2023.

4.     Given the private mediator's existing workload, the private mediation with JAMS will not be able to be scheduled until early December 2023, which is several weeks after the close of discovery.

5.      The parties seek an approximate ninety (90) day extension to the existing
Scheduling Order deadlines so that the parties can participate in private mediation with JAMS
and hopefully resolve this case by a private settlement.

6.      This is the parties' second request for a modification of the Scheduling Order.  A
copy of the existing Scheduling Order deadlines is shown in the screen shot below:

| | |
|---|---|
| Close of Discovery | November 10, 2023 |
| Motions Deadline | December 8, 2023 |
| Motions Decided Deadline | January 12, 2024 |
| Trial Readiness Hearing | September 6, 2024, at 2:00 p.m. |
| Jury Trial | September 9, 2024, at 9:30 a.m. |

Source:  Hearing Order dated August 15, 2023, page 6.

7.      Because the trial date in this case is not until September 9, 2024, there is
sufficient time after the private mediation is completed to complete discovery should the private
mediation not be successful.

8.      The private mediation will also include the litigants in a related case -- *423
Kennedy St. Holdings, LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, 2023-
CAB-004260 (Assigned to Judge Milton Lee) -- so there is an opportunity to resolve two
pending cases before this court, not just this one.

9.      No party will be prejudiced as a result of this extension request, and allowing
mediation could easily result in a settlement of this matter, which will benefit the parties and the
Court.  The private mediation may also result in there being no need for the court ordered
mediations in the two pending cases.

2

10.     Because there is good cause to extend the deadlines and no adverse or prejudicial

consequence to doing so, the parties' respectfully request that all upcoming deadlines be

extended as follows:

|  | Current Date | Amended Date |
| --- | --- | --- |
| Discovery Requests | Expired | 01/10/2024 |
| Close of Discovery | 11/10/2023 | 02/13/2024 |
| Dispositive Motions Deadline | 12/08/2023 | 03/13/2024 |
| Dispositive Motions Decided | 01/12/2024 | 04/15/2024 |
| ADR - Mediation | 11/16/2023 | 04/25/2024 |
| Pretrial Date | Set after ADR | To be set upon completion of ADR |
| Trial Readiness Hearing | 09/06/24 | 09/06/24 [No Change] |
| Jury Trial | 09/09/24 | 09/09/24 [No Change] |

11.     The parties respectfully request that this Court enter an Order extending the

Scheduling Order Deadlines in accordance with the proposed schedule set forth above.  A

proposed order is attached.

Respectfully submitted,


Dated:  November 6, 2023

/s/ James D. Sadowski
James D. Sadowski, Esq. # 446635
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone:  (202) 452-1400
Email:    jds@gdllaw.com
*Counsel for Plaintiff*


Dated:  November 6, 2023

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq. #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, MD  20854
Email:   mac@mbvesq.com
*Counsel for Defendants*

3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2023, a true and correct copy of the foregoing

Consent Motion was filed using eFileDC, and a notice of filing should be sent electronically

through eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

4

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

    *Defendants.*

2022-CAB-005935
Judge Ebony M. Scott

## CONSENT ORDER MODIFYING THE SCHEDULING ORDER

UPON CONSIDERATION of the Parties' Consent Motion to Extend the Scheduling Order

Deadlines to Allow the Parties to Participate in Private Mediation ("Consent Motion"), and for

good cause shown, it is this _____ day of November, 2023, hereby

ORDERED that the Consent Motion is GRANTED, and the Scheduling Order is amended

as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Discovery Requests | Expired | 01/10/2024 |
| Close of Discovery | 11/10/2023 | 02/13/2024 |
| Dispositive Motions Deadline | 12/08/2023 | 03/13/2024 |
| Dispositive Motions Decided | 01/12/2024 | 04/15/2024 |
| ADR - Mediation | 11/16/2023 | 04/25/2024 |
| Pretrial Date | Set after ADR | To be set upon completion of ADR |
| Trial Readiness Hearing | 09/06/24 | 09/06/24 [No Change] |
| Jury Trial | 09/09/24 | 09/09/24 [No Change] |

_____
Associate Judge Ebony M. Scott

Copies via EfileDC  to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice B. VerStandig, Esq.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | | |
|---|---|---|
| DEVELOPER RE1 LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 2022 CAB 005935 |
| v. | ) | |
| | ) | Judge Ebony M. Scott |
| DP CAPITAL, LLC d/b/a | ) | |
| WASHINGTON CAPITAL | ) | Next Court Event:  Trial Readiness Hearing |
| PARTNERS, *et al.*, | ) | September 6, 2024 at 2:00 p.m. |
| Defendants. | ) | |

## ORDER GRANTING CONSENT MOTION TO EXTEND THE SCHEDULING ORDER DEADLINES TO ALLOW THE PARTIES TO PARTICIPATE IN A PRIVATE MEDIATION

Upon consideration of the Consent Motion to Extend the Scheduling Order Deadlines to Allow the Parties to Participate in A Private Mediation, filed on November 6, 2023, and the entire record herein, it is this 9th day of November 2023, hereby:

**ORDERED** that the Consent Motion is **GRANTED**; it is further

**ORDERED** that the Status Hearing currently scheduled for January 5, 2024 shall be **VACATED**; and it is further

**ORDERED** that the Scheduling Order shall be amended as follows:

| Event | Current Deadline | New Deadline |
|---|---|---|
| Discovery Requests | -- | 01/10/2024 |
| Close of Discovery | 11/10/2023 | 02/13/2024 |
| Filing Motions | 12/08/2023 | 03/13/2024 |
| Dispositive Motions Decided | 01/12/2024 | 04/15/2024 |
| Pretrial | To be set upon completion of Mediation | |

**SO ORDERED**.

_____
**Ebony M. Scott**
Associate Judge

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin,
Daniel Huertas, & WCP Fund I LLC*

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| 423 Kennedy St Holdings LLC, | |
| Plaintiff, | |
| v. | Case No. 2023 CAB 004260 |
| | Judge Milton Lee |
| DP Capital, LLC, et al. | |
| Defendants. | |

## NOTICE OF INTENT TO ISSUE SUBPOENA TO MAINSTREET BANK

Comes now DP Capital, LLC ("DPCL"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 45(a)(4), and gives notice of its intent to serve the attached subpoena upon MainStreet Bank, not sooner than Monday, November 20, 2023.

Dated: November 17, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 17th day of November, 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

1

Exhibit A

## Superior Court of the District of Columbia
### CIVIL DIVISION

**Check One:**

| ■ | **Civil Actions Branch**<br>500 Indiana Ave., N.W.<br>Room 5000<br>Washington, D.C. 20001<br>Telephone: (202) 879-1133 | ☐ | **Landlord & Tenant Branch**<br>510 4th Street, N.W.<br>Room 110<br>Washington, D.C. 20001<br>Telephone: (202) 879-4879 | ☐ | **Small Claims & Conciliation Branch**<br>510 4th Street, N.W.<br>Room 120<br>Washington, D.C. 20001<br>Telephone: (202) 879-1120 |

423 Kennedy St Holdings LLC
_____
**Plaintiff**

**SUBPOENA FOR A CIVIL CASE**

v.

DP Capital, LLC, et al.
_____
**Defendant**

**CASE NUMBER:** 2023 CAB 004260

**To:** MainStreet Bank
_____

☐ Check box if medical records are being requested

☐ **YOU ARE COMMANDED** to appear in this Court at the place, date, and time specified below to testify in the above case.

| COURTROOM AND ADDRESS | DATE | TIME |
|---|---|---|
| | | |

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE | TIME |
|---|---|---|
| | | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition must designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which each person will testify. Super. Ct. Civ. R. 30(b)(6).

■ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below *(list documents or objects)*:

| DOCUMENTS OR OBJECTS | | |
|---|---|---|
| (See attached) | | |
| PLACE OF PRODUCTION | DATE | TIME |
| via e-mail to mac@mbvesq.com | 12/6/23 | 10:00 am |

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date, and time specified below.

| PREMISES | DATE | TIME |
|---|---|---|
| | | |

| ISSUING PERSON'S SIGNATURE AND TITLE (indicate if attorney for plaintiff or defendant) | DATE |
|---|---|
| /s/ Maurice B. VerStandig, Counsel for Defendants | 11/17/23 |
| **ISSUING PERSON'S NAME, ADDRESS AND PHONE NUMBER** | |
| Maurice B. VerStandig, 9812 Falls Road, #114-160, Potomac, MD 20854 / 301-444-4600 | |

Authorization as required by D.C. Code §14-307 and Brown v. U.S., 567 A.2d 426 (D.C. 1989), is hereby given for issuance of a subpoena for medical records concerning a person who has not consented to disclosure of the records and has not waived the privilege related to such records.

_____
JUDGE

(See Super. Ct. Civ. R. 45 (c) and (d) on the reverse side)
WHITE - FOR RETURN OF SERVICE      YELLOW - FOR SERVICE

Case Number: _____                                    Court Date: _____

## PROOF OF SERVICE

| Served | Date | Time | Place |
|--------|------|------|-------|
|        |      |      |       |

| Served on (Print Name) | Title |
|------------------------|-------|
|                        |       |

MANNER OF SERVICE (attach the return receipt if service was made by registered or certified mail) I served the subpoena by delivering a copy to the named person as follows:

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the District of Columbia that I am at least 18 years of age and not a party to the above entitled case and that the foregoing information contained in the Proof of Service is true and correct.

Executed on  _____          _____
                        Date                                    Signature of Server

                                              _____
                                                          Address of Server

**Super. Ct. Civ. R.  45(c) and (d):**

**(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents, electronically stored information, or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court must quash or modify a subpoena that:

(i) fails to allow reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 25 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place to the place of trial;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 25 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) DUTIES IN RESPONDING TO A SUBPOENA.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation materials must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

# Items to be Produced

1. All communications between MainStreet Bank (including any employees, agents, officers, and/or directors thereof) and 423 Kennedy St. Holdings LLC (including any employees, members, agents, officers, and/or directors thereof), concerning (a) a potential loan of monies, to be secured by one or more assets owned by 423 Kennedy St. Holdings LLC ("423 Kennedy"); and/or (b) a potential extension of credit, to be secured by one or more assets owned by 423 Kennedy, between January 1, 2018 and the present.

2. All communications between MainStreet Bank (including any employees, agents, officers, and/or directors thereof) and Mel Negussie, concerning (a) a potential loan of monies, to be secured by one or more assets owned by 423 Kennedy; and/or (b) a potential extension of credit, to be secured by one or more assets owned by 423 Kennedy, between January 1, 2018 and the present.

3. All loan documents, including drafts thereof (even if not finalized or executed), memorializing an extension of monies or credit (or a contemplated extension of money or credit) from MainStreet Bank to 423 Kennedy, between January 1, 2018 and the present.

4. All loan commitments extended by MainStreet Bank, to 423 Kennedy, between January 1, 2018 and the present.

5. All communications between MainStreet Bank (including any employees, agents, officers, and/or directors thereof) and Developer RE1 LLC (including any employees, members, agents, officers, and/or directors thereof), concerning (a) a potential loan of monies, to be secured by one or more assets owned by Developer RE1 LLC ("RE1"); and/or (b) a potential extension of credit, to be secured by one or more assets owned by RE1, between January 1, 2018 and the present.

6.      All communications between MainStreet Bank (including any employees, agents, officers, and/or directors thereof) and Mel Negussie, concerning (a) a potential loan of monies, to be secured by one or more assets owned by RE1; and/or (b) a potential extension of credit, to be secured by one or more assets owned by RE1, between January 1, 2018 and the present.

7.      All loan documents, including drafts thereof (even if not finalized or executed), memorializing an extension of monies or credit (or a contemplated extension of money or credit) from MainStreet Bank to RE1, between January 1, 2018 and the present.

8.      All loan commitments extended by MainStreet Bank, to RE1, between January 1, 2018 and the present.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

     *Plaintiff*,

v.

DP CAPITAL D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.

     *Defendants*.

2023-CAB-004260
Judge Milton Lee

## STIPULATION OF DISMISSAL AS TO
## DEFENDANT SF NU, LLC ONLY

Pursuant to Rule 41(a)(1)(A)(i), the Clerk will please dismiss this matter as to the claims

filed by Plaintiff 423 Kennedy St Holdings LLC against one of the Defendants only, SF NU,

LLC, with such dismissal to be without prejudice.

     Respectfully submitted,

     GREENSTEIN DELORME & LUCHS, P.C.

Date: March 1, 2024

/s/ James D. Sadowski
James D. Sadowski, #446635
Alexandria J. Smith, #1781067
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Emails: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings
LLC*

THE VERSTANDIG LAW FIRM, LLC

Date:  March 1, 2024

/s/ Maurice B. VerStandig
_____
Maurice B. VerStandig, #1034066
9812 Falls Road, #114-160
Potomac, MD  20854
Telephone: 301-444-4600
Email: mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC, WCP
Fund I LLC, Daniel Huertas, and Russell
Drazin*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 1, 2024, a true and correct copy of the foregoing

Stipulation of Dismissal as to Defendant SF NU, LLC Only was filed using eFileDC, and a

notice of filing should be sent electronically through eFileDC to all counsel of record in this

case.

/s/ James D. Sadowski
_____
James D. Sadowski

4854-6174-9673.v1

eFiled
03/01/2024 3:46:49 PM
Superior Court
of the District of Columbia

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL D/B/A WASHINGTON
CAPITAL PARTNERS, *et al.,*

    *Defendants.*

2023-CAB-004260
Judge Milton Lee
Next Event – 03/25/24
Dispositive Motions Deadline

## CONSENT MOTION TO MODIFY THE SCHEDULING ORDER DEADLINES

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), and all of the

Defendants, jointly move this Court to modify the Scheduling Order pursuant to District of

Columbia Superior Court Rule 16(b)(7)(A). In support of this Consent Motion, the parties state

as follows:

1.    This case primarily involves a dispute between a developer, its lender, and

persons affiliated with the lender.

2.    The Court issued a Scheduling Order (Track II) at the Initial Scheduling

Conference on October 13, 2023.

3.    As the Initial Scheduling Conference, the parties alerted the Court to the fact that

they anticipated that they might attempt to mediate this dispute and the dispute in the related case

(2022-CAB-005965) via a private mediation with JAMS.

4.    Late last fall, the parties scheduled a private mediation before the Honorable

Richard Levy (Ret.), a private mediator with JAMS.

5.      The first in-person mediation session with JAMS was initially scheduled for December 19, 2023, but that first session was continued at the request of the mediator to January 9, 2024.

6.      The January 9, 2024 in-person mediation session did not result in a settlement, but was productive, so the parties agreed to attend a second mediation session on January 25, 2024.

7.      The second remote mediation session with JAMS did not result in a settlement, but the parties will continue to engage in settlement discussions.

8.      The Scheduling Order deadlines need to be reset as a result of the time that has passed while the parties attempted to settle this dispute through private mediation with JAMS.

9.      The parties did not complete any discovery in this case while they focused their resources and efforts at achieving a settlement during the private mediation.

10.     This is the parties' first request to modify the deadlines in the Scheduling Order.

11.     No trial date has been set in this case.

12.     The parties request that the Court set new Scheduling Order deadlines to allow this case to proceed on a schedule that is consistent with Track II.

13.     A copy of the existing Scheduling Order deadlines is shown in the screen shot below:

### Pretrial Deadlines

| | |
|---|---|
| Exchange Lists of Fact Witnesses: | 12/12/2023 |
| Proponent's Rule 26(a)(2)(B) Report: | 12/19/2023 |
| Opponent's Rule 26(a)(2)(B) Report: | 01/11/2024 |
| Discovery Requests: | 01/25/2024 |
| Close of Discovery[1]: | 02/26/2024 |
| Filing Motions[2]: | 03/25/2024 |
| Dispositive Motions Decided: | 04/24/2024 |
| Mediation Date: | 05/09/2024 - 06/10/2024 |
| Pretrial Date[3]: | 07/08/2024-08/07/2024 |

4862-8297-6937.v1

Source:  Track II Scheduling Order dated October 13, 2023.

14.    No party will be prejudiced as a result of the relief that is requested in this consent motion.

15.    Because there is good cause to extend the deadlines and no adverse or prejudicial consequence to doing so, the parties' respectfully request that the deadlines in the Scheduling Order be modified as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Exchange Witness Lists | 12/12/2023 | 03/15/2024 |
| Proponent's Rule 26(a)(2)(B) Report | 12/19/2023 | 03/22/2024 |
| Opponent's Rule 26(a)(2)(B) Report | 01/11/2024 | 04/22/2024 |
| Discovery Requests | 01/24/2024 | 05/07/2024 |
| Close of Discovery | 02/26/2024 | 06/07/2024 |
| Dispositive Motions Deadline | 03/25/2024 | 07/09/2024 |
| Dispositive Motions Decided | 04/24/2024 | 08/09/2024 |
| ADR – Mediation Date | 05/09/2024 – 6/10/2024 | 08/26/2024 - 09/25/2024 |
| Pretrial Date | 07/08/2024 – 08/07/2024 | To be set upon completion of ADR |

16.    A proposed consent order is attached.

Respectfully submitted,

Dated: March 1, 2024                     /s/ James D. Sadowski
                                         James D. Sadowski, Esq. # 446635
                                         Greenstein DeLorme & Luchs, P.C.
                                         801 17th Street, N.W., Suite 1000
                                         Washington, DC  20006
                                         Telephone:  (202) 452-1400
                                         Email:   jds@gdllaw.com
                                         *Counsel for Plaintiff*

Dated:  March 1, 2024                    /s/ Maurice B. VerStandig
                                         Maurice B. VerStandig, Esq. #1034066
                                         The VerStandig Law Firm, LLC
                                         9812 Falls Road, #114-160
                                         Potomac, MD  20854
                                         Email:  mac@mbvesq.com
                                         *Counsel for Defendants*

3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 1, 2024, a true and correct copy of the foregoing

Consent Motion was filed using eFileDC, and a notice of filing should be sent electronically

through eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

4

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

     *Plaintiff*,

v.

DP CAPITAL D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.

     *Defendants*.

2023-CAB-004260
Judge Milton Lee

## CONSENT ORDER MODIFYING THE SCHEDULING ORDER

Upon Consideration of the Parties' Consent Motion to Extend the Scheduling Order

Deadlines ("Consent Motion") filed on February 28, 2024, and the entire record herein, it is this

_____ day of March, 2024, hereby

**ORDERED** that the Consent Motion is **GRANTED**; and it is further

**ORDERED** that the Scheduling Order shall be amended as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Exchange Witness Lists | 12/12/2023 | 03/15/2024 |
| Proponent's Rule 26(a)(2)(B) Report | 12/19/2023 | 03/22/2024 |
| Opponent's Rule 26(a)(2)(B) Report | 01/11/2024 | 04/22/2024 |
| Discovery Requests | 01/24/2024 | 05/07/2024 |
| Close of Discovery | 02/26/2024 | 06/07/2024 |
| Dispositive Motions Deadline | 03/25/2024 | 07/09/2024 |
| Dispositive Motions Decided | 04/24/2024 | 08/09/2024 |
| ADR – Mediation Date | 05/09/2024 – 6/10/2024 | 08/26/2024 - 09/25/2024 |
| Pretrial Date | 07/08/2024 – 08/07/2024 | To be set upon completion of ADR |

**SO ORDERED.**

_____
**Milton C. Lee**
Associate Judge

Copies via EfileDC  to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice B. VerStandig, Esq.

eFiled
03/01/2024 1:17:56 PM
Superior Court
of the District of Columbia

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

     *Defendants.*

2022-CAB-005935
Judge Ebony M. Scott

## CONSENT MOTION TO MODIFY THE SCHEDULING ORDER DEADLINES

The Plaintiff, Developer RE1 LLC ("Developer RE1"), and all of the Defendants, jointly

move this Court to modify the Scheduling Order pursuant to District of Columbia Superior Court

Rule 16(b)(7)(A).  In support of this Consent Motion, the parties state as follows:

1.     This case primarily involves a dispute between a developer, its lender, and

persons affiliated with the lender.

2.     The Court granted a prior consent motion to modify the Scheduling Order

deadlines on November 9 2023 to allow the parties to participate in a private mediation before

the Honorable Richard Levy (Ret.), a private mediator with JAMS.

3.     The first in-person mediation session with JAMS was initially scheduled for

December 19, 2023, but that first session was continued to January 9, 2024 at the request of the

mediator.

4.     The January 9, 2024 in-person mediation session did not result in a settlement, but

was productive, so the parties agreed to attend a second mediation session on January 25, 2024.

5.      The second remote mediation session with JAMS did not result in a settlement, but the parties will continue to engage in settlement discussions.

6.      The Scheduling Order deadlines need to be reset as a result of the time that has passed while the parties attempted to settle the dispute through private mediation with JAMS.

7.      The parties request that the Court set new Scheduling Order deadlines to allow this case to proceed on a schedule that is consistent with Track II.

8.      A copy of the existing Scheduling Order deadlines is shown in the screen shot below:

| Event | Current Deadline | New Deadline |
|-------|------------------|--------------|
| Discovery Requests | -- | 01/10/2024 |
| Close of Discovery | 11/10/2023 | 02/13/2024 |
| Filing Motions | 12/08/2023 | 03/13/2024 |
| Dispositive Motions Decided | 01/12/2024 | 04/15/2024 |
| Pretrial | To be set upon completion of Mediation | |

Source:  Order dated November 9, 2023.

9.      The trial date in this matter is not until September 9, 2024, so there remains sufficient time for the parties to re-engage in the discovery process, complete discovery, and file dispositive motions.   A list of discovery completed to date is attached as Exhibit A.

10.      No party will be prejudiced as a result of the relief that is requested in this consent motion.

11.      Because there is good cause to extend the deadlines and no adverse or prejudicial consequence to doing so, the parties' respectfully request that the deadlines be modified as follows:

4854-5868-9704.v1

|  | Current Date | Amended Date |
|---|---|---|
| Exchange Fact Witness Lists | Expired | 03/08/2024 |
| Proponent's Rule 26(a)(2)(B) Report | Expired | 03/15/2024 |
| Opponent's Rule 26(a)(2)(B) Report | Expired | 04/12/2024 |
| Discovery Requests | Expired | 04/24/2024 |
| Close of Discovery | Expired | 05/24/2024 |
| Dispositive Motions Deadline | 03/13/24 | 06/24/2024 |
| Dispositive Motions Decided | 04/14/2024 | 07/24/2024 |
| ADR - Mediation | Not set | 07/25/2024 - 08/15/2024 |
| Pretrial Date | To be set upon completion of ADR | To be set upon completion of ADR |
| Trial Readiness Hearing | 09/06/2024 | 09/06/24 [No Change] |
| Jury Trial | 09/09/2024 | 09/09/24 [No Change] |

12.    A proposed consent order is attached.

Respectfully submitted,

Dated: March 1, 2024

/s/ James D. Sadowski
James D. Sadowski, Esq. # 446635
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone:  (202) 452-1400
Email:    jds@gdllaw.com
*Counsel for Plaintiff*

Dated:  March 1, 2024

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq. #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, MD  20854
Email:  mac@mbvesq.com
*Counsel for Defendants*

4854-5868-9704.v1

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 1, 2024, a true and correct copy of the foregoing

Consent Motion was filed using eFileDC, and a notice of filing should be sent electronically

through eFileDC to all counsel of record in this case.

/s/ James D. Sadowski

James D. Sadowski

4

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

      *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

      *Defendants.*

2022-CAB-005935
Judge Ebony M. Scott

## CONSENT ORDER MODIFYING THE SCHEDULING ORDER

Upon Consideration of the Parties' Second Consent Motion to Extend the Scheduling

Order Deadlines ("Consent Motion") filed on February 28, 2024, and the entire record herein, it

is this _____ day of March, 2024, hereby

      **ORDERED** that the Consent Motion is **GRANTED**; and it is further

      **ORDERED** that the Scheduling Order shall be amended as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Exchange Fact Witness Lists | Expired | 03/08/2024 |
| Proponent's Rule 26(a)(2)(B) Report | Expired | 03/15/2024 |
| Opponent's Rule 26(a)(2)(B) Report | Expired | 04/12/2024 |
| Discovery Requests | Expired | 04/24/2024 |
| Close of Discovery | Expired | 05/24/2024 |
| Dispositive Motions Deadline | 03/13/24 | 06/24/2024 |
| Dispositive Motions Decided | 04/14/2024 | 07/24/2024 |
| ADR - Mediation | Not set | 07/25/2024 - 08/15/2024 |
| Pretrial Date | Not set | To be set upon completion of ADR |
| Trial Readiness Hearing | 09/06/2024 | 09/06/24 [No Change] |
| Jury Trial | 09/09/2024 | 09/09/24 [No Change] |

**SO ORDERED.**

_____

**Ebony M. Scott**
Associate Judge

Copies via EfileDC  to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice B. VerStandig, Esq.

# EXHIBIT A

## Discovery Completed to Date

| Description | Date Served |
| --- | --- |
| Plaintiff's First Set of Requests for Production of Documents to Defendant DP Capital, LLC d/b/a Washington Capital Partners | May 19, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant DP Capital, LLC d/b/a Washington Capital Partners | May 19, 2023 |
| Objections and Answers to Plaintiff's First Set of Interrogatories to Defendant DP Capital, LLC d/b/a Washington Capital Partners | June 20, 2023 |
| Objections and Responses to Plaintiff's First Set of Requests for Production of Documents to Defendant DP Capital, LLC d/b/a Washington Capital Partners | June 20, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant Daniel Huertas | July 6, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant Daniel Huertas | July 6, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant Russell Drazin | July 8, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant Russell Drazin | July 8, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant WCP Fund I, LLC | July 8, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant WCP Fund I, LLC | July 8, 2023 |
| Notice of Deposition of Daniel Huertas | July 9, 2023 |
| Notice of Deposition of Russell Drazin | July 9, 2023 |
| WCP Fund I LLC's Requests for Production to Developer RE1 LLC | July 10, 2023 |
| WCP Fund I LLC's Request for Admission to Developer RE1 LLC | July 10, 2023 |
| Supplemental Objections and Answers to Plaintiff's First Set of Interrogatories to Defendant DP Capital, LLC d/b/a Washington Capital Partners | July 14, 2023 |
| Deposition (partial) of Daniel Huertas | July 19, 2023 |
| Developer RE1's Responses to WCP's Requests for Admissions | August 18, 2023 |

eFiled
03/01/2024 1:55:26 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>DP CAPITAL, LLC D/B/A WASHINGTON<br>CAPITAL PARTNERS, ET AL.,<br><br>    *Defendants*. | Case No. 2022-CAB-005935<br>Judge Ebony Scott<br>Next Event:  05/24/24<br>Proposed Close of Discovery |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## LEAVE TO FILE A SECOND AMENDED COMPLAINT

The Plaintiff, Developer RE1 LLC ("Developer RE1"), hereby files its Unopposed

Motion for Leave to File a Second Amended Complaint to add new Defendant SF NU, LLC, to

include additional claims against Defendant Russell Drazin ("Mr. Drazin"), and to update the

estimated damages.

## I.    RELEVANT FACTUAL BACKGROUND

This case primarily involves a dispute between a developer, its lender, and persons

affiliated with the lender.[1]  The gravamen of the Complaint is allegations that the Defendants

manufactured pretextual defaults under a Deed of Trust (the "First DOT"), a Commercial Deed

of Trust Note (the "First Note"), a second, additional Deed of Trust ("Second DOT"), and a

second Commercial Deed of Trust Note (the "Second Note").  There are four defendants in this

case.  DP Capital, LLC ("DP Capital"), is a Virginia company that uses the trade name

---

[1]    For brevity, the complete factual history of this dispute is not included.  A full recitation of the
facts of this matter is included in the Plaintiff's Opposed Emergency Motion for a Temporary Restraining
Order to Prevent an Imminent Foreclosure Sale filed on July 11, 2023.

"Washington Capital Partners". First Am. Compl. ¶ 2. For convenience, this motion refers to

DP Capital as the "WCP". The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that

engages in a lending business in the District. *Id.* ¶ 3. Daniel Huertas ("Mr. Huertas") is an

individual that resides in Virginia who controls the WCP, and the WCP controls the WCP Fund.

*Id.* ¶¶ 4-5. Russell Drazin ("Mr. Drazin"), is an individual and counsel to the WCP and the WCP

Fund. *Id.* ¶ 6. Mr. Drazin is also the Trustee under the First and Second DOT. *Id.* The new

Defendant, SF NU, LLC ("SF NU"), is believed to be the current owner of one or more of the

loan documents. Developer RE1 did not learn about SF NU's role until the Defendants produced

documents in this case.

## II.    BRIEF PROCEDURAL HISTORY

Developer RE1 filed its Complaint on December 16, 2022, which was subsequently

amended to correct several typographical errors. Developer RE1 filed a Motion for a Temporary

Restraining order on December 23, 2022, which was initially withdrawn primarily for settlement

purposes. On July 17, 2023, Developer RE1 renewed its Motion for a Temporary Restraining

Order ("TRO") to prevent a foreclosure sale set for the afternoon on July 25, 2023. The Court

granted that renewed motion after an emergency hearing was held the morning of July 25, 2023.

On Friday, July 21, 2023, Judge Milton Lee held a hearing on a nearly identical Motion for a

Temporary Restraining order in a related case (*423 Kennedy St Holdings, LLC v. DP Capital,*

*LLC d/b/a Washington Capital Partners, et al.* (2023-CAB-004260)) and issued an Order

granting that motion on July 24, 2023. In the 423 Kennedy Order, Judge Lee noted that Mr.

Drazin had a conflict of interest in December of 2002. 423 Kennedy Order at 16-17 ("Drazin's

position as counsel to WCP created a conflict because Negussie and his partners were now

adversaries over the disposition of the 423 Kennedy Street property.). The facts in the 423

Kennedy case and this case are intertwined, in part because Mr. Drazin invoked a cross-default

provision in the DOTs as to both Developer RE1 and 423 Kennedy.

After the Court's TRO decision, the parties temporarily agreed to suspend discovery and

not take further legal action in the case so that the parties could focus on a private mediation that

was held with JAMS, which unfortunately was not successful.  Developer RE1 now seeks to

amend its complaint to add SFF NU as a Defendant, to include additional claims against Mr.

Drazin, and to update its initial damages estimate.

III.   LEGAL STANDARD

This Court has discretion as to whether to permit an amendment to a complaint.  D.C.

Super. Ct.  Civ. Rule 15(a) provides that:

> A party may amend the party's pleading once as a matter of course
> at any time before a responsive pleading is served or, if the
> pleading is one to which no responsive pleading is permitted and
> the action has not been placed on the trial calendar, the party may
> so amend it at any time within 20 days after it is served.
> Otherwise, *a party may amend the party's pleading only by leave
> of court* or by written consent of the adverse party; and *leave shall
> be freely given when justice so requires.* . . .

D.C. Super. Ct. R. 15(a) (italic emphasis added).

The six factors that the Court considers when exercising its discretion over whether to

permit an amendment are:  the number of requests to amend, the length of the pendency of the

litigation, the number of previous continuances, the existence of bad faith or a dilatory motive,

the merit of the amended claim, and the existence of prejudice to the non-moving party.  *Johnson

v. Fairfax Village Condominium IV Unit Owners Ass'n.*, 641 A.2d 495, 501 (D.C. 1994); *Bennett

v. Fun & Fitness of Silver Hill, Inc.,* 434 A.2d 476, 479 (D.C. 1981).  The six factors are

sometimes referred to as "the *Johnson* factors".

## IV.  LEGAL ARGUMENT

This request for leave to amend should be granted pursuant to the District of Columbia's "freely given" liberal amendment standard because the request is timely, the amended claims are meritorious, and the danger of prejudice to the non-moving party is low.  First, this is Developer RE1's first request to seek leave to amend its complaint (the First Amended Complaint was made as of right pursuant to Rule 15(a)(1)).  *See District of Columbia v. MJ Flooring LLC*, 2022 D.C. Super. LEXIS 46 at *4 (D.C. Super Ct. Aug. 24, 2022) (allowing leave to amend complaint where the District of Columbia had already amended its complaint once).

This case will still be in the discovery phase with a proposed motions filing deadline at the end of June 2024.[2]  The proposed Second Amended Complaint is meritorious and relates to adding a new Defendant to clarify Mr. Drazin's involvement as the sole trustee of the promissory notes at issue in this case, and to note the fact that he was controlled by the WCP, the WCP Fund, Mr. Huertas, and/or SF NU.  Developer RE1 contends that Mr. Drazin has a non-waivable conflict of interest and that he breached his fiduciary duty to the borrowers under the deeds of trust.  *See, e.g.*, *Sheridan v. Perpetual Building Assoc.*, 299 F.2d 463, 465 (D.C. Cir. 1962) ("When it is shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden of proving that he has been faithful to his trust."); *accord Johnson v. Inter-City Mortg. Corp.*, 366 A.2d 435, 437 (D.C. 1976); *Sheridan v. Perpetual Building Assoc.*, 322 F.2d 418, 420 (D.C. Cir. 1963).  The proposed Second Amended Complaint is neither made in bad faith nor dilatory, rather, it is being filed after the parties were unable to settle the case after

---

[2]    The Parties have just submitted a Consent Motion to Modify the Scheduling Order Deadlines.

participating in private mediation.  There will be no prejudice to the Defendants, who are already aware of the claims and do not oppose the motion.[3]

V.    CONCLUSION

For the foregoing reasons, the Unopposed Motion for Leave to Amend should be granted and the Second Amended Complaint, which is attached as Exhibit A, should be deemed filed as of the date of the Court's Order granting leave to amend.  Developer RE1 has also attached a redline version of the Second Amended Complaint as Exhibit B so that the Court case see the revisions.  A proposed Order is also attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  March 1, 2024

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Unopposed Motion for Leave to File a Second Amended Complaint was served by the Court's electronic filing system this 1st day of March 2024, and a notice of filing should be served on all counsel of record.

/s/ James D. Sadowski
James D. Sadowski

---

[3]    The Defendants reserve their right to file a motion to dismiss as to the amended claims.

5

## CERTIFICATE REGARDING CONSENT

THE UNDERSIGNED hereby certifies that counsel for the Defendants confirmed in a

telephone call with co-counsel on February 13, 2024 and February 29, 2024 that the Defendants

do not oppose the relief requested in this motion, so this motion is being filed as "Unopposed".

/s/ James D. Sadowski
James D. Sadowski

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott

## [PROPOSED] ORDER GRANTING UNOPPOSED MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

UPON CONSIDERATION of the Plaintiff's Unopposed Motion for Leave to File a

Second Amended Complaint ("Unopposed Motion for Leave"), it is this _____ day of

_____, 2024, hereby

     ORDERED that the Motion is GRANTED; and it is further

     ORDERED that the Second Amended Complaint, which was attached as Exhibit A to the

Unopposed Motion for Leave, is deemed FILED as of the date of this Order.

     SO ORDERED.

                              _____
                                **Judge Ebony Scott**
                                Associate Judge

Copies to counsel or record via eFileDC.

James D. Sadowski, Esq.
Alexandira J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice VerStandig, Esq.

# EXHIBIT A

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

     *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott

## SECOND AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas,  Russell Drazin, and SF NU, LLC ("SF NU").  The First Amended

Complaint includes claims for tortious interference with business relations, breach of the duty of

good faith and fair dealing, and permanent injunctive relief.  The Second Amended Complaint

also seeks a declaratory judgment as to the meaning of certain provisions in the two Deeds of

Trust, and seeks injunctive relief to prevent a foreclosure.  The Second Amended Complaint also

adds SF NU as a Defendant and adds a claim for breach of fiduciary duty against Mr. Drazin.

The Second Amended Complaint also seeks a declaratory judgment declaring that Mr. Drazin

cannot serve as the trustee under the two Deeds of Trust due to an actual conflict of interest.  In

support of its Second Amended Complaint, Developer RE1 avers as follows:

<u>The Parties</u>

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability that does business under the trade name "Washington Capital Partners".  For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

6.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

7.      The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

<div align="center">

S<span style="font-variant:small-caps">TATEMENT</span> <span style="font-variant:small-caps">OF</span> F<span style="font-variant:small-caps">ACTS</span> A<span style="font-variant:small-caps">PPLICABLE</span> <span style="font-variant:small-caps">TO</span> A<span style="font-variant:small-caps">LL</span> C<span style="font-variant:small-caps">OUNTS</span>

</div>

The WCP Claims that It Is a Company That Can be Trusted and That It Has an
"Unwavering Commitment to the Highest Ethical Standards"

8.    In a June 16, 2022 news article published on the internet by Modern Luxury DC,

two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up
> trusting that if they work with us, we will do everything in our power to help them
> succeed." The duo understands the importance of a client's positive experience and the
> clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've
> developed a highly relational experience with our clients through innovative products,
> practices and standards. *What sets us apart from other lenders is our unwavering
> commitment to the highest ethical practices in the industry*, which historically have been
> very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.    But in reality, the WCP does not have the highest ethical standards.  The WCP is

a company that has engaged in predatory lending practices, and as this Complaint will show, Mr.

Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct

that was specifically designed to make one of their client's construction projects fail.

The Ownership of Developer RE1, Its Purpose, and the Property.

10.    Developer RE1 is the record owner of real property in the District known as 5501

1st Street, N.W., Lot 138, Square 3389 (the "Property").

11.    Developer RE1 is partially owned by Mr. Negussie.

12.    Developer RE1 is a domestic, sole purpose, limited liability company, and the

sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

13.    The Defendants all knew that Developer RE1 was a sole purpose entity whose

only asset was the Property and any the improvements that Developer RE1 made to the Property.

<div align="center">3</div>

14.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

15.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

16.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

17.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

18.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

19.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

20.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

21.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

22.     The Second DOT was a form of deed of trust  prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

4

23.    The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

24.    On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

25.    The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

26.    The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

27.    On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

28.    The WCP Fund appears to have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

29.    The maturity date for the First Note and the Second Note was December 23, 2022.

30.    As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

31.    As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
Accede to His Demands Regarding Another, Unrelated Development</u>

32.    On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr.

Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas

wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of

5505."  A copy of the November 3, 2022 email is attached as Exhibit E.

33.    On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via

Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the

November 15, 2022 email is attached as Exhibit F.

34.    As of November 15, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

35.    By as early as November 15, 2022, the Defendants each knew that Developer

RE1 had secured alternative financing for the Property with another lender named Main Street

Bank, and that Developer RE1 expected to close on the new refinancing loans in December of

2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

36.    As of November 30, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

37.    On November 30, 2022, Developer RE1 made a request by email to WCP for the

payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by

Developer RE1 to WCP is attached as Exhibit H.

38.    That same day (November 30, 2022), Developer RE1 requested, and WCP

agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the

second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

39.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

40.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

41.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

42.     As of December 7, 2022, Developer RE1 had made all payments due under the First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

43.     On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

4856-0691-6010.v1

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

44.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

45.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on Developer RE1 and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

46.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

47.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1 or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

48.      After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan documents with the WCP Fund.

49.      The Defendants knew that 423 Kennedy is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

50.      The Defendants knew that the sole purpose of 423 Kennedy is to develop the property located in the District at 423 Kennedy Street, NW.

51.      The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

52.      The Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

53.      The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

54.      Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

55.      The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

9

56.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

57.     The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

58.     The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

59.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

60.     The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment  of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.</u>

61.     Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

62.     The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

63.     Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

64.     Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

65.     The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

66.     Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

67.     Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

68.    In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

69.    In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

70.    The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

71.    The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.

72.    After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

73.    On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

12

default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

74.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

75.    As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrower (Developer RE1) and to the lender under the First DOT and the Second DOT.

76.    As of December 8, 2022, Mr. Drazin knew that that his representation of the Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as Trustee to Developer RE1, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to Developer RE1, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

77.    Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to Developer RE1, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

78.    The real reason that the Lender Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

13

79.    The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could

collect of "commission" of 2.50% of the total amount then due, and  another "commission" of

5.00% the proceeds of a foreclosure sale.

80.    There is a financial incentive for Mr. Drazin to inflate the amounts that are

claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two

"commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

81.    As a result of their spite, their evil, improper motive, and their greed, the Lender

Defendants improperly alleged that Developer RE1 was in default under the loan documents to

try to line their own pockets and to cause as much financial and reputational damage as possible

to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

82.    The Lender Defendants also caused WCP to issue a "Notice of Default" to

Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans

that they knew that Developer RE1 had secured with Main Street Bank.

83.    The Lender Defendants also caused WCP to issue each notice "Notice of Default"

to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to

go to closing on the refinancing loan with Main Street Bank.

84.    The Lender Defendants also caused the WCP to issue the each "Notice of

Default" to Developer RE1 for the express purpose of improperly pressuring either Developer

RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF

NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

---

[1]    423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for
similar claims of misconduct.  *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a
Washington Capital Partners, et al.*, 2022-CAB-005903.

14

85.     The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

86.     The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members.  The Defendants' misconduct is a form of extortion.

The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

87.     Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)     "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)     Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

88.     For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

89.     Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

90.     On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

91.     On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

92.     Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

93.     Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

16

94.      The only provision of the loan documents that Mr. Drazin cited as a claimed basis for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

95.      The First DOT and the Second DOT each have a Section 7.9 that are identical. Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT. Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness*, or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis added).

96.      The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

97.      The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively.

98.      The late payment of taxes by Developer RE1 caused no harm whatsoever to the WCP Fund.

99.      The First DOT and the Second DOT contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

17

100.    No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

101.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

102.    The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

103.    The Defendants apparently claim that Section 7.9 is a cross-default provision.  A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

104.    In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

105.    The First DOT and the Second DOT do not define the term "affiliate."  Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

106.    Developer RE1 does not control 423 Kennedy and vice versa.

107.    Developer RE1 is not controlled by 423 Kennedy and vice versa.

108.    There is also no common control of Developer RE1 and 423 Kennedy.

18

109.     Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

110.     Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the
Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred
by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was
actually in "default" of any loan agreement with the WCP Fund.

111.     Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover
story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that
Developer RE1 was in default of the First DOT and/or the Second DOT.

112.     The Lender Defendants have, through their counsel Mr. Drazin, also improperly
claimed, without any legal right or justification that:  "There is no right to cure.  There is no right
to deceleration.  There is no right to reinstatement.  The Loans are in default and are
accelerated."  *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First
DOT, the Second Note, and the Second DOT).

Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending
Practices Are Left Unchecked

113.     The Defendants have threatened to foreclose on the Property even though they
know that they have no legal right to foreclose on the Property.

114.     There is no valid, legal basis under any provision of either the First DOT or the
Second DOT that would permit the Defendants to foreclose on the Property.

115.     If the Defendants follow through on their threat to foreclose on the Property,
Developer RE1 and its members will be irreparably harmed and they could lose their entire
investment.

116.     The Defendants' conduct shows that they have an evil motive, that they are acting
with actual malice to impose damages on Developer RE1 and others, and they are intentionally

and willfully disregarding Developer RE1's rights under the loan documents and under the law. The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

117.    The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022.  The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property

118.    As of January 11, 2023, none of the Defendants had sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

119.    On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").

120.    On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee due to his conflict of interest.  Afte receiving that letter, Mr. Drazin refused to resign as Trustee,

COUNT I
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against  All Defendants Except Mr. Drazin

121.    Paragraphs 1-120 of the Second Amended Complaint are incorporated by reference.

122.    Developer RE1 was in the process of closing on a refinancing of the existing loans with Main Street Bank.

123.    The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

124.    As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

125.    As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

126.    The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

127.    Developer RE1 has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for:  (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

21

COUNT II
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

128.    Paragraphs 1–127 of the Second Amended Complaint are incorporated by reference.

129.    Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

130.    The First Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

131.    The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

132.    The Second Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

133.    The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

134.    Through their improper conduct, the WCP, the WCP Fund, and/or SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, and SF NU, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional interference with contracts (currently estimated to be $3 million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

22

COUNT III

DECLARATORY JUDGMENT

Count III Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

135.     Paragraphs 1–134 of the Second Amended Complaint are incorporated by

reference.

136.     The First DOT is a contract between Developer RE1 and the WCP Fund and/or

SF NU.

137.     The Second DOT is a contract between Developer RE1 and the WCP Fund and/or

SF NU.

138.     There is an actual and justiciable controversy between Developer RE1 and WCP,

the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which

controversy is ripe for adjudication.

139.     It is settled law in the District that "equity abhors forfeitures … [and] so indeed

does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of*

*American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing

with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law

abhors a forfeiture.")).

140.     There is an actual and justiciable controversy between Developer RE1, the WCP,

the WCP Fund, and SF NU as to whether an unresolved dispute about water bills, or the late

payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate

a forfeiture of the Property.

141.     There is an actual and justiciable controversy between Developer RE1 and the

WCP, the WCP Fund, and SF NU as to whether the First DOT, the Second DOT, the First Note,

and the Second Note have unenforceable liquidated damages (and other) provisions, which

controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

III, this Honorable Court declare that:  (a) under Section 7.9 of the First DOT and the Second

DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any

provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a

default by Developer RE1 after the fact, after the alleged default has already been cured (or is in

the process of being adjudicated), and without providing any notice to the borrower or any

opportunity to cure, and that results in either (i) additional interest and penalties entirely

disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is

unconscionable and enforceable as a matter of public policy; and (c)  the First DOT, the Second

DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that

are unenforceable and cannot be used to support any basis for a foreclosure.

<div align="center">

COUNT IV
PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count  IV Is Asserted Against All Defendants

</div>

142.    Paragraphs 1–141 of the Second Amended Complaint are incorporated by

reference.

143.    Unless enjoined, the Defendants will continue to improperly claim that Developer

RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

144.    The Defendants unethical, outrageous, and illegal conduct, as described in this

Second Amended Complaint, is causing irreparable harm to Developer RE1.  The Property is

unique, and Developer RE1 could lose its entire interest in the Property.

<div align="center">24</div>

145.    Developer RE1 does not have an adequate remedy at law.

146.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any

remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including,

without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the

First Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the First Amended Complaint have been decided.

### COUNT V
### BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

147.    Paragraphs 1-146 of the Second Amended Complaint are incorporated by
reference.

148.    As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and

has, a fiduciary duty to both the lender and the borrower (Developer RE1).

149.    Defendant Drazin has had an actual conflict of interest while serving

simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the

Second DOT.

150.    While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of,

the Lender Defendants.

25

151.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1, as borrower, under the First DOT and the Second DOT.

152.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

153.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

154.    Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

155.    Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for:  (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated

4856-0691-6010.v1

to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre-

and post-judgment interest.

COUNT VI
DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE
TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants

156.    Paragraphs 1-155 of the Second Amended Complaint are incorporated by

reference.

157.    Defendant Drazin has an actual conflict of interest that prevents him from serving

as Trustee under the First DOT and the Second DOT.

158.    Due to his conflict of interest as counsel for the Lender Defendants, Defendant

Drazin cannot uphold his fiduciary duties to the borrower (Developer RE1) as Trustee under the

First DOT and the Second DOT.

159.    Any actions taken by Defendant Drazin as Trustee under the First DOT and the

Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that

he has been faithful to his obligations to both the borrower (Developer RE1) and the lender under

the First DOT and the Second DOT.

160.    There is an actual and justiciable controversy between Developer RE1 and the

Lender Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual

conflict of interest, which controversy is ripe for adjudication.

161.    There is an actual and justiciable controversy between Developer RE1 and the

Lender Defendants as to whether any actions that Defendant Drazin took as Trustee while he had

an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

VI this Honorable Court declare that: (a) Defendant Drazin cannot serve as Trustee under the

27

First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that

Defendant Drazin took while he had a conflict of interest must be either set aside or suspended

until Defendant Drazin bears his burden of proving that he was at all times faithful to his

fiduciary duties to both the borrower (Developer RE1) and the lender under the First DOT and

the Second DOT.

## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the Second

Amended Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  March 1, 2024                    /s/ James D. Sadowski
                                         James D. Sadowski (D.C. Bar No. 446635)
                                         Alexandria J. Smith (D.C. Bar No. 1781067)
                                         Spencer B. Ritchie (D.C. Bar No. 1673542)
                                         801 17th Street, NW, Suite 1000
                                         Washington, DC 20006
                                         Telephone:  (202) 452-1400
                                         Email:  jds@gdllaw.com
                                         *Counsel for Plaintiff Developer RE1, LLC*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of this Second Amended Complaint was filed

through eFileDC this 1st  day of March , 2024, and a notice of filing should be sent by eFileDC

to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

# EXHIBIT B

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

    *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
~~Initial Scheduling~~
~~Conference~~Discovery Close
~~03/24/23 at 9:30 a.m.~~November 10,
2023.

## ~~FIRST~~ SECOND AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, ~~and~~ Russell Drazin, and SF NU, LLC ("SF NU").  The First

Amended Complaint includes claims for tortious interference with business relations, breach of

the duty of good faith and fair dealing, and permanent injunctive relief.  The Second~~First~~

Amended Complaint also seeks a declaratory judgment as to the meaning of certain provisions in

~~two~~the two Deeds of Trust, and seeks injunctive relief to prevent a foreclosure.  The Second

Amended Complaint also adds SF NU as a Defendant and adds ~~includes~~ a claim for breach of

fiduciary duty against Mr. Drazin.  The Second Amended Complaint also seeks a declaratory

judgment declaring that Mr. Drazin cannot serve as the trustee under the two Deeds of Trust due

to an actual conflict of interest.~~The First Amended Complaint also seek injunctive relief to~~

~~prevent a foreclosure.~~  In support of its ~~First~~ Second Amended Complaint, Developer RE1 avers

as follows:

## The Parties

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability that does business under the trade name "Washington Capital Partners".  For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

6.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

6.7.    The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

S<small>TATEMENT OF</small> F<small>ACTS</small> A<small>PPLICABLE TO</small> A<small>LL</small> C<small>OUNTS</small>

The WCP Claims that It Is a Company That Can be Trusted and That It Has an
"Unwavering Commitment to the Highest Ethical Standards"

~~7.~~8.    In a June 16, 2022 news article published on the internet by Modern Luxury DC,

two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up
> trusting that if they work with us, we will do everything in our power to help them
> succeed." The duo understands the importance of a client's positive experience and the
> clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've
> developed a highly relational experience with our clients through innovative products,
> practices and standards. *What sets us apart from other lenders is our unwavering
> commitment to the highest ethical practices in the industry*, which historically have been
> very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

~~8.~~9.    But in reality, the WCP does not have the highest ethical standards.  The WCP is

a company that has engaged in predatory lending practices, and as this Complaint will show, Mr.

Huertas, the WCP, ~~and~~ the WCP Fund, and SF NU have engaged in unethical, outrageous

conduct that was specifically designed to make one of their client's construction projects fail.

The Ownership of Developer RE1, Its Purpose, and the Property.

~~9.~~10.   Developer RE1 is the record owner of real property in the District known as 5501

1st Street, N.W., Lot 138, Square 3389 (the "Property").

~~10.~~11.  Developer RE1 is partially owned by Mr. Negussie.

~~11.~~12.  Developer RE1 is a domestic, sole purpose, limited liability company, and the

sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

~~12.~~13.  The Defendants all knew that Developer RE1 was a sole purpose entity whose

only asset was the Property and any the improvements that Developer RE1 made to the Property.

3

13.14.  On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

14.15.  As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

15.16.  The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

16.17.  The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

17.18.  On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

18.19.  The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

19.20.  The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

20.21.  On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

21.22.  The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

4

22.23.  The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

23.24.  On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

24.25.  The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.26.  The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

27.    On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

28.    The WCP Fund appears to have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

26.29.  The maturity date for the First Note and the Second Note was December 23, 2022.

27.30.  As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

28.31.  As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
Accede to His Demands Regarding Another, Unrelated Development</u>

29.32.  On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr.

Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas

wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of

5505."  A copy of the November 3, 2022 email is attached as Exhibit E.

30.33.  On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via

Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the

November 15, 2022 email is attached as Exhibit F.

31.34.  As of November 15, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

32.35.  By as early as November 15, 2022, the Defendants each knew that Developer

RE1 had secured alternative financing for the Property with another lender named Main Street

Bank, and that Developer RE1 expected to close on the new refinancing loans in December of

2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

33.36.  As of November 30, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

34.37.  On November 30, 2022, Developer RE1 made a request by email to WCP for the

payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by

Developer RE1 to WCP is attached as Exhibit H.

35.38.  That same day (November 30, 2022), Developer RE1 requested, and WCP

agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the

4854-7315-1145.v1

second November 30, 2022 email exchange between Developer RE1 and WCP is attached as
Exhibit I.

36.39.   On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire
with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the
First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way
an extension of the maturity date would be granted would be if Developer RE1 paid down the
First Note and the Second Note by $1 million to $1.5 million (in principal).

37.40.   On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to
inquire whether WCP will be willing to extend the maturity date for the First Note and the
Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000
to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1
million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million)
from additional investors.

38.41.   As of December 7, 2022, there was no allegation made by any Defendant to
Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or
the Second DOT.

39.42.   As of December 7, 2022, Developer RE1 had made all payments due under the
First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest
payments to the WCP Fund.

43.    On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call
with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the
development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

44.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

40.45.  During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on Developer RE1 and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

41.46.  During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

42.47.  During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1 or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

43.48.  After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I

Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent

were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated

project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan

documents with the WCP Fund.

44.49.  The Defendants knew that 423 Kennedy is a domestic, sole purpose limited

liability company that is partially owned by Mr. Negussie.

45.50.  The Defendants knew that the sole purpose of 423 Kennedy is to develop the

property located in the District at 423 Kennedy Street, NW.

46.51.  The Defendants knew that there is no legal or other business relationship between

423 Kennedy and Developer RE1.

47.52.  The Defendants knew that 423 Kennedy does not control Developer RE1 and that

Developer RE1 does not control 423 Kennedy.

48.53.  The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of

one another, and that those entities have no business relationship with each other.

49.54.  Mr. Huertas provided no basis for why or how the Defendants could suddenly put

Developer RE1 in default under any of the loan documents for the Property, other than Mr.

Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan

because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street

Project.

50.55.  The Defendants knew that the developer of the 2507 I Street Project, and the

borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507

Holdings").

51.56.  The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

52.57.  The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

53.58.  The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

54.59.  The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

55.60.  The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

**Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment  of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.**

56.61.  Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

57.62.  The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

58.63.  Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

59.64.  Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

60.65.  The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

61.66.  Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

62.67.  Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

63.68.  In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

64.69.  In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

65.70.  The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

66.71.  The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

<u>Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.</u>

67.72.  After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

68.73.  On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

12

default of the loan documents when they each knew, in fact, that there were no defaults by

Developer RE1 under any of its loan documents.

69.74.  On information and belief, Mr. Huertas directed Mr. Drazin to come up with a

cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid

basis for declaring Developer RE1 to be in default under any of the loan documents and to

conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

75.     As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as

Trustee, to both the borrower (Developer RE1) and to the lender under the First DOT and the

Second DOT.

76.     As of December 8, 2022, Mr. Drazin knew that that his representation of the

Lender Defendants WCP and the WCP Fund as counsel created an actual conflict of interest with

his fiduciary duty as Trustee to Developer RE1, as borrower.  Nevertheless, Mr. Drazin willfully

ignored the fiduciary duty that he owed to Developer RE1, as borrower, and began to act solely

on behalf of, and take instructions solely from, and provide legal advice to, the Lender

Defendants.

77.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that

he owed to Developer RE1, to try to find ways to justify -- after the fact -- the Lender

Defendants' issuance of the Default Notice.

70.78.  The real reason that the Lender Defendants improperly alleged that Developer

RE1 was in default under the loan documents was because the Lender Defendants and/or their

representatives, were angry that the 2507 I Street Project did not turn out the way that they

wanted it to.

71.79.  The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and ~~a~~ another "commission" of 5.00% the proceeds of a foreclosure sale.

72.80.  There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

<u>Money is the Root of All Evil</u>.

73.81.  As a result of their spite, their evil, improper motive, and their greed, the <u>Lender</u> Defendants improperly alleged that Developer RE1 was in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

74.82.  The <u>Lender</u> Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans that they knew that Developer RE1 had secured with Main Street Bank.

75.83.  The <u>Lender</u> Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing loan with Main Street Bank.

76.84.  The <u>Lender</u> Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund <u>and/or SF NU</u> (i.e., 2507 I Holdings' alleged debt to the WCP Fund <u>and/or SF NU</u>).

---

[1]    423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct.  *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, 2022-CAB-005903.

77.85.  The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

78.86.  The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members.  The Defendants' misconduct is a form of extortion.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT</u>

79.87.  Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)     "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)     Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

80.88.  For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

81.89.  Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

82.90.  On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

83.91.  On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

84.92.  Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

85.93.  Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

4854-7315-1145.v1

86.94.  The only provision of the loan documents that Mr. Drazin citedcited as a claimed

basis for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

87.95.  The First DOT and the Second DOT each have a Section 7.9 that are identical.

Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.

Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations*
> *secured hereby - of Grantor* or any guarantor of the Indebtedness*, or any*
> *of their affiliates, to Beneficiary,* whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis

added).

88.96.  The second alleged default by Developer RE1 claimed by Mr. Drazin (the

Property Tax Late Payment Claim) involves the late payments of property taxes by Developer

RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

89.97.  The property taxes of $16,522.89 was paid by Developer RE1 on October 16,

2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True

copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R,

respectively.

90.98.  The late payment of taxes by Developer RE1 easedcaused no harm whatsoever to

the WCP Fund.

91.99.  The First DOT and the Second DOT contain language indicating that a

foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been

cured.

17

92.100.        No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

93.101.        On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

94.102.        The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

95.103.        The Defendants apparently claim that Section 7.9 is a cross-default provision.  A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

96.104.        In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

97.105.        The First DOT and the Second DOT do not define the term "affiliate." Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

98.106.        Developer RE1 does not control 423 Kennedy and vice versa.

99.107.        Developer RE1 is not controlled by 423 Kennedy and vice versa.

100.108.　　　There is also no common control of Developer RE1 and 423 Kennedy.

101.109.　　　Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

102.110.　　　Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

103.111.　　　Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

104.112.　　　The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that:  "There is no right to cure. There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated."  *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT).

Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked

105.113.　　　The Defendants have threatened to foreclose on the Property even though they know that they have no legal right to foreclose on the Property.

106.114.　　　There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property.

107.115.　　　If the Defendants follow through on their threat to foreclose on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

108.116.	The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally and willfully disregarding Developer RE1's rights under the loan documents and under the law.  The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

109.117.	The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022.  The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property

118.	As of January 11, 2023, none of the Defendants hadve sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

119.	On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").

110.120.	On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee due to his conflict of interest.  Afte receiving that letter, Mr. Drazin refused to resign as Trustee,

## COUNT I
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against  All Defendants Except Mr. Drazin

111.121.	Paragraphs 1-11920 of the Second First Amended Complaint are incorporated by reference.

20

112.122.    Developer RE1 was in the process of closing on a refinancing of the existing loans with Main Street Bank.

113.123.    The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

114.124.    As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

115.125.    As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

116.126.    The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

117.127.    Developer RE1 has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for:  (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $31 million if the closing on the refinancing does not take place this year); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1,5000,000.00; (d) costs; and (d) pre- and post-judgment interest.

COUNT II
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against Defendants WCP, ~~and~~ WCP Fund, and SF NU Only

~~118.~~128.        Paragraphs 1–127~~19~~ of the Second~~First~~ Amended Complaint are incorporated by reference.

~~119.~~129.        Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

~~120.~~130.        The First Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

~~121.~~131.        The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

~~122.~~132.        The Second Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

~~123.~~133.        The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

~~124.~~134.        Through their ~~its~~ improper conduct, the WCP, ~~and~~ the WCP Fund, and/or SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners, ~~and~~ the WCP Fund 1, LLC, and SF NU, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional interference with contracts (currently estimated to be $3~~1~~ million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

22

COUNT III

DECLARATORY JUDGMENT

Count III Is Asserted Against Defendants WCP, the and WCP Fund, and SF NU Only

125.135.         Paragraphs 1–13426 of the Second First Amended Complaint are

incorporated by reference.

126.136.         The First DOT is a contract between Developer RE1 and the WCP Fund

and/or SF NU.

127.137.         The Second DOT is a contract between Developer RE1 and the WCP

Fund and/or SF NU.

128.138.         There is an actual and justiciable controversy between Developer RE1 and

WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy,

which controversy is ripe for adjudication.

129.139.         It is settled law in the District that "equity abhors forfeitures …… [and] so

indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association

of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing

with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 ('7th Cir.1997) ("the law

abhors a forfeiture.")).

140.    There is an actual and justiciable controversy between Developer RE1, the WCP,

and the WCP Fund, and SF NU as to whether an unresolved dispute about water bills, or the late

payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate

a forfeiture of the Property.

130.141.         There is an actual and justiciable controversy between Developer RE1 and

the WCP, the WCP Fund, and SF NU as to whether the First DOT, the Second DOT, the First

Note, and the Second Note have unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count III, this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a default by Developer RE1 after the fact, after the alleged default has already been cured (or is in the process of being adjudicated), and without providing any notice to the borrower or any opportunity to cure, and that results in either (i) additional interest and penalties entirely disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is unconscionable and enforceable as a matter of public policy; and (c) . the First DOT, the Second DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

COUNT IV
PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

131.142.    Paragraphs 1–14132 of the Second First Amended Complaint are incorporated by reference.

132.143.    Unless enjoined, the Defendants will continue to improperly claim that Developer RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

24

144.    The Defendants unethical, outrageous, and illegal conduct, as described in this

Second ~~First~~ Amended Complaint, is causing irreparable harm to Developer RE1.  The Property

is unique, and Developer RE1 could lose its entire interest in the Property.

~~133.~~145.    Developer RE1 does not have an adequate remedy at law.

~~134.~~146.    If the Defendants are not enjoined, they will proceed to foreclose on the

Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any

remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including,

without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the

First Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the First Amended Complaint have been decided.

### COUNT V
### BREACH OF FIDUCIARY DUTY

#### Count V is Asserted Against Defendant Drazin Only

147.    Paragraphs 1-146~~39~~ of the Second Amended Complaint are incorporated by

reference.

148.    As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and

has, a fiduciary duty to both the lender and the borrower (Developer RE1).

149.    Defendant Drazin has had an actual conflict of interest while serving

simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the

Second DOT.

150.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Lender Defendants.

151.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1, as borrower, under the First DOT and the Second DOT.

152.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

153.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

154.     Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

155.     Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin

4854-7315-1145.v1

for:  (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated to be at least $31 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT VI

DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID

Count VI is Asserted Against All Defendants

</div>

156.    Paragraphs 1-15548 of the Second Amended Complaint are incorporated by reference.

157.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the First DOT and the Second DOT.

158.    Due to his conflict of interest as counsel for the Lender Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrower (Developer RE1) as Trustee under the First DOT and the Second DOT.

159.    Any actions taken by Defendant Drazin as Trustee under the First DOT and the Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to both the borrower (Developer RE1) and the lender under the First DOT and the Second DOT.

160.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

4854-7315-1145.v1

161.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that:  (a) Defendant Drazin cannot serve as Trustee under the First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrower (Developer RE1) and the lender under the First DOT and the Second DOT.

## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the First Second Amended Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  January 12, 2023March August 1—, 20243

/s/ James D. Sadowski

_____
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

4854-7315-1145.v1

<u>C<small>ERTIFICATE OF</small> S<small>ERVICE</small></u>

I HEREBY CERTIFY that a true copy of this ~~First~~ Second Amended Complaint was filed

through eFileDC this 1st ~~12th~~ day of ~~January~~~~August~~ March, 202~~43~~, and a notice of filing

should be sent by eFileDC to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

29

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

  *Plaintiff*,

v.

DP CAPITAL D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.

  *Defendants*.

2023-CAB-004260
Judge Milton Lee

## CONSENT ORDER MODIFYING THE SCHEDULING ORDER

Upon Consideration of the Parties' Consent Motion to Extend the Scheduling Order

Deadlines ("Consent Motion") filed on March 1, 2024, and the entire record herein, it is this __4th__

day of March, 2024, hereby

  **ORDERED** that the Consent Motion is **GRANTED**; and it is further

  **ORDERED** that the Scheduling Order shall be amended as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Exchange Witness Lists | 12/12/2023 | 03/15/2024 |
| Proponent's Rule 26(a)(2)(B) Report | 12/19/2023 | 03/22/2024 |
| Opponent's Rule 26(a)(2)(B) Report | 01/11/2024 | 04/22/2024 |
| Discovery Requests | 01/24/2024 | 05/07/2024 |
| Close of Discovery | 02/26/2024 | 06/07/2024 |
| Dispositive Motions Deadline | 03/25/2024 | 07/09/2024 |
| Dispositive Motions Decided | 04/24/2024 | 08/09/2024 |
| ADR – Mediation Date | 05/09/2024 – 6/10/2024 | 08/26/2024 - 09/25/2024 |
| Pretrial Date | 07/08/2024 – 08/07/2024 | To be set upon completion of ADR |

**SO ORDERED.**

/s/

_____
Milton C. Lee, Jr.
Associate Judge

Copies via EfileDC  to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice B. VerStandig, Esq.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| DEVELOPER RE1 LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 2022 CAB 005935 |
| v. | ) | |
| | ) | Judge Ebony M. Scott |
| DP CAPITAL, LLC d/b/a | ) | |
| WASHINGTON CAPITAL | ) | Next Court Event:  Trial Readiness Hearing |
| PARTNERS, *et al.*, | ) | September 6, 2024 at 2:00 p.m. |
| Defendants. | ) | |

## ORDER GRANTING CONSENT MOTION TO EXTEND THE SCHEDULING ORDER DEADLINES

Upon consideration of the Consent Motion to Extend the Scheduling Order Deadlines, filed on March 1, 2024, and the entire record herein, it is this **7th day of March 2024**, hereby:

**ORDERED** that the Consent Motion is **GRANTED**; it is further

**ORDERED** that the Scheduling Order shall be amended as follows:

| Event | Current Deadline | New Deadline |
|---|---|---|
| Exchange Fact Witness Lists | -- | 03/08/2024 |
| Proponent's Rule 26(a)(2)(B) Report | -- | 03/15/2024 |
| Opponent's Rule 26(a)(2)(B) Report | -- | 04/12/2024 |
| Discovery Requests | -- | 04/24/2024 |
| Close of Discovery | -- | 05/24/2024 |
| Filing Motions | 03/13/2024 | 06/24/2024 |
| Dispositive Motions Decided | 04/15/2024 | 07/24/2024 |
| Pretrial | To be set upon completion of Mediation | |

**SO ORDERED**.

_____
**Ebony M. Scott**
Associate Judge

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin, Daniel Huertas, & WCP Fund I LLC*

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| DEVELOPER RE1 LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 2022 CAB 005935 |
| v. | ) | |
| | ) | Judge Ebony M. Scott |
| DP CAPITAL, LLC d/b/a | ) | |
| WASHINGTON CAPITAL | ) | Next Court Event:  Trial Readiness Hearing |
| PARTNERS, *et al.*, | ) | September 6, 2024 at 2:00 p.m. |
| Defendants. | ) | |

## ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Upon consideration of the Plaintiff's Unopposed Motion for Leave to File a Second Amended Complaint, filed on March 1, 2024, and the entire record herein, it is this **7th day of March, 2024**, hereby:

**ORDERED** that the Plaintiff's Unopposed Motion for Leave to File a Second Amended Complaint is **GRANTED**; and it is further

**ORDERED** that the Second Amended Complaint, attached as Exhibit A, shall be accepted for filing.

**SO ORDERED**.

_____
**Ebony M. Scott**
Associate Judge

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Page **1** of **2**

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin,*
*Daniel Huertas, & WCP Fund I LLC*

Case 24-10023-ELG    Doc 19-1    Filed 08/09/24    Entered 08/09/24 15:40:07    Desc
Main Document    Page 577 of 637

eFiled
3/8/2024 7:56:11 PM
Superior Court
of the District of Columbia

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al*.

    *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event:  May 24, 2024
Close of Discovery

## PLAINTIFF'S LIST OF FACT WITNESSES

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, hereby submits its

List of Fact Witnesses.  Developer RE1 anticipates that the following persons could be called as

witnesses at trial in Developer RE1's portion of the case:

1.    Melaku Negussie
      1629 K Street, NW, Suite 300
      Washington, DC 20006

2.    Daniel Huertas
      909 Chinquapin Road
      McLean, VA  22102

3.    Jared Fausnaught
      [current address unknown]

4.    Russell Drazin
      4400 Jenifer Street, NW, Suite 2
      Washington, DC  20015

5.    Greg R. Clucas
      [current address unknown]

6.    Greg Clucas, Jr.
      [current address unknown]

7.    Jason Shrensky
      [current address unknown]

8.      Christina Araujo
        [current address unknown]

9.      Leslie Calderas
        [current address unknown]

10.     Sara Fausnaught
        [current address unknown]

11.     Victoria (Tory) Junkins
        [current address unknown]

12.     Steve Sushner
        District Title
        1775 Eye Street, NW, Suite #560
        Washington, DC 20006

13.     Karlen Blomquist
        [current address unknown]

14.     Charles Paret
        [address known to the Defendants]

15.     Darralyn D. Brown
        District Title
        1775 Eye Street, NW, Suite #560
        Washington, DC 20006

16.     Hailey Thomas
        [current address unknown]

17.     Cara Farley
        [current address unknown]

18.     Muhammad Bilal
        [current address unknown]

19.     Kenneth Welch
        [current address unknown]

20.     Michael Asheroff
        [current address unknown]

21.     Timothy L. Foster
        [current address unknown]

22.     Sandy DeAngelo
        [current address unknown]

2

23.     Custodian of Books and Records for DC Capital, LLC d/b/a Washington Capital Partners;

24.     Custodian of Books and Records for SF NU, LLC;

25.     Custodian of Books and Records for District Title;

26.     Custodian of Books and Records for WCP Fund I, LLC;

27.     Custodian of Books and Records for MainStreet Bank;

28.     James D. Sadowski, Esq.
(as to the issue of reasonable attorney's fees and only if testimony is required)

29.     Any person designated by any other party in its List of Fact Witnesses.

Developer RE1 further reserves its right to note additional names of witnesses that are discovered before or during the trial, for purposes or rebuttal and/or impeachment, that may be needed to establish a foundation as to the admissibility of exhibits, and/or to designate experts in accordance with the Scheduling Order issued in this case.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  March 8, 2024

/s/ James D. Sadowski
James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's List of Fact

Witnesses was served on March 8, 2024 using eFileDC, and a copy should be served by notice of

filing on all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

4

eFiled
3/8/2024 9:35:18 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |
|---|---|
| Developer RE1 LLC, | |
| Plaintiff, | |
| v. | Case No. 2022 CAB 005935 |
| | Judge Ebony Scott |
| DP Capital, LLC, et al. | |
| Defendants. | |

## **DEFENDANTS' DISCLOSURE OF FACT WITNESSES**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, and furnish he following list of persons (natural and legal) who may be called to testify at trial herein:

1. Mel Negussie
   c/o Counsel of Record for Developer RE1 LLC (the "Plaintiff")

2. The corporate designee of the Plaintiff
   c/o Counsel of Record for the Plaintiff

3. The records custodian of the Plaintiff
   c/o Counsel of Record for the Plaintiff

4. The corporate designee of 423 Kennedy St. Holdings LLC
   c/o Counsel of Record for the Plaintiff

5. The records custodian of 423 Kennedy St. Holdings LLC
   c/o Counsel of Record for the Plaintiff

6. The corporate designee of Brighton Capital, LLC
   c/o Counsel of Record for the Plaintiff

7. The records custodian of Brighton Capital, LLC
   c/o Counsel of Record for the Plaintiff

8. The corporate designee of NT Group LLC
   1629 K Street, NW
   Suite 300
   Washington, DC 20006

9. The records custodian of NT Group LLC
   1629 K Street, NW
   Suite 300
   Washington, DC 20006

10. Solomone Abebaw Desta
    4600 S Four Mile Run Dr.
    Apartment 227
    Arlington, Virginia 22204

11. Balakrishnarao V Sure
    14905 Capricorn Lane
    Charlotte, NC 28277

12. Naveen Vavilala
    3702 Brices Ford Ct
    Fairfax, VA 22033

13. Billy Freesmeier
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

14. Thomas Floyd
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

15. Patricia Clark
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

16. Joey Musmar
    2100 Reston Parkway Suite 400
    Reston, Virginia 20191

17. Hamza Wardere
    *Address Unknown*

18. Ghaith Musmar
    *Address Unknown*

19. Inas El Mezanen
    *Address Unknown*

20. The corporate designee of NT-BANKERSBMSJV LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

21. The records custodian of NT-BANKERSBMSJV LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

22. The records custodian of Bank of America, N.A.
    100 North Tryon Street
    Charlotte, North Carolina 28255

23. The records custodian of American Express Company
    28 Liberty Street
    42nd Floor
    New York, New York 10005

24. The records custodian of Citigroup Inc.
    288 Greenwich Street
    New York, New York 10007

25. The records custodian of BMW Financial Services NA, LLC
    300 Chestnut Ridge Road
    Woodcliff Lake, New Jersey 07677

26. The records custodian of Discover Financial Services
    2500 Lake Cook Road
    Riverwoods, Illinois 60015

27. The records custodian of HSBC Mortgage Services, Inc.
    1421 West Shure Drive
    Suite 100
    Arlington Heights, Illinois 60004

28. The records custodian of Pentagon Federal Credit Union
    7940 Jones Branch Drive
    McLean, Virginia 22102

29. The records custodian of JP Morgan Chase Bank, N.A.
    270 Park Avenue
    New York, New York 10017

30. Daniel Huertas
c/o Undersigned Counsel

31. Christina Araujo
c/o Undersigned Counsel

32. Russell Drazin
c/o Undersigned Counsel

33. Jared Fausnaught
c/o Undersigned Counsel

34. The records custodian of WCP Fund I LLC
c/o Undersigned Counsel

35. The records custodian of DP Capital LLC
c/o Undersigned Counsel

Dated: March 8, 2024

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 8th day of March 2024, and a notice of filing should be served on all counsel of

record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

eFiled
3/13/2024 3:59:47 PM
Superior Court
of the District of Columbia

**Superior Court of the District of Columbia**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

**Developer RE1 LLC**

Plaintiff

vs.

Case Number    **2022 CAB 005935**

**SF NU, LLC**

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**James D. Sadowski, #446635**

Name of Plaintiff's Attorney

**801 17th Street, NW, #1000**

Address
**Washington, DC 20006**

**(202) 452-1400; ext. 5407**

Telephone

*Clerk of the Court*

By _____

Deputy Clerk

Date _____

March 19, 2024

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면,(202)879-4828로 전화해 주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]        Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

**Developer RE1 LLC**

Demandante

contra

Número de Caso: **2022 CAB 005935**

**SF NU, LLC**

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

**James D. Sadowski, #446635**

Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

**801 17th Street, NW, #1000**

Dirección

Por:

**Washington, DC  20006**

Subsecretario

March 19, 2024

**(202) 452-1400; ext. 5407**

Fecha

Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828로 전화주십시요      ያማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

```
┌─────────────────────────────┐
│         FILED .             │
│   CIVIL ACTIONS BRANCH      │
│     MAR 0 7 2024            │
│     Superior Court          │
│  of the District of Columbia│
│     Washington, D.C.        │
└─────────────────────────────┘
```

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

    *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott

## SECOND AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, Russell Drazin, and SF NU, LLC ("SF NU"). The First Amended

Complaint includes claims for tortious interference with business relations, breach of the duty of

good faith and fair dealing, and permanent injunctive relief. The Second Amended Complaint

also seeks a declaratory judgment as to the meaning of certain provisions in the two Deeds of

Trust, and seeks injunctive relief to prevent a foreclosure. The Second Amended Complaint also

adds SF NU as a Defendant and adds a claim for breach of fiduciary duty against Mr. Drazin.

The Second Amended Complaint also seeks a declaratory judgment declaring that Mr. Drazin

cannot serve as the trustee under the two Deeds of Trust due to an actual conflict of interest. In

support of its Second Amended Complaint, Developer RE1 avers as follows:

THE PARTIES

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia

limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited

liability that does business under the trade name "Washington Capital Partners". For

convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as

"WCP".

3.      The second Defendant, WCP Fund 1, LLC ("WCP Fund"), is a Delaware limited

liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides

at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief

Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

6.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is

counsel to the WCP and the WCP Fund. Mr. Drazin is also listed as Trustee under two deeds of

trust that he drafted, the terms of which are at issue in this case.

7.      The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico

limited liability company that has not filed a certificate of authority to transact business in the

District. SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville,

Maryland, 20850. For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may

sometimes be referred to as the "Lender Defendants".

4856-0691-6010.v1

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

### The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"

8.     In a June 16, 2022 news article published on the internet by Modern Luxury DC,

two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail*," says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry*, which historically have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.     But in reality, the WCP does not have the highest ethical standards. The WCP is

a company that has engaged in predatory lending practices, and as this Complaint will show, Mr.

Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct

that was specifically designed to make one of their client's construction projects fail.

### The Ownership of Developer RE1, Its Purpose, and the Property.

10.     Developer RE1 is the record owner of real property in the District known as 5501

1st Street, N.W., Lot 138, Square 3389 (the "Property").

11.     Developer RE1 is partially owned by Mr. Negussie.

12.     Developer RE1 is a domestic, sole purpose, limited liability company, and the

sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

13.     The Defendants all knew that Developer RE1 was a sole purpose entity whose

only asset was the Property and any the improvements that Developer RE1 made to the Property.

3

14.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

15.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

16.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

17.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

18.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

19.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

20.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

21.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

22.     The Second DOT was a form of deed of trust  prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

4856-0691-6010.v1

23.    The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

24.    On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

25.    The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

26.    The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

27.    On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

28.    The WCP Fund appears to have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

29.    The maturity date for the First Note and the Second Note was December 23, 2022.

30.    As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

31.    As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

5

Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
Accede to His Demands Regarding Another, Unrelated Development

32.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr.

Negussie) to inquire about the status of the payoff of both loans by Developer RE1. Mr. Huertas

wrote that: "we [WCP and the WCP Fund] will not be working with you after the maturity of

5505." A copy of the November 3, 2022 email is attached as Exhibit E.

33.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via

Mr. Negussie) "following up on the refinance progress on both projects." A true copy of the

November 15, 2022 email is attached as Exhibit F.

34.     As of November 15, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

35.     By as early as November 15, 2022, the Defendants each knew that Developer

RE1 had secured alternative financing for the Property with another lender named Main Street

Bank, and that Developer RE1 expected to close on the new refinancing loans in December of

2022. A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

36.     As of November 30, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

37.     On November 30, 2022, Developer RE1 made a request by email to WCP for the

payoff figures for both loans for the Property. A copy of the November 30, 2022 email sent by

Developer RE1 to WCP is attached as Exhibit H.

38.     That same day (November 30, 2022), Developer RE1 requested, and WCP

agreed, to provide the payoff figures for both loans as of December 23, 2022. A copy of the

second November 30, 2022 email exchange between Developer RE1 and WCP is attached as
Exhibit I.

39.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire
with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the
First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way
an extension of the maturity date would be granted would be if Developer RE1 paid down the
First Note and the Second Note by $1 million to $1.5 million (in principal).

40.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to
inquire whether WCP will be willing to extend the maturity date for the First Note and the
Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000
to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1
million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million)
from additional investors.

41.     As of December 7, 2022, there was no allegation made by any Defendant to
Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or
the Second DOT.

42.     As of December 7, 2022, Developer RE1 had made all payments due under the
First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest
payments to the WCP Fund.

43.     On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call
with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the
development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

7

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

44. SF NU is believed to also have a financial interest in the 2507 I Street Project.

45. During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1. Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 1 St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on Developer RE1 and another project financed by WCP, and that WCP is "defaulting the loans." Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

46. During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

47. During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1 or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

8

48.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan documents with the WCP Fund.

49.     The Defendants knew that 423 Kennedy is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

50.     The Defendants knew that the sole purpose of 423 Kennedy is to develop the property located in the District at 423 Kennedy Street, NW.

51.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

52.     The Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

53.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

54.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

55.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

9

56.    The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

57.    The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

58.    The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

59.    The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

60.    The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

### Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.

61.    Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

62.    The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

10

63.   Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

64.   Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

65.   The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

66.   Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

67.   Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

11

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

68.     In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

69.     In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

70.     The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

71.     The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.

72.     After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

73.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

12

default of the loan documents when they each knew, in fact, that there were no defaults by

Developer RE1 under any of its loan documents.

74.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a

cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid

basis for declaring Developer RE1 to be in default under any of the loan documents and to

conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

75.    As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as

Trustee, to both the borrower (Developer RE1) and to the lender under the First DOT and the

Second DOT.

76.    As of December 8, 2022, Mr. Drazin knew that that his representation of the

Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as

Trustee to Developer RE1, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary

duty that he owed to Developer RE1, as borrower, and began to act solely on behalf of, and take

instructions solely from, and provide legal advice to, the Lender Defendants.

77.    Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that

he owed to Developer RE1, to try to find ways to justify -- after the fact -- the Lender

Defendants' issuance of the Default Notice.

78.    The real reason that the Lender Defendants improperly alleged that Developer

RE1 was in default under the loan documents was because the Lender Defendants and/or their

representatives, were angry that the 2507 I Street Project did not turn out the way that they

wanted it to.

.

13

79.    The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a foreclosure sale.

80.    There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

<u>Money is the Root of All Evil</u>.

81.    As a result of their spite, their evil, improper motive, and their greed, the Lender Defendants improperly alleged that Developer RE1 was in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

82.    The Lender Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans that they knew that Developer RE1 had secured with Main Street Bank.

83.    The Lender Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing loan with Main Street Bank.

84.    The Lender Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

---

[1]    423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct. *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, 2022-CAB-005903.

4856-0691-6010.v1

85.     The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

86.     The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members.  The Defendants' misconduct is a form of extortion.

The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

87.     Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)     "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)     Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

88.     For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

15

89.     Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

90.     On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

91.     On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

92.     Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

93.     Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

16

94.     The only provision of the loan documents that Mr. Drazin cited as a claimed basis

for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

95.     The First DOT and the Second DOT each have a Section 7.9 that are identical.

Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.

Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations
> secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any
> of their affiliates, to Beneficiary,* whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis

added).

96.     The second alleged default by Developer RE1 claimed by Mr. Drazin (the

Property Tax Late Payment Claim) involves the late payments of property taxes by Developer

RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

97.     The property taxes of $16,522.89 was paid by Developer RE1 on October 16,

2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True

copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R,

respectively.

98.     The late payment of taxes by Developer RE1 caused no harm whatsoever to the

WCP Fund.

99.     The First DOT and the Second DOT contain language indicating that a

foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been

cured.

100.    No claim of default was made by WCP against Developer RE1 until after WCP

became aware that Developer RE1 was obtaining a refinance loan for the Property with Main

Street Bank.

101.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a

cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid

basis for declaring Developer RE1 to be in default under any of the loan documents and to

conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

102.    The real reason that the Defendants improperly alleged that Developer RE1 was

in default under the loan documents was because the Defendants and/or their representatives,

were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

103.    The Defendants apparently claim that Section 7.9 is a cross-default provision.  A

cross-default provision in a contract is a provision that allows a "default" under one agreement to

constitute a "default" under another agreement.

104.    In order for Section 7.9 to apply as a cross-default provision as to Developer RE1,

two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document

or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP

Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

105.    The First DOT and the Second DOT do not define the term "affiliate."  Under

federal banking law, the term "affiliate" means "any company that controls, is controlled by, or

is under common control with another company."  15 U.S. Code §6809 (6).

106.    Developer RE1 does not control 423 Kennedy and vice versa.

107.    Developer RE1 is not controlled by 423 Kennedy and vice versa.

108.    There is also no common control of Developer RE1 and 423 Kennedy.

18

109.    Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

110.    Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

111.    Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

112.    The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that: "There is no right to cure. There is no right to deceleration. There is no right to reinstatement. The Loans are in default and are accelerated." *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT).

Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked

113.    The Defendants have threatened to foreclose on the Property even though they know that they have no legal right to foreclose on the Property.

114.    There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property.

115.    If the Defendants follow through on their threat to foreclose on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

116.    The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally

19

and willfully disregarding Developer RE1's rights under the loan documents and under the law.

The Defendants' misconduct and improper lending practices also constitute outrageous conduct

further justifying an award of punitive damages.

117.    The Defendants knew that the First Note and the Second Note list a maturity date

of December 23, 2022.  The Defendants deliberately timed their improper interference with

Developer RE1's business relations -- right before a holiday period -- to make it close to

impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to

tie up any refinancing indefinitely so that they can try to foreclose on the Property

118.    As of January 11, 2023, none of the Defendants had sent 423 Kennedy a written

default notice that complies with the notice provisions of either the First Note, the First DOT, the

Second Note, or the Second DOT.

119.    On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer

RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure

Notice").

120.    On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he

resign as Trustee due to his conflict of interest.  Afte receiving that letter, Mr. Drazin refused to

resign as Trustee,

<div align="center">

COUNT I
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against  All Defendants Except Mr. Drazin

</div>

121.    Paragraphs 1-120 of the Second Amended Complaint are incorporated by

reference.

122.    Developer RE1 was in the process of closing on a refinancing of the existing

loans with Main Street Bank.

<div align="center">20</div>

123. The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

124. As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

125. As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

126. The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

127. Developer RE1 has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

21

COUNT II
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

128.    Paragraphs 1–127 of the Second Amended Complaint are incorporated by reference.

129.    Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

130.    The First Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

131.    The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

132.    The Second Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

133.    The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

134.    Through their improper conduct, the WCP, the WCP Fund, and/or SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, and SF NU, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional interference with contracts (currently estimated to be $3 million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

22

COUNT III
DECLARATORY JUDGMENT
Count III Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

135.    Paragraphs 1–134 of the Second Amended Complaint are incorporated by reference.

136.    The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

137.    The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

138.    There is an actual and justiciable controversy between Developer RE1 and WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which controversy is ripe for adjudication.

139.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton*, 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.")).

140.    There is an actual and justiciable controversy between Developer RE1, the WCP, the WCP Fund, and SF NU as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

141.    There is an actual and justiciable controversy between Developer RE1 and the WCP, the WCP Fund, and SF NU as to whether the First DOT, the Second DOT, the First Note,

23

and the Second Note have unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count III, this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a default by Developer RE1 after the fact, after the alleged default has already been cured (or is in the process of being adjudicated), and without providing any notice to the borrower or any opportunity to cure, and that results in either (i) additional interest and penalties entirely disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is unconscionable and enforceable as a matter of public policy; and (c) the First DOT, the Second DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

COUNT IV
PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

142.     Paragraphs 1–141 of the Second Amended Complaint are incorporated by reference.

143.     Unless enjoined, the Defendants will continue to improperly claim that Developer RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

144.     The Defendants unethical, outrageous, and illegal conduct, as described in this Second Amended Complaint, is causing irreparable harm to Developer RE1. The Property is unique, and Developer RE1 could lose its entire interest in the Property.

24

145.  Developer RE1 does not have an adequate remedy at law.

146.  If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including, without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the First Note, the First DOT, the Second Note, and the Second DOT that the court determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's claims in Counts I, II and III of the First Amended Complaint have been decided.

## COUNT V
### BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

147.  Paragraphs 1-146 of the Second Amended Complaint are incorporated by reference.

148.  As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and has, a fiduciary duty to both the lender and the borrower (Developer RE1).

149.  Defendant Drazin has had an actual conflict of interest while serving simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the Second DOT.

150.  While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Lender Defendants.

151.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1, as borrower, under the First DOT and the Second DOT.

152.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

153.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

154.    Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

155.    Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for: (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated

to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre-and post-judgment interest.

## COUNT VI
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants

156.    Paragraphs 1-155 of the Second Amended Complaint are incorporated by reference.

157.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the First DOT and the Second DOT.

158.    Due to his conflict of interest as counsel for the Lender Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrower (Developer RE1) as Trustee under the First DOT and the Second DOT.

159.    Any actions taken by Defendant Drazin as Trustee under the First DOT and the Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to both the borrower (Developer RE1) and the lender under the First DOT and the Second DOT.

160.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

161.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that: (a) Defendant Drazin cannot serve as Trustee under the

27

First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that

Defendant Drazin took while he had a conflict of interest must be either set aside or suspended

until Defendant Drazin bears his burden of proving that he was at all times faithful to his

fiduciary duties to both the borrower (Developer RE1) and the lender under the First DOT and

the Second DOT.

## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the Second

Amended Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: March 1, 2024

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

28

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Second Amended Complaint was filed

through eFileDC this 1st  day of March , 2024, and a notice of filing should be sent by eFileDC

to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

29

eFiled
3/15/2024 10:41:44 PM
Superior Court
of the District of Columbia

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

     *Plaintiff,*

v.

DP CAPITAL D/B/A WASHINGTON
CAPITAL PARTNERS, *et al.,*

     *Defendants.*

2023-CAB-004260
Judge Milton Lee
Next Event: 06/07/2024
Discovery Closed Deadline

## PLAINTIFF'S LIST OF FACT WITNESSES

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), by counsel, hereby

submits its List of Fact Witnesses.  423 Kennedy anticipates that the following persons could be

called as witnesses at trial in 423 Kennedy's portion of the case:

1. Melaku Negussie
   1629 K Street, NW, Suite 300
   Washington, DC 20006

2. Bala Sure
   [address known to Defendants]

3. Venu Chidarala
   2781 Middleton Farm Court
   Herndon VA 20171

4. Daniel Huertas
   909 Chinquapin Road
   McLean, VA 22102

5. Jared Fausnaught
   [current address unknown]

6. Russell Drazin
   4400 Jenifer Street, NW, Suite 2
   Washington, DC 20015

7.      Greg R. Clucas
        [current address unknown]

8.      Greg Clucas, Jr.
        [current address unknown]

9.      Christina Araujo
        [current address unknown]

10.     Leslie Calderas
        [current address unknown]

11.     Sara Fausnaught
        [current address unknown]

12.     Victoria (Tory) Junkins
        [current address unknown]

13.     Steve Sushner
        District Title
        1775 Eye Street, NW, Suite #560
        Washington, DC 20006

14.     Karlen Blomquist
        [current address unknown]

15.     Charles Paxton Paret
        343 First Street
        Berryville, VA  22611

16.     Darralyn D. Brown
        District Title
        1775 Eye Street, NW, Suite #560
        Washington, DC 20006

17.     Billy Freesmeier
        Senior Vice President, Mainstreet Bank
        [current address unknown]

18.     Esther Sangiovanni
        MainStreet Bank
        [current address unknown]

19.     Thomas Floyd
        MainStreet Bank
        [current address unknown]

2

20.     G.F. Joey Musmar
MillerMusmar
2100 Reston Parkway – Suite 400
Reston, VA  20191

21.     Hamza Wardere
[current address unknown]

22.     Inas Jamal Hussein El Mezanen
[current address unknown[]

23.     Hailey Thomas
[current address unknown]

24.     Cara Farley
[current address unknown]

25.     Muhammad Bilal
[current address unknown]

26.     Kenneth Welch
[current address unknown]

27.     Michael Asheroff
[current address unknown]

28.     Sandy DeAngelo
10089 Fairfax Boulevard
Fairfax, VA  22030

29.     Chase Pike
Cushman & Wakefield, Valuation & Advisory Group
2101 L Street NW - Suite 700
Washington, D.C. 20037

30.     Richard Lightner, Construction Draw Manager, WCP
[current address unknown]

31.     Joska Gal, Asset Manager, WCP
[current address unknown]

32.     Giselle Bonzi, President, WCP
[current address unknown]

33.     Custodian of Books and Records for DC Capital, LLC d/b/a
Washington Capital Partners

34.     Custodian of Books and Records for CL Group, LLC

3

35.     Custodian of Books and Records for Cushman & Wakefield of
        Washington, D.C., Inc., Valuation & Advisory Group
        2101 L Street NW - Suite 700
        Washington, D.C. 20037

36.     Custodian of Books and Records for E3 Developers, LLC

37.     Custodian of Books and Records for District Title

38.     Custodian of Books and Records for WCP Fund I, LLC

39.     Custodian of Books and Records for MainStreet Bank
        10089 Fairfax Boulevard
        Fairfax, VA  22030

40.     James D. Sadowski, Esq.
        (as to the issue of reasonable attorney's fees and only if testimony
        is required)

41.     Any person designated by any other party in its List of Fact
        Witnesses.

423 Kennedy further reserves its right to note additional names of witnesses that are

discovered before or during the trial, for purposes or rebuttal and/or impeachment, that may be

needed to establish a foundation as to the admissibility of exhibits, and/or to designate experts in

accordance with the Scheduling Order issued in this case.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  March 15, 2024                    /s/ James D. Sadowski
                                          James D. Sadowski (No. 446635)
                                          Alexandria J. Smith (No. 1781067)
                                          801 17th Street, N.W., Suite 1000
                                          Washington, DC  20006
                                          Telephone: (202) 452-1400
                                          Email:    jds@gdllaw.com | ajs@gdllaw.com
                                          *Counsel for Plaintiff 423 Kennedy St Holdings
                                          LLC*

4

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's List of Fact

Witnesses was served on March 15, 2024 using eFileDC, and a copy should be served by notice

of filing on all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

5

eFiled
3/15/2024 10:52:07 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

423 Kennedy St Holdings LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2023 CAB 004260
Judge Milton Lee

## DEFENDANTS' DISCLOSURE OF FACT WITNESSES

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, and furnish he following list of persons (natural and legal) who may be called to testify at trial herein:

1. Mel Negussie
   c/o Counsel of Record for 423 Kennedy St Holdings LLC (the "Plaintiff")

2. The corporate designee of the Plaintiff
   c/o Counsel of Record for the Plaintiff

3. The records custodian of the Plaintiff
   c/o Counsel of Record for the Plaintiff

4. The corporate designee of Developer RE1 LLC
   c/o Counsel of Record for the Plaintiff

5. The records custodian of Developer RE1 LLC
   c/o Counsel of Record for the Plaintiff

6. The corporate designee of Brighton Capital, LLC
   c/o Counsel of Record for the Plaintiff

7. The records custodian of Brighton Capital, LLC
   c/o Counsel of Record for the Plaintiff

1

8.  The corporate designee of NT Group LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

9.  The records custodian of NT Group LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

10. Solomone Abebaw Desta
    4600 S Four Mile Run Dr.
    Apartment 227
    Arlington, Virginia 22204

11. Balakrishnarao V Sure
    14905 Capricorn Lane
    Charlotte, NC 28277

12. Naveen Vavilala
    3702 Brices Ford Ct
    Fairfax, VA 22033

13. Billy Freesmeier
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

14. Thomas Floyd
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

15. Patricia Clark
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

16. Joey Musmar
    2100 Reston Parkway Suite 400
    Reston, Virginia 20191

17. Hamza Wardere
    *Address Unknown*

18. Ghaith Musmar
    *Address Unknown*

19. Inas El Mezanen
    *Address Unknown*

20. The corporate designee of NT-BANKERSBMSJV LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

21. The records custodian of NT-BANKERSBMSJV LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

22. The records custodian of Bank of America, N.A.
    100 North Tryon Street
    Charlotte, North Carolina 28255

23. The records custodian of American Express Company
    28 Liberty Street
    42nd Floor
    New York, New York 10005

24. The records custodian of Citigroup Inc.
    288 Greenwich Street
    New York, New York 10007

25. The records custodian of BMW Financial Services NA, LLC
    300 Chestnut Ridge Road
    Woodcliff Lake, New Jersey 07677

26. The records custodian of Discover Financial Services
    2500 Lake Cook Road
    Riverwoods, Illinois 60015

27. The records custodian of HSBC Mortgage Services, Inc.
    1421 West Shure Drive
    Suite 100
    Arlington Heights, Illinois 60004

28. The records custodian of Pentagon Federal Credit Union
    7940 Jones Branch Drive
    McLean, Virginia 22102

29. The records custodian of JP Morgan Chase Bank, N.A.
    270 Park Avenue
    New York, New York 10017

30. Daniel Huertas
    c/o Undersigned Counsel

31. Christina Araujo
    c/o Undersigned Counsel

32. Russell Drazin
    c/o Undersigned Counsel

33. Jared Fausnaught
    c/o Undersigned Counsel

34. The records custodian of WCP Fund I LLC
    c/o Undersigned Counsel

35. The records custodian of DP Capital LLC
    c/o Undersigned Counsel

Dated: March 15, 2024

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 15th day of March 2024, and a notice of filing should be served on all counsel

of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

4

eFiled
4/2/2024 11:03:28 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 8, and in answer to the Second Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), as well as the assertion of affirmative defenses and a counterclaim thereto, state as follows:

### Answer

1.     Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants generally deny all allegations in the Complaint except for those specifically admitted herein.

2.     Pursuant to District of Columbia Rule of Civil Procedure 8(b)(5), the Defendants lack information or knowledge sufficient to form a belief about the truth of the allegations set forth in paragraph 1 of the Complaint.

3.     Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants admit the allegations set forth in paragraphs 2-3, 7-8, 10-15, 18, 21, 24, 29, 32-33, 37-38, 44, 55-56, 62, 64, 67-71, 75, 79, 88, 95, 96-97, 119-120, 130-133, and 136-137 of the Complaint.

1

4.       The Defendants generally deny that "money is the root of all evil," as alleged on page 14 of the Complaint.

5.       Paragraphs 121, 128, 135, 142, 147 and 156 of the Complaint do not set forth contentions that call for an admission or denial.

6.       Various paragraphs in the Complaint set forth assertions that are contentions of law; an answer is an improper vehicle to admit or deny assertions of law. To the extent a further answer is required, the Defendants deny the same.

7.       Certain allegations in the Complaint speculate about the existence of privileged attorney/client communications; the Defendants do not specifically answer those allegations herein but, instead, generally note that (i) they will not waive the attorney/client privilege; (ii) the invocation of such privilege ought not be construed as an admission of any of the allegations in the Complaint; and (iii) to the extent necessary to preserve said privilege, the Defendants generally deny the subject allegations.

## Affirmative Defenses

1.       The Complaint fails to state a claim for which relief may be granted.

2.       The plain language of the promissory notes and deeds of trust appended to the original Complaint control the relationship between the Plaintiff and the Defendants.

3.       The Complaint fails to plead damages in a legally cognizable manner.

4.       The Plaintiff is barred from recovering herein by the economic loss rule.

5.       Injunctive relief is not a stand-alone cause of action in the District of Columbia.

6.       The Plaintiff is barred from recovering herein by the doctrine of unclean hands.

7.       The Plaintiff is barred from recovering herein by the doctrine of setoff.

8.       The Plaintiff is barred from recovering herein by the doctrine of recoupment.

9.      The Plaintiff is barred from recovering herein by the doctrine of first breach.

**COUNTERCLAIM**

Comes now WCP Fund I LLC ("WCP" or the "Counter-Plaintiff"), by and through

undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 13, and as and for

its counterclaim (the "Counterclaim") against Developer RE1 LLC (the "RE1" or the "Counter-

Defendant") state as follows:

**Parties**

1.      WCP is a Delaware limited liability company.

2.      Upon information and belief, the Counter-Defendant is a District of Columbia

limited liability company.

**Jurisdiction and Venue**

3.      This Honorable Court enjoys jurisdiction over the Counter-Defendant inasmuch as

(i) the Counter-Defendant is organized under the laws of the District of Columbia; (ii) this

Counterclaim concerns the Counter-Defendant borrowing funds in connection with its ownership

of real property in the District of Columbia; and (iii) by filing the Complaint, the Counter-

Defendant has voluntarily subjected itself to the personal jurisdiction of this Honorable Court.

4.      This Honorable Court is an appropriate venue for the Counterclaim inasmuch as

the Counterclaim concerns the same subject matter as the Complaint.

**General Allegations: The WCP Promissory Note**

5.      On or about December 23, 2021, the Counter-Defendant borrowed $3,579,000.00

(the "Loan Principal") from WCP, with said debt being evidenced by a promissory note (the "WCP

Promissory Note"). *See* Promissory Note, attached to original Complaint as Exhibit B.

3

6.      Pursuant to the WCP Promissory Note, the Counter-Defendant was to repay the Loan Principal, together with interest thereupon, not later than December 23, 2022 (the "Maturity Date").

7.      Pursuant to the WCP Promissory Note, the Counter-Defendant was also to pay a late charge, equal to ten percent (10%) of the unpaid obligation due under the WCP Promissory Note, should a payment thereunder be more than five days late.

8.      Pursuant to the WCP Promissory Note, the Counter-Defendant was also to pay all "reasonable attorneys' fees" incurred by WCP in connection with its efforts to collect the Counter-Defendant's obligations under the WCP Promissory Note.

9.      The Counter-Defendant failed to make various payments under the terms of the WCP Promissory Note – sometimes failing to make such payments timely and sometimes failing to make such payments at all – and, as such, incurred certain late charges.

10.      The Counter-Defendant failed to pay the full sum due and owing, under the WCP Promissory Note, at maturity, and has failed to pay such sum, in part or whole, at all times since.

11.      As of the date of the filing of this Counterclaim, the Counter-Defendant is obligated to WCP, pursuant to the terms of the WCP Promissory Note, in the sum of $5,044,012.96, with said sum being comprised of (i) $3,579,000.00 in principal; (ii) $289,933.80 in ordinary interest; (iii) $1,111,876.00 in default interest; (iv) a default obligation of $357,900.00 in late fees; and (v) a credit of $297,082.84 for interest paid, with (vi) additional monies being due and owing pursuant to the accrual of attorneys' fees and suit costs incurred in connection with this matter.

**Count I – Breach of Contract**

12.      WCP repeats and realleges each and every paragraph of this Counterclaim, as though fully set forth herein.

4

13.     The WCP Promissory Note is a valid and binding contract between WCP and the Counter-Defendant.

14.     WCP performed fully under the agreement by loaning the indicated sum to the Counter-Defendant.

15.     The Counter-Defendant has repeatedly breached each agreement by (i) failing to make timely payments; (ii) failing to make certain payments at all; and (iii) failing to pay the obligations thereunder at maturity.

16.     WCP has been damaged by these breaches in a sum equal to the monies bargained for under the express terms of the promissory note.

WHEREFORE, WCP respectfully prays this Honorable Court (i) enter judgment in favor of WCP, and against the Counter-Defendant, in the sum of $5,044,012.96, plus pre-judgment interest accruing at the rate of $2,386.00 per day; (ii) award WCP its reasonable and necessary attorneys' fees and suit costs incurred in connection with this action, pursuant to the terms of the promissory notes; and (iii) afford such other and further relief as may be just and proper.

Dated: April 2, 2024                          Respectfully Submitted,

                                              /s/ Maurice B. VerStandig
                                              Maurice B. VerStandig, Esq.
                                              DC Bar #1034066
                                              The VerStandig Law Firm, LLC
                                              9812 Falls Road, #114-160
                                              Potomac, Maryland 20854
                                              Telephone: 301-444-4600
                                              Facsimile: 301-444-4600
                                              Electronic Mail: mac@mbvesq.com
                                              *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 2nd day of April 2024, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

Case 24-10023-ELG   Doc 19-1   Filed 08/09/24   Entered 08/09/24 15:40:07   Desc
Main Document    Page 631 of 637

eFiled
4/11/2024 8:28:35 AM
Superior Court
of the District of Columbia

## AFFIDAVIT OF SERVICE

| Case: 2022-CAB-005935 | Court: Superior Court of the District of Columbia-Civil Division-Civil Actions Branch | County: District of Columbia, DC | Job: 10660824 |
|---|---|---|---|
| **Plaintiff / Petitioner:** Developer RE1 LLC | | **Defendant / Respondent:** WCP Fund, I, LLC, et al. | |
| **Received by:** CPI - Columbia Process and Investigative Services LLC | | **For:** Greenstein DeLorme & Luchs, P.C. | |
| **To be served upon:** SF NU, LLC, c/o Jason Shrensky, Managing Member | | | |

I, Brandi Eberhart, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   SF NU, LLC, c/o Jason Shrensky, 9300 Marseille Drive, Potomac, MD 20854
**Manner of Service:**   Personal Service on Jason Shrensky, Managing Member
**Documents:**   Summons , First Amended Complaint, Exhibits, Second Amended Complaint

**Additional Comments:**
On March 30, 2024 at 7:06 PM, I personally served the Defendant, SF NU, LLC, c/o Jason Shrensky, Managing Member,  the referenced documents at the referenced address.

Jason Shrensky is a Caucasian Male with grey hair.  Mr. Shrensky is approximately 6'0", 170 pounds, and in his 50's.

I do solemnly declare and affirm under the penalty of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

_____   4/10/24
Brandi Eberhart                                    Date

CPI - Columbia Process and Investigative Services LLC
5406 Connecticut Avenue, N.W. Suite 108
Washington, DC 20015

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public
04/10/2024                                02/04/2028
Date                           Commission Expires

MARIA MAGDALENA GARCIA
Notary Public - State of Maryland
Montgomery County
My Commission Expires Feb 4, 2028



Superior [redacted] ia
500 India[redacted] C. 20001
Teleph[redacted] .gov

3/13/2024 3:59:37
Superior Court
of the District of Columbia

Developer RE1 LLC
Plaintiff

vs.

SF NU, LLC
Defendant

Case Number 2022 CAB 005935

SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
Name of Plaintiff's Attorney

801 17th Street, NW, #1000
Address

Washington, DC 20006

(202) 452-1400; ext. 5407
Telephone

Clerk of the Court

By
Deputy Clerk

March 19, 2024
Date

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*

Add a Caption

Saturday • Mar 30, 2024 • 7:06 PM Adjust

IMG_2271

Apple iPhone 14 Pro HEIF

Main Camera — 24 mm ƒ1.78
12 MP • 3024 × 4032 • 2.2 MB WARM

ISO 100 | 24 mm | 0 ev | ƒ1.78 | 1/121 s



Case 24-10023-ELG    Doc 19-1    Filed 08/09/24    Entered 08/09/24 15:40:07    Desc
Main Document    Page 633 of 637

eFiled
4/11/2024 8:28:35 AM
Superior Court
of the District of Columbia

## AFFIDAVIT OF SERVICE

| Case:<br>2022-CAB-005935 | Court:<br>Superior Court of the District of Columbia-Civil Division-Civil Actions Branch | County:<br>District of Columbia, DC | | Job:<br>10660807 |
|---|---|---|---|---|
| Plaintiff / Petitioner:<br>Developer RE1 LLC | | Defendant / Respondent:<br>WCP Fund, I, LLC, et al. | | |
| Received by:<br>CPI - Columbia Process and Investigative Services LLC | | For:<br>Greenstein DeLorme & Luchs, P.C. | | |
| To be served upon:<br>SF NU, LLC, c/o Registered Agents, Inc. | | | | |

I, William Alexander, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**  SF NU, LLC, c/o Registered Agents, Inc., 1209 Mountain Road Place Northeast Suite R, Albuquerque, NM 87110

**Manner of Service:**  Personal Service on Registered Agent

**Documents:**  Summons , First Amended Complaint, Exhibits, Second Amended Complaint, Complaint with Exhibits

**Additional Comments:**
On March 26, 2024 at 3:30 PM, I personally served the Defendant, SF NU, LLC c/o their Registered Agent, Registered Agents, Inc., the referenced documents at the referenced address, by personally serving Intake Specialist, Rene Mocker, who is authorized to accept service on behalf of the Defendant.

Rene Mocker is a White Male with brown/gray hair.  Mr. Mocker is approximately 5'8", 140 pounds and in his 40's.

I do solemnly declare and affirm under the penalty of perjury that the contents of the foregoing paper are true to best of knowledge, information, and belief.

William Alexander                              Date 04/08/2024

CPI - Columbia Process and Investigative Services LLC
5406 Connecticut Avenue, N.W. Suite 108
Washington, DC 20015

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

Date 4/8/2024                    Commission Expires 5/8/2024

STATE OF NEW MEXICO
NOTARY PUBLIC
DUSTIN L. MILLS
Commission # 1129727
My Comm. Exp.  May 18, 2024



26 Mar 2024

Tuesday

03:30 PM
35.0915031,
- 106.5581131

eFiled
4/21/2024 11:53:53 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Developer RE1 LLC, | |
| Plaintiff, | |
| v. | Case No. 2022 CAB 005935<br>Judge Ebony Scott |
| DP Capital, LLC, et al. | |
| Defendants. | |

**MOTION TO DISMISS**

Comes now SF NU, LLC ("SNL"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12(b)(7), and moves to dismiss the Second Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), and in support thereof states as follows:

**I.    Introduction**

This lawsuit concerns the Plaintiff's efforts to preempt the foreclosure of two deeds of trust, based upon a series of legally-unprecedented theories and factually-unmoored allegations. SNL has been added as a party to this case for reasons that are less-than-clear, other than that it appears the Plaintiff (i) believes suit must be brought against the holder of one of the two notes; and (ii) posits some broad, vague, and factually-unsupported theory of tort liability against SNL.

Notwithstanding the Plaintiff's wholesale failure to plead any allegations against SNL, aside from those generically lobbed at a grouping of parties of which the Plaintiff asserts SNL to be a part, SNL will preserve for another day the issues centered on the Plaintiff's failure to state a claim for which relief may be granted. For present purposes, however, the other aforementioned

1

issue looms large: the Plaintiff has failed to join an indispensable party to this litigation and, as such, can proceed no further.

As discussed in greater detail *infra*, the promissory note once held by SNL is now held by JPK NewCo LLC ("JNL"), a District of Columbia limited liability company. Insofar as JNL owns the note, and holds the rights arising under the correlative deed of trust, the joinder of JNL as a party to this suit is required under governing law.

## II.      Argument: The Plaintiff Has Failed to Join an Indispensable Party

On April 16, 2024, SNL assigned the deed of trust it formerly held, secured by the Plaintiff's real estate asset, to JNL. The subject assignment was recorded amongst the land records of the District of Columbia the following day. *See* Assignment of Deed of Trust, attached hereto as Exhibit A. Upon that assignment, JNL – being the current holder of the deed of trust and promissory note underlying this case – became a necessary party hereto.

The rules of this Honorable Court provide that "failure to join a party under Rule 19" is a defense properly raised by motion. D.C. R. Civ. P. 12(b)(7). Rule 19, in turn, provides, *inter alia*:

A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

D.C. R. Civ. P. 19(a)(1).

JNL is subject to service of process, having a registered agent within the District of Columbia. And the joinder of JNL will not deprive this Honorable Court of subject matter jurisdiction as JNL's existence as a District of Columbia limited liability company subjects the entity to the general jurisdiction of this Honorable Court. D.C. Code § 13-422.

Here, the Plaintiff seeks to enjoin foreclosure of the deed of trust now held by JNL. It accordingly follows that such relief cannot be afforded without JNL being made a party hereto. Equally, JNL certainly claims an interest in the property that is the subject of this action and, should JNL not be joined hereto, this litigation would impede JNL's ability to protect that interest.

To be sure, SNL does not object to the Plaintiff being afforded leave to amend to join JNL as a defendant. And, in so amending, SNL is hopeful the Plaintiff will delineate what exactly the Plaintiff believes SNL has done to warrant being sued, as such is at-best unclear on the face of the current iteration of the pleading. For instant purposes, however, it is clear this suit cannot proceed in the absence of JNL, and dismissal is thusly warranted.

**III.    Conclusion**

WHEREFORE, SF NU, LLC respectfully prays this Honorable Court (i) dismiss the Complaint; and (ii) afford such other and further relief as may be just and proper.


Dated: April 21, 2024                              Respectfully Submitted,

                                                   /s/ Maurice B. VerStandig
                                                   Maurice B. VerStandig, Esq.
                                                   DC Bar #1034066
                                                   The VerStandig Law Firm, LLC
                                                   9812 Falls Road, #114-160
                                                   Potomac, Maryland 20854
                                                   Telephone: 301-444-4600
                                                   Facsimile: 301-444-4600
                                                   Electronic Mail: mac@mbvesq.com
                                                   *Counsel for SF NU, LLC*

3