## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Proposed Special Counsel for*
*JPK NewCo LLC;*
*Counsel for the Defendants*

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................. 1

II.     Relevant Facts and Allegations ................................................................................. 3

      a.   Facts and Allegations Internal to the Consolidated Cases ................................... 4

      b.   Facts and Allegations Correlative to *In re JPK NewCo LLC,* Case No.
      24-262-ELG (Bankr. D.D.C. 2024) ....................................................................... 5

      c.   Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case
      No. 23-10025-ELG (Bankr. D.D.C. 2023) ........................................................... 6

III.    Argument: The Motion Merits Denial ........................................................................ 8

      a.   Removal is Timely ............................................................................................... 8

          i.   Paret Case ................................................................................................. 8

          ii.  JPK Case ................................................................................................. 12

      b.   Mandatory Abstention is Inapplicable Since this is a Core Proceeding ............. 13

          i.   The Paret Case Renders this Dispute "Core" ......................................... 14

          ii.  The JPK Case Renders this Dispute "Core" .......................................... 16

          iii. Mandatory Abstention is Inapplicable to Cases Removed from
          the Superior Court of the District of Columbia ...................................... 18

      c.   The Centrality of this Case to Two Bankruptcy Estates—and this
      Honorable Court's Topical Expertise—Militate Against Discretionary
      Abstention .......................................................................................................... 19

      d.   Analysis of Equitable Abstention Occasions the Same Result .......................... 26

    IV.   Conclusion .............................................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Bohm v. Howard (In re Howard)*,
2010 Bankr. LEXIS 5109 (Bankr. W.D. Pa. May 17, 2010) ........................................................ 12

*Brown v. Chesnut (In re Chesnut)*,
422 F.3d 298 (5th Cir. 2005) .................................................................... 10, 11, 12, 24

*Camofi Master LDC v. United States Coal Corp.*,
527 B.R. 138 (Bankr. S.D.N.Y. 2015) .......................................................................... 26

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*,
2008 U.S. Dist. LEXIS 50510 (D.D.C. July 2, 2008) .................................................. 20

*Colorado River Water Conservation Dist. v. U. S.*,
424 U.S. 800 (1976) .............................................................................................. 19, 26

*Cty. Of Allegheny v. Frank Mashuda Co.*,
360 U.S. 185 (1959) ...................................................................................................... 19

*Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*,
432 B.R. 583 (Bankr. S.D. Tex. 2010) ......................................................................... 11

*Geron v. Reifer (In re Eight-115 Assocs., LLC)*,
650 B.R. 43 (Bankr. S.D.N.Y. 2023) ........................................................................... 20

*In re Aramid Ent. Fund, LLC*,
628 B.R. 584 (Bankr. S.D.N.Y. 2021) ......................................................................... 20

*In re Blackman*,
55 B.R. 437 (Bankr. D.D.C. 1985) ............................................................................... 13

*In re Brittain*,
435 B.R. 318 (Bankr. D.S.C. 2010) ............................................................................... 9

*In re First Va. Reinsurance, Ltd.*,
339 B.R. 366 (Bankr. E.D. Va. 2004) .......................................................................... 19

*In re Freeway Foods of Greensboro, Inc.*,
449 B.R. 860 (Bankr. M.D.N.C. 2011) ........................................................................ 19

*In re Glob. Outreach, S.A.*,
2009 Bankr. LEXIS 1602 (Bankr. D.N.J. June 8, 2009) ............................................................ 11

*In re Grooms*,
599 B.R. 155 (Bankr. W.D. Okla. 2019) ...................................................................................... 9

*In re HP Bennett, LLC*,
2023 Bankr. LEXIS 3010 (Bankr. D.D.C. Dec. 22, 2023) .......................................................... 25

*In re Levenstein*,
371 B.R. 45 (Bankr. S.D.N.Y. 2007) ........................................................................................... 11

*In re Lunt*,
2011 Bankr. LEXIS 1645 (Bankr. D. Kan. May 2, 2011) ............................................................ 26

*In re Merry-Go-Round Enters., Inc.*,
222 B.R. 254 (D. Md. 1998) ........................................................................................................ 20

*In re Okorie*,
2024 Bankr. LEXIS 339 (Bankr. S.D. Miss. Feb. 12, 2024) ....................................................... 11

*In re Rosales*,
2012 Bankr. LEXIS 4366 (Bankr. W.D. Tex. Sep. 21, 2012) ..................................................... 26

*In re S.G. Phillips Constructors, Inc.*,
45 F.3d 702 (2d Cir. 1995) ........................................................................................................... 13

*In re Sklar*,
626 B.R. 750 (Bankr. S.D.N.Y. 2021) ......................................................................................... 25

*In re Wilson*,
2013 Bankr. LEXIS 3142 (Bankr. D.D.C. Aug. 5, 2013) ............................................................ 13

*Neufeld v. City of Baltimore*,
964 F.2d. 347 (4th Cir. 1992) ....................................................................................................... 19

*Patterson v. United States*,
2007 U.S. Dist. LEXIS 43705 (D.D.C. June 18, 2007) ............................................................... 18

*Power Plant Entm't Casino Resort Ind., LLC v. Mangano*,
484 B.R. 290 (Bankr. D. Md. 2012) ............................................................................................ 21

*Schmidt v. U.S. Marshal Serv. (In re Villarreal)*,
2007 WL 470507 (Bankr. S.D. Tex. Feb. 8, 2007)...................................................... 11

*Stancil v. Bradley Invs., LLC (In re Stancil)*,
487 B.R. 331 (Bankr. D.D.C. 2013) .......................................................................... 25

*Sticka v. Rivera (In re Rivera)*,
2005 Bankr. LEXIS 3423 (B.A.P. 9th Cir. Sep. 14, 2005).......................................... 22

*Taub v. Taub (In re Taub)*,
427 B.R. 208 (Bankr. E.D.N.Y. 2010)................................................................. 11, 24

*Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
92 F. Supp. 3d 469 (E.D. Va. 2015) .......................................................................... 19

*Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*,
2018 Bankr. LEXIS 3955 (Bankr. D.D.C. Dec. 14, 2018) ............................... 13, 20, 21

**Statutes**

11 U.S.C. § 362...................................................................................................... 9

11 U.S.C. § 541...................................................................................................... 9

28 U.S.C. § 151.................................................................................................... 22

28 U.S.C. § 157.................................................................................... 2, 15, 17, 18

28 U.S.C. § 1334.................................................................................... 13, 14, 18

**Rules**

Federal Rule of Bankruptcy Procedure 7065 .................................................... 6

Federal Rule of Bankruptcy Procedure 9027 ................................................ 8, 12

Federal Rule of Civil Procedure 65 .................................................................. 6

Local Rule 9013-1............................................................................................ 1

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants" and each a "Defendant") and JPK NewCo LLC, debtor-in-possession ("JPK"), by and through undersigned counsel, pursuant to Local Rule 9013-1(d), and in opposition to the Motion for Remand (the "Motion," as found at DE #13) filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") state as follows:

## I.    Introduction

This case concerns the Plaintiffs' breach of four promissory notes and ensuing efforts to enjoin creditors from exercising remedies under those notes and correlative deeds of trust. Two of those notes and deeds of trust are owned by JPK, a debtor in bankruptcy. Wendell Webster (the "Trustee"), the Chapter 7 trustee of the estate of Charles Paret—another debtor in bankruptcy—claims to own an interest in at least two (if not all four) of the notes and deeds of trust. The Trustee also claims to own an interest in at least one of the Plaintiffs. It necessarily follows that this litigation will have a momentous impact upon the administration of two separate bankruptcy estates, while also being likely dispositive of JPK's ability to reorganize. And there is thusly little question—pragmatically and legally—that this litigation is properly conducted in this Honorable Court.

Notwithstanding these realities, the Plaintiffs seek a remand to the District of Columbia Superior Court on four theories: (i) removal is untimely; (ii) mandatory abstention is required; (iii) discretionary abstention is appropriate; and (iv) equitable remand is appropriate. Each of these contentions is substantively and legally unavailing.

1

As to the timing of removal, the Plaintiffs appear to misapprehend the relationship between the governing rule and Title 11 of the United States Code (the "Bankruptcy Code"). The Motion suggests that "no stay was imposed on the Consolidated Cases," Motion, DE #13, at ¶ 26, but the automatic stay set forth in Section 362 of the Bankruptcy Code (the "Automatic Stay") is, as titularly suggested, automatic. No party ever sought relief from the Automatic Stay to pursue this litigation and, as such, the clock to remove this case never started running. Equally, however, even if there did exist a temporal defect, such would have been cured by the commencement of the JPK bankruptcy.

In terms of mandatory abstention, this is the epitome of a core proceeding. The Plaintiffs are seeking to void liens in which the Trustee claims an ownership interest, thereby directly invoking Section 157(b)(2)(K) of Title 28 of the United States Code. The Plaintiffs are also seeking to enjoin the liquidation of debt instruments in which the Trustee claims a partnership interest, thereby directly invoking Section 157(b)(2)(O) of the same Title. And while the JPK bankruptcy was filed after the Motion was docketed, it bears notation that the same two provisions would be applicable to JPK, with the Plaintiffs' requests to cancel debt instruments held by JPK additionally amounting to claims that concern the "allowance or disallowance of claims against the estate" of JPK, thereby further invoking Section 157(b)(2)(B) of the same Title.

The theory of discretionary abstention bodes no better. This case will be markedly important to the Trustee's administration of Charles Paret's bankruptcy estate and likely dispositive, nearly *en toto*, of JPK's bankruptcy estate. The issues raised in this litigation—which concern, chiefly, the adjudication of rights in a commercial debtor/creditor context—are issues on which this Honorable Court enjoys expertise. And while the Plaintiffs assert that the District of Columbia Superior Court is more familiar with these issues and these cases, such does not appear

2

to be a statement rooted in any fidelity to pragmatism; it has been well more than a year since a substantive hearing was held in either of these cases and the overwhelming docket activity has been merely that of the parties seeking to modify scheduling orders and consolidate claims.

The Motion only addresses equitable abstention fleetingly, but the arguments set forth on that matter are no more persuasive. It appears the real issue here is that the Plaintiffs do not wish for a new discovery schedule to be issued. Yet the Plaintiffs joined SNL as a party only recently, with that Defendant's motion to dismiss still pending and with that Defendant accordingly having not yet had occasion to take *any* discovery. And the Plaintiffs are somehow yet to join JPK, despite being affirmatively on notice—for several months—that JPK now holds two of the promissory notes and deeds of trust the Plaintiffs are seeking to nullify. In any event, however, whether or not a new discovery order is entered is a substantively separate question that can be addressed in due course, and that will need to be addressed without regard to whether or not this case is remanded; conflating a procedural question with a jurisdictional motion advances no cognizable purpose other than the muddying of matters.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied.

## II.    Relevant Facts and Allegations

The allegations at the core of this case are markedly familiar in nature, closely mirroring those regularly confronted by this Honorable Court in claim objections and adversary proceedings alike:

3

### a. **Facts and Allegations Internal to the Consolidated Cases**

1.      On December 23, 2021, DRL borrowed $4,103,000.00 from WCP, as memorialized by two promissory notes in the respective sums of $3,579,000.00 and $524,000.00 (the "DRL Notes"). *See* DRL Complaint, DE #1-2, at pp. 52-59, 90-97.

2.      The DRL Notes are both secured by deeds of trust (the "DRL Deeds of Trust") on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 (the "DRL Property"). *Id.* at pp. 26-51, 61-89.

3.      Similarly, on March 31, 2022, 423 Kennedy borrowed $9,945,693.00 from WCP, as memorialized by two promissory notes in the respective sums of $8,689,693.00 and $1,256,000.00 (the "423 Kennedy Notes"). *See* 423 Complaint, DE #1-2, at pp. 722-730, 759-767.

4.      The 423 Kennedy Notes are secured by deeds of trust (the "423 Kennedy Deeds of Trust") on the entity's eponymous property (the "423 Kennedy Property"). *Id.* at pp. 696-720, 732-657.

5.      Both DRL and 423 Kennedy repeatedly defaulted under their respective notes and deeds of trust by, *inter alia*, allowing senior liens to accrue on the entities' properties, failing to make interest payments in a timely manner, and failing to pay any of the four—let alone all four—notes at maturity. *See* Notice of Removal, DE #1, at ¶¶ 5-6.

6.      DRL and 423 Kennedy do not believe their various breaches were sufficiently severe to warrant defaults being declared and foreclosures being scheduled, so they respectively brought suit to enjoin those foreclosures, alleging the declared defaults to have amounted to tortious interference with their respective business relations. *See* DRL Complaint, DE #1-2, at pp. 1-24; 423 Kennedy Complaint, DE #1-2, at pp. 663-693.

7.      The two respective complaints are colorful in nature, expressly alleging that "Money is the Root of All Evil," DRP Complaint, DE #1-2, at p. 13, and accusing WCP of corruption, 423 Kennedy Complaint, DE #1-2, at p. 669.

8.      In light of the two complaints and correlative motions for injunctive relief, the Superior Court entered injunctions prohibiting the Defendants from foreclosing on the DRL Deeds of Trust and the 423 Kennedy Deeds of Trust. *See* Hearing Order, DE #1-2, at pp. 1473-78.

9.      The DRL Note for $524,000.00, and the 423 Kennedy Note for $1,256,000.00, were both transferred to JPK, which continues to hold both debt instruments and be the beneficiary of the correlative deeds of trust. *See* Notice of Removal, DE #1, at ¶ 9.

10.     When DRL joined SNL as a defendant, just earlier this year, SNL moved to dismiss, noting that (i) the promissory note formerly held by WCP, and once assigned to SNL, has now been assigned to JPK; and (ii) JPK is thusly an indispensable party to these proceedings. *See* Motion to Dismiss, DE #1-2, at pp. 1646-1649; Assignment of Deed of Trust, DE #1-2, at pp. 1651-1652.

   **b.  Facts and Allegations Correlative to *In re JPK NewCo LLC*, Case No. 24-262-ELG (Bankr. D.D.C. 2024)**

1.      On July 23, 2024, Shaheen Sariri ("Mr. Sariri") filed an involuntary petition for Chapter 11 relief against JPK. *See In re JPK NewCo LLC*, Case No. 24-262 (Bankr. D.D.C. 2024) (the "JPK Main Case").

2.      An order for relief was thereafter entered in the JPK bankruptcy. *See* JPK Main Case at DE #8.

3.      JPK's two most valuable assets are the promissory notes on which DRL and 423 Kennedy are obligated. *See* JPK Main Case at DE #12, ¶ 3.

4.      If not first joined by the Plaintiffs, JPK intends to move to intervene in this consolidated case so as to preserve its property rights in those two promissory notes. *Id.* at ¶ 4(b).

5.      Enforcement of those two promissory notes and the correlative deeds of trust will be integral to JPK's formation of a plan of reorganization. *Id.* at ¶ 3.

6.      JPK is presently bound by the injunctions entered in this case, Fed. R. Bankr. P. 7065; Fed. R. Civ. P. 65(d)(2), despite not being a party to this case. *See* JPK Main Case at DE #12, ¶ 3.

7.      In short, this litigation is actively preventing JPK from exercising its rights under the promissory notes and deeds of trust that are assets of JPK, and this litigation will prevent JPK from being able to reorganize in this Honorable Court, unless JPK is joined herein—either (i) by the Plaintiffs; (ii) pursuant to the motion to dismiss filed by SNL; or (iii) by JPK, pursuant to a motion to intervene.

### c.    Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023)

1.      Charles Paxton Paret ("Mr. Paret") is a Chapter 7 debtor in this Honorable Court. *See In re Paret*, Case No. 23-217-ELG (Bankr. D.D.C. 2023) (the "Paret Main Case").

2.      In connection with the administration of Mr. Paret's bankruptcy estate, Wendell Webster, the Chapter 7 trustee ("Mr. Webster" or the "Trustee"), has filed an adversary complaint against DPCL, WCP, and Mr. Huertas. *See Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023) (the "Paret Adversary") at DE # #39-1 (the "Webster Complaint").

3.      The Webster Complaint appears to allege the loans made by WCP, to DRL and 423 Kennedy, to be "involved" in a partnership between Messrs. Huertas and Paret. *Id.* at ¶ 45.

6

4.       The Webster Complaint further alleges that Mr. Huertas "used" DRL "to purchase foreclosed properties" belonging to the putative partnership between Messrs. Huertas and Paret. *Id.* at ¶ 46.

5.       The Webster Complaint asks this Honorable Court to impose a constructive trust on the assets of the putative partnership (which would seemingly include either the DRL Notes and 423 Kennedy Notes or, based upon how one construes the Webster Complaint, potentially the DRL Property and the 423 Kennedy Property). *Id.* at pp. 17-20.

6.       It genuinely appears that Mr. Webster, a seasoned Chapter 7 trustee is, upon the performance of due diligence and conducting of some variety of an investigation, alleging that he—in his capacity as Mr. Paret's trustee—owns some combination of the promissory notes, deeds of trusts, and real estate assets at issue in this case.

7.       Mr. Webster's beliefs appear to be rooted in those of Mr. Paret himself who, upon questioning under oath, has indicated that he believes his partnership with Mr. Huertas owns DRL and 423 Kennedy or, at minimum, the debt instruments upon which those entities are obligated and/or the real estate assets held by those entities. *See* Notice of Removal, DE #1, at ¶¶ 16-19.

8.       For the avoidance of ambiguity, Mr. Huertas, DPCL and WCP uniformly believe the Trustee's allegations, and Mr. Paret's mirror allegations, to be factually and legally errant, with no partnership existing. The summary of those allegations herein ought not be mistaken for a suggestion that (i) the allegations have any merit whatsoever; or (ii) the allegations can withstand a now-pending motion to dismiss, Paret Adversary at DE #41. But these are nonetheless the solemn extant allegations of a bankruptcy trustee with a sterling reputation and decades of experience.

### III.    Argument: The Motion Merits Denial

#### a.   Removal is Timely

Removal of this case is timely for two reasons. First, the Plaintiffs never received stay relief to proceed with this litigation, following initiation of Mr. Paret's bankruptcy case, and the deadline to remove thusly never commenced running. And, second, even if removal were untimely in the prism of Mr. Paret's case, removal would certainly be timely in the JPK case, where an order for relief was entered less than two weeks ago.

#### i.    Paret Case

The rule governing removal of actions in the context of bankruptcy proceedings provides, *inter alia*:

> If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

Fed. R. Bankr. P. 9027(a)(2).

Subsection (B) of the foregoing rule is critical. As noted in the official Notes of Advisory Committee:

> As long as the stay remains in effect there is no reason to impose a time limit for removal to the bankruptcy court and, therefore, clause (B) of subdivision (a)(2) provides that a removal application may be filed within 30 days of entry of an order terminating the stay. Parties to stayed litigation will not be required to act immediately on commencement of a case under the Code to protect their right to remove.

Fed. R. Bankr. P. 9027 advisory committee's note.

The Plaintiffs, seemingly cognizant of the foregoing rule, posit, *inter alia*, ". . . no stay was imposed on the Consolidated Cases." Motion, DE #13, at ¶ 26. Yet this is fundamentally inaccurate

since the automatic stay set forth in Section 362 of Title 11 of the United States Code (the "Automatic Stay") is, as titularly suggested, "automatic."

The Automatic Stay familiarly applies to all "property of the estate." 11 U.S.C. § 362(a)(3). "Property of the estate," in turn, is inclusive of ". . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). And, as observed by a sister court, ". . . a debtor may hold an equitable interest in property without holding title thereto under the theory of a resulting trust." *In re Brittain*, 435 B.R. 318, 324 (Bankr. D.S.C. 2010).

Importantly, it is not just the Webster Complaint that identifies the assets at issue in this litigation as being assets of Mr. Paret's estate. Rather, Mr. Paret has scheduled himself as owning a membership interest in 423 Kennedy. *See* Paret Main Case, Schedule A/B: Property, DE #50, at p. 10. And Mr. Paret has, too, claimed a direct ownership interest in both the DRL Property and the 423 Kennedy Property, on his schedules. *Id*. at p. 8, § 42; p. 12 at ll. 24-33, 50-60. Mr. Paret is expressly claiming to own a partnership interest in the real estate assets directly at issue in this case, while also claiming to own an interest in one of the two Plaintiffs herein.

The question, thusly, becomes whether the Automatic Stay is applicable to assets of a debtor's estate when ownership of those assets is in dispute. Certainly the Defendants herein gladly join the Plaintiffs in urging the Trustee's contentions, in the Paret Adversary, are folly. Yet case law firmly holds that no matter the convictions of parties in disagreement, the Automatic Stay *does* apply unless and until the subject dispute is resolved: "There has developed a doctrine that the stay should continue to apply when the ownership of the estate property is in bona fide dispute." *In re Grooms*, 599 B.R. 155, 165 (Bankr. W.D. Okla. 2019).

Indeed, application of the Automatic Stay to so-called "arguable property" is not a novel concept unique to this case. The United States Court of Appeals for the Fifth Circuit confronted

one such situation in the context of a case where there existed a dispute as to whether real estate

was a non-filing spouse's "separate property" or, rather, "community property" also owned by a

debtor on account of his marriage. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir.

2005). This mattered a great deal since the spouse of the party listed on the deed to the property

sought bankruptcy protection but the individual actually named on the deed did not. *Id.*

The deed in *Chesnut* was signed only by the non-filing spouse, specifically reciting that

said property was being acquired "as her sole and separate property. . ." *Id.* Yet mortgage payments

were thereafter missed and a foreclosure was thusly scheduled. *Id.* Five days before the

foreclosure, the deed holder's husband filed for Chapter 13 protection, asserting an interest in the

property titled solely in his wife's name. *Id.*

The *Chesnut* lender, observing that the party on the subject deed had not sought bankruptcy

protection—with only the apparent owner's spouse having filed for Chapter 13 relief—proceeded

with a foreclosure of the real estate asset. *Id.* at 301. The debtor then brought suit for violation of

the Automatic Stay, reasoning that without permitting the bankruptcy court to first determine if

the debtor's claimed ownership interest was legitimate, any foreclosure was illegal. *Id.*

In *Chesnut*, the District Court—on appeal—ultimately held that the filing debtor did *not*

have an ownership interest in the foreclosed asset. *Id.* And, as such, the District Court overturned

the Bankruptcy Court's finding that the Automatic Stay had been violated. *Id.* But the Fifth Circuit,

in turn, reversed, holding that the ultimate disposition of property ownership is immaterial to

application of the Automatic Stay during a time period in which the subject asset falls into the

category of "arguable property" awaiting adjudication as to proper ownership:

> Where seized property is arguable property, it is no answer for the creditor to defend
> the foreclosure by claiming that the property was not properly covered by the stay.
>
> . . . a retroactive classification of the property to shape the scope of the stay would
> encourage creditor abuse. Knowing a debtor is in a difficult pecuniary condition

and may not be able to vindicate his rights in a later adversary proceeding, a creditor could simply seize arguable property without fear of later judicial retribution. Or the creditor could gamble that a court would accept potential legal arguments long after foreclosure (as did the district court here), when the harm may be more difficult to remedy. Given that in some instances arguable property is, in fact, the debtor's property, these outcomes increase the probability that the debtor will be permanently deprived of his wrongfully seized assets.

*Id.* at 304.

The holding in *Chesnut* is not an outlier. The United States Bankruptcy Court for the Southern District of Texas has observed that not only does the Automatic Stay apply to "arguable property" but, too, that any claims as to the ownership of "arguable property" are necessarily core proceedings since such "concern[] a claim against the estate." *Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*, 432 B.R. 583, 630 (Bankr. S.D. Tex. 2010). The United States Bankruptcy Court for the Eastern District of New York has been perhaps blunter: "Courts in this Circuit have concluded that the automatic stay applies even where 'the debtor's claimed interest in property may turn out to be groundless.'" *Taub v. Taub (In re Taub)*, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010) (quoting *In re Levenstein*, 371 B.R. 45, 47 (Bankr. S.D.N.Y. 2007); citing *Schmidt v. U.S. Marshal Serv. (In re Villarreal)*, 2007 WL 470507, at *2 (Bankr. S.D. Tex. Feb. 8, 2007)).

Other courts have held similarly, recognizing the enormous risk—and palpable injustice—that would be occasioned by allowing creditors to take action against arguable property merely because creditors have conviction that they will ultimately prevail in showing such arguable property to not actually be a debtor's asset. *See, e.g., In re Glob. Outreach, S.A.*, 2009 Bankr. LEXIS 1602, at *22 (Bankr. D.N.J. June 8, 2009) (". . .the principle put forth regarding 'arguable property' is instructive here."); *In re Okorie*, 2024 Bankr. LEXIS 339, at *11-12 (Bankr. S.D. Miss. Feb. 12, 2024) ("PriorityOne was not free to decide for itself that the stay did not apply. In the absence of controlling authority, whether the stay protected the Clinic Property was a question

11

for this Court.") (citing *Chesnut*, 422 F.3d at 304); *Bohm v. Howard (In re Howard)*, 2010 Bankr. LEXIS 5109, at *10 (Bankr. W.D. Pa. May 17, 2010) ("Defendant's alleged 'good faith' belief that the Mineral Rights proceeds were not property of the estate, does not give the Defendant the right to unilaterally maintain control over and dissipate estate property. Allowing the Defendant to excuse her behavior on this 'good faith' defense would run contrary to the principals espoused in the Bankruptcy Code.").

The Trustee claims that the real estate assets and the promissory notes at issue in this litigation are assets of Mr. Paret's estate. Mr. Paret has not only scheduled them as assets but, too, gone a step further, claiming an ownership interest in one of the Plaintiffs. WCP, DPCL and Mr. Huertas certainly disagree with these assertions, but such does not change that the assertions render the promissory notes and the real estate assets herein "arguable property." Inherent in "arguable" property is the notion of an argument. It is a strange grouping to see DRL, 423 Kennedy, WCP, DPCL, and Mr. Huertas all on the same side of an issue, but that does not change that there is an issue, with someone no less formidable than a bankruptcy trustee on the other side. And such, in turn, means the Automatic Stay is—and has been—applicable to this case.

With the Automatic Stay being applicable, the timeliness argument of the Plaintiffs necessarily fails. Rule 9027 is express in using language that provides for a removal deadline that is the "longest of" three time periods, and the period applicable to termination of the Automatic Stay never even started running—much less lapsed—in this case. Removal is timely in nature.

### ii.    JPK Case

Even if, *arguendo*, removal were untimely in the prism of the Paret Main Case, removal would certainly still be timely in the JPK bankruptcy, since an order for relief was entered a scant two weeks ago. Should this Honorable Court find removal to have not otherwise been timely in

nature, the Defendants respectfully request leave to amend their Notice of Removal, so as to expressly correlate the same with the JPK bankruptcy (which did not exist at the time of original removal). Such would, no doubt, be timely in nature. And, as discussed in greater detail *infra*, the JPK bankruptcy is as integral to maintenance of this case in this Honorable Court as is the Paret bankruptcy.

### b. Mandatory Abstention is Inapplicable Since this is a Core Proceeding

The Plaintiffs next assert that mandatory abstention is necessitated herein because these are not "core" proceedings. In so doing, the Plaintiffs appear to misconstrue what does—or does not—constitute a "core" proceeding, tainting the resulting analysis in the Motion. This matter is core, for multiple reasons, to both the Paret bankruptcy and the JPK bankruptcy, and mandatory abstention is thusly inapplicable *sub judice*.

As observed by this Honorable Court in, ironically, a case involving one of the entities the Trustee is apparently seeking to borrow money from to finance the Paret Adversary, "[u]nder 28 U.S.C. § 1334(c)(2) mandatory abstention does not apply if a proceeding is a core proceeding." *Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*, 2018 Bankr. LEXIS 3955, at *2-3 (Bankr. D.D.C. Dec. 14, 2018). *See also In re Blackman*, 55 B.R. 437, 445 (Bankr. D.D.C. 1985) (". . . mandatory abstention applies only in non-core proceedings. . ."); *In re Wilson*, 2013 Bankr. LEXIS 3142, at *5-7 n.4 (Bankr. D.D.C. Aug. 5, 2013) ("Mandatory abstention under 28 U.S.C. § 1334(c)(2) with respect to such a proceeding would be inapplicable because mandatory abstention applies only to non-core, related to proceedings.") (citing *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2d Cir. 1995)).

The inapplicability of mandatory abstention to core proceedings is rooted in the language of the mandatory abstention statute itself:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

There are thusly two conjunctive elements to mandatory abstention: (i) the matter must not be a core proceeding; and (ii) the case must also be devoid of any independent basis to have been commenced in a "court of the United States." As discussed in detail *infra*, these are core proceedings, so this Honorable Court need not reach the second prong. Yet, even if the second prong were to be reached, it would not be satisfied *sub judice*.

### i.        The Paret Case Renders this Dispute "Core"

Mr. Paret claims an ownership interest in both the DRL Property and the 423 Kennedy Property, with the Trustee additionally asserting Mr. Paret to own an interest in the promissory notes secured by those real estate assets. The Plaintiffs are seeking cancellation of the subject debt instruments and permanent injunctions prohibiting foreclosure; the Defendants are seeking to proceed with foreclosures so both properties may be sold at public auction. It is accordingly rather difficult to surmise how this case is not core to Mr. Paret's bankruptcy.

Title 28 of the United States Code provides, familiarly, for an expressly non-exhaustive list of "core proceedings," that includes, *inter alia*:

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11. . .

(K) determinations of the validity, extent, or priority of liens. . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

28 U.S.C. § 157(b)(2).

These proceedings are plainly core under Section 157(b)(2)(B) insofar as (i) Mr. Paret claims to own the DRL Property and the 423 Kennedy Property; (ii) WCP and JPK assert the existence of liens on the DRL Property and the 423 Kennedy Property; and (iii) this consolidated case will determine the validity, *vel non*, of those liens and their underlying debt instruments. If WCP and JPK ultimately prevail, each entity will have a claim against "arguable property" of Mr. Paret's estate. If the positions of the Plaintiffs are ultimately prevailing, these putative claims against "arguable property" of Mr. Paret's estate will be disallowed.

The same is true pursuant to Section 157(b)(2)(K). The very heart of these consolidated cases is a dispute as to the enforceability, *vel non*, of four liens: the two DRL Deeds of Trust and the two 423 Kennedy Deeds of trust. WCP and JPK assert those to be valid, binding liens, ripe for foreclosure. The Plaintiffs assert those liens to be subject to equitable cancellation and/or voiding. The liens are each against "arguable property" of Mr. Paret's estate. Such very much renders these consolidated cases core proceedings.

Analysis under Section 157(b)(2)(O) invites the same result. WCP and JPK are seeking to foreclose assets that are "arguable property" of Mr. Paret's estate. The Trustee is affirmatively claiming to hold an interest in the promissory notes underlying the liens that would be foreclosed. Mr. Paret also appears to be contending that he owns part—or all—of 423 Kennedy (the entity), a single asset real estate company that will lose its sole notable asset if foreclosed. And while these positions of Mr. Paret are, no doubt, mildly schizophrenic (with there being a notable tension between claiming to both own a company and to own an interest in the secured debt owed by that company), such is not so brazenly strange a concept as to be facially implausible: the equity

15

interests of many debtors in this Honorable Court are, too, the holders of secured claims in the resulting cases.

Indeed, it is impossible to surmise an outcome to this litigation that does not directly impact the current posture of the Trustee's administration of Mr. Paret's estate. If WCP and JPK prevail, the Trustee will assuredly continue in positing that he is entitled to a share of any resulting proceeds, with the Trustee having alleged such monies ought to be held to constitute a constructive trust for the estate's benefit. If the Plaintiffs prevail, the Trustee will assuredly focus on the contention that Mr. Paret is the owner of 423 Kennedy (the entity), whilst simultaneously having to recognize that any claims of the estate to the proceeds of the DRL lending activity are now of diminished—if any—value.

## ii.        The JPK Case Renders this Dispute "Core"

This litigation is also manifestly core to the JPK bankruptcy case, with JPK owning two of the four at-issue promissory notes and two of the four at-issue deeds of trust. The Plaintiffs are seeking, through these consolidated cases, to cancel the debt instruments held by JPK; it is genuinely difficult to conceive of a proceeding more "core" in nature than one seeking to cancel or nullify the two largest assets of a debtor's bankruptcy estate.

In the context of the JPK case, the Section 157 analysis is similar but not entirely overlapping, with there being additional, independent factors militating in favor of a "core" finding:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate. . .

(K) determinations of the validity, extent, or priority of liens. . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

28 U.S.C. § 157(b)(2).

Insofar as the two most significant assets of JPK's estate are one of the DRL Notes and one of the 423 Kennedy Notes, alongside the correlative deeds of trust, this litigation will be central to the administration of JPK's estate. As has already been intimated in a filing in the JPK case, a plan of reorganization will center on collecting on these two promissory notes, with the monies collected therefrom being utilized to fund a plan. *See* JPK Main Case at DE #12, ¶ 3. This litigation is accordingly "core" under Section 157(b)(2)(A).

Similarly, the crux of these lawsuits is the Plaintiffs' efforts to have promissory notes—including those held by JPK—cancelled. Even though the Plaintiffs have, remarkably, refused to join JPK in these consolidated cases, the Plaintiffs are making claims against JPK's estate by seeking equitable relief that will void assets of the estate if successful; there is simply no cogent manner of reading the *ad damnum* clauses herein without observing that the Plaintiffs are seeking direct relief against promissory notes belonging to JPK. This is accordingly the epitome of a core proceeding under Section 157(b)(2)(B).

In terms of Section 157(b)(2)(C), the analysis is slightly trickier. Since the Plaintiffs have refused to join JPK as a party to this litigation, JPK is yet to file a responsive pleading that would include a counterclaim. However, once joined, JPK will be suing both DRL and 423 Kennedy for breach of the at-issue promissory notes.

The Section 157(b)(2)(K) analysis is the same as with Mr. Paret's case: the Plaintiffs are seeking determinations as to the validity, *vel non*, of liens. The only difference is that with JPK the security instruments and underlying promissory notes are not "arguable property" but, rather,

seemingly unrefuted property.[1] A debtor in bankruptcy—JPK—is the record-holder of two deeds of trust; the Plaintiffs are arguing those deeds of trust are invalid and unenforceable. It is legitimately difficult to conceive of a fact pattern that falls more squarely in the ambit of Section 157(b)(2)(K).

Similarly, this case falls well within the scope of Section 157(b)(2)(O). While the catch-all provision is often stretched in other contexts, the facts *sub judice* rather firmly and properly invoke core status under this provision. This litigation will, more than any other judicial proceeding, impact the liquidation of assets of JPK's estate. If the Plaintiffs prevail in receiving all of the relief they seek, JPK will be unable to liquidate its two largest assets. If WCP and JPK prevail, at least in part, those assets will be ripe for prompt liquidation through foreclosure. There is a very direct correlation between the ultimate outcome of these consolidated cases and JPK's ability to liquidate assets pursuant to a plan of reorganization.

### iii.    Mandatory Abstention is Inapplicable to Cases Removed from the Superior Court of the District of Columbia

As noted *supra*, there are two conjunctive prongs to mandatory abstention analysis: (i) whether a proceeding is core and (ii) whether a case could have been commenced in a "court of the United States" in the first instance. Since this is very much a core proceeding, the second prong need not be addressed. However, even if that second criterion were somehow reached, the Plaintiffs would still fail to show that this case "could not have been commenced in a court of the United States," 28 U.S.C. § 1334(c)(2), for the very simple reason that the Superior Court of the District of Columbia is a "court of the United States." *See, e.g.*, *Patterson v. United States*, 2007 U.S. Dist. LEXIS 43705, at *2 (D.D.C. June 18, 2007) (". . . Superior Court judges are federal

---

[1] Ironically, to the extent the notes and deeds of trust are "arguable property," such is solely because of the claims being leveled by Mr. Paret and the Trustee—further engulfing this consolidated action in the universe of two bankruptcy proceedings.

Article I judges appointed by the President of the United States for fixed terms and confirmed by the Senate.") (citing *Palmore v. United States*, 411 U.S. 389, 392 (1973)).

### c. The Centrality of this Case to Two Bankruptcy Estates—and this Honorable Court's Topical Expertise—Militate Against Discretionary Abstention

The Plaintiffs are also errant in suggesting discretionary abstention to be proper in these consolidated cases. As set forth above, there is an incredibly intimate nexus between this litigation and two separate bankruptcy cases pending in this Honorable Court. Equally, the issues raised *sub judice*—questions of the impact, *vel non*, of defaults under commercial loan documents—are ones upon which this Honorable Court has expertise. The outcome of this litigation will have a profound impact upon the reorganization of JPK and will, too, materially inform the composition of the estate of Mr. Paret being administered by the Trustee. It is not merely sensible but, indeed, legally proper for this litigation to remain in this venue.

As a starting point, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976). *See also Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 92 F. Supp. 3d 469, 475 (E.D. Va. 2015) ("[A] federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted.") (quoting *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011)).

As observed by Judge Tice, "[t]he general rule, however, is that a federal court must accept the jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted." *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing *Colorado River*, 424 U.S. at 817; *Neufeld v. City of Baltimore*, 964 F.2d 347, 349 (4th Cir. 1992)). *See also Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its

jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate

a controversy properly before it. Abdication of the obligation to decide cases can be justified under

this doctrine only in the exceptional circumstances where the order to the parties to repair to the

state court would clearly serve an important countervailing interest.").

In seeking this rare and extraordinary remedy, the burden is on the party seeking

discretionary abstention to set forth why such is appropriate. *See, e.g.*, *Geron v. Reifer (In re Eight-*

*115 Assocs., LLC)*, 650 B.R. 43, 50 (Bankr. S.D.N.Y. 2023) ("The movant bears the burden of

establishing that permissive abstention is warranted.") (citing *In re Aramid Ent. Fund, LLC*, 628

B.R. 584, 594 (Bankr. S.D.N.Y. 2021)).

The precedent of the United States District Court for the District of Columbia instructs that

seven factors are to be considered when weighing whether a movant has met its burden on a motion

seeking discretionary abstention:

> (1) "the effect on the efficient administration of the bankruptcy estate"; (2) "the
> extent to which issues of state law predominate"; (3) "the difficulty or unsettled
> nature of applicable state law"; (4) "comity"; (5) "the degree of relatedness or
> remoteness to the proceeding in the main bankruptcy court"; (6) "the existence of
> the right to a jury trial"; and (7) "prejudice to the involuntarily removed
> defendants."

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*, 2008 U.S. Dist. LEXIS 50510, at *14

(D.D.C. July 2, 2008) (quoting *In re Merry-Go-Round Enters., Inc*., 222 B.R. 254, 257 (D. Md.

1998)). The Plaintiffs suggest a more expansive set of twelve factors, Motion, DE #13, at ¶ 32,

from this Honorable Court's ruling in *A V. Car & Home*:

> (a) efficiency in the administration of the debtor's estate;

> (b) the extent to which state law issues predominate over bankruptcy issues;

> (c) whether the issues involve difficult or unsettled questions of state law that would
> be better addressed by a state court;

> (d) the presence of a related proceeding commenced in state court;

20

(e) the existence of a jurisdictional basis other than § 1334;

(f) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(g) the substance rather than form of an asserted "core" proceeding;

(h) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(i) the burden of the federal court's docket;

(j) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

(k) the existence of a right to a jury trial; and

(l) whether non-debtor parties are involved in the proceeding.

*A V. Car & Home*, 2018 Bankr. LEXIS 3955, at *21-22 (quoting *Power Plant Entm't Casino Resort Ind., LLC v. Mangano*, 484 B.R. 290, 299 (Bankr. D. Md. 2012)). For purposes of symmetry between the briefs, the Defendants will analyze all of the *A V. Car & Home* factors.

Taking the first factor, this litigation needs to be brought to a resolution so as to allow both the Paret and JPK estates to be properly administered. If the Trustee owns the DRL Property and the 423 Kennedy Property, or any of the promissory notes, or 423 Kennedy itself, such will have a profound impact upon the estate he is charged with administering. Similarly, JPK cannot much go about liquidating its two most notable assets until the injunction prohibiting such liquidation is lifted, either by way of intervening order or final judgment. This litigation is absolutely central to both bankruptcy cases, and this factor accordingly weighs heavily in favor of denying abstention.

*Vis a vis* the second question, this is not a case where state law issues predominate over bankruptcy issues. And some attention is properly paid to the criterion being "bankruptcy issues" and not a more narrow consideration of "federal causes of action." As noted by the Bankruptcy Appellate Panel of the Ninth Circuit, "Congress gave the bankruptcy court exclusive jurisdiction over property of the estate, and the bankruptcy court has unique expertise on debtor-creditor

21

matters." *Sticka v. Rivera (In re Rivera)*, 2005 Bankr. LEXIS 3423, at \*29 (B.A.P. 9th Cir. Sep. 14, 2005). And such is particularly true in the prism of this case and this particular court: there is likely no court—state or federal—in the United States more expertly familiar with the adjustment of the creditor/debtor relationship, in the context of single asset real estate entities and promissory notes secured by such entities' titular assets, than this Honorable Court.

In assessing the third criterion, there are no "difficult or unsettled questions of state law" at issue in these consolidated cases. Yes, the Plaintiffs are trying to create new law—in direct contravention of well-settled law—that would subject commercial notes and deeds of trust to the standards of consumer loans. And, yes, the Plaintiffs are trying to overturn decades-old precedent instructing that trustees under deeds of trust have solely-ministerial duties. But such does not render the questions *sub judice* "difficult" or "unsettled;" such only means the Plaintiffs are endeavoring to confront a perilous fact pattern through a series of challenges to well-settled law.

On the fourth question, there is no related proceeding commenced in state court, aside from the initial suit filed by 423 Kennedy that was *sua sponte* dismissed by the Superior Court more than a year-and-a-half ago. *See* Motion, DE #13, at p. 3, n. 1. These two consolidated cases are, of course, deeply related to one another. But both cases have been properly removed to this Honorable Court.

The fifth factor is one of the few that bodes in favor of the Plaintiffs: there is no jurisdictional basis for this suit to be heard in the United States District Court for the District of Columbia—or this Honorable Court, which is a "unit" of the District Court, 28 U.S.C. § 151— other than the pendency of the Paret and JPK bankruptcies.

The sixth inquiry is "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case." As noted *passim*, the relatedness of this proceeding to the Paret and JPK

bankruptcies is markedly intimate in nature. The disposition of these consolidated cases will directly weigh on whether the Trustee in Mr. Paret's case can liquidate multiple "arguable property" assets. And the disposition will be central to JPK's plan of reorganization, with the latter debtor having an asset base comprised largely—albeit not entirely—of two of the four promissory notes and deeds of trust that the Plaintiffs are seeking to have cancelled or nullified herein.

The seventh consideration is the substance—in lieu of form—of "core" proceedings. This is particularly important *sub judice*; while none of the causes of action in these consolidated cases are expressly titled as efforts to determine the validity of liens, such is very much the substance of what is being sought. Equally, this is a matter that will directly weigh on the administration of the JPK estate, for the reasons discussed throughout. And, as previewed above, this is a case in which JPK will absolutely be bringing counterclaims against the Plaintiffs as soon as JPK is joined, either by the Plaintiffs through amendment or by way of a motion to intervene.

The eighth question is "the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court." It genuinely does not appear possible to sever the non-core issues from these consolidated cases. Theoretically, the causes of action against Mr. Drazin, for breach of fiduciary duty, might be somehow severable. But severing those claims would only serve to work enormous logistical complications upon the litigation and risk the rendering of inconsistent judgments. Mr. Drazin is being sued for breaching his fiduciary duty, as a trustee under deeds of trust, by scheduling foreclosures in accord with the debt instruments owned by WCP, JPK and, per Mr. Paret's contentions, Mr. Paret. To consider Mr. Drazin's fidelity to his ministerial charge in one court, and the enforceability of the very deeds of trust that appoint Mr. Drazin in another court, would be a recipe for unbridled chaos. Put most simply, the core claims cannot be severed from the other claims without forcing a series of legal gymnastics that,

almost *per se*, run contra to the very equitable notions underlying remand in rare and extraordinary circumstances.

The ninth inquiry is the burden on this Honorable Court's docket. There does not appear to be any reason to surmise these consolidates cases would place an undue burden on the docket.

The tenth factor is the likelihood of forum shopping. The Plaintiffs suggest such to be a factor: "Removal at this untimely and late stage, days before important depositions were about to be taken, and just nine weeks before trial, raises a strong likelihood of forum shopping." Motion, DE #13, at ¶ 35. What the Plaintiffs miss, however, is that (i) per the Plaintiffs' own counsel, no such depositions were about to be taken; *see* E-mail from Counsel for Plaintiffs, DE #12-1 ("I do not expect these depositions to go forward on the dates and times noted, but rather to serve as placeholders given that we have to re-coordinate the scheduling of depositions that we previously planned to accomplish before the 7/9/24 close of discovery."); and (ii) the taking of depositions— or commencement of a trial—would have been a violation of the Automatic Stay and, as such, void.

As noted in Section III(a)(i), *supra*, the Automatic Stay applies to "arguable property." *Chesnut*, 422 F.3d at 300; *Taub*, 427 B.R. at 221. Mr. Paret has scheduled the DRL Property and the 423 Kennedy Property as assets of his estate. He has also asserted that he owns 423 Kennedy, rendering it an asset of his estate. Equally, the Trustee has contended that the promissory notes and deeds of trust at issue in these consolidated cases are, too, assets of Mr. Paret's estate. So the Automatic Stay has been in effect since, at minimum, November 15, 2023 (the date on which Mr. Paret filed schedules listing this arguable property). *See* Paret Main Case at DE #50. Quite plainly, the Plaintiffs have never sought stay relief. And, under the law of this Honorable Court, any actions in violation of the Automatic Stay are not merely voidable but, indeed, void. *See, e.g., In re HP*

24

*Bennett, LLC*, 2023 Bankr. LEXIS 3010, at *10 (Bankr. D.D.C. Dec. 22, 2023) ("This Court agrees with the majority that acts taken in violation of the automatic stay are void.") (citing *Stancil v. Bradley Invs., LLC (In re Stancil)*, 487 B.R. 331, 338 (Bankr. D.D.C. 2013); *In re Sklar*, 626 B.R. 750, 762-63 (Bankr. S.D.N.Y. 2021)). It necessarily follows that the Plaintiffs' theory of forum shopping is misplaced. This case was not removed to stop depositions and a trial from occurring; depositions and a trial could not have occurred, as a matter of law, because the Plaintiffs never sought relief from the Automatic Stay.

The eleventh factor is the right to a trial by jury. There can be no trial by jury in these consolidated cases for the simple reason that the Plaintiffs each waived their right to a trial by jury "fully to the extent that any such right shall now or hereafter exist." *See* Promissory Note, DE #1-2, at p. 56, § 7.[2]

The final consideration is the existence of non-debtor parties in the proceedings. This criterion is unusually complex instantly for three reasons: (i) Mr. Paret and the Trustee are contending a partnership that encompasses the assets implicated in these proceedings; (ii) Mr. Paret contends he owns 423 Kennedy, which is a party to these proceedings; and (iii) as noted *passim*, JPK is an indispensable party to these proceedings and is a debtor in bankruptcy. So while no debtor is presently identified in the caption of these consolidated cases, one debtor and his Chapter 7 trustee are asserting their rights to be substantively implicated, and another debtor is noting that it is an indispensable party.

In assessing the foregoing factors, the existence of a core matter "strongly mitigates against" granting abstention. *In re Lunt*, 2011 Bankr. LEXIS 1645, at *6 (Bankr. D. Kan. May 2,

---

[2] All four promissory notes—both DRL Notes and both 423 Kennedy Notes—contain an identical provision.

2011). And, of course, abstention remains a rare and extraordinary remedy, of which the Supreme

Court has cautioned that utilization should be "the exception, not the rule." *Colorado River*, 424

U.S. at 813. There is simply no basis to make such an exception in these consolidated cases, where

nearly every factor militates against abstention and where the administration of two separates

debtors' estates hangs in the proverbial balance. This Honorable Court has expertise in the issues

presented in this litigation, has a docket that can ably accommodate this litigation, and has

jurisdiction over this litigation.

### d.   Analysis of Equitable Abstention Occasions the Same Result

The Motion also seeks abstention on equitable grounds. *See* Motion, DE #13, at § D, p. 11.

This doctrine, however, is generally regarded as being coterminous with discretionary abstention.

*Camofi Master LDC v. United States Coal Corp.*, 527 B.R. 138, 143 n.3 (Bankr. S.D.N.Y. 2015).

And where the two notions are viewed as not completely overlapping, courts nonetheless assess

such requests using the same factors. *In re Rosales*, 2012 Bankr. LEXIS 4366, at *13 (Bankr. W.D.

Tex. Sep. 21, 2012).

Nonetheless, it bears observation that the two arguments posited in support of equitable

abstention—delay in taking depositions and a pending request for a new scheduling order—are

undermined by the reality that this litigation is subject to the Automatic Stay. Insofar as this point

is discussed in some detail twice above, *see, supra,* §§ III(a)(i); III(c), the Defendants will forbear

from repeating the same analysis and simply incorporate the foregoing arguments by reference.

### IV.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion;

and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 20, 2024          By:    /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.
                                       Bar No. MD18071
                                       The VerStandig Law Firm, LLC
                                       9812 Falls Road, #114-160
                                       Potomac, Maryland 20854
                                       Phone: (301) 444-4600
                                       mac@mbvesq.com
                                       *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of August, 2024, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig