GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC
and 423 Kennedy St Holdings LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF
IN SUPPORT OF THEIR MOTION FOR REMAND**

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Borrowers") submit this supplemental brief in support of their Motion for Remand (the "Motion for Remand") (ECF # 13) to address subsequent developments in the two bankruptcy cases involving Charles Paret (23-10025) (adversary proceeding alleging a partnership) and the JPK NewCo LLC involuntary case petition (Case No. 24-00262). For convenience, the Borrowers will refer to Case. No. 23-10025 as the "Paret Adversary Proceeding" and to Case No. 24-00262 as the "JPK Involuntary Proceeding".

A. UPDATES IN THE PARET ADVERSARY PROCEEDING (23-10025)

After the Motion for Remand was filed, on August 14, 2024, Daniel Huertas, WCP Fund I, LLC, and DPA Capital d/b/a Washington Capital Partners (the "WCP Defendants") filed a twenty-seven page motion to dismiss all of the claims in the Third Amended Complaint, which the Chapter 7 Trustee opposed. See ECF # 41 in 23-10023. A hearing on that motion was initially set for October 30, 2024, but that hearing was continued to December 18, 2024. For reasons that were apparently never explained on the record, on November 12, 2024, the WCP Defendants and the Chapter 7 Trustee submitted a consent order to resolve the motion to dismiss, which the Court entered on November 12, 2024. ECF # 47 in 23-10023. In that consent order, the Court dismissed Count II (Breach of Fiduciary Duty), Count IV (Breach of the Duty of Good Faith and Fair Dealing), and Count V (Fraud) without prejudice. The surviving counts were Count I (Declaratory Judgment as to the existence of a partnership) and Count III (Breach of Partnership Agreement). The only surviving Count that contains a request for the imposition of a constructive trust over the Partnership Property *as a remedy* is Count II.

It is worth noting that a constructive trust is not a separate cause of action, rather, it is an equitable remedy that a court devises *after* litigation. *See, e.g., Hickey v. Scott,* 738 F.

2

Supp. 2d 55, 61 (D.D.C. 2010) (citing *Macharia v. United States,* 238 F. Supp. 2d 13, 31 (D.D.C. 2002) (italic emphasis added) and *United States v. BCCI Holdings (Lux.),* S.A., 46 F.3d 1185, 1190 (D.C. Cir. 1995). A constructive trust arises "where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it." *Graves v. Graves,* 51 A.3d 521, 524 (D.C. 2012) (citing *Gray v. Gray,* 412 A.2d 1208, 1210 (D.C. 1980); *In re Estate of Reilly,* 933 A.2d 830, 837 (D.C. 2003) (same). The burden of proof for establishing a constructive trust is by clear and convincing evidence. *Hertz v. Klavan,* 374 A.2d 871, 873 (D.C. 1977).

Here, it would be speculation for the Court to now conclude that the Chapter 7 Trustee will prove that a partnership existed as alleged in the Paret Adversary Proceeding. It would be even more speculative for the Court to now conclude that the Chapter 7 Trustee will meet the clear and convincing standard of proof for the imposition of a constructive trust. But speculation is what the WCP Defendants base one of their jurisdictional arguments upon. As the argument goes, *if* it is later determined that there is a valid partnership, and *if* the loan documents involving the properties owed by Developer RE1 and 423 Kennedy are considered Partnership Property, and *if* the Court imposes a constructive trust over the loan documents (or the loan proceeds), then the Court has jurisdiction over all of the claims in the removed cases. These many "ifs" are the thinnest of reeds upon which the WCP Defendants can argue that the Court has either core or "related to" jurisdiction over *all of the claims* in the Removed Cases as a result of the still-unproven allegations in the Paret Adversary Proceeding.

B. UPDATES IN THE JPK INVOLUNTARY CASE (24-00262)

After the Motion for Remand was filed, on September 23, 2024 the US Trustee's office filed a motion to dismiss JPK Involuntary Case as being filed in bad faith. ECF # 37 in

3

8161\0002\4916-0299-6481.v2

24-00262. Shaheen Sariri, the petitioning creditor, filed an opposition to the motion to dismiss on October 9, 2024. ECF # 48 in 24-00262. On October 15, 2024, the WCP Defendants filed a forty-eight page Opposition to the motion. ECF # 56 in 24-00262.

The first two Operating Reports filed by JPK NewCo confirmed that it has just $935.00 in a bank account, no other funds to operate, no income from customers, and that is has no employee taxes to pay. ECF ## 62-63 in 24-00262. On October 25, 2024, Daniel Huertas gave testimony at the meeting of creditors, during which he confirmed nearly all of the allegations that the US Trustee's office had set forth in its motion to dismiss. Mr. Huertas confirmed that JPK NewCo really had no business purposes and was created "on the advice of counsel". Mr. Huertas' admissions are discussed in more detail in Section 2, *infra.* The US Trustee's office will be pursuing discovery and taking depositions related to the motion to dismiss pursuant to the Scheduling Order issued on November 13, 2024. ECF # 70 in 24-00262. The resolution of that motion to dismiss is scheduled for an evidentiary hearing on February 4th and 6th of next year.

SUPPLEMENTAL ARGUMENTS IN SUPPORT OF THE MOTION FOR REMAND

1. There Is Now No Question that the Petitioning Creditor Has Engaged in the Forum Shopping of a Simple Breach of Contract Claim.

In his Opposition to the motion to dismiss in the JPK Involuntary Proceeding, Mr. Sariri represented that:

> Mr. Sariri *elected* to file an involuntary bankruptcy *rather than pursue his remedies in the Superior Court of the District of Columbia* because he was concerned about the length of time it would take for him to obtain a money judgment in Superior Court and whether the Debtor's assets would be dissipated by that time.

ECF # 48 in 24-00262 (Sariri Opp.) at 2, ¶ 5 (italic emphasis added).

This contention lacks merit on its face, other than conclusively showing that Mr. Sariri, like the WCP Defendants, is attempting to engage in forum shopping. For starters, this Court is

not the proper court to use to collect a debt under a promissory note. Mr. Sariri's claim about possible delay in obtaining a money judgment against JPK NewCo in Superior Court also rings hollow. Given that his alleged claim is under a promissory note for which there was an undisputed event of non-payment, such a claim would easily be decided quickly in Superior Court by the filing a motion for summary judgment – this even assuming that JPK NewCo would even invest any time in defending against the claim. Forum shopping of a routine breach of contract claim by a lone disgruntled creditor is not a valid reason to file an involuntary bankruptcy petition.

    2.    <u>Mr. Huertas Has Confirmed That JPK NewCo is Not a Legitimate Business and That It Had No Real Business Purpose.</u>

After the Motion for Remand was filed, many of the allegations that the US Trustee's office made about JPK NewCo in the motion to dismiss the JPK Involuntary Proceeding were confirmed at the meeting of creditors by Mr. Huertas in his sworn testimony. *See generally* Exhibit 1 (complete transcript from the JPK NewCo meeting of creditors). In response to various questions at the meeting of creditors, Mr. Huertas confirmed that JPK NewCo's only purpose was to hold "troubled assets" as a result of "advice of counsel" as noted in the following excerpt:

5

```
 5              MS. EUSTIS:  Okay.  Thank you.
 6              Mr. Huertas, what is the nature of the Debtor's
 7   business?  What does the Debtor do?
 8              MR. HUERTAS:  The Debtor business, are you -- are you
 9   referring to JPK NewCo?
10              MS. EUSTIS:  Yes.
11              MR. HUERTAS:  JPK NewCo is it's a holding company of
12   the -- some troubled assets that we had placed in there under
13   advice of counsel.
14              MS. EUSTIS:  So you said it's a holding company of
15   troubled assets that was formed on advice of counsel?  Is that
16   what you -- I just want to make sure I heard you correctly.
17              MR. HUERTAS:  Correct.  It's a holding company.
18   Holding two troubled assets that we have.
```

Ex. 1 at 7, lines 5-18.

Mr. Huertas also confirmed that JPK NewCo was not engaged in any business activities and had no other ongoing business operations:

```
13              MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK
14   NewCo engaged in any other business activities?
15              MR. HUERTAS:  Not at this time.
16              MS. EUSTIS:  So at the time that it was formed, there
17   was no other ongoing business operations of JPK NewCo?
18              MR. HUERTAS:  Correct.
```

Ex. 1 at 8, lines 13-17.

8161\0002\4916-0299-6481.v2

Mr. Huertas also confirmed that JPK NewCo was not engaged in any other business activities and had no other ongoing business operations:

```
13          MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK
14    NewCo engaged in any other business activities?
15          MR. HUERTAS:  Not at this time.
16          MS. EUSTIS:  So at the time that it was formed, there
17    was no other ongoing business operations of JPK NewCo?
18          MR. HUERTAS:  Correct.
```

Ex. 1 at 8, lines 13-17.

Mr. Huertas also confirmed that Mr. Sariri was a longtime friend of Mr. Huertas:

```
11          MS. EUSTIS:  Okay.  Thank you.  Did you, Mr. Huertas,
12    have a prior relationship with Mr. Sariri?
13          MR. HUERTAS:  Yes.
14          MS. EUSTIS:  And what was that relationship?
15          MR. HUERTAS:  A business relationship.
16          MS. EUSTIS:  How long had you previously known him
17    for?
18          MR. HUERTAS:  I know Mr. Sariri for -- gosh, it's been
19    a while.  Probably north of fourteen years, fifteen years.
20          MS. EUSTIS:  Would you consider Mr. Sariri a friend of
21    yours personally?
22          MR. HUERTAS:  Yes.
```

Ex. 1 at 9, lines 11-22.

8161\0002\4916-0299-6481.v2

Mr. Huertas also confirmed that JPK NewCo had the same address as his company, DP Capital, LLC "and its affiliates":

```
23        MS. EUSTIS: And your counsel indicated that the
24   principal address of JPK is in Virginia. What is that address?
25        MR. HUERTAS: 8401 Greensboro Drive, Suite 960,
 1   McLean, Virginia 22102.
 2        MS. EUSTIS: And do any other businesses operate out
 3   of that address?
 4        MR. HUERTAS: Yes.
 5        MS. EUSTIS: What businesses?
 6        MR. HUERTAS: DP Capital LLC and its affiliates.
```

Ex. 1 at 9, lines 11-22 and 10, lines 1-6.

Mr. Huertas also confirmed that JPK NewCo did not pay any rent and had no other business locations:

```
 7        MS. EUSTIS: Okay. Does JPK NewCo pay rent for its --
 8        MR. HUERTAS: No.
 9        MS. EUSTIS: Okay. Are there any other --
10        MR. HUERTAS: The answer was no rent.
11        MS. EUSTIS: I'm sorry. Go ahead.
12        MR. HUERTAS: Yeah. The answer was no, no rent.

13        MS. EUSTIS: Okay. Are there any other locations
14   affiliated or associated with JPK NewCo?
15        MS. EUSTIS: No.
```

8

Ex. 1 at 10, lines 1-15.

    Mr. Huertas also confirmed that JPK NewCo had no operating expenses:

```
13          MS. EUSTIS:  What are JPK's post-petition obligations?
14   What are its operating costs?
15          MR. HUERTAS:  Sorry.  Can you please repeat the
16   question?  There was some noise in the background.
17          MS. EUSTIS:  Sure.  And if you are not me or Mr.
18   Huertas, can you please mute your line?  Thank you.
19          Yes.  So what are JPK NewCo's operating expenses?
20          MR. HUERTAS:  Currently, zero.

 4          MS. EUSTIS:  Okay.  And you indicated that there are
 5   no operating expenses currently.  Have there ever been any
 6   operating expenses for JPK?
 7          MR. HUERTAS:  No.  No.
 8          MS. EUSTIS:  Do you anticipate that there will be any
 9   operating expenses for JPK?
10          MR. HUERTAS:  Not at this time.
```

Ex. 1 at 17, lines 13-20, and 18, lines 4-10.

    Mr. Huertas also confirmed that JPK NewCo did not have any employees, and that it had no day-to-day operations, and that DP Capital LLC maintained JPK NewCo's books and records:

9

```
22            MS. EUSTIS:  Okay.  Does JPK NewCo have any employees?
23            MR. HUERTAS:  No employees.
24            MS. EUSTIS:  Are there day-to-day operations of JPK
25   NewCo?

 1            MR. HUERTAS:  No.
 2            MS. EUSTIS:  Okay.  Who maintains the books and
 3   records for JPK NewCo?
 4            MR. HUERTAS:  Can you please repeat the question?
 5            MS. EUSTIS:  Who maintains the books and records for
 6   JPK NewCo?
 7            MR. HUERTAS:  DP Capital LLC.
```

Ex. 1 at 10, lines 13-17, and 11, lines 1-7.

Mr. Huertas also testified that he did not know who owned SF NU, LLC, a 29.44% co-owner of JPK NewCo:

```
 7            Mr. Huertas, do you know who the owners of SF NU, LLC
 8   are?
 9            MR. HUERTAS:  No.
10            MS. EUSTIS:  Do you have any ownership interest in SF
11   NU, LLC?
12            MR. HUERTAS:  No.
```

Ex. 1 at 12, lines 7-12.

Mr. Huertas also testified that he has an ownership interest in the WCP Fund I, LLC:

10

```
13            MS. EUSTIS:  And what about WCP Fund I LLC?  Do you
14   know who the members of this entity are?
15            MR. HUERTAS:  Yes, I know who the members are.
16            MS. EUSTIS:  And who are they?
17            MR. HUERTAS:  There are several members because it's a
18   fund in excess of thirty different LLCs or -- or individuals.
19   I don't have all of those right in my -- readily available, but
20   there is several members of the fund.
21            MS. EUSTIS:  Okay.  And do you have any interests
22   personally in WCP Fund I, LLC?
23            MR. HUERTAS:  Yes.
```

Ex. 1 at 17, lines 13-23.

These facts alone demonstrate that JPK NewCo was not a legitimate business, but was instead created on advice of the WCP Defendants' bankruptcy counsel for a non-business reason. The sole, improper purpose of creating JPK NewCo was to use that company as a means to manufacture JPK NewCo's insolvency in order to forum shop the Superior Court consolidated cases to this Court.[1] The Court should not allow the manufactured involuntary bankruptcy filing of JPK NewCo to serve as a jurisdictional bootstrap for the removed cases. Mr. Huertas' existing

---

[1] JPK NewCo also contends that is was formed as a result of settlement discussions that took place at a mediation, but that mediation (before JAMS) concluded on January 25, 2024 after the WCP Defendants, acting through Mr. Huertas, unilaterally decided that the mediation was over. More than two months later on March 29, 2024, the WCP Defendants sent a settlement proposal (by email) that only involved the 423 Kennedy project. That proposal made no mention of any special purpose entity that had been created, or needed to be created, and the "new" proposal contained economic terms that were less favorable to 423 Kennedy than the last proposal that was made during the mediation. 423 Kennedy did not respond to the March 25, 2025 proposal because it concluded that the proposal was just another sign of the WCP Defendants' bad faith tactics. In any event, there was no legitimate settlement need for JPK NewCo to continue to exists because the March 29, 2024 proposal, by its plain terms, expired at "the close of business on Friday, April 12, 2024."

testimony demonstrates that JPK NewCo is the alter-ego of the existing Defendants in the Superior Court cases who did not want to continue to lose the litigation battles in that court.

3. <u>The Court Should Not Put its Stamp of Approval on this Obvious Attempt to Create Bankruptcy Court Jurisdiction In Order and to Improperly Forum Shop State Law Claims</u>.

It does not take a vivid imagination to see the opportunity for future forum shopping mischief that this Court will create if it allows the WCP Defendants to remove state court claims after creating a limited liability company that only existed on paper, and whose only purpose was to create removal jurisdiction to this Court. Put another way, if the Court does not remand these cases, this Court will put its stamp of approval on the deliberate forum shopping of state law claims by a lender to a bankruptcy court. In addition to unfairly allowing the WCP Defendants to change the Borrower's choice of forum in this case, a decision denying the Motion for Remand here will result in future consequences down the line. No future borrower-plaintiff will be able to successfully maintain litigation in DC Superior Court against a lender because a future lender-defendant could replicate what the WCP Defendants have done here, *i.e.,* create a new company with no business purpose, transfer assets to that company, create loans that the newly-created company has no ability to pay, then consent to that newly-created company being placed into involuntary bankruptcy by a friendly creditor. This type of jurisdictional gamesmanship is not what Congress envisioned when it created the bankruptcy court system that placed statutory guard rails on the Court's ability to handle what are purely state law claims.

## CONCLUSION

The Consolidated Cases should be remanded because removal was untimely. Alternatively, the Consolidated Cases should be remanded on the basis of either mandatory abstention or discretionary abstention.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  November 27, 2024

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of November, 2024, a true copy of the foregoing Plaintiffs' Supplemental Brief in Support of Their Motion for Remand was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James. D. Sadowski
James D. Sadowski

8161\0002\4916-0299-6481.v2