Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | |
| Charles Paxton Paret, | Case No. 23-217-ELG |
| Debtor. | Chapter 7 |
| | |
| Developer RE1 LLC, | |
| Plaintiff, | Adv. Case No. 24-10023-ELG |
| v. | (Cases Consolidated) |
| DP Capital LLC, *et al.* | |
| Defendants. | |
| | |
| 423 Kennedy St Holdings LLC, | |
| Plaintiff, | |
| v. | |
| DP Capital LLC, *et al.* | |
| Defendants. | |

**REPLY TO SUPPLEMENTAL BRIEF
<u>CONCERNING PLAINTIFFS' MOTION FOR REMAND</u>**

1

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants" and each a "Defendant") and JPK NewCo LLC, debtor-in-possession ("JPK"), by and through undersigned counsel, in reply to the Plaintiffs' Supplemental Brief in Support of Their Motion for Remand (the "Supplemental Brief," as found at DE #26, with the underlying motion being known as the "Motion to Remand," as found at DE #13) filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") and state as follows:

I.  **Introduction**

This Honorable Court requested supplemental briefing on the Motion to Remand after entering an order granting in part, and denying in part, a previously-pending motion to dismiss the matter of *Webster v. DP Capital LLC, et al.*, Case No. 23-10025 (the "Paret Adversary"). It thusly comes as some surprise that the Plaintiffs have expended only three paragraphs—of their 12-page Supplemental Brief—addressing this issue, with the rest of the filing harping on issues raised by the bankruptcy filing of JPK NewCo LLC ("JPK"). This is all the more surprising given that a pending motion to dismiss the JPK bankruptcy is not set for hearing until February 2025, with discovery still ongoing in that matter.

To be sure, there exist two independent—albeit related—reasons to deny the Motion to Remand: this litigation is core to the chapter 7 bankruptcy case of Charles Paxton Paret ("Mr. Paret") and this litigation is core to the chapter 11 bankruptcy case of JPK. Insofar as the fate of the JPK bankruptcy will not be known until February 2025, and the centrality of this adversary proceeding to that bankruptcy has already been well briefed, it is unclear why the Plaintiffs would

2

Document      Page 3 of 8

focus their Supplemental Brief thereupon—especially after being asked to direct the brief toward the implications of the Paret Adversary partially surviving a motion to dismiss.

The Defendants and JPK, however, elect to not follow suit and will instead focus briefly on the JPK bankruptcy while dedicating the weight of this brief to the implications of the Paret Adversary. Indeed, the Defendants and JPK have already briefed the implications of the JPK bankruptcy on this adversary proceeding, DE #20 at §§ I, II(a-b), III(a)(ii); III(b)(ii)-IV, and see the JPK-focused analysis as unchanged from the time of that initial briefing. For instant purposes, however, suffice it to posit that the JPK-centric allegations in the Supplemental Brief do not come as notably troubling. The Plaintiffs appear to be preoccupied with the ideas that (i) JPK is a holding company for troubled assets, formed on the advice of counsel; (ii) JPK's business activities are limited to those of a holding company that has also engaged in direct lending activity; (iii) JPK's debtor representative has a pre-existing relationship with a lender who extended financing to JPK; (iv) JPK shares an address with one of its equity holders; (v) JPK does not have day-to-day operational expenses since JPK is a holding company engaged in direct lending activity; and (vi) the debtor representative does know the identities of both members of JPK (both of which are legal entities, not natural persons) but, when quizzed, does not know all the members of one of those legal entities.

None of the foregoing contentions about JPK are surprising or, for that matter, controversial. It would be surprising if a troubled asset holding company was *not* formed with the input or advice of counsel. It would be strange if a troubled asset holding company employed a staff, rented independent office space, or did not have a relationship with its lender. And while a debtor representative should certainly know the identities of a debtor's equity holders in a small

business case (perhaps not in a larger case), there is no reason a debtor representative should—or would—know the identities of the derivative equity holders of those equity holders.

In short, it appears the Plaintiffs are outraged that a holding company, formed on the advice of counsel, is permitted to seek bankruptcy protection. Short of lobbying Congress to amend Section 109 of the Bankruptcy Code, however, these qualms appear to be misplaced. And, as noted above, JPK was not the requested topic of supplemental briefing and is a debtor whose bankruptcy case will remain subject to a motion to dismiss until at least February 2025.

All of which necessarily returns to the oddity of this brief being a response to the three scant paragraphs of the Supplemental Brief in which the Paret Adversary is actually discussed. The Plaintiffs correctly observe, therein, that if Mr. Huertas, WCP or DPCL (the "Webster Defendants") succeed in the subject litigation, Mr. Paret's estate will not have an interest in the outcome of the above-captioned litigation. And while the Webster Defendants certainly will not argue herein—or anywhere else—that they ought not succeed in the Paret Adversary, the Plaintiffs' arguments seem to very much miss the point: a venerable chapter 7 trustee, with more than 30 years of experience and an esteemed reputation, is pursuing claims that an estate he helms actually owns an interest in (i) the very promissory notes at issue in this litigation; (ii) the very properties at issue in this litigation; (iii) any profits (or losses) occasioned in connection with the outcome of this litigation; and (iv) one of the Plaintiffs. Those claims have now survived a motion to dismiss. And it would be accordingly antithetical to both established law and common sense for this litigation, so central to the trustee's causes of action, to be sent away from the court in which the trustee is pursuing his own claims and administering Mr. Paret's bankruptcy estate.

## II. Argument: Remand is Improper in Light of the Paret Adversary

The Plaintiffs' claims have been strange from the outset, as they essentially urge that consumer lending standards ought to apply to commercial loans and that trustees under commercial deeds of trust must serve as independent mediators and/or arbitrators of any grievances before coordinating the foreclosure of real property. Yet those contentions have now, somehow, grown even stranger, as the Plaintiffs appear to be advocating for the Webster Defendants in the Paret Adversary, taking the cliché of "strange bedfellows" to a new extreme. And, keeping with the word-of-the-moment theme, this places the Defendants and JPK in the strange position of agreeing with the Plaintiffs: The Webster Defendants probably should prevail in the Paret Adversary. But, unless and until such a victory is actually had (and the Paret Adversary is now subject to a scheduling order that puts a pretrial conference in October 2025), case law instructs the objects of the trustee's fixation are—and should continue—to be regarded as assets of Mr. Paret's estate.

In connection with a question concerning the timeliness of removal, and only in that narrow context, the Defendants have previously touched upon the doctrine of "arguable property." *See* Opposition to Plaintiffs' Motion to Remand, DE #20, at § III(a)(1). Under that doctrine, "arguable property" is defined as "an asset to which the debtor has only an arguable claim of right," *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir. 2005), and "[w]hen property is determined to be 'arguable property' of the estate, it should be presumed to be property of the estate." *William M. Condrey, P.C. v. Endeavour Highrise, L.P. (In re Endeavour Highrise L.P.)*, 425 B.R. 402, 414 (Bankr. S.D. Tex. 2010) (citing *In re Global Outreach, S.A.*, 2009 Bankr. LEXIS 1602, at * 21 (Bankr. D.N.J. June 8, 2009) (citing *In re Chesnut*, 422 F.3d at 303); *STFG, Inc. v. Int'l Bank of Commerce (In re S.T.F.G., Inc.)*, 2008 Bankr. LEXIS 1491, at *7 (Bankr. S.D. Tex. Apr. 14, 2008); *In re Levenstein*, 371 B.R. 45, 48 (Bankr. S.D.N.Y. 2007)).

This doctrine necessarily controls, as there is no question but that both Mr. Paret and his trustee have an *arguable* claim of right to the real estate assets and promissory notes at issue in this litigation, as well as an arguable claim of right to participate in any profit/loss occasioned by this litigation. They have made their argument in the form of a complaint; the portions of that complaint seeking a declaratory judgment as to the existence of a partnership—and seeking recourse for an alleged breach of that putative partnership—have survived a motion to dismiss. In short, almost everything at issue in this litigation is the "arguable property" of Mr. Paret's bankruptcy estate and is accordingly "presumed to be property of the estate." *In re Endeavour Highrise L.P.*, 425 B.R. at 414.

It also bears notate that enforcement of the "arguable property" doctrine necessarily extends to the definition of a bankruptcy court's jurisdiction, going so far as to stand for the proposition that a party's right to trial by jury can actually be waived if enforcing that right would hinder a bankruptcy court's ability to efficiently adjudicate disputes focused on "arguable property." *In re Endeavour Highrise L.P.*, 425 B.R. at 416-17 (citing *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1329 (2d. Cir. 1993)).

In short, this Honorable Court can—and should—retain the instant case. The "core" nature of the proceeding has been addressed in prior briefing and is unchanged, so there is no genuine question but that jurisdiction instantly exists. This leaves only a question as to whether remand ought to be discretionarily entertained. But, as also noted in prior briefing, discretionary remand is a rare and exceptional remedy, *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976), that case law implores only be exercised only fleetingly and in extraordinary circumstances, *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing

6

*Colorado River*, 424 U.S. at 817; *Neufeld v. City of Baltimore*, 964 F.2d. 347, 349 (4th Cir. 1992)); *Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).

There is nothing about the Paret Adversary that suggests circumstances so rare and extraordinary as to justify or warrant "[a]bdication of the obligation to decide cases," *Cty. Of Allegheny*, 360 U.S. at 188-189, when, to the contrary, case law is manifest that bankruptcy courts are to assume jurisdiction over "arguable property" unless and until a debtor or trustee's argument concerning such "arguable property" is defeated by final adjudication. The Plaintiffs are, in essence, asking that the disposition of "arguable property"—assets that, by legal definition, presumptively belong to Mr. Paret's estate—be permitted by the Superior Court. And such a contention is simply without any support in governing law.

Perhaps that absence of legal support is why the topical briefing of the Plaintiffs is a scant three paragraphs. Perhaps that absence of legal support is why the Plaintiffs veered off topic and harped so firmly on the JPK bankruptcy. And perhaps that absence of legal support is why the Plaintiffs have assumed the strange position of essentially advocating for the Webster Defendants in connection with the Paret Adversary. Regardless, however, that absence of legal support is dispositive of the Motion to Remand: this case properly belongs in this Honorable Court.

### III.  Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion to Remand; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted, |
| Dated: December 4, 2024 | By: | /s/ Maurice B. VerStandig  |
|  |  | Maurice B. VerStandig, Esq. |
|  |  | Bar No. MD18071 |
|  |  | The VerStandig Law Firm, LLC |
|  |  | 9812 Falls Road, #114-160 |
|  |  | Potomac, Maryland 20854 |
|  |  | Phone: (301) 444-4600 |
|  |  | mac@mbvesq.com |
|  |  | *Counsel for the Defendants* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of December, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig