GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC*
*and 423 Kennedy St Holdings LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET,<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

# PLAINTIFFS' OPPOSITION TO DEFENDANT RUSSELL DRAZIN'S MOTION FOR SUMMARY JUDGMENT

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Borrowers"), hereby file their opposition to the Motion for Summary Judgment on Claims Against Russell Drazin ("Motion") [ECF No. 7]. For convenience, the Borrowers will refer to Mr. Drazin as the "Trustee".

The Court should deny the Motion because: (a) two Superior Court judges have already determined that the Borrowers have sufficiently pled claims against the Trustee and those prior decisions constitute the law of the case; (b) the Trustee failed to address the causes of action that were asserted against him for declaratory judgment; (c) the sole affidavit filed by the Trustee in support of the Motion is facially deficient and relies upon inadmissible hearsay; (d) multiple material disputes of fact exist; and (e) the Motion is premature, as the Borrowers have not had the benefit of full discovery. The Borrowers have included a Declaration of Mel Negussie ("Negussie Decl.") in further support of this Opposition.

## I.   BRIEF PROCEDURAL AND FACTUAL BACKGROUND

### A.   The Consolidated Action

This action involves two consolidated cases, Case No.: 2022-CAB-005935 and Case No.: 2023-CAB-004260, (collectively, the "Consolidated Action") that deal with common issues of fact, similar loan documents, similar events and transactions underlying the disputes in each case, and nearly all of the same Defendants.[1] The Borrowers, respectively, entered into construction finance loans that were later financed. Negussie Decl. ¶¶ 6-7. WCP Fund is the

---

[1] Borrowers note that SF NU, LLC remains a defendant only in Case No.: 2022-CAB-005935. Defendants, DP Capital, LLC d/b/a Washington Capital Partners ("DP Capital"), the WCP Fund I, LLC ("WCP Fund"), Danuel Huertas ("Mr. Huertas"), and the Trustee are defendants in both cases in the Consolidated Action and are hereinafter referred to collectively as "Defendants."

2

lender under the relevant loan documents. *Id.* In the Consolidated Action, the Borrowers maintain that the Defendants, including the Trustee, have committed wrongdoing under the loan documents in their joint effort to sabotage a refinancing of the loans. As for the Trustee, the Borrowers have asserted three separate causes of action against the Trustee for:

1) Injunctive Relief – to prevent the Trustee (and the Defendants) from foreclosing under the deeds of trust;

2) Breach of Fiduciary Duty – based on the Trustee's admitted conflict of interest and his failure (and inability) to faithfully execute his duties to the Borrowers under the deeds of trust given his admitted conflict of interest; and

3) Declaratory Judgment – that the Trustee cannot serve as trustee under the deeds of trust and that the foreclosure notices issued by the Trustee in June of 2023 are invalid.

The Defendants removed the Consolidated Action to this Court from the Superior Court of the District of Columbia on July 4, 2024.[2]

The Borrowers seek to prevent the Trustee from foreclosing on the properties they own until all of their claims have been decided and to prevent the Defendants from wrongfully executing on the powers of sale included in the loan documents. The Borrowers also seek to hold the Trustee liable for the damages caused by his breach of fiduciary duties. The Trustee makes two limited arguments in support of the Motion: (a) that the Borrowers have suffered no damages because the foreclosures were enjoined; and (b) that a Trustee can rarely be sued for breach of fiduciary duties because a Trustee primarily performs ministerial acts. As explained below, each of these arguments lack merit, both factually and legally.

---

[2] The Borrowers continue to contend that the Consolidated Action case was improperly removed, with removal in large part based upon a bad faith, manufactured bankruptcy case filed by JPK NewCo, LLC (24-00262-ELG), and that this case should be remanded to the Superior Court. The Motion itself demonstrates that a primary reason, if not *the* primary reason, the Defendants removed this case was to try to have this Court revisit and reverse prior adverse decisions that had been made against them.

II.     THE MOTION FOR SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, "[t]he moving party has the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law." *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). In opposing a motion for summary judgment, the non-moving party "is entitled to the benefit of all favorable inferences that can be drawn from the evidence." *Id*. The court "may not make credibility determinations or weigh the evidence." *United States ex rel. El-Amin v. George Wash. Univ.*, 522 F. Supp. 2d 135, 139 (D.D.C. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Rule 56 of the Federal Rules of Civil Procedure provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56.

III.    LEGAL ARGUMENT

A.      The Law of the Case Doctrine Bars the Trustee from Trying to Relitigate Issues That Have Already Been Decided by the Superior Court.

The law of the case doctrine generally discourages litigants from attempting to relitigate issues already determined in the same case. *See Minick v. United States*, 506 A.2d 1115, 1117 (D.C. 1986) (applying the doctrine after explaining that "[t]he doctrine of law of the case conserves judicial time and resources by discouraging 'multiple attempts to prevail on a single question.'"). The doctrine of law of the case generally means that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (1996) (emphasis in original). In the Motion, the Trustee asks this

4

Court, without so stating, to disregard and effectively overturn multiple prior decisions of the Superior Court. The Trustee, however, has failed to allege error in those decisions or any exceptional circumstances that would allow this Court to either reexamine or reverse those prior decisions. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (The 9th Circuit explained the District Court may revisit "decisions entered by another judge in the same case if there are cogent reasons or exceptional circumstances.").

The fact that Defendants removed this case does not alter the applicability of the law of the case doctrine. It is well-established that federal courts may apply the doctrine of law of the case to follow state court decisions entered prior to removal. *See, e.g., Bowrin v. District of Columbia*, 2023 U.S. Dist. LEXIS 229958, at *19 (D.D.C. Decl. 28, 2023) (recognizing that courts have invoked the doctrine of law of the case to follow decisions by state courts prior to removal and choosing to do the same after observing that "[w]hile this Court's independent review may have produced a different outcome . . . the Superior Court's conclusion is reasonable."); *Pac. Emplrs. Ins. Co. v. Sav-A-Lot*, 291 F.3d 392, 398 (6th Cir. 2002) (explaining that "[t]he doctrine [of law of the case] also has relevance to rulings made by state courts prior to removal."); *Piekarski v. Home Owners Sav. Bank, F.S.B.*, 759 F. Supp. 542, 544 (D. Minn. 1991) (observing that "[u]pon removal, the federal court must treat all state court rulings as if they had occurred in federal court.").

      B.    <u>The Prior Decisions that the Trustee Impermissibly Seeks to Relitigate.</u>

Three specific Orders are most relevant to the law of the case doctrine. First, the Superior Court already found that the claim for injunctive relief against Mr. Drazin was adequately pled by the Borrowers. Second, with regard to 423 Kennedy, the Superior Court already determined that the Trustee has a conflict of interest and that, consistent with DC law, the Trustee now has burden to show that he acted faithfully in carrying out his fiduciary duties to

5

the Borrowers and the transaction. This is a burden that the Trustee has not met in the Motion. Third, as with 423 Kennedy, with regard to Developer RE1, the Superior Court granted similar relief in enjoining the Defendants in that case, including the Trustee, from proceeding with a foreclosure.

        1.      The April 7, 2023 Order

On January 26, 2023, the Trustee (with his co-defendants) sought dismissal of Case No. 2022-CAB-005935, including the cause of action for injunctive relief, by filing a Motion to Dismiss. With their Motion to Dismiss, Defendants argued that injunctive relief was not a viable cause of action. On April 7, 2023, the Honorable Ebony M. Scott issued an Order *denying* the Motion to Dismiss (the "April 7, 2023 Order"). A copy of the April 7, 2023 Order, as it is defined below, is attached hereto and incorporated herein as Exhibit 1. Developer RE1 subsequently filed a Second Amended Complaint in Case No. 2022-CAB-005935 that primarily added claims against Mr. Drazin, to which the Trustee filed an Answer on April 2, 2024, apparently recognizing that Judge Scott was likely not going to grant a new motion to dismiss.[3] Perhaps realizing the futility of his prior assertions, the Trustee now relegates the s*ame argument* on injunctive relief to a footnote. Motion at 7, n. 4. The Motion should be denied as the April 7, 2023 Order constitutes the law of the case, the causes of action for injunctive relief have been sufficiently pled, and the Trustee has failed to set forth any basis for reversing this prior decision.

---

[3] The Borrowers note that the Trustee also responded to the Complaint (in Case No. 2023-CAB-004260) with an Answer filed on September 3, 2023.

6

2.  The July 24, 2023 Order

On July 24, 2023, the Honorable Milton C. Lee, Jr. issued a comprehensive, twenty-wo page Order in Case No.: 2023-CAB-004260 granting 423 Kennedy's Motion for Temporary Restraining Order (the "First TRO Order"). A copy of the First TRO Order is attached as Exhibit 2. In the First TRO Order, Judge Lee concluded that 423 Kennedy "carried their burden by establishing a likelihood of success on the merits." *See* TRO Order at p. 17. Judge Lee also determined that the Trustee had a fiduciary duty to act faithfully to the Borrowers and that when the Trustee acted as counsel to WCP, this created a conflict. *See* First TRO Order at pp. 16-17. Judge Lee concluded that "[w]hen there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee." *Id* at p. 17. As a result of Judge Lee's determination, the Trustee bears the burden of demonstrating he faithfully executed his fiduciary duties to the Borrowers, something he has not done in the Motion -- and likely cannot due given his ongoing conflict of interest and the disputed facts here.

3.  The August 15, 2023 Order

On August 15, 2023, Judge Scott entered a Hearing Order by which she, among other things, memorialized her oral decision (from a July 25, 2023 TRO hearing) that granted Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure sale (the "Second TRO Order"). A copy of the Second TRO Order is attached as Exhibit 3. In the Second TRO Order, Judge Scott came to nearly the same conclusions as Judge Lee, and she observed that "[t]he record demonstrates that the *Defendants* 'torpedoed' the Plaintiff's efforts to perform under the deed of trust." *See* Second TRO Order at p. 4 (italic emphasis added). Pursuant to the Second TRO Order, Judge Scott ordered that the Defendants, including the Trustee, "must immediately stop taking any action to foreclose on the Property [owned by Developer RE1] pending further order of this Court." *Id*. at p. 5.

These three prior decisions, which were made after either extensive briefing, oral arguments, two evidentiary hearings, or some combination of those things, should not be revisited under the law of the case doctrine, in particular because the Trustee has not set forth any legal basis for disturbing those prior decisions. *See e.g., Gabriel v. Weltmer*, 266 F. Supp. 664, 665 (D. Ariz. 1967) (applying the doctrine of law of the case and rejecting defendant's attempt to use "the process of removal to have [the federal court] sit in review of the [state court].").

    C.    <u>The Trustee's Assertions in the Motion Further Demonstrate Why His Removal is Appropriate</u>.

The Trustee relies heavily upon *Perry v. Virginia Mortg. & Inv. Co.*, 412 A.2d 1194 (D.C. 1980) in support of his Motion. Motion at 10 (citing *Perry)*. In *Perry*, an individual sought to set aside a foreclosure sale *after* it had occurred. *Perry,* 412 A.2d at 1196. The *Perry* Court observed that the individual did not allege "fraud, misrepresentation, self-dealing, or other overreaching by the trustees (or of related benefit to the noteholder)." *Id*. at 1199. Unlike the facts here, the individual in *Perry* did not allege she was not in default at the time of the foreclosure sale, or that the lender had ginned up defaults after the fact as a pretext. The Borrowers here expressly allege that the Trustee acted as counsel to the Defendants to manufacture defaults after-the-fact as a pretext to support each of the Notices of Default. *See generally* Developer RE1's Second Am. Compl. at ¶¶ 81-86 and 423 Kennedy's Compl. at ¶¶ 88-93. The Borrowers further allege that the Trustee was dominated by the lender and acted at all times as counsel to the lender rather than as trustee under the loan documents in breach of his fiduciary duties to them. *See, e.g.,* Developer RE1's Second Am. Compl. at ¶¶ 151-53; *see also Sheridan v. Perpetual Bldg. Asso.*, 322 F.2d 418, 422 (D.C. Cir. 1963) (trustees found liable where they showed "callous indifference to" the borrower's rights and "continual consultation

8

with, if not dominance by" the lender). Specifically, the Borrowers' position here is that the Trustee sought to proceed with foreclosures knowing that he had an irreconcilable conflict of interest and that most of the pretextual defaults that he initially asserted (as counsel for the Lender) had either been cured of were of a de minimis nature. Two different DC Superior Court judges have already determined that the Trustee's actions here constitute legally actionable misconduct, and that the Borrowers here are likely to prevail on their claims. One Superior Court judge also found that the Trustee has the burden to demonstrate that he faithfully upheld his duties to act in fairness to the Borrowers and the transactions, not just to the demands of the Lender. Moreover, contrary to the Trustee's position in the Motion, the Borrowers have alleged that the Trustee has a financial incentive to inflate the amounts that are claimed to be due. *See* Developer RE1's Second Am. Compl. at ¶ 80 and 423 Kennedy's Compl. at ¶ 96.[4]

It is well-established that "[w]hen it is shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden of proving that he has been faithful to his trust." *Sheridan v. Perpetual Bldg. Asso.,* 299 F.2d 463, 465 (1962). The Motion does not meet that burden, and sidesteps the fact that to prevail here, the Trustee has the affirmative burden to prove that he faithfully upheld his duties to act in fairness to the Borrowers and the transactions. A Motion supported by an Affidavit that does not address those factual issues at all, and that is not based upon the personal knowledge of the Trustee does not cut it. *See* Part C, *infra.*

D.  The Motion Fails to Address the Declaratory Judgment Counts.

In the Motion, the Trustee requests dismissal of *all* counts against him, but he did not address at all the declaratory judgment claims. The Trustee's assertions in the Motion actually further illuminate why declaratory relief is appropriate. The Trustee asserts that as a result of the

---

[4] Both operative Complaints are in the record from the Superior Court filed at ECF 1-2.

Case 24-10023-ELG    Doc 30    Filed 01/17/25    Entered 01/17/25 17:57:22    Desc Main
Document      Page 10 of 16

claims against him, he has been "sideline[d]…from serving as litigation co-counsel" in the instant action. Motion at 3. The Trustee also takes issue with what he refers to as the Borrowers' contention that the Trustee had a duty "to act as some variety of an arbiter or third-party neutral." Motion at 7. The Trustee also suggests, without any proof, that there is some nefarious reason for why he was sued. *Id.*

The Trustee's assertions further demonstrate that he has always been acting as attorney to WCP and the WCP Fund rather than as Trustee under the deeds of trust. The factual finding that the Trustee had a conflict of interest has already been made, and the Defendants did not contest that fact at either of the TRO hearings. While the Trustee argues that he does not need to function as a neutral in dealing with the Borrowers, it is well-established that a trustee has a duty to act in an impartial manner with regard to *both* the borrower and the lender. *See Nat'l Life Ins. Co. v. Silverman*, 147 U.S. App. D.C. 56, 454 F.2d 899, 915 (1971) ("Trustees under deeds of trust also have the duty to act for the benefit of both parties, borrower as well as lender, and to be impartial."). That the Trustee would suggest that, but for this lawsuit, he would be acting as litigation counsel, further illuminates his ongoing conflict interest exists that requires his removal as trustee.

E. <u>The Motion is Not Supported by Admissible Evidence.</u>

Under the law, the burden of proof here is on the Trustee. Therefore, he is required, at a minimum, to set forth admissible evidence to prove that he faithfully carried out his duties to the Borrowers and the transactions, and that there are no material facts in dispute as to that issue. Despite this burden, the Trustee has failed to submit a single piece of admissible evidence regarding the actions he allegedly took in relation to upholding his fiduciary duties, as required. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The factual support

for the Motion is entirely based upon the Affidavit of Daniel Huertas, which is not based upon personal knowledge, but inadmissible hearsay and the arguments of counsel, which are not evidence. *Barnette v. Ridge*, 2004 U.S. Dist. LEXIS 27546, at *18 n.6 (D.D.C. Nov. 15, 2004) (noting that the "mere arguments of counsel" to the contrary are not evidence). An affidavit in support of a motion seeking summary judgment must be made on personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Mr. Huertas' Affidavit is not made on personal knowledge. Instead, Mr. Huertas asserts that he is "familiar with" the efforts taken with respect to the foreclosure sales – information that he could not have personal knowledge about unless he was sitting next to Mr. Drazin when each of the described actions were taken. Mr. Huertas's Affidavit is entirely based upon inadmissible hearsay – either what Mr. Drazin told Mr. Huertas or what Mr. Drazin sent to Mr. Huertas -- so that affidavit cannot be relied upon in support of a summary judgment decision. *See, e.g., Richardson v. District of Columbia*, 522 A.2d 1295, 1298 (D.C. 1987) (reversing the trial court's granting of summary judgment after concluding that the affidavit submitted with the motion for summary judgment was not based on personal knowledge, contained "patent hearsay," and was inadequate to support the motion). More importantly, nowhere in his Affidavit does Mr. Huertas mention, much less prove, that Mr. Drazin "at all times" faithfully complied with his fiduciary duties to the Borrower and the transactions. This defect is fatal to the Trustee's request for summary judgment at this stage.

F.   There Are Material Facts in Dispute.

Regarding the purportedly undisputed facts set forth by the Trustee, the Borrowers respond as follows:

11

As for No. 6 of the facts the Trustee claims are not in dispute, this fact is in dispute. The Borrowers dispute that they were "habitually" late in making payments on their respective promissory notes and that both Borrowers allowed "senior liens" to accrue. By December 8, 2022, Developer RE1 and 423 Kennedy had made all payments due under the loan documents referenced herein. Negussie Decl. ¶ 9. Developer RE1 also presented evidence at the TRO Hearing showing that the lender's own records did not list the loans in default status when the Notices of Default were sent. *See* Exhibit 4 (Exhibit S from the Developer RE1 TRO Hearing showing that both loans for Developer RE1 were listed as "current"). Finally, at his deposition on July 19, 2023, Mr. Huertas was confronted with the lender's loan records for Developer RE1 and was unable to identify what loans were current and what loans were not current. *See* Exhibit 5 (excerpts from the deposition transcript where Mr. Huertas evaded multiple questions, could not identify any specific reasons how Developer RE1 was in default, and confirming that the lender's records did not list a "default" status until February 1, 2023).

The Trustee contends the Borrowers have not been damaged as a result of his actions solely because the foreclosures have not yet occurred.[5] Under the Trustee's incorrect damages theory, the Borrowers would be forced to wait until the Trustee goes through with a foreclosure before asserting causes of action against him. There is no factual or legal basis for this contention. The Borrowers *have* already suffered damages as a result of the Trustee's misconduct that includes damages caused by their inability to refinance the loans, rising interest rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the projects. Negussie Decl. ¶ 13. There will also be damages for the increased costs to complete the projects as a result of supply chain shortages and inflation. *Id.* To top it off, due to nearly all

---

[5] Defendants previously raised this same argument which was rejected with entry of the April 7, 2023 Order in the Superior Court.

of those factors and a now depressed sales market, there is very little chance that either project will result in a profit. *Id.* at ¶ 14. As to 423 Kennedy, there are also likely damages to the building because it has been vacant and open to environmental elements. *Id.* Both Borrowers have also incurred carrying costs, such as property taxes, insurance, and payments to vendors. Both Borrowers have also suffered reputational damages. *Id.*

To protect their rights under the loan documents, the Borrowers were forced to take legal action. Negussie Decl. ¶ 12. As a result, the Borrowers have incurred and continue to incur attorneys' fees and costs. Negussie Decl. ¶ 13. The Borrowers dispute that the Trustee has acted faithfully to his duties as Trustee since December of 2022. The Borrowers believe the Trustee has acted as counsel for WCP at all times since December of 2022 rather than as a conflict-free Trustee under the loan documents. Negussie Decl. ¶ 15.

As for the Trustee's claims that he is somehow being unfairly targeted here, the Trustee could have easily avoided being implicated in nearly all of the Borrower's claims had he taken the simple step of resigning as Trustee when the conflict first arose. Instead, the Trustee "doubled down" and went forward with preparing foreclosure notices and scheduling foreclosure sales after he knew that he had been sued and was already in serious legal jeopardy.

G.  The Borrowers Are Entitled to Additional Discovery to Oppose the Motion

Under Fed. R. Civ. P. 56(d), if the Borrowers show by affidavit or declaration that they cannot present essential facts to justify their opposition, "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). There are a variety of facts, documents, and information that the Borrowers are entitled to discover that would further support the Borrower's opposition to the Motion, such as:

13

- When the Trustee realized that he had a conflict of interest and whether he conducted any research on that issue;

- Complete records and communications related to the Notices of Foreclosure Sale of Real Property or Condominium Unit that the Trustee recorded (for example, did the Trustee vet those documents with the other Defendants);

- What the Trustee claims to have done (and not done) in order to faithfully execute his fiduciary duties to the Borrowers and the transaction;

- Records and information showing all payments the Trustee received from any of the Defendants (in his capacity as Trustee);

- All records and communications related to the Default Notices and how the Trustee contends he can comply with his fiduciary duties when he is bound to follow (as counsel) the instructions of his clients;

- Records of all commissions or other payments the Trustee received related to the deeds of trust including, but not limited to, the advertisement in the Washington Post;

- An explanation regarding how the Trustee could possibly faithfully execute his duties to the Borrowers and the transaction once he realized that a conflict of interest arose;

- Whether the Trustee was in continual consultation with the lender and was dominated by the lender;

- The length of the Trustee's relationship(s) with the Defendants and what disclosures, if any, the Trustee asserts were made to the Borrowers regarding such relationship(s).

Negussie Decl. ¶ 16.

As of the date this case was removed, the Trustee (and other Defendants) had failed to comply with discovery by, among other things:  refusing to answer multiple interrogatories; refusing to allow his deposition to be taken (as Trustee); refusing to produce legal invoices; redacting legal invoices that were produced without explanation; and failing to produce any form of a privilege log.  The evidence gathered thus far demonstrates that the Trustee always acted as

14

attorney to the lenders rather than as trustee under the loan documents, resulting in damages to the Borrowers.

At this stage, and because there is already no doubt that there are multiple material facts in dispute, the Court should give the Borrowers the opportunity to conduct further discovery. *See Travelers Indem. Co. v. United Food & Commer. Workers Int'l Union,* 770 A.2d 978 (D.C. 2001) (noting that Rule 56 (f) allows the Count to deny a motion for summary judgment to permit discovery "if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion."); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (a motion for summary judgment should be denied "when the non-moving party has not had the opportunity to discover information that is essential to his opposition."). The Borrowers are entitled to complete discovery regarding many issues, such as the Trustee's conflicting roles here, what actions, if any, the Trustee took to comply with his fiduciary duties to the Borrowers and the transactions, his financial interests in the transactions, and why he did not resign as trustee given the conflict of interest. This information would likely provide further reasons for why the Motion should be denied.

IV.    CONCLUSION

There are multiple reasons why the Court must deny the Motion. For these reasons, and for any reasons that may be advanced at a hearing on the Motion, the Plaintiffs, Developer RE1, LLC and 423 Kennedy, LLC, respectfully request that this Honorable Court deny the Motion.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: January 17, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ebm@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of January, 2025, a true copy of the foregoing Plaintiffs' Opposition to Defendant Russell Drazin's Motion for Summary Judgment was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

16