## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

*Table of Contents*

I.      Introduction ................................................................................................................. 1

II.     Standard: Motion to Dismiss .................................................................................... 3

III.    Standard: Motion for Summary Judgment ................................................................ 4

IV.     Material Facts Not in Dispute ................................................................................... 5

        a.   Loan Issuance and Funding ............................................................................. 5

        b.   RE1 Defaults .................................................................................................... 6

        c.   423 Kennedy Defaults ..................................................................................... 8

V.      Plaintiffs' Allegations ............................................................................................. 10

VI.     Argument: Count VII of the Complaint—Seeking to Set Aside a Putative
        Fraudulent Transfer—Should be Dismissed ......................................................... 11

        a.   There is No Contention WCP or SNL are Insolvent ...................................... 11

        b.   There is No Cogent Theory of Hinderance, Delay or Fraud ............................. 13

VII.    Argument: The Complaint Should be Dismissed as Against SNL ................................. 15

        a.   Count II – Breach of the Duty of Good Faith and Fair Dealing .......................... 15

        b.   Count III – Declaratory Relief (Breaches) / Count IV – Injunctive
             Relief / Count VI – Declaratory Relief (Mr. Drazin's Services) ........................ 17

        c.   Count VII – Fraudulent Conveyance ................................................................. 18

VIII.   Argument: Summary Judgment is Proper ...................................................................... 18

        a.   The Defendants' Repetitive and Habitual Defaults Bar Relief for
             Tortious Interference (Count I), Breach of the Duty of Good Faith
             and Fair Dealing (Count II), Declaratory Judgment (Count III) and
             Permanent Injunctive Relief (Count IV) ........................................................... 18

             i.    Tortious Interference (Count I) ............................................................... 20

             ii.   Breach of the Implied Covenant of Good Faith and Fair
                   Dealing (Count II) ................................................................................ 21

        b.   Permanent Injunctive Relief (Count IV) is Not a Cause of Action ...................... 23

c.  Summary Judgment is Properly Entered on the Claim for Declaratory Relief ................................................................................ 23

d.  Mr. Drazin Incorporates his Prior Summary Judgment Motion, which is Presently Under Advisement ................................................ 25

IX.  Conclusion .................................................................................... 25

*Table of Authorities*

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................. 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 3

*Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co.*,
2021 WL 1921016 (S.D. Cal. 2021) ......................................................... 5

*Base One Techs., Inc. v. Ali*,
78 F. Supp. 3d 186 (D.D.C. 2015) ........................................................... 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 3

*Branin v. TMC Enterprises, LLC*,
832 F. Supp. 2d 646 (W.D. Va. 2011) ...................................................... 4

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) ................................................................. 3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................. 5

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
436 F. Supp. 3d 354 (D. D.C. 2020) ......................................................... 3

*Close It! Title Servs. v. Nadel*,
248 A.3d 132 (D.C. 2021) ........................................................................ 20

*Coe v. Holder*,
2013 U.S. Dist. LEXIS 85337 (D.D.C. June 18, 2013) ............................ 23

*Conley v. Gibson*,
355 U.S. 41 (1957) ................................................................................... 3

*Diamond v. Atwood*,
43 F.3d 1538 (D.C. Cir. 1995) ................................................................. 5

*Finard & Co. v. Capitol 801 Corp.*,
1992 U.S. App. LEXIS 23402 (D.C. Cir. Sep. 23, 1992) ........................ 19

*Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*,
2010 WL 2732334 (D. Md. 2010) ............................................................ 4

iv

*Flast v. Cohen*,
392 U.S. 83 (1968)..................................................................................................... 24

*Folksamerica Reinsurance Co. v. Republic Ins. Co.*,
2004 WL 1043086 (S.D. N.Y. 2004).......................................................................... 5

*Genesis Capital, LLC v. Lauravin Luxury Apartments Homes, LLC*,
2023 U.S. Dist. LEXIS 84754 (D.D.C. May 15, 2023)............................................. 23

*Gordon v. Washington*,
295 U.S. 30 (1935)..................................................................................................... 23

*Guttenberg v. Emery*,
41 F. Supp. 3d 61 (D.D.C. 2014)............................................................................... 23

*Hais v. Smith*,
547 A.2d 986 (D.C. 1988) ................................................................................... 15, 22

*Holcomb v. Powell*,
433 F.3d 889 (D.C. Cir. 2006).................................................................................... 5

*HRH Servs., LLC v. Travelers Indem. Co.*,
2024 U.S. Dist. LEXIS 234196 (D.D.C. Dec. 30, 2024).......................................... 17

*Kemp v. Eiland*,
139 F. Supp. 3d 329 (D.D.C. 2015)........................................................................... 23

*Kiviti v. Bhatt*,
80 F.4th 520 (4th Cir. 2023) ...................................................................................... 24

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994)..................................................................................... 3

*Landow v. Georgetown-Inland W. Corp.*,
454 A.2d 310 (D.C. 1982) ......................................................................................... 18

*Martin v. Santorini Capital, LLC*,
236 A.3d 386 (D.C. 2020) ......................................................................................... 17

*Mayorga v. Merdon*,
928 F.3d 84 (D.C. Cir. 2019)....................................................................................... 5

*Mero v. City Segway Tours of Wash. DC, LLC*,
826 F. Supp. 2d 100 (D.D.C. 2011) ..................................................................... 15, 16

*Nugent v. Unum Life Ins. Co. of Am.*,
    752 F. Supp. 2d 46 (D.D.C. 2010) ........................................................ 15

*Paul v. Howard Univ.*,
    754 A.2d 297 (D.C. 2000) ................................................................... 22

*Pueschel v. Nat'l Air Traffic Controllers' Ass'n*,
    606 F. Supp. 2d 82 (D.D.C. 2009) ...................................................... 24

*Robinson v. Am. Honda Motor Co.*,
    551 F.3d 218 (4th Cir. 2009) ................................................................. 4

*Schuler v. PricewaterhouseCoopers, LLP*,
    595 F.3d 370 (D.C. Cir. 2010) ............................................................ 24

*SJ Enters., LLC v. Quander*,
    207 A.3d 1179 (D.C. 2019) ................................................................. 18

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) .............................................................................. 24

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) ................................................................. 5

*Tinsley v. OneWest Bank, FSB*,
    4 F. Supp. 3d 805 (S.D. W. Va. 2014) ................................................... 4

*United States v. Robinson*,
    494 B.R. 715 (W.D. Tenn. 2013) ......................................................... 14

*Whitt v. Am. Prop. Constr., P.C.*,
    157 A.3d 196 (D.C. 2017) ................................................................... 20

*Wyoming Outdoor Council v. Dombeck*,
    148 F.Supp.2d 1 (D.D.C. 2001) ............................................................ 5

**Statutes**

11 U.S.C. § 548 .................................................................................... 11

D.C. Code § 28-3104 ...................................................................... 11, 12

D.C. Code § 28-3105 ...................................................................... 11, 12

D.C. Code § 29-3101 ............................................................................ 11

D.C. Code § 29-801.04 ........................................................................ 17

Fraudulent Conveyances Act of 1571, 13 Eliz. 1. c. 5.................................................................. 14

**Rules**

Federal Rule of Bankruptcy Procedure 7012.................................................................................. 1

Federal Rule of Bankruptcy Procedure 7056.................................................................................. 1

Federal Rule of Civil Procedure 8 ................................................................................................. 3

Federal Rule of Civil Procedure 12 ............................................................................................... 1

Federal Rule of Civil Procedure 56 ............................................................................................... 1

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), SF NU, LLC ("SNL"), and JPK NewCo LLC ("JPK") (collectively, the "Defendants," and each a "Defendant"),[1] by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012, Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Civil Procedure 12, and Federal Rule of Civil Procedure 56, and move to dismiss this action or, in the alternative, for summary judgment in favor of the Defendants and against Developer RE1 LLC ("RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs," and each a "Plaintiff"), and in support thereof state as follows:

## I.      Introduction

Time and again, the Plaintiffs defaulted under the terms of promissory notes and deeds of trust. The Plaintiffs were repetitively late making interest payments—sometimes by more than a month. One of the Plaintiffs outright failed to make various interest payments at all. Both Plaintiffs allowed senior liens to accrue on their lenders' collateral, in contravention of governing loan documents. And when loans were accordingly declared to be in default, and collateral scheduled for foreclosure, the Plaintiffs brought suit, insisting they ought not be held to the terms of the very loan documents they signed.

To be sure, the Plaintiffs' case is actually far more pernicious than summarized above. These two borrowers, seemingly intent on scorching earth, did not merely sue their lenders—they sued their lenders' principal, their lenders' attorney, and just about anyone with an even vaguely cognizable nexus to their lenders. In fact, it appears the Plaintiffs are now even suing an individual

---

[1] One additional defendant—Shaheen Sariri ("Mr. Sariri")—has been added to this action, though not added to the caption of the case. Undersigned counsel does not presently represent Mr. Sariri, though it is possible such an engagement may (or may not) ensue. This filing is not made on behalf of Mr. Sariri. The references herein to undersigned counsel representing "The Defendants" are not intended to suggest entry of an appearance on behalf of Mr. Sariri.

whose sole putative act of tortious wrongdoing was having the temerity to lend funds to a company that holds two of the at-issue promissory notes and deeds of trust.

It necessarily follows that the Plaintiffs' case ought to proceed no further. For too long, DRL and 423 Kennedy have both failed to repay the funds they borrowed and simultaneously obstructed efforts to sell the collateral they posted for those loans. For too long, DRL and 423 Kennedy have propagated legally meritless theories that commercial lenders ought to be held to the same standards as their consumer counterparts. And for too long, DRL and 423 Kennedy have treated their contractual obligations with equal parts nonchalance and disregard.

The core issue in this case is neither novel nor complex. The Plaintiffs are both commercial borrowers who repetitively and habitually failed to make interest payments on time. They allowed senior liens to accrue on collateral. And then, when they discovered the loans were being treated as defaulted, and foreclosures were being scheduled, they went on the offensive. DRL and 423 Kennedy insist such default declarations and foreclosures are improper because there is a lack of purity in the motivation underlying the lenders' post-default actions. Yet, in so doing, DRL and 423 Kennedy both overlook that the law does not regard motivation as having any material relevance. The law simply regards whether or not breaches occurred, and on this record there is no question but that breaches occurred—time and again and again and again.

With promissory notes and deeds of trust having been breached, the correlative lenders became entitled to charge the default interest rates thereunder and to proceed with foreclosures of the relevant collateral. That they may have initially declined to do so, forbearing out of generosity, is immaterial; the lenders' rights became cemented when the breaches occurred. That is not a controversial proposition. Yet that, somehow, is the very notion the Plaintiffs are endeavoring to challenge in this suit. And given that the challenge is one devoid of legal merit, it is thusly proper

to dismiss those causes of action not previously subjected to such a motion and to enter summary judgment on the remaining claims.

## II.    Standard: Motion to Dismiss

As recently observed by the United States District Court for the District of Columbia, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D. D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

Further, while assessment of a motion to dismiss is generally confined to the four corners of an underlying pleading, "the court may consider documents extrinsic to the complaint if they are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009); *Branin v. TMC Enterprises, LLC*, 832 F. Supp. 2d 646, 649 (W.D. Va. 2011); *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 2010 WL 2732334, at *2 n. 2 (D. Md. 2010)).

## III.    Standard: Motion for Summary Judgment

The standard for a motion seeking summary judgment is familiarly set forth in the Federal Rules of Civil Procedure:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

As noted by the United States District Court for the District of Columbia, of the rule governing summary judgment:

> Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. To determine what facts are "material," a court must look to the substantive law on which each claim rests. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.
> In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. All evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party. However, a nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial." By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.

*Wyoming Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 7 (D.D.C. 2001) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); quoting *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 325).

As observed by the United States Court of Appeals for the District of Columbia Circuit, "[a] fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). *See also Folksamerica Reinsurance Co. v. Republic Ins. Co.*, 2004 WL 1043086, at *2 (S.D. N.Y. 2004) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment."); *Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co*., 2021 WL 1921016, at *3 (S.D. Cal. 2021) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.") (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

## IV.    Material Facts Not in Dispute

### a.  Loan Issuance and Funding

1.      On December 23, 2021, WCP loaned $4,103,000.00 to DRL, with the loan being evidenced by promissory notes for $3,579,000.00 (the "First DRL Note") and $524,000.00 (the "Second DRL Note"), respectively. *See* DRL Promissory Notes, attached hereto as Exhibits A and B.

2.      The DRL Promissory Notes are each secured by a deed of trust (collectively, the "DRL Deeds of Trust") on the real property commonly known as 5501 First Street, NW, Washington, DC 20011 (the "DRL Property"). *See* DRL Deeds of Trust, attached hereto as Exhibits C and D.

3.      Four months later, on March 31, 2022, WCP loaned $9,945,693.00 to 423 Kennedy, with the loan being evidenced by promissory notes for $8,689,693.00 (the "First 423 Kennedy Note") and $1,256,000.00 (the "Second 423 Kennedy Note"). *See* 423 Kennedy Notes, attached hereto as Exhibits E and F.

4.      The 423 Kennedy Notes are each secured by a deed of trust (collectively, the "423 Kennedy Deeds of Trust") on the real property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property"). *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H.

**b.  RE1 Defaults**

5.      Pursuant to the Second DRL Note, DRL was required to make monthly interest payments to WCP. *See* Second DRL Note, attached hereto as Exhibit B, at § 3.

6.      DRL failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some thirteen days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 4.

7.      DRL failed to timely make the monthly interest payment due on October 1, 2022, with the payment coming some five days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 5.

6

8.       DRL failed to timely make the monthly interest payment due on November 1, 2022, with the payment coming some eight days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 6.

9.       Pursuant to the Second DRL Note, DRL was required to pay the Second DRL Note at maturity on December 24, 2022. *See* Second DRL Note, attached hereto as Exhibit B, at § 3.

10.      DRL failed to pay the Second DRL Note at maturity and has failed to pay the note at all times since. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 7.

11.      The DRL Deeds of Trust require DRL to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of the lenders. *See* DRL Deeds of Trust, attached hereto as Exhibits C and D, at § 4.2.

12.      DRL failed to pay water and sewer bills, causing a $44,857.93 lien to be placed upon the DRL Property in August 2022. *See* Water and Sewer Lien, attached hereto as Exhibit J.

13.      DRL also failed to timely pay more than $16,700.00 in taxes on the DRL Property for the second half of 2022, causing another senior lien to accrue. *See* Tax Payment History, attached hereto as Exhibit K (showing interest and penalties to have been assessed).

14.      DRL defaulted under the terms of the Second DRL Note and the DRL Deeds of Trust at least six times, with three defaults coming in the form of late interest payments, one default coming in the form of a failure to pay the note at maturity, and two defaults coming in the form of permitting senior liens to accrue on the DRL Property.[2]

---

[2] This does not include additional defaults under the First DRL Note

### c. 423 Kennedy Defaults

15.     Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to make an interest payment of $12,560.00 on or before the first day of each month. *See* Second 423 Kennedy Note, attached hereto as Exhibit F, at § 3.

16.     423 Kennedy failed to timely make the monthly interest payment due on May 1, 2022, with the payment coming some 74 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 8.

17.     423 Kennedy failed to timely make the monthly interest payment due on June 1, 2022, with the payment coming some 43 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 9.

18.     423 Kennedy failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some 13 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 10.

19.     423 Kennedy failed to timely make the monthly interest payment due on December 1, 2022, with the payment coming some seven days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 11.

20.     423 Kennedy failed to make the monthly interest payment due on January 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 12.

21.     423 Kennedy failed to make the monthly interest payment due on February 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 13.

22.     423 Kennedy failed to make the monthly interest payment due on March 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 14.

23.     Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to pay the Second 423 Kennedy Note, in full, not later than March 31, 2023. *See* Second 423 Kennedy Note, Ex. F, at § 3.

24.     The Second 423 Kennedy Note was not paid at maturity and remains unpaid. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 15.

25.     Pursuant to the 423 Kennedy Deeds of Trust, 423 Kennedy was to pay all obligations to third parties as they came due and ensure the 423 Kennedy Property remained free of municipal liens. *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H, at § 1.0; 4.1-4.2; 5.1; 7.1.

26.     On November 17, 2022, 423 Kennedy allowed a senior lien in favor of the District of Columbia Department of Buildings to accrue on the 423 Kennedy Property. *See* Department of Buildings Lien, attached hereto as Exhibit L.

27.     In total, 423 Kennedy defaulted under the Second 423 Kennedy Note and the 423 Deeds of Trust some nine times, with four defaults coming in the form of late interest payments, three defaults coming in the form of interest payments being missed altogether, one default coming in the form of a failure to pay the debt at maturity, and one default coming in the form of allowing a municipal lien to erode that of the lender's from above.[3]

---

[3] This does not include additional defaults under the First 423 Kennedy Note.

### V.    Plaintiffs' Allegations

While not relevant to this motion, for the reasons discussed more fully *infra*, the core of the Plaintiffs' contentions in this suit is that defaults were only declared—and foreclosures were only scheduled—after a falling out occurred between the Plaintiffs' principal and Mr. Huertas. *See* Complaint, DE #40, at ¶¶ 64-187. Theorizing that "money is the root of all evil," *id.* at p. 23, and accusing the Defendants of having "corrupt" and "evil" motives, *id.* at pp. 10, 32, the Plaintiffs insist that they were well on their way to refinancing the subject debt when defaults were declared, *id.* at ¶¶ 193-194.

The only even vaguely relevant portion of these allegations, for purposes of this motion, is their temporal horizon. The Plaintiffs allege the Defendants to have commenced a "corrupt plan" on or about October 6, 2022. *Id.* at ¶ 64. Yet, as noted above, DRL and 423 Kennedy had each defaulted under their respective loan documents, multiple times, prior to October 6, 2022. *See, supra,* § IV(b-c).

The Complaint is rich with vitriol and makes often-counterfactual allegations. But, for purposes of this motion, the whole of those allegations may be rather simply restated as follows: WCP and DPCL initially forbore from exercising their remedies under loan documents, notwithstanding the myriad defaults of the Plaintiffs, until such a time as a falling out occurred between and amongst the parties. Once a falling out occurred, WCP and DPCL elected to no longer voluntarily forbear from exercising their legal rights. The Plaintiffs now wish to litigate the finer points of the falling out; the Defendants posit that such is immaterial, since the Defendants were never under any obligation to voluntarily forbear from exercising their default remedies in the first place.

**VI.    Argument: Count VII of the Complaint—Seeking to Set Aside a Putative Fraudulent Transfer—Should be Dismissed**

The Plaintiffs, in Count VII, evince a fundamental misunderstanding of the laws governing fraudulent conveyances. This claim is brought against every Defendant, except Mr. Drazin, on the theory that a lender's transfer of a promissory note, in the midst of litigation, constitutes a violation of the modern version of the Statute of Elizabeth. Neither the relevant statutory language nor case law support such a wayward theory.

The Complaint does not cite to any statute for Count VII but, since neither Plaintiff is a debtor in bankruptcy (and since both plaintiffs are thusly without recourse under Section 548 of the Bankruptcy Code), it would seem this claim is brought pursuant to Section 29-3101, *et seq.* of the District of Columbia Code. The pertinent provisions thereof prohibit transfers made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" or undertaken for less than reasonably equivalent value at such a time as an obligor is either insolvent or on the verge of being rendered insolvent. D.C. Code §§ 28-3104; 28-3105. The Plaintiffs appear to be alleging both theories, and each is significantly misplaced.

**a.   There is No Contention WCP or SNL are Insolvent**

The Complaint does not allege WCP or SNL to be insolvent. *See* Complaint, DE #40, *passim*. And this is, on its face, a core problem for the Section 28-3105 claim, since insolvency is an element of a fraudulent conveyance claim premised upon an absence of reasonably equivalent consideration. The Plaintiffs, rather, intimate that JPK is insolvent. *Id.* at ¶¶ 260-261. In so doing, the folly of the cause of action is revealed.

11

The focus of the District of Columbia fraudulent conveyance law (like seemingly every other fraudulent conveyance law) is on the solvency of the *transferor*, not the *transferee*. Section 28-3104 prohibits transactions for less than reasonably equivalent value where a *transferor* either:

> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the [transferor] were unreasonably small in relation to the business or transaction; or
>
> (B) Intended to incur, or believed or reasonably should have believed that the [transferor] would incur, debts beyond the [transferor's] ability to pay as they became due.

D.C. Code § 28-3104(a)(2) (interlineating "transferor" for "debtor" so as to track the statutory language without the confusion of the Plaintiffs actually being the parties who are indebted to certain of the Defendants).

The same is true for Section 28-3105, which prohibits transactions where "the transfer was made . . . if the [transferor] made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation and the [transferor] was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." D.C. Code § 28-3105(a) (similarly interlineating).

It bears notation that WCP and SNL both certainly realized reasonably equivalent value in transferring the at-issue promissory notes, insofar as they received equity in JPK in exchange for the transfers. But such is wholly immaterial for instant purposes. The Plaintiffs are trying to conflate the *transferors* with the *transferee*. The law does not regard—one iota—whether or not a recipient is solvent, on the verge of being rendered insolvent, or inadequately capitalized; the law is concerned solely with whether a *transferor* is at such a risk. And this portion of Count VII accordingly fails on its face.

12

### b.  There is No Cogent Theory of Hinderance, Delay or Fraud

The other theory of a fraudulent conveyance promulgated in the Complaint is equally wayward. The Plaintiffs theorize that the transfer of the promissory notes, to JPK, was undertaken to "hinder or delay the adjudication of the claims in this case," Complaint, DE #40, at ¶ 204, and to "hinder or delay the Plaintiffs from reaching the assets of [WCP] and [SNL]," *id.* at § 205. The second contention is facially non-sensical, as evidenced by the fact the Plaintiffs are still suing both WCP and SNL. The first contention is seemingly more dangerous, as the Plaintiffs seem to argue that *any* action undertaken to defend litigation is, *ipso facto*, an action to hinder, delay or defraud creditors.

As to the second contention (concerning the assets of WCP and SNL): the Plaintiffs either have tort claims against the Defendants, *in rem* claims against the promissory notes and deeds of trust, or some combination thereof. If the Plaintiffs have tort claims, transferring the promissory notes and deeds of trust does not move the needle in the slightest—WCP and SNL, to whatever extent they were liable in tort before the transfers, remain liable in tort after the transfers. The Complaint does not suggest or explain otherwise. No one is contending that any tort liabilities, resting on SNL or WCP, were sold or assigned, nor even that liabilities could be sold or assigned under District of Columbia law.

Equally, if the Plaintiffs have *in rem* claims against the promissory notes and deeds of trust, such claims survive the transfer. Not only do the Plaintiffs have the ability to join JPK in this suit, to advance such *in rem* claims, but—somewhat ironically—it is the Defendants who pointed out that JPK should be joined herein, it is the Defendants who noted JPK is a necessary party, and it is the Defendants who insisted upon such even when the Plaintiffs initially refused to bring suit against JPK.

Nothing about the transfer would wipe out any liability that rested with WCP or SNL. Nor would anything about the transfer wipe out any *in rem* liability that follows the promissory notes and deeds of trust. And it is thusly altogether unclear how it is the Plaintiffs maintain the transfer to have been designed to prevent assets of WCP and/or SNL from being reached.

As for a delay of the adjudication of claims in this case, such is an even odder proposition. As noted *supra*, the prohibition on fraudulent conveyances emanates from the Statute of Elizabeth, enacted some 454 years ago. *See* Fraudulent Conveyances Act of 1571, 13 Eliz. 1. c. 5; *United States v. Robinson*, 494 B.R. 715, 722 n.36 (W.D. Tenn. 2013). Yet the Defendants are unaware of—and undersigned counsel cannot locate—any case law, whatsoever, holding that tactics used in the defense of litigation can give rise to a violation of fraudulent conveyance laws.

To be sure, what the Plaintiffs are alleging is that the siloing of potentially troubled assets is, *ipso facto*, a fraudulent conveyance. If so, every so-called "Texas two step" would, too, be a fraudulent conveyance. And, equally, every sale of a troubled promissory note would be a fraudulent conveyance.

Clearly, such cannot be. Moreover, and of some note, the Plaintiffs do not cogently allege how it is that the transfer of the promissory notes actually caused any hinderance or delay. If the contemplated answer to such is that JPK became a debtor in bankruptcy, three problems emerge: (i) assuredly, the filing of a bankruptcy petition cannot constitute a hinderance or delay for purposes of fraudulent conveyance liability, or nearly every chapter 11 debtor in America will be committing a tort by docketing an order for relief; (ii) this litigation was removed *before* JPK was placed into bankruptcy; and (iii) it is the Plaintiffs—not the Defendants—who fervently sought a stay of open motions shortly following removal.

In short, Count VII of the Complaint is simply nonsensical. The Plaintiffs appear to either misapprehend controlling law or to be in search of some theory—any theory—upon which to rest a case they understand to be otherwise ill-fated. Either way, this count merits dismissal with prejudice.

## VII.    Argument: The Complaint Should be Dismissed as Against SNL

SNL is not alleged to have originated any loans. SNL is not alleged to have serviced any loans. And SNL is not alleged to currently own any loans. So it is—very genuinely—altogether unclear why SNL is still a party to this lawsuit.

SNL is a named defendant to the claims for breach of the duty of good faith and fair dealing (Count II), for declaratory relief as to whether a lender is allowed to foreclose following a borrower's breach of loan documents (Count III), permanent injunctive relief (Count IV), declaratory relief as to whether Mr. Drazin may serve as a trustee (Count VI), and avoidance of a fraudulent conveyance (Count VII). Yet none of these causes of action actually make sense as against SNL.

### a.   Count II – Breach of the Duty of Food Faith and Fair Dealing

Under District of Columbia law, survival of a motion to dismiss a claim for breach of the implied covenant of good faith and fair dealing requires a plaintiff to "allege facts to show that defendant 'has taken steps, or refused to take steps, which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract.'" *Mero v. City Segway Tours of Wash. DC, LLC*, 826 F. Supp. 2d 100, 106-07 (D.D.C. 2011) (quoting *Nugent v. Unum Life Ins. Co. of Am.*, 752 F. Supp. 2d 46, 56 (D.D.C. 2010) (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988))).

15

Here, the Plaintiffs allege that SNL "engaged in unethical, outrageous conduct that was specifically designed to make several of their clients' construction projects fail." Complaint, DE #40, at ¶ 12. But the Complaint never actually alleges *what* that conduct was, or what actions constituted this unethical and outrageous conduct.

References to SNL, in the pleading, are notably sparse. The Plaintiffs allege that (i) WCP initially assigned the junior RE1 promissory note to SNL, *id.* at ¶ 41; (ii) WCP may have also assigned a 423 Kennedy deed of trust to SNL, *id.* at ¶ 60; (iii) SNL "is believed to also have a financial interest" in a loan the Plaintiffs insist to be of no relation, *id.* at ¶ 94; (iv) Mr. Drazin sent a foreclosure notice on behalf of SNL, *id.* at ¶ 185; and (v) SNL both transferred a note to JPK and owns part of JPK, *id*. at ¶¶ 201-202.

Purchasing a promissory note and then assigning the note to another entity—even when the seller owns part of the new entity—is a rather common practice; it is difficult to conceive of how such could rise to the level of "unethical, outrageous conduct," *id.* at ¶ 12. Similarly, having a financial interest in other loans is par for the course for a lender; it is equally difficult to conceive how such could amount to "unethical, outrageous conduct," *id.* And sending a foreclosure notice, after a borrower has repeatedly defaulted on a promissory note, is similarly well shy of the "unethical, outrageous conduct," *id.*, alleged.

Most pertinently, however, these actions cannot be said to amount to "tak[ing] steps, or refus[ing] to take steps, which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract.'" *Mero*, 826 F. Supp. 2d at 106-07. None of what is alleged of SNL would have prevented the Plaintiffs from timely making loan payments. Nor would any of the actions have prevented the Plaintiffs from paying taxes and utility bills. Nor would any of the actions have prevented the Plaintiffs from doing much of anything else.

16

All that is alleged of SNL is that the entity purchased debt instruments and then exercised rights—including foreclosure and assignment rights—thereunder. Such assuredly cannot constitute a breach of the implied duty of good faith and fair dealing.

### b. Count III – Declaratory Relief (Breaches) / Count IV – Injunctive Relief / Count VI – Declaratory Relief (Mr. Drazin's Services)

The next three causes of action against SNL are for declaratory and injunctive relief concerning the forward-looking rights of noteholders and beneficiaries under deeds of trust, as well as Mr. Drazin's capacity to serve as a trustee. Yet, as the Plaintiffs themselves note in some detail, and bemoan at great length, SNL no longer owns any of the relevant promissory notes and is no longer a beneficiary under any of the relevant deeds of trust. The interests of SNL have been transferred to JPK. And it is thusly unclear why SNL is being made a party to causes of action directed toward the establishment of forward-looking rights, *vel non*.

Axiomatically, "[a] limited liability company is an entity distinct from its member or members." D.C. Code § 29-801.04(a). *See also Martin v. Santorini Capital, LLC*, 236 A.3d 386, 394 (D.C. 2020) (holding a limited liability company is distinct from its members); *HRH Servs., LLC v. Travelers Indem. Co.*, 2024 U.S. Dist. LEXIS 234196, at *25 (D.D.C. Dec. 30, 2024) (holding similarly).

While there is no question but that SNL owns part of JPK, such is not grounds to sue SNL in connection with debt instruments held by JPK. Whether or not JPK can take actions based upon the Plaintiffs' habitual defaults is a question that impacts JPK, not SNL. The same goes for whether or not JPK can foreclosure and, too, whether or not JPK may rely upon the services of Mr. Drazin as a trustee under the pertinent deeds of trust held by JPK.

17

c.  **Count VII – Fraudulent Conveyance**

The issues with the fraudulent conveyance claim against SNL are discussed fully above. *See, supra,* § VI.

VIII.  **Argument: Summary Judgment is Proper**

a.  **The Defendants' Repetitive and Habitual Defaults Bar Relief for Tortious Interference (Count I), Breach of the Duty of Good Faith and Fair Dealing (Count II), Declaratory Judgment (Count III) and Permanent Injunctive Relief (Count IV)**

The thrust of the Plaintiffs' claims in this case is that even though DRL and 423 Kennedy repeatedly and habitually were late making interest payments, and even though DRL and 423 Kennedy allowed senior liens to accrue on their respective assets, the Defendants could not lawfully declare the Plaintiffs to be in default and exercise remedies under the loan documents. The loan documents are notably devoid of provisions allowing for defaults to be cured (and, in any event, the Plaintiffs' defaults have steadily continued—through the present day—as punctuated by a failure to pay the loans at maturity). Yet the Plaintiffs rationalize that since they *eventually* made the payments, and since they *eventually* rid the properties of senior liens, their repetitive and habitual breaches ought to be disregarded. Such simply is not so.

Axiomatically, there cannot be a waiver of strict compliance with a contract "where time is contractually stipulated to be of the essence." *Landow v. Georgetown-Inland W. Corp.*, 454 A.2d 310, 313 (D.C. 1982). *See also SJ Enters., LLC v. Quander*, 207 A.3d 1179, 1184 (D.C. 2019) (noting a party's contractual obligations to be "discharged" when a contractual counterparty fails to adhere to a "time is of the essence" clause); *Landow*, 454 A.2d at 313 ("The gist of the buyer's argument is that so long as he was making a good faith effort to obtain building permits, the settlement date in the original written contract, even though containing a 'time is of the essence' clause, would be orally extended from time to time. We find that this argument is without legal

foundation as well as commercially impracticable."); *Finard & Co. v. Capitol 801 Corp.*, 1992 U.S. App. LEXIS 23402, at *3 (D.C. Cir. Sep. 23, 1992) (strictly construing a "time is of the essence" clause such that a contractual party's rights are waived for failing to timely perform thereunder).

Here, all four promissory notes provide, *inter alia*, "[t]ime is of the essence as to all provisions of this Note." First DRL Note, Ex. A, at § 10; Second DRL Note, Ex. B, at § 10; First 423 Kennedy Note, Ex. E, at § 10; Second 423 Kennedy Note, Ex. F, at § 10.

None of the promissory notes provide any allowance for the cure of monetary defaults. *Id.*, *passim*. Nor do any of the promissory notes require the borrowers to be given notice of any defaults thereunder. *Id., passim*. So once interest payments were not timely made, there existed defaults on the part of both DRL and 423 Kennedy that (i) ran afoul of the notes' plain terms; (ii) ran afoul of the notes' "time is of the essence" clauses; (iii) could not be cured through tardy payment; and (iv) did not require the giving of notice—much less occasion to cure—to the borrowers.

As noted *supra*, this happened on myriad occasions with both Plaintiffs. They were habitually late making payments. And these late payments largely came *before* the alleged confrontation between the Plaintiff's principal and Mr. Huertas that is central to the complaint.

So the question posed, in the form of the claims for tortious interference (Count I), breach of the implied covenant of good faith and fair dealing (Count II), declaratory relief (Count III), and injunctive relief (Count IV), is whether the lenders, following a series of repetitive and habitual contractual breaches by the borrowers, were entitled to exercise their correlative rights under the loan documents. And this question is, of course, answered in the affirmative. To suggest otherwise would be to not merely undermine the plain language of the promissory notes and District of

19

Columbia precedent on "time is of the essence" clauses but, too, to endeavor to impose on commercial debt instruments the standards heretofore only known to apply to consumer loans.

### i. Tortious Interference (Count I)

Count I of the Complaint posits that WCP, DPCL and Mr. Huertas are liable for tortious interference with business relations, with the putative underlying sin being the demand that the Plaintiffs "pay [d]efault [i]nterest and [d]efault [p]enalties," Complaint, DE #40, at ¶ 221. The borrowers theorize that the demand for such default interest and penalties—remedies provided for under the loan documents—caused an inability to refinance debt and a breakdown in relations with a potential refinance lender. *Id.* at ¶¶ 221-223. In so theorizing, the Plaintiffs seem to miss that incursion of default interest and penalties was in express accord with the provisions of the loan documents and came only after the Plaintiffs repetitively and habitually breached their obligations thereunder.

Under District of Columbia law, a claim for tortious interference with business relations requires the showing of four elements: "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Close It! Title Servs. v. Nadel*, 248 A.3d 132, 141 (D.C. 2021) (quoting *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017)).

For summary judgment purposes, the fourth element is key. While the Defendants do question the first element (it appears, from discovery, there may not have been as valid a relationship with a refinance lender as the Plaintiffs suggest) and vehemently dispute the third

element (there certainly was not any intentional interference), those two elements run too close to potential disputes of material fact. The fourth element, however, does not.

Rather plainly, the Plaintiffs' liability for default interest and other breach-centric damages stems not from any actions of the lenders but, rather, from the Plaintiffs' own habitual, repetitive, and recurring breaches of the promissory notes. At the time of the putative refinance efforts, the Plaintiffs owed default interest because they failed to timely make interest payments *ad nausea* and because they allowed senior liens to accrue on collateral. More defaults would, of course, follow later (most notably including a failure to repay the loans at maturity). But numerous breaches and defaults occurred long before the Plaintiffs even allege refinance efforts to have been afoot.

To be sure, the Plaintiffs cannot in good faith deny that they were habitually and repetitively late making interest payments. Nor can they deny that they permitted senior liens to accrue upon the collateral. Nor can they deny that these are plain language breaches of the applicable loan documents. What they contend, rather, is that it is unfair for the Defendants to actually enforce these plain language provisions, and that habitually tardy payments ought to be forgiven. But there is no actual legal foundation for these contentions, with such not only running afoul of the "time is of the essence" clauses in the loan documents but, too, of longstanding principles guiding the construction of commercial agreements in accord with the plain terms thereof.

### ii. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Count II of the Complaint alleges that by enforcing the default provisions of the loan documents, DPCL, WCP, SNL and JPK ran afoul of the implied covenant of good faith and fair dealing. In so doing, the Plaintiffs appear to conflate the implied duty of a contractual party to not

21

*interfere* with a counterparty's performance and the right of a party to enforce its rights under a contract following a counterparty's breach. The former is actionable in tort; the latter is nothing more than what the parties agreed to in executing the loan documents in the first instance.

Familiarly, District of Columbia law provides for a duty of good faith and fair dealing in connection with contractual performance:

> . . . all contracts contain an implied duty of good faith and fair dealing, which means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing.

*Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (quoting *Hais v. Smith*, 547 A.2d 986, 987-988 (D.C. 1988)).

What the Plaintiffs allege here is that *by enforcing the plain terms of the loan documents*, the lenders violated the implied covenant of good faith and fair dealing. The Plaintiffs reason that even though there were habitual and repetitive defaults, WCP and its co-Defendants had a duty to *not* enforce the default provisions of the agreements, to not charge default interest, and to not exercise remedies under deeds of trust.

Or, stated otherwise, what the Plaintiffs allege here is that the "time is of the essence" provision of the promissory notes, coupled with the District of Columbia's extensive case law on the enforcement of such provisions, should be wholly disregarded. And, compounding the oddity of the theory, the Plaintiffs posit such ought to not merely be wholly disregarded but, too, the lenders' efforts to rely on this plain provision of the loan documents, and this extensive case law, is actually a violation of the implied covenant of good faith and fair dealing.

22

### b. Permanent Injunctive Relief (Count IV) is Not a Cause of Action

Count IV of the Complaint is for "permanent injunctive relief." Such is not a cause of action, however, but rather merely a remedy available to litigants who successfully pursue freestanding causes of action in certain circumstances. *See, e.g.*, *Genesis Capital, LLC v. Lauravin Luxury Apartments Homes, LLC*, 2023 U.S. Dist. LEXIS 84754, at *6 (D.D.C. May 15, 2023) ("Like a preliminary injunction, a receivership is not a cause of action but rather a form of relief.") (citing *Gordon v. Washington*, 295 U.S. 30, 37 (1935)); *Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015) ("Injunctive relief, however, is not a freestanding cause of action, but rather — as its moniker makes clear — a form of relief to redress the other claims asserted by Plaintiff.") (citing *Guttenberg v. Emery*, 41 F. Supp. 3d 61 (D.D.C. 2014)); *Kemp v. Eiland*, 139 F. Supp. 3d 329, 343 (D.D.C. 2015) ("a 'request for injunctive relief is a remedy and does not assert any separate cause of action.'") (citing *Coe v. Holder*, 2013 U.S. Dist. LEXIS 85337 at *2 n.4 (D.D.C. June 18, 2013) (internal citations omitted)).

In light of this claim not actually being a cause of action, summary judgment is properly entered thereupon in favor of the Defendants.

### c. Summary Judgment is Properly Entered on the Claim for Declaratory Relief

Count III of the Complaint is premised upon a red herring. Therein, the Plaintiffs seek a declaratory judgment as to "whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property." Complaint, DE #40, at § 234. The answer, to be sure, is found in the affirmative: permitting senior liens to accrue on collateral is, in the prism of the loan documents *sub judice*, grounds of default upon which a foreclosure may be premised. But the question is also terrifically misstated in a deceptive fashion: the Plaintiffs defaulted, habitually and repetitively, under the loan documents by failing to timely make interest payments. The Plaintiffs then defaulted by failing to

23

pay the loans at maturity. And the question, thusly, should be rephrased as follows: "After a borrower has habitually defaulted under loan documents, by failing to make payments despite time being expressly of the essence, may a lender avail itself of the remedies set forth in those loan documents?" And that question is, unsurprisingly, also answered in the affirmative.

To be sure, what the Plaintiffs ask in Count III is either academic or misleading. If they simply inquire as to whether the accrual of senior liens may give rise to foreclosure, such is academic since the Plaintiffs committed numerous other defaults under the applicable loan documents. Answering that question, without recognizing the full scope of the breaches at issue herein, would be to issue an advisory opinion premised upon hypothetical facts. And such is, of course, forbade in this judicial circuit. *See, e.g.*, *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 86 (D.D.C. 2009) ("Pueschel's generic question is in essence a request for an advisory opinion, something federal courts are not empowered to render.") (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, 104 (1998)); *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 377 (D.C. Cir. 2010) ("Because a federal court does not have jurisdiction to issue an advisory opinion, we must decline Murphy's request to consider the issue.") (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). *But see Kiviti v. Bhatt*, 80 F.4th 520, 532 (4th Cir. 2023) (holding Article III case or controversy rigors to not attach to proceedings in bankruptcy courts).

Similarly, if the Plaintiffs pose the question under the pretense of having not otherwise breached the applicable loan documents time and again, such is misleading. As noted *supra*, the Plaintiffs' late payments and missed payments are extraordinary in nature and were of an extraordinary nature *before* a foreclosure was ever scheduled. They may wish to focus merely upon the senior liens they permitted to accrue on the lenders' collateral, even though such are

contractual breaches unto themselves, but the undisputed facts of this case set forth countless other breaches of a monetary variety. And, as urged *passim*, such runs plainly afoul of case law governing agreements in which time is expressly of the essence.

### d. Mr. Drazin Incorporates his Prior Summary Judgment Motion, which is Presently Under Advisement

Mr. Drazin has previously moved for summary judgment herein, DE #7, and the subject motion is presently under advisement, having been fully briefed and then subsequently argued, DE #32. Insofar as that motion is under advisement, the issue appears to have been fully submitted to this Honorable Court. However, to whatever extent Mr. Drazin may need to formally reassert his independent motion for summary judgment, upon the presentation of a new complaint, he hereby does so and incorporates, by reference, his prior briefing on the matter.

### IX.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter judgment in their favor, and against the Plaintiffs, on the Complaint; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: March 19, 2025          By:     /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig, Esq.
                                        Bar No. MD18071
                                        The VerStandig Law Firm, LLC
                                        9812 Falls Road, #114-160
                                        Potomac, Maryland 20854
                                        Phone: (301) 444-4600
                                        mac@mbvesq.com
                                        *Counsel for the Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of March, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig