UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>　CHARLES PAXTON PARET,<br><br>　　*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>　　*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; SF NU, LLC; AND WCP<br>FUND I LLC,<br><br>　　*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>　　*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; AND WCP FUND I LLC,<br><br>　　*Defendants.* | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Borrowers"), hereby file their opposition to the Motion to Dismiss or, in the alternative, for Summary Judgment ("Motion") [ECF No. 44] filed by six of the seven Defendants, namely:  DP Capital LLC ("WCP"), WCP Fund I LLC ("WCP Fund"), Daniel

Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), SF NU, LLC ("SF NU"), and JPK

NewCo LLC ("JPK") (collectively, "Defendants").

## I.    INTRODUCTION

The Court has some general familiarity with the factual and procedural background of

this litigation from prior filings, including the Borrowers' Opposition to Mr. Drazin's Motion for

Summary Judgment filed on January 17, 2025 (the "Opposition") [ECF No. 30].[1]  The

Borrowers continue to view the Defendants' removal of the cases from Superior Court as a form

of improper appeal.  The Defendants were dissatisfied with prior, unfavorable decisions rendered

in the Superior Court by two different judges.  *See* Plaintiffs' Renewed Motion for Remand and

to Suspend Defendants' Motions, Hearings, and Related Response Deadline [ECF No. 46].  With

the Motion, Defendants now seek the dismissal of Count VII - To Set Aside Fraudulent Transfers

of the Third Amended Complaint (the "Complaint"), as well as the dismissal of all claims against

SF NU.  The Defendants also request the entry of summary judgment on the remaining causes of

action against them.  For the reasons set forth below, and in the accompanying Exhibits, the

Court should deny both motions.[2]

## II.    CONDENSED  BACKGROUND

### A.    The Loan Documents

On December 23, 2021, WCP helped facilitate Developer RE1 in obtaining an acquisition

finance loan for the property located at as 5501 1st Street, N.W., in Washington, D.C. (the

---

[1]    As Mr. Drazin's Motion for Summary Judgment is currently pending, pursuant to Fed. R. Civ. P. 10(c), the Borrowers hereby incorporate by reference the factual background and all the arguments made in the Opposition as if fully stated herein.

[2]    To assist the Court with showing the many material facts in dispute, the Borrowers have assembled their Response to the Defendants' Material Facts Not in Dispute (the "Borrowers' Response"), which is attached as Exhibit 1.  The Borrowers have also included as support a Declaration of Mel Negussie ("Negussie Decl."), which is attached as Exhibit 2.

"Developer RE1 Property"), which original loan was later refinanced. As part of that

refinancing, Developer RE1 signed the following documents:

- A Deed of Trust (the "Developer RE1 First DOT") for the Developer RE1 Property that named WCP Fund as Beneficiary and Mr. Drazin, as Trustee.
- A Commercial Deed of Trust Note (the "Developer RE1 First Note") in the amount of $3,579,000.00, as "Borrower," in favor of WCP Fund.
- A second, additional Deed of Trust ("Developer RE1 Second DOT") for the Developer RE1 Property that also named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A second Commercial Deed of Trust Note (the "Developer RE1 Second Note") in the amount of $524,000.00, as "Borrower."

These documents are collectively referred to as the "Developer RE1 Loan Documents".

By Assignment of Deed of Trust, dated April 17, 2024, and recorded in the land records

of the District of Columbia as Document # 2024035623, SF NU assigned and transferred to JPK

its rights, title and interests in the Developer RE1 Second DOT.

In January of 2020, WCP helped 423 Kennedy obtain a construction finance loan for the

property located at 423 Kennedy Street, N.W., Lot 56, Square 3260 in Washington, D.C. (the

"423 Kennedy Property"), which was later refinanced. As part of that refinancing, 423 Kennedy

signed the following documents:

- A Deed of Trust (the "423 Kennedy First DOT") for the 423 Kennedy Property that named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A Commercial Deed of Trust Note (the "423 Kennedy First Note") in the amount of $8,689,693.00, as "Borrower" in favor of WCP Fund.
- A second, additional Deed of Trust for the 423 Kennedy Property (the "423 Kennedy Second DOT") that also named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A second, Commercial Deed of Trust Note (the "423 Kennedy Second Note") in the amount of $1,256,000.00, as "Borrower."

These documents are collectively referred to as the "423 Kennedy Loan Documents." The

Developer RE1 Loan Documents and the 423 Kennedy Loan Documents are collectively referred

to as the "Loan Documents."

3

By Assignment of Deed of Trust, dated April 17, 2024, and recorded in the land records of the District of Columbia as Document # 2024035864, WCP assigned and transferred to JPK its rights, title and interests in the 423 Kennedy Second DOT.

B.      Executive Summary of the Facts.

The Defendants removed these consolidated cases for the improper purpose of trying to avoid, and having this Court revisit, several key motions and decisions that they lost before two different judges in the D.C. Superior Court.  These decisions were made after extensive briefing, testimony from both sides at two evidentiary (TRO) hearings, oral argument, and some post-hearing briefing.  The Defendants were unsuccessful with a prior motion to dismiss that Judge Ebony Scott denied in the Developer RE1 case.  More importantly, the Defendants lost two motions for a TRO before two different judges in which they made the exact claims that they now assert again here in their summary judgment motion, *i.e.,* that multiple late or missed payments, along with other alleged defaults that had either been waived or cured, prevent the Borrowers from pursuing their claims.  Two different D.C. Superior Court judges have not just determined that the Borrowers' claims are viable, but that the Borrowers are likely to prevail on the merits of those claims.  This Court was never designed to be a first line of appeal from adverse decisions of the D.C. Superior Court, but as to all of the claims in the Third Amended Complaint except than new Count VII, that is precisely what the Defendants are asking this Court to be.  The Court should reject the Defendants' improper attempt to relitigate issues and arguments that have already been decided against them.

As for the condensed facts, this case is about the Lender Defendants decision to intentionally sabotage two development projects, to cause financial harm to the Borrowers and one of the Borrower's principals, and to improperly foreclose on two development projects, one of which was near completion, because one or more of the Lender Defendants was unhappy

about how another development project (at 2507 I Street) turned out.  The Lender Defendants

knew that the Borrowers were well on their way toward refinancing their loans, which would

have resulted in payment in full of those loans.  The Lender Defendants issued pre-textual

default notices to pressure the Borrowers into paying millions of dollars in "Default Interest" and

"Default Penalties."  The Lender Defendants then tasked their lawyer, who was also serving as

Trustee under all of the deeds of trust, to find reasons to try to justify the pretextual defaults after

the fact.

      This case was also removed in July of 2024 because the Borrowers were about to take the

corporate depositions of the Lender Defendants, and their employees, in which the Borrowers

were highly likely to develop additional evidence in support of their claims.  Now the Lender

Defendants are trying, though a summary judgment decision, to prevent the Borrowers from

obtaining information in discovery that they know will be unfavorable to their positions.

III.    THE LEGAL STANDARDS

    A.    The Motion to Dismiss Standard

      Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and

plain statement of the claim showing that the pleader is entitled to relief, to give the defendant

fair notice of what the claim is about and the grounds upon which it rests.  *See, e.g.*, *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss under Federal Rule

of Civil Procedure 12(b)(6), "the 'complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief [that?] is plausible on its face.'"  *See, e.g.*, *Wood v. Moss*, 134 S. Ct.

2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Since our system

favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied

only after less dire alternatives have been explored without success."  *Trakas v. Quality Brands,*

*Inc.*, 245 U.S. App. D.C. 165, 759 F.2d 185, 186-87 (1985) (citing *Camps v. C & P Telephone Co.,* 223 U.S. App. D.C. 396, 692 F.2d 120, 123-24 (D.C. Cir. 1981)).

Because the Borrowers have more than pled facts sufficient to support plausible claims against SF NU, the Motion to Dismiss should be denied.

B.    The Motion for Summary Judgment Standard

On a motion for summary judgment, "[t]he moving party has the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law." *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). In opposing a motion for summary judgment, the non-moving party "is entitled to the benefit of all favorable inferences that can be drawn from the evidence." *Id.* The court "may not make credibility determinations or weigh the evidence." *United States ex rel. El-Amin v. George Wash. Univ.*, 522 F. Supp. 2d 135, 139 (D.D.C. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Summary judgment "is not appropriate when 'a reasonable jury could return a verdict for the nonmoving party.'" *United States v. Greer*, 451 U.S. App. D.C. 45, 47, 987 F.3d 1089, 1091 (2021) (quoting *Thompson v. District of Columbia*, 967 F.3d 804, 813, 448 U.S. App. D.C. 411 (D.C. Cir. 2020)). "Once it is determined that material facts are in dispute 'summary judgment may not be granted.'" *Weiss v. Kay Jewelry Stores, Inc.*, 152 U.S. App. D.C. 350, 470 F.2d 1259, 1262 (1972) (quoting *Dewey v. Clark*, 86 U.S. App. D.C. 137, 143, 180 F.2d 766, 772 (1950)). "Summary judgment is an extreme remedy and should be awarded only when the truth is clear; doubts must be resolved against the moving party." *BEACH v. RIGGS Nat'l BANK*, Civil Action No. 83-2402, 1985 U.S. Dist. LEXIS 19871, at *10 (May 13, 1985) (citing *Weiss v. Kay Jewelry Stores, Inc.,* 470 F.2d 1259 (D.C. Cir. 1972)).

When these standards are applied to Defendants' request for summary judgment, summary judgment should be denied.

IV.    L<small>EGAL</small> A<small>RGUMENT</small>: W<small>HY THE</small> M<small>OTION TO</small> D<small>ISMISS SHOULD BE DENIED</small>

The Court should deny the Motion because the Borrowers have sufficiently pled Count

VII (To Set Aside Fraudulent Transfers), as well as all the other claims asserted against SF NU.

A.    Count VII of the Complaint - To Set Aside Fraudulent Transfers - is
Adequately Pled.

Count VII is primarily predicated on several transfers made to and by JPK NewCo, LLC

("JPK"), the named debtor in a now dismissed bankruptcy proceeding.[3]  The Court could deny

the motion to dismiss based upon one undisputed fact alone that is also a judicial admission:

JPK and the WCP have already admitted that the loan transfers to JPK were made with the

express purpose of trying to hinder the Borrowers from collecting on their claims.  *See*

Opposition of WCP Fund I LLC to the U.S. Trustee's Motion to Dismiss Chapter 11 Case

Pursuant to 11 U.S.C. § 1112(B) ( ECF No. 56 in the JPK Case ("[I]nsofar as a good faith

analysis of the claims in the litigation reveals relief to be sought in the form of an in rem setoff

against liability due and owing on the four promissory notes, *transferring the two junior notes*

*into a separate entity effectively serves to firewall any liability from reaching WCP or its various*

*co-defendants*.") (italic emphasis added).[4]  This judicial admission, standing alone, defeats any

argument that the Borrowers have not sufficiently pled a fraudulent conveyance claim.  The

WCP and JPK have admitted that the "junior liens" were transferred to prevent liability (to the

Borrowers) "from reaching WCP or its various co-defendants."[5]

---

[3]    *See In re JPK NewCo, LLC*, Case No. 24-262 (Bankr. D.D.C. 2024) (the "JPK Case").

[4]    In JPK's Opposition to the United States Trustee's Motion to Dismiss Chapter 11 Case
Pursuant to 11 U.S.C. 1112(b), JPK repeated the arguments of the WCP Fund LLC in the WCP
Opposition "as if set forth in substance here."  *See* ECF No. 58 at p.1. in the JPK Case.

[5] "Firewall" is a term used both in the auto industry and the computer industry.  Cars
have firewalls to prevent and hinder engine heat, noise, and fumes from reaching the passenger
compartment.  Computers have "firewalls" to prevent and hinder hackers and viruses from
gaining entry into, or spreading in, computer systems.

Indeed, the transfers to JPK represent just one type of fraudulent transfer contemplated by

D.C. law.  The Uniform Fraudulent Transfer Act, D.C. Code §§ 28-3101, *et seq.,* ("UFTA")

defines several types of fraudulent transfers.  D.C. Code

§ 28-3104(a) defines a fraudulent transfer as:

> (a) *A transfer made,* or obligation incurred, by a debtor *is fraudulent as to a creditor,* whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) With actual intent to *hinder, delay,* or defraud *any creditor of the debtor*; or
> >
> > (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

D.C. Code § 28-3104 (a) (italic emphasis added).

In the Third Amended Complaint, the Borrowers, as creditors, allege that, their debtor(s),

SN FU and/or the WCP, transferred the Loan Documents described in paragraphs 201-02 of the

Complaint with the intent to hinder or delay the claims of the Borrowers.  Comp. ¶¶ 257-48.

Nothing more is required to state a claim under D.C. Code § 28-3104(a)(1) or (2).  *See Bertram*

*v. WFI Stadium, Inc*., 41 A.3d 1239, 1245 (D.C. 2012) (explaining that it is sufficient to state a

claim under the UFTA to allege that the debtor incurred an obligation with the intent to hinder,

delay, or defraud the creditor).  Moreover, contrary to Defendants' position, there is no

requirement in the UFTA that a plaintiff allege that either SN FU or the WCP were insolvent at

the time of the transfers.  Rather, the insolvency of the person that made the transfer is simply

one factor, among many others, that may be considered in determining intent.  *See* D.C. Code

§ 28-3104(b)(9) (one of the factors that may be considered when determining actual intent is

whether "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or

the obligation was incurred").  A copy of D.C. Code § 28-3104 is attached as Exhibit 3 for the

Court's convenience.

Relatedly, D.C. Code § 28-3105(a) allows the Borrowers to pursue a claim based on

fraudulent conveyance against SF NU and/or the WCP if they made a transfer "to an insider for

an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to

believe that the debtor was insolvent."  D.C. Code § 28-3105.  A copy of D.C. Code § 28-3105 is

attached hereto as Exhibit 4.  As the Borrowers also allege, the transfers by SN FU and/or the

WCP were made when the obligation was incurred by JPK at a time when JPK believed or

reasonably believed that it would incur a debt beyond its ability to pay that debt when it became

due at a time when it was insolvent or became insolvent shortly after the transfer was made or

the obligation was incurred.  Compl. ¶¶ 260-61.  The transfers at issue here are precisely the kind

of fraudulent transfers contemplated by the express language of the UFTA.  The Borrowers have

stated a plausible claim in Count VII, so the Defendants' Motion to Dismiss Count VII  should

be denied.

      B.    <u>SF NU is a Proper Defendant.</u>

Contrary to Defendants' assertions, SF NU is a proper defendant and Borrowers have

stated plausible claims against SF NU under Count II (Breach of the Duty of Good Faith and Fair

Dealing); Count III (Declaratory Judgment); Count IV ( Permanent Injunctive Relief); Count VI

for (Declaratory Judgments - Mr. Drazin Cannot Serve as the Trustee and as to the Foreclosure

Notices), and Count VII (Set Aside Fraudulent Transfers).

1.      The Borrowers Have Stated a Plausible Claim in Count II (Breach
of the Covenant of Good Faith and Fair Dealing).

"Every contract includes an implied covenant of good faith and fair dealing.". *See*

*Wright v. Howard Univ.*, 60 A.3d 749, 754-55 (D.C. 2013).  To state a claim for breach of the

covenant of good faith and fair dealing based on the laws of the District of Columbia, the

following is required:

> [A] plaintiff must allege either 'bad faith or conduct that is arbitrary or
> capricious.' . . . If a party 'evades the spirit of the contract, willfully
> renders imperfect performance, or interferes with performance by the
> other party, he or she may be liable for breach of the covenant of good
> faith and fair dealing.

*See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015).

In Count II, the Borrowers allege that SF NU breached the covenant of good faith and

fair dealing that is implied in every contract in the District of Columbia.  The Defendants claim

that the allegations against SF NU are scant, but that is simply not true.  The Borrowers allege

that the WCP Fund appears to have assigned its interest in the Second Developer RE1 DOT to

SF NU in an Assignment of Deed of Trust.  Compl. ¶ 41.  SF NU is believed to also have a

financial interest in the 2507 I Street Project. Compl. ¶ 94.  JPK is dominated and controlled by

Mr. Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU.  Compl. ¶

217.  WCP Fund, WCP, Mr. Huertas, and SF NU also caused the WCP to issue each "Notice of

Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring

either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the

WCP Fund and/or SF NU.  Compl. ¶ 141.  SF NU is named in this action based, in part, on the

Notice of Foreclosure Sale of Real Property or Condominium to Developer RE1, issued on June

23, 2023, by Mr. Drazin, apparently on behalf of SF NU.  Compl. ¶ 185.  Thereafter, SFNU

transferred the Developer RE1 Loan Documents.  Borrowers allege that the transfer by SF NU of

the Developer RE1 Loan Documents to JPK was a transfer that was not supported by any

consideration.  Compl. ¶¶ 202-203.  The Borrowers also allege that such transfer was made "with

the specific intent to hinder or delay the adjudication of the claims in this case."  Compl. ¶ 204.

The Borrowers allege that the transfers were made by the WCP Fund, the WCP, SF NU, and/or

Mr. Huertas "with the intent to hinder or delay [the Borrowers] from reaching the assets of the

WCP Fund and SF NU."  Compl. ¶ 205.

 The Borrowers further allege that the WCP Fund transferred the 423 Kennedy Loan

Documents to JPK, an insider owned by the WCP Fund and SF NU.  Compl. ¶ 201.  The

Borrowers allege notes and deeds of trust between the Borrowers and the WCP, and/or SF NU,

and/or JPK that are contracts.  Compl. ¶¶ 227-228.  The Borrowers further allege that "[t]hrough

their improper conduct, the Count II Defendants have breached the implied covenant of good

faith and fair dealing contained in the respective contracts."  Compl. ¶ 229.  Additionally, SF NU

is defined as one of the "Lender Defendants."  Compl. ¶ 8.  In the Third Amended Complaint,

there are 49 allegations against the Lender Defendants.  Compl. ¶¶ 16, 20, 79, 93, 96, 99, 100-03,

105-13, 131, 133-35, 138-44, 151, 157, 164, 171-72, 178, 182-84, 189, 192-95, 208-09, 212,

214-15).  The Defendants do not substantively address this plethora of allegations in their

Motion, instead focusing only on their claim that SF NU no longer holds the loan documents.

 In pursuing this cause of action, the Borrowers' allegations against SF NU, including that

it breached of the covenant of good faith and fair dealing through its actions in holding and/or

wrongfully transferring the Developer RE1 Loan Documents and in interfering with the

Borrowers' rights under the Loan Documents, are plainly enough to state a claim for breach of

the covenant of good faith and fair dealing implicit in the Loan Documents.  Therefore, dismissal

of Count II is not appropriate.

2.      The Borrowers Have Stated a Claim for Count III and VI (for Declaratory Judgment) and Count IV (Injunctive Relief).

As to Counts III, IV, and VI, the Defendants' sole argument seems to be their contention that SF NU no longer owns the Loan Documents and is no longer a beneficiary under the relevant Loan Documents.  The Borrowers, however, seek to set aside the fraudulent transfers of the junior liens by SFNU to JPK.  If those transfers are set aside, the declaratory judgments and injunctive relief claims will implicate the rights of SF NU.  SF NU also participated in an attempted foreclosure on one of the properties (and may do so again).  SF NU is also responsible for the misconduct that it engaged in, as one of the Lender Defendants, before the junior liens were transferred.  Accordingly, SF NU is still a proper defendant even though it currently does not hold title to the junior liens.

3.      As Discussed Above, Borrowers Have Stated a Claim in Count VII to Set Aside Fraudulent Transfers.

That SF NU claims "[t]he interests of [SF NU] have been transferred to JPK" is just one fact upon which Count VII is based.  The Borrowers also allege that SF NU fraudulently transferred the Developer RE1 loan documents (the junior lien) "with the intent to hinder or delay [the Borrowers] from reaching the assets of the WCP and SF NU."  Compl. ¶ 205.  Thus, SF NU's request for dismissal of Count VII is without merit and should be denied.

## V.    ARGUMENT: WHY SUMMARY JUDGMENT IS NOT APPROPRIATE

This Court should deny the request for summary judgment because: (a) the Defendants should not be permitted to relitigate issues already determined by the Superior Court under the law of the case doctrine; (b) the Borrowers have multiple, viable defenses as to why the loans were not paid; (c) multiple disputes of material fact exist which preclude summary judgment on Counts I – VI; and (d) the motion for summary judgment is premature because the Borrowers have not have the benefit of full discovery.

As for the Defendants' "Material Facts Not in Dispute," that list consists largely of improper legal conclusions and Defendants' interpretations of the Loan Documents.  In the Borrowers' Response, the Borrowers have designated each of Defendants' purported facts as disputed, admitted, and/or not material.  The Borrowers also object to Defendants' legal conclusions to the extent that they are not supported by the record or are contrary to the terms of the Loan Documents.  There are multiple, material disputes of fact exist that preclude the entry of summary judgment on Counts I – VI.

A.    The Defendants Impermissibly Seek to Relitigate Issues Already Determined.

As for the 423 Kennedy Loan Documents, on July 24, 2023, after a full evidentiary hearing, Judge Milton C. Lee, Jr. issued a comprehensive 22-page Order granting 423 Kennedy's Motion for Temporary Restraining Order (the "First TRO Order").  A copy of the First TRO Order is attached as Exhibit 5.  In the First TRO Order, Judge Lee addressed and dismissed the Defendants' contentions as to "late" payments and a lien placed on the 423 Kennedy Property. As the Defendants have not raised any new facts, the Borrowers ask this Court to reject the Defendants' attempt to relitigate these issues and effectively reverse Judge Lee's prior factual findings and decision.

As for the Developer RE1 Loan Documents, on August 15, 2023, after a full evidentiary hearing, Judge Ebony M. Scott entered a Hearing Order by which she, among other things, granted Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure sale (the "Second TRO Order").  A copy of the Second TRO Order is attached as Exhibit 6.  In the Second TRO Order, Judge Scott also addressed and dismissed the Defendants' contentions as to a water lien, real estate taxes, and "a breach of the deed of trust as a result of default."  *See* Second TRO Order at p. 4.  Relevant here, Judge Scott

observed that "[t]he record demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to perform under the deed of trust." *Id.* at p. 5.  Judge Scott observed the that the parties had filed a Notice of Related Case due to the similarities between the case involving the 423 Kennedy Property and the Developer RE1 Property.  Judge Scott stated that, "the Court found Judge Lee's opinion quite persuasive." *Id.*

The factual and legal determination made by Judge Lee and Judge Scott are discussed in further detail below.

1.    The July 24, 2023 Order

Regarding Defendants' claim that 423 Kennedy defaulted under the Loan Documents, these issues were determined by Judge Lee who concluded that "[i]n regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default." First TRO Order at p. 11.  Another matter Defendants wholly fail to address was also determined by Judge Lee – Specifically, Judge Lee addressed the WCP Fund's failure to provide the agreed upon construction to 423 Kennedy.   In doing so, Judge Lee stated that, "the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs." *Id.* at p. 10.  Thus, Defendants' actions constituted both a first breach under the 423 Kennedy Loan Documents and prevented 423 Kennedy from moving forward with its project.  Regarding the lien placed on the 423 Kennedy Property in relation to a final order regarding a notice of infraction, Judge Lee stated that "[i]t is difficult for the Court to concluded that defendants realistically believed that it was appropriate or legally proper to base a default for multi-million dollar protect [sic] on a $500 fine that plaintiffs did not know about and was cured almost immediately after plaintiffs learned of the lien through the default." *Id.* at p. 12.   Judge Lee also pointed to Section 7.6 of the deed of

trust stating that "[t]hat provision indicates the plaintiffs had the right to discharge or appeal any

lien within 30 days of the judgment." *Id*.  Judge Lee concluded that Mr. Negussie's testimony

"demonstrated that 423 Kennedy acted promptly to resolve the lien once they learned of the

existence of the violation." *Id.* at p. 12.  Judge Lee ultimately concluded that 423 Kennedy

"carried their burden by establishing a likelihood of success on the merits." *See id.* at p. 17.

2.     The August 15, 2023 Order

In the Second TRO Order, Judge Scott observed that there is "evidence of a pretextual

basis for the default."  Second TRO Order at p. 4.  Judge Scott also noted that "Defendant's

counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water

bills were being sent to the wrong address." *Id.* at n. 2.  Regarding the purportedly late

payments, Judge Scott observed that "[a]lthough [Mr. Negussie] admitted that four or five loan

payments were untimely, he testified that Defendants always accepted the payments." *Id.* at p. 3.

Judge Scott also observed that one of the purported defaults Defendants claim pertains to real

estate taxes "which were paid by the time Plaintiff received the default email." *Id.* at p. 4.

**B.     Material Disputes of Fact Exist that Preclude the Entry of Summary Judgment on Count I for Tortious Interference.**

In claiming entitlement to summary judgment on Count I (Tortious Interference) the

Defendants claim that the fourth element, resulting damages, is "key."  In making this claim, the

Defendants acknowledge that at least two of the elements of this cause of action "run too close to

potential disputes of material fact."  Motion at p. 21.  Rather, Defendants claim, without citation

to the record, that the Borrowers have not been damaged as a result of Defendants' actions.  This

is insufficient, as material disputes of fact exist regarding the damages the Borrowers have

sustained and the cause of those damages.

As the Borrowers already demonstrated when responding to a similar argument made by Mr. Drazin, the Borrowers *have* suffered damages as a result of the Defendants' misconduct that includes their inability to refinance the loans, rising interest rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the projects.  *See* Negussie Decl. ¶ 18. There will also be damages for the increased costs to complete the projects as a result of supply chain shortages and inflation.  *Id.*  To top it off, due to nearly all of those factors and a now depressed sales market, there is very little chance that either project will result in a profit.  *Id.* ¶ 19.  There are also likely damages to the building because it has been vacant and open to environmental elements.  *Id.* ¶ 18.  Both Borrowers have also incurred carrying costs, such as property taxes, insurance, and payments to vendors.  Both Borrowers have also suffered reputational damages.  *Id.*

To protect their rights under the loan documents, the Borrowers were also forced to take legal action.  *Id.* ¶ 10.  As a result, the Borrowers have incurred and continue to incur attorneys' fees and costs.  *Id.*  In sum, the damages element of Count I is the only element the Defendants attack and material disputes of fact exist that prevent the entry of summary judgment on the issue of damages.  Moreover, the Defendants have again failed to cite to any admissible evidence in support of their claim that the Borrowers have not suffered damages, as required.  As such, because the element of damages *is* a disputed material fact, the Defendants' request for summary judgment on Count I should be denied.  *See Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 26 (D.C. 1991) (reversing trial court's grant of summary judgment in a case where "sworn complaint disputed all of the material facts relied on by [the movant's] summary judgment motion.").

C.    Material Disputes of Fact Exist That Preclude Summary Judgment on
Count II for Breach of the Implied Covenant of Good Faith and Fair
Dealing.

Contrary to Defendants' statement that they are alleged only to have enforced the plain

terms of the Loan Documents, the Borrowers have alleged much more in terms of facts.  This

includes that DP Capital, the WCP Fund, and SF NU did not comply with and breached the loan

documents and actively interfered with the Borrowers' ability to comply with them.  DP Capital,

the WCP Fund, and SF NU actively interfered with and/or prevented the Borrowers from

complying with the Loan Documents. *See* Borrowers' Response ¶¶ 14 and 27.   There are also

material disputes of fact regarding whether the DP Capital, the WCP Fund, and SF NU complied

with the Loan Documents.  Specifically, the Borrowers also contend that the DP Capital, the

WCP Fund, and SF NU, breached the relevant Loan Documents first.   *See id.* ¶¶ 14 and 27.

Judge Lee and Judge Scott have already made factual determinations regarding both the

Defendants' breaches and the Defendants' interference with the Borrowers' ability to comply

with the Loan Documents.  *See generally* First and Second TRO Orders.

In this case, the prevention doctrine and the first breach doctrine go hand in hand.  To the

extent Lender Defendants claim the Borrowers defaulted under the Loan Documents, the

Borrowers contend that it was the Lender Defendant's prior breaches, namely the refusal to

provide construction draws and pre-textual claims of defaults, that prevented the Defendants

from refinancing their loans, and ultimately resulting in this litigation.  *See* Borrowers' Response

¶¶ 14 and 27.  As a result, the Borrowers maintain that they are not liable to the Lender

Defendants for any claimed breaches that occurred due to the Defendants' wrongful conduct, as

the Lender Defendants actively prevented the Borrowers' from complying with the loan

documents.  *See Joyner v. Jonathan Woodner Co*., 479 A.2d 308, 311 n.4 (D.C. 1984) (referring

to "the firmly established principle of contract law that prevention by one party excuses

performance by the other").  The Lender Defendants' actions also constituted first breaches of

the Loan documents that excused the Borrowers' further performance.  *See Rosenthal v.*

*Sonnenschein Nath & Rosenthal, LLP,* 985 A.2d 443, 452 (D.C. 2009) (explaining that after a

party breaches a contract, "the injured party need not continue to perform; it may abjure the

contract and sue for damages.").  The WCP Fund's failure to provide construction draws to 423

Kennedy was already determined to be a first breach by Judge Lee, who noted that "the project

could not move forward without those funds [construction draws] being available to plaintiffs."

*See* First TRO Order at p. 10.

Regarding the Defendants' contention that the Borrowers' made late payments, the

Borrowers contend that the WCP Fund accepted all late payments, or were themselves

responsible for those late payments by not properly crediting an interest reserve escrow, and/or

waived any defaults based upon late payment.  Negussie Decl. ¶ 13.   To the extent the

Defendants point to a "time is of the essence" clause, the WCP Fund's failure to declare defaults

at the time of any alleged nonpayment constituted a waiver of the right to later declare defaults

based on late payments that were accepted.  As the U.S. Court of Appeals for the D.C. Circuit

has previously observed, "the course of conduct of the parties may bring about a modification of

their strict legal rights and obligations to the point that the creditor could be said to have created

a waiver of its right to accelerate 'without at least implicitly giving prior notice of its intention to

do so should default again occur.'"  *See Kummli v. Myers*, 400 F.2d 774, 777 (1968) (quoting

*Har-Rich Realty Corp. v. Am. Consumer Indus., Inc.*, 351 F.2d 785, 777 (1965)).  There is also

language in the notes suggesting that a waiver of a default can occur.  *See* Section 3 of Exhibits

A and E to the Motion (first sentence after subpart (d) ("Failure to exercise any of the options

aforementioned or the failure to exercise any other option herein…shall not constitute a waiver

of the right to exercise the same *in the event of any subsequent default*.")).  Most importantly for summary judgment purposes, the issue of waiver is always a question of fact.  *BDO USA, LLP v. Jia-Sobota,* 283 A.3d 699 (D.C. 2022) (noting that the question of waiver is "a fact-intensive inquiry.").

The Borrowers also presented testimony and documentary evidence at the TRO hearings showing that the lender's own records did not list the loans in default status when the Notices of Default were sent.  *See* Exhibit 7 (Exhibit S from the Developer RE1 TRO Hearing showing that both loans for Developer RE1 were listed as "current").  The lender's records reflect the same for 423 Kennedy.  *See* screenprint from the lender's records attached hereto as Exhibit 8.  With respect to 423 Kennedy, the lender sent multiple payoff statements to 423 Kennedy, that, until December 8, 2022 did not include any default interest or default penalties that clearly, if not conclusively, supports a waiver defense and that the defaults alleged later were pre-textual. Additionally, when Mr. Huertas was questioned about what types of default had occurred by Developer RE1, he was not able to identify any type of default nor when the loans were current or not.  *See* Exhibit 9 (excerpts from the deposition transcript where Mr. Huertas evaded multiple questions, could not identify any specific reasons how Developer RE1 was in default, and confirming that the lender's records did not list a "default" status until February 1, 2023).

As the Borrowers have valid defenses to enforcement of the loan documents and there are material disputes of fact regarding DP Capital, the WCP Fund, SF NU, and JPK's intentional interference with their refinancing of the Loan Documents, the request for summary judgment on Count II should be denied.

D.    Defendants' Request as to Count IV (for Permanent Injunctive Relief)
Should Be Rejected.

The sole basis of Defendants' request for entry of summary judgment on Count IV is

their claim that injunctive relief is not a separate cause of action.  Defendants' do not, however,

dispute that the Borrowers' may be entitled to injunctive relief.   Judge Scott implicitly rejected

this argument when it was raised in a prior Motion to Dismiss.  A copy of Judge Scott's April 7,

2023 Order is attached as Exhibit 10.   A copy of the transcript from the March 24, 2023 Initial

Scheduling Conference before Judge Scott is also attached as Exhibit 11.

The Defendants have not raised any new arguments on this issue, and relitigating the

same issue that a prior judge already decided is barred by the law of the case doctrine.  *See*

*Minick v. United States*, 506 A.2d 1115, 1117 (D.C. 1986) ("[t]he doctrine of law of the case

conserves judicial time and resources by discouraging 'multiple attempts to prevail on a single

question.'").  Because the Defendants do not deny the Borrowers' entitlement to injunctive

relief, the Court should not dismiss Count IV.  If the Court does not follow the law of the case

doctrine, it should alternatively decide that injunctive relief is an available remedy here.[6]

E.    Defendants Have Not Met Their Burden as to Count III and Count VI for
Declaratory Judgment.

As a preliminary matter, while Defendants claim they are seeking summary judgment on

both Counts III and VI as to the Borrowers' causes of action for Declaratory Judgment, they fail

to substantively address Count VI.  To the extent Defendants request summary judgment on

---

[6]    *See, e.g., Sunlight Trading, LLC v. Potomac Abatement, Inc.*, 2019 D.C. Super. LEXIS
578, 13 (D.C. 2019). In *Sunlight,* a trial judge observed that it could dismiss an injunctive relief count
"based on stylistic preferences or deny its dismissal while acknowledging that it is merely a remedy."
The judge in *Sunlight* ultimately chose the latter option by explaining "that injunctive relief is
merely a remedy for the other independent causes of action."

Counts III and VI, they claim only that the Borrowers seek advisory opinions.  The Defendants are wrong.

It is well-established that parties to a contract may seek a declaratory judgment regarding the existence of a contract, dispute(s) under a contract, and what the contract states and/or allows.  *See Smith v. Wash. Post Co.,* 962 F. Supp. 2d 79, 89 (D.D.C. 2013) (explaining that "[p]arties to a contract may request a declaratory judgment stating whether a valid contract exists and, if so, what its provisions mean."); *see also Zlotnick v. Jack I. Bender & Sons, Inc*., 285 F. Supp. 548, 555 (1968) (observing that "[d]eclaratory judgment is appropriate to interpret the written instrument running between the parties and to resolve their legal relationship.").  This is exactly what the Borrowers seek with Counts III and VI of the Complaint – legal determinations as to the rights of the parties under the Loan Documents.  *See* Complaint ¶¶ 230-35 and ¶¶ 250-55.

Defendants also suggest, without support, that the Borrowers seek advisory opinions in Count III.  But the cases they cite for support are inapposite here because the Borrowers do not seek an advisory opinion.  In *Pueschel,* a federal trial judge rejected a request that it issue what would amount to an advisory opinion on a dispute over the non-movant's objection to discovery requests.  *See Pueschel v. Nat'l Air Traffic Controllers' Ass'n* 606 F. Supp. 2d 82, 86 (D.D.C. 2009) (determining that "there is no concrete discovery dispute upon which to rule" after observing that the movant's motion "does not set forth the text of any discovery request to which the defendant objected, much less the text of any objection.").  But unlike the plaintiffs in *Pueschel,* the Borrowers here have set forth concrete disputes upon which they properly seek judicial determinations regarding the rights and liabilities under the Loan Documents.  *See* Complaint ¶¶ 230-35 and ¶¶ 250-55.  The Borrowers are entitled to the requested legal

determinations.  For these reasons, the Defendants' request for summary judgment as to Counts III and VI should be denied.

      F.      <u>The Borrowers Are Entitled to Additional Discovery to Oppose the Motion</u>

Under Fed. R. Civ. P. 56(d), if the Borrowers show by affidavit or declaration that they cannot present essential facts to justify their opposition, the Court can: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  Although the Borrowers believe that they have already demonstrated that there are multiple, material facts in dispute that preclude summary judgment, it should be noted that there are a variety of facts, documents, and information that the Borrowers are entitled to discover that would further support the Borrower's opposition to the Motion.  As the Borrowers noted at the outset, if the Borrowers take the corporate depositions of the Lender Defendants and the individuals that participated in the decisions and actions taken here, they are highly likely to find even more evidence to support their claims and defenses.  Those essential facts that would further support this opposition include:

- Confirming that the Lender Defendants have waived defaults related to the alleged late payments and that they were not damaged by any alleged defaults;

- Further confirming that the Lender Defendants and did not consider any of the loans to be in default for any reason prior to December 8, 2022;

- Confirming that Jason Shrensky (of SF NU) was the person that told Mr. Huertas to put pressure on the Borrowers related to the 2507 I Street project and to "make trouble" for the Borrowers and Mr. Negussie;

- Reviewing Mr. Drazin;s legal invoices to confirm that work related to justifying the defaults was performed after-the-fact; and

- All of the facts listed in the bullet points in the Borrower's Opposition to Mr. Drazin's Motion for Summary Judgment (ECF # 30, page 14).

## VI.   CONCLUSION

There are multiple reasons why the Court must deny the Motions.  For these reasons, and for any reasons that may be advanced at a hearing on the motions, Developer RE1, LLC and 423 Kennedy, LLC, respectfully request that this Honorable Court deny the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  April 18, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ebm@gdllaw.com |
ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC
and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of April, 2025, a true copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski