## United States Bankruptcy Court
### for the District of Columbia

| | |
|---|---|
| In Re: | Case No. 23-00217-ELG |
| Charles Paxton Paret, | Chapter 7 |
| *Debtor.* | |
| Developer RE1 LLC, | |
| *Plaintiff,* | |
| v. | Adv. Pro. No. 24-10023-ELG |
| DP Capital LLC; Russell Drazin; Daniel Huertas; SF NU, LLC; and WCP Fund I LLC, | |
| *Defendants.* | |
| 423 Kennedy St Holdings LLC, | |
| *Plaintiff,* | |
| v. | |
| DP Capital LLC; Russell Drazin; Daniel Huertas; and WCP Fund I LLC, | |
| *Defendants.* | |

## <u>Fourth Amended Complaint</u>

Come Now The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423

Kennedy St Holdings LLC ("423 Kennedy"), by undersigned counsel, asserting claims against

DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, Daniel Huertas,

Russell Drazin, SF NU, LLC ("SF NU"), JPK NewCo LLC ("JPK NewCo"), and Shaheen Sariri.

The Fourth Amended Complaint includes claims for tortious interference with business relations,

breach of contract, breach of the duty of good faith and fair dealing, declaratory judgments, injunctive relief, breach of fiduciary duty, and to set aside fraudulent conveyances.[1]  In support of its Fourth Amended Complaint, Developer RE1 and 423 Kennedy aver as follows:

## THE PARTIES

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1"), is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), is a District of Columbia limited liability company that is authorized to do business in the District.

3.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability company that does business under the trade name "Washington Capital Partners".  For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

4.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

5.      The WCP controls the WCP Fund.

6.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

---

[1]      Counsel for the existing parties prior to the filing of the Third Amended Complaint agreed that given that the cases were consolidated and there are multiple overlapping facts and claims, for efficiency and judicial economy purposes it would be preferable to file one, combined Third Amended Complaint as opposed to each Plaintiff filing a separate amended complaint. This will be a fourth amended complaint for Developer RE1 and a second amended complaint for 423 Kennedy.

7.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

8.      The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

9.      The sixth defendant, JPK NewCo LLC ("JPK"), District of Columbia limited liability company that was created by one or more of the Defendants for fraudulent and other improper purposes.

10.     The seventh defendant, Shaheen Sariri, is an individual that is believed to reside at 8305 Greensboro Drive, Unit 2319, in McLean, Virginia.

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

### The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards".

11.     In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to*

3

> *the highest ethical practices in the industry*, which historically
> have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

12.     But in reality, the WCP does not have the highest ethical standards.  The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make several of their clients' construction projects fail.

The Ownership of Developer RE1, Its Purpose, and the Property.

13.     Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "RE1 Property").

14.     Developer RE1 is partially owned by Mr. Negussie.

15.     Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the RE1 Property.

16.     The Lender Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the RE1 Property and the improvements that Developer RE1 made to the RE1 Property.

17.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the RE1 Property with the WPC Fund.

The Ownership of 423 Kennedy, Its Purpose, and the Property.

18.     423 Kennedy is the record owner of real property in the District known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "423 Property").

19.     423 Kennedy is a domestic, sole purpose, limited liability company, and the sole purpose of 423 Kennedy is to own and develop the 423 Property.

4

20.     The Lender Defendants all knew that 423 Kennedy was a sole purpose entity whose only asset was the Property and the improvements that 423 Kennedy made to the 423 Property.

21.     423 Kennedy is co-owned by two members:  Mel Negussie (a 50% owner) and the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

22.     The Brighton Group is comprised of forty-one individual investors, many of whom used their personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.

23.     On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a construction finance loan for the 423 Property with the WPC Fund.

24.     Due to unforeseen complications with the soil and water at the 423 Property, 423 Kennedy increased the original loan amount and refinanced the original construction finance loan on March 31, 2022.

Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide Construction Draws to Fund the Project.

25.     As part of the refinancing, the WCP and the WCP Fund agreed that they would provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project progressed.  The WCP and the WCP Fund's agreement to provide construction draws was memorialized on the HUD 1 Settlement Statement signed at closing.

26.     423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

27.     The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule

5

and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing.  423 Kennedy also relied upon the representations contained in these documents before signing any of the loan documents at closing.

<u>The Developer RE1 Loan Documents with the WCP and the WCP Fund.</u>

28.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the "First RE1 DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First RE1 DOT was attached to Developer RE1's Complaint as Exhibit A.[2]

29.     The First RE1 DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

30.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 DOT before it was signed.

31.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First RE1 Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First RE1 Note was attached as Exhibit B to Developer RE1's Complaint.

32.     The First RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

33.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 Note before it was signed.

---

[2]     Counsel for the parties before the Third Amended Complaint was filed agreed that the Third Amended Complaint could reference the prior complaint exhibits that are already in the record and that there also was no need to attach those Exhibits again to the Third Amended Complaint.  No new exhibits are being added in the Fourth Amended Complaint.

34.    On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second RE1 DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second RE1 DOT was attached to Developer RE1's Complaint as Exhibit C.

35.    The Second RE1 DOT was a form of deed of trust  prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

36.    The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 DOT before it was signed

37.    On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second RE1 Note") in the amount of $524,000.00, as "Borrower", a copy of which was attached to Developer RE1's Complaint as Exhibit D.

38.    The Second RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

39.    The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 Note before it was signed.

40.    On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

41.    The WCP Fund appears to have assigned its interest in the Second RE1 DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

42.    The maturity date for the First RE1 Note and the Second RE1 Note was December 23, 2022.

7

43.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

44.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First RE1 Note and the Second RE1 Note.

<u>The 423 Kennedy Loan Documents with the WCP and the WCP Fund.</u>

45.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the "First 423K DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First 423K DOT was attached as Exhibit A to 423 Kennedy's Complaint.

46.     The First 423K DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

47.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K DOT before it was signed.

48.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First 423K Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund. A true copy of the First 423K Note is attached as Exhibit B to 423 Kennedy's Complaint.

49.     The First 423K Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

50.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K Note before it was signed.

51.     On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second 423K DOT") for the Property that also named the WCP Fund as Beneficiary and Mr.

Drazin as Trustee.  A true copy of the Second 423K DOT was attached as Exhibit C to 423

Kennedy's Complaint.

52.     The Second 423K DOT was a form of deed of trust was prepared by Mr. Drazin

as counsel for the WCP and the WCP Fund.

53.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes

to the terms of the Second 423K DOT before it was signed

54.     On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust

Note (the "Second 423K Note") in the amount of $1,256.000.00, as "Borrower", a copy of which

was attached to the 423 Kennedy Complaint as Exhibit D.

55.     The Second 423K Note was a form of promissory note that was prepared by Mr.

Drazin as counsel for the WCP and the WCP Fund.

56.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes

to the terms of the Second 423K Note before it was signed.

57.     As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination

fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

58.     The new, refinanced loans for 423 Kennedy were set to mature on March 31,

2023.

59.     Beginning in April of 2022, the WCP and the WCP Fund started providing

construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to

closing.

60.     The WCP Fund may have assigned its interest in the Second DOT to SF NU in an

Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but

has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

61.    Due to changing economic conditions, in September of 2022, 423 Kennedy began the process of refinancing the two loans on the 423 Property with another lender.

62.    As of October 6, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

63.    As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First 423K Note and the Second 423K Note.

The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the 423 Property by Starving 423 Kennedy of Construction Draw Funds, then Sabotaging the Refinancings of the Loans for Both Properties.

64.    On or about October 6, 2022, and contrary to the prior, express representations that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

65.    The reason that Mr. Huertas gave for not funding any further construction draws to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the development of other projects (projects that were unrelated to the Property), and that the Defendants were "disappointed" that those other projects "were not constructed well".

66.    The Defendants knew that if the WCP did not fund construction draws, 423 Kennedy would be harmed because it would not be able to complete the development of the Property.

67.    On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423 Kennedy listing the amounts required to pay the WCP Fund to retire the balances owed under the

First 423K Note and to release the First 423K DOT from the Property.  A true copy of the

October 24, 2022 Payoff Statement for the first loan was attached to 423 Kennedy's Complaint

as Exhibit E.

68.     On or about October 24, 2022, WCP transmitted a Payoff Statement for the

Second 423K Note listing the amounts required to pay the balance due to the WCP Fund under

the Second 423K Note and to release the Second 423K DOT from the Property.  A true copy of

the Payoff Statement for the second loan was attached to 423 Kennedy's Complaint as Exhibit F.

69.     As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund

that were due under the First 423K Note and the Second 423K Note.

70.     As of October 24, 2022, there was no allegation made by any Defendant to 423

Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the

First 423K DOT, or the Second 423K DOT.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 and 423 Kennedy If
They Did Not Accede to His Demands Regarding Another Unrelated
Development.</u>

71.     On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr.

Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy.  Mr. Huertas

stated that WCP "would not provide any construction loan draws to 423 Kennedy".  A copy of

the November 3, 2022 email was attached to 423 Kennedy's Complaint as Exhibit G.

72.     As of November 3, 2022, there was no allegation made by any Defendant that any

default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the

First 423K DOT, or the Second 423K DOT.

73.     As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund

that were due under the First 423K Note and the Second 423K Note.

74.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505."  A copy of the November 3, 2022 email was attached to the Developer RE1 Complaint as Exhibit E.

75.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the November 15, 2022 email was attached the Developer RE1's Complaint as Exhibit F.

76.     As of November 15, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

77.     On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws.  A copy of the November 15, 2022 email was attached to 423 Kennedy's Complaint as Exhibit H.

78.     As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

79.     By as early as November 17, 2022, the Lender Defendants each knew that Developer RE1 and 423 Kennedy had secured alternative financing, or were in the process of securing alternative financing, for their respective Properties with another lender named Main Street Bank, and that Developer RE1 and 423 Kennedy expected to close on the new refinancing loans in December of 2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached was the Developer RE1's Complaint as Exhibit G.

8161\0002\4916-8515-5391.v1

80.    On or about November 21, 2022, WCP transmitted another Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the First 423K Note and to release the First 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the first loan was attached as Exhibit I to 423 Kennedy's Complaint.

81.    On or about November 21, 2022, WCP transmitted a Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the Second 423K Note and to release the Second 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the second loan was attached as Exhibit J to 423 Kennedy's Complaint.

82.    As of November 21, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

83.    As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 or 423 Kennedy existed under either any of the respective notes and deeds of trust.

84.    On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the RE1 Property.  A copy of the November 30, 2022 email sent by Developer RE1 to WCP was attached to Developer RE1's Complaint as Exhibit H.

85.    That same day (November 30, 2022), Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP was attached as to Developer RE1's Complaint as Exhibit I.

86.     WCP sent all the Payoff Statements listed in paragraphs 67, 68, 80, and 81 to 423 Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance of both loans.

87.     None of the Payoff Statements that are referenced in 67, 68, 80, and 81 included any request by any Defendant for the payment of default fees, default interest, or any other amount that was based upon any allegation that there was a "default" by 423 Kennedy under either the First 423K Note, the Second 423K Note, the First 423K DOT or the Second 423K DOT.

88.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First RE1 Note and the Second RE1 Note by $1 million to $1.5 million (in principal).

89.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

90.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

8161\0002\4916-8515-5391.v1

91.    As of December 7, 2022, Developer RE1 had made all payments due under the First RE1 Note and the Second RE1 Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

92.    As of December 8, 2022, 423 Kennedy had made all payments due under the First 423K Note and the Second 423K Note.  By that date, 423 Kennedy had paid $514,560.80 in interest payments to the WCP Fund.  That interest amount is in addition to prior payments made by 423 Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

<u>After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr. Huertas Then Demands that Either 423 Kennedy, Developer RE1, or Mr. Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated Project, "Or Else".</u>

93.    On December 8, 2022, Mr. Huertas told 423 Kennedy and Developer RE1 during a telephone call with Mr. Negussie that the Lender Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

94.    SF NU is believed to also have a financial interest in the 2507 I Street Project.

95.    During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have

your investors buy 2507 I St to make things right" or have them "take care of the $700,000"

shortfall on the 2507 I Street Project.

96.    During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing"

by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to

the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the

Lender Defendants and the unnamed investor "would make trouble for you on all of your other

projects".

97.    During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it

was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer

RE1, 423 Kennedy, or Mr. Negussie to pay for the debts of someone else on another, unrelated

project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either

Mr. Negussie or to be making threats to any other development project that Mr. Negussie was

involved with.

98.    After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I

Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent

were withdrawn and that he would place Developer RE1 and 423 Kennedy in default under their

loan documents with the WCP Fund.

99.    The Lender Defendants knew that 423 Kennedy is a domestic, sole purpose

limited liability company that is partially owned by Mr. Negussie.

100.    The Lender Defendants knew that the sole purpose of 423 Kennedy is to develop

the 423 Property.

101.    The Lender Defendants knew that there is no legal or other business relationship

between 423 Kennedy and Developer RE1.

16

102.     The Lender Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

103.     The Lender Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

104.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 or 423 Kennedy in default under any of the loan documents for the two properties, other than Mr. Huertas' belief that he could put Developer RE1 and 423 Kennedy in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

105.     The Lender Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

106.     The Lender Defendants knew that 2507 Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

107.     The Lender Defendants knew that there is no legal or other business relationship between either Developer RE1 or 423 Kennedy and 2507 Holdings.

108.     The Lender Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

109.     The Lender Defendants knew that neither Developer RE1 nor 423 Kennedy had any interest in, or involvement with, the 2507 I Street Project

17

110.    The Lender Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy, Developer RE1, or the 2507 Holdings.

111.    The Lender Defendants knew that 2507 Holdings does not control 423 Kennedy and 423 Kennedy does not control 2507 Holdings.  The Lender Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

112.    The Lender Defendants knew that Developer RE1 is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

113.    The Lender Defendants knew that the sole purpose of Developer RE1 is to develop the RE1 Property.

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1
and 423 Kennedy By Improperly Demanding Payment More than $2 Million of
"Default Penalties" and "Default Interest" and By Threatening Developer RE1
and 423 Kennedy With Foreclosure.</u>

114.    Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email were attached to the Developer RE1 Complaint as Exhibit K and Exhibit L, respectively, and Exhibit K to the 423 Kennedy Complaint.

115.    The "Notice of Default" sent to Developer RE1 appears to reference the First RE1 DOT, the First RE1 Note, the Second RE1 DOT, and the Second RE1 Note.

18

116.    The "Notice of Default" sent to 423 Kennedy appears to reference the First 423K

DOT, the First 423K Note, the Second 423 DOT, and the Second 423K Note.

117.    Each "Notice of Default" states that it was being sent by the "Vice President" of

the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that

the Vice President of the WCP is Christina Araujo.

118.    Each "Notice of Default" also states that it was referencing "a copy of the first

page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

119.    The lack of a signature on each "Notice of Default" and the failure by the WCP to

include the referenced exhibit with each "Notice of Default" are indications that the two notices

were hastily prepared by either Mr. Huertas or by someone else at the WCP.

120.    Each Notice of Default did not contain any legal basis or other explanation for

how or why either Developer RE1 or 423 Kennedy had defaulted under any of the loan

documents.

121.    Each Deed of Trust contains a "Notices" provision that states how notices are

required to be sent.  The "Notices" provision, which is Section 11.1 in all of the deeds of trusts,

states:

> All notices, demands, requests and other communications pursuant
> to the provisions of the Note and this Deed of Trust shall be in
> writing and shall be deemed to have been properly given or served
> for all purposes when presented personally, or one business day
> after having been sent by a nationally recognized overnight
> delivery service or a local courier service, charges prepaid, or three
> (3) calendar days after having been sent by United States
> Registered or Certified Mail - Return Receipt Requested, postage
> prepaid, to the respective addresses as follows:
>
>    (a) If to the Grantor, then to: 1629 K Street, Suite 300,
> Washington DC 20006
>
>    (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200,
> Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin,

LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

*See* deeds of trust at pages 17-18.

122.     In the deeds of trust, email is not listed as a permissible means to send notice.

123.     In the email that transmitted the letters purporting to be default notices under the two RE1 loans, the WCP included two Payoff Statements for Developer RE1. True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" were attached to Developer RE1's Complaint as Exhibit M and Exhibit N, respectively.

124.     The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M to Developer RE1's Complaint.

125.     The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

126.     In the email that transmitted the letter purporting to be a "Notice of Default" under one of the two 423 Kennedy loans, the WCP included two Payoff Statements. A copy of the two Payoff Statements that were included with the email transmitting each "Notice of Default" to 423 Kennedy were attached to 423 Kennedy's Compliant as Exhibits L and M.

127.    The new Payoff Statement sent by WCP for the first loan included a demand that 423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30. Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423 Kennedy.

128.    The new Payoff Statement sent by WCP for the second loan including a demand that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty". Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by the WCP.

<u>Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.</u>

129.    After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 and 423 Kennedy were in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

130.    On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1 and 423 Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

131.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Lender Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 and 423 Kennedy to be in default under any of the loan

21

documents and to conceal the real reason why Developer RE1 and 423 Kennedy were improperly placed in default by the Defendants.

132.    As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrowers (Developer RE1 and 423 Kennedy) and to the lender under the deeds of trust.

133.    As of December 8, 2022, Mr. Drazin knew that that his representation of the Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as Trustee to Developer RE1, as borrower, and 423 Kennedy, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to Developer RE1, as borrower, and 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

134.    Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to Developer RE1 and 423 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

135.    The real reason that the Lender Defendants improperly alleged that Developer RE1 and 423 Kennedy were in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

136.    The deeds of trust state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a foreclosure sale.

137.   There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 and 423 Kennedy by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

138.   As a result of their spite, their evil, improper motive, and their greed, the Lender Defendants improperly alleged that both Developer RE1 and 423 Kennedy were in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.

139.   The Lender Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 and 423 Kennedy for the express purpose of trying to interfere with -- and prevent -- the refinancing of the loans that they knew that Developer RE1 and 423 Kennedy had secured, or were in the process of securing, with Main Street Bank.

140.   The Lender Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 and 423 Kennedy for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing of their loans with Main Street Bank.

141.   The Lender Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

142.   The Lender Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Lender Defendants claimed existed at the 2507 I Street Project.

143.   The actions of the Lender Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1

23

and its members, and 423 Kennedy and its members. The Lender Defendants' misconduct is a form of extortion.

> The Cover Stories that Mr. Drazin Came Up with for Developer RE1 and 423 Kennedy Do Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.

144.    Mr. Drazin came up with the cover stories that Mr. Huertas had requested that he provide for the Lender Defendants. When asked by counsel for Developer RE1 and 423 Kennedy to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded by email that:

(a)    "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)    Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022." A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 was attached to Developer RE1's Complaint as Exhibit O.

145.    For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

146.    Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022. That was because DC Water was sending the invoices for the Property to the wrong address. The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). Upon learning of the Disputed

24

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

147.    On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

148.    On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing were attached to Developer RE1's Complaint together as Exhibit P.

149.    Pursuant to Section 7.6 of the First RE1 DOT and the Second RE1 DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

150.    Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

151.    Mr. Drazin also came up with the cover story for 423 Kennedy that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 and 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr.

25

Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185 ("Fine Certificate"). A copy of Mr. Drazin's reply email listing the alleged defaults was attached to 423 Kennedy's Complaint as Exhibit N.

152.    The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00. A true copy of the NOI was attached to 423 Kennedy's Complaint at Exhibit O.

153.    423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

154.    On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI. A copy of the Final Order was attached to 423 Kennedy's Complaint as Exhibit P.

155.    423 Kennedy noted an appeal of the Final Order on September 12, 2022. A copy is 423 Kennedy's appeal was attached to 423 Kennedy's Complaint as Exhibit Q.

156.    Pursuant to Section 7.6 of the First 423K DOT and the Second 423K DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

157.    423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI. However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that

was sent to it by the Lender Defendants was improper and was sent as a pretext, on December 10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was recorded as a result of the NOI.  A copy of confirmation of the $1,657.34 payment to the District was attached to 423 Kennedy's Complaint as Exhibit R.

158.    December 10, 2022 is less than thirty days after November 17, 2022.

159.    On December 11, 2022, the District of Columbia Office of Administrative Hearings (OAH) vacated the Final Order.  *See* Exhibit S to 423 Kennedy's Complaint.

160.    There are no outstanding fines owed by 423 Kennedy to the District.

161.    423 Kennedy cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal from, or to discharge (by payment), any lien filed by the District.

162.    The only provision of the loan documents that Mr. Drazin cited as a claimed basis for a "default" by Developer RE1 and 423 Kennedy was Section 7.9 of deeds of trust.

163.    The deeds of trust each have a Section 7.9 that is identical.  Section 7.9 is part of the "Events of Default" provisions of the deeds of trust.  Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* deeds of trust at pages 11-12 (italic and underlined emphasis added).

164.    The Lender Defendants apparently claim that Section 7.9 is a cross-default provision.  A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

27

165. In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy or Developer RE1, two conditions must have occurred: (1) the borrower must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) the borrower must be an "affiliate of" 423 Kennedy or Developer RE1.

166. The deeds of trust do not define the term "affiliate." Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company." 15 U.S. Code §6809 (6).

167. There is also no common control of Developer RE1 and 423 Kennedy.

168. Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

169. Mr. Negussie does not have a "controlling" interest in Developer RE1.

170. Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred under any of the deeds of trust, even if one of them was actually in "default" of any loan agreement with the WCP Fund.

171. Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Lender Defendants falsely, and improperly, claimed that 423 Kennedy and Developer RE1 were in default under the respective deeds of trust.

172. The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that: "There is no right to cure. There is no right to deceleration. There is no right to reinstatement. The Loans are in default and are accelerated." *See* Ex. O to Developer RE1's Complaint and Ex. N to 423 Kennedy's Complaint (the use of "Loans" appears to be referring to the notes and deeds of trust).

8161\0002\4916-8515-5391.v1

173.    The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

174.    The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True copies of the receipts for the property tax payments were attached to Developer RE1's Complaint as Exhibit Q and Exhibit R, respectively.

175.    The late payment of taxes by Developer RE1 caused no harm whatsoever to the WCP Fund.

176.    The deeds of trust contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

177.    No claim of default was made by WCP against Developer RE1 or 423 Kennedy until after WCP became aware that Developer RE1 and 423 Kennedy were obtaining refinance loans for their properties with Main Street Bank.

<ins>Developer RE1 and 423 Kennedy Will Be Irreparably Harmed if the Defendants'
Predatory Lending Practices Are Left Unchecked.</ins>

178.    The Lender Defendants have threatened to foreclose on the Properties owned by Developer RE1 and 423 Kennedy even though they know that they have no legal right to foreclose on the Property.

179.    There is no valid, legal basis under any provision any of the deeds of trust that would permit the Defendants to foreclose on the Property.

180.    If any of the Defendants follow through on any foreclose sale on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

8161\0002\4916-8515-5391.v1

181.     If any of the Defendants follow through on any scheduled foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors, will be irreparably harmed and they could lose their entire investments.

182.     The Lender Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally and willfully disregarding Developer RE1's rights under the loan documents and under the law.  The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

183.     The Lender Defendants knew that the First 423K Note and the Second 423K Note list a maturity date of December 23, 2022.  The Lender Defendants deliberately timed their improper interference with Developer RE1's and 423 Kennedy's business relations -- right before the Christmas holiday period -- to make it close to impossible for 423 Kennedy to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the two properties.

184.     As of January 11, 2023, none of the Lender Defendants had sent either Developer RE1 or 423 Kennedy a written default notice that complies with the notice provisions of either the deed of trust.

185.     On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("RE1 Foreclosure Notice").  The RE1 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:10 p.m.

186.     On June 23, 2023, Mr. Drazin, on behalf of the WCP Fund, sent to 423 Kennedy a Notice of Foreclosure Sale of Real Property or Condominium Unit ("423 Foreclosure Notice").

30

The 423 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:00

p.m.  A copy of the 423 Foreclosure Notice was attached to 423 Kennedy's Complaint as

Exhibit T.

187.    On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he

resign as Trustee under the deeds of trust due to his conflict of interest.  After receiving that

letter, Mr. Drazin refused to resign as Trustee.

423 Kennedy and Developer RE1 Will Be Irreparably Harmed if the Defendants'
Predatory Lending Practices Are Left Unchecked.

188.    The Property owned by 423 Kennedy has been improved by 423 Kennedy by

constructing a mixed use, six level (including the lower cellar unit) building with thirty-three

residential units and one commercial unit comprising 36,512 square feet.

189.    The improvements that 423 Kennedy made to the Property are 75-80% complete,

and the Project would have been completed in the first quarter of 2023 but for the Lender

Defendants' misconduct.

190.    Around December of 2022, the Property owned by 423 Kennedy had a current

value of $11.9 million.

191.    Around December of 2022, the Property owned by Developer RE1 had a current

value of $4 million.

192.    There was no valid, legal basis under any provisions of the deeds of trust that

would have permitted the Lender Defendants to foreclose on the Properties owned by Developer

RE1 and 423 Kennedy.

193.    The Lender Defendants deliberately sabotaged 423 Kennedy's ability to complete

construction, and Developer RE1 and 423 Kennedy's refinancing efforts.  But for the Lender

Defendants' misconduct, 423 Kennedy would have closed on a refinance loan and paid the WCP

Fund in full in December of 2022.

194.    The Lender Defendants also deliberately timed their improper interference with

423 Kennedy's and Developer RE1's business relations during the approaching Christmas and

New Year's holiday periods to make it impossible for 423 Kennedy and Developer RE1 to close

on any refinancing loan with Main Street Bank prior to the end of 2022, and to tie up any

refinancing indefinitely so that they can try to foreclose on the properties owned by Developer

RE1 and 423 Kennedy.

195.    The Lender Defendants' conduct shows that they have an evil motive, that they

are acting with actual malice to inflict damages on Developer RE1, 423 Kennedy, and others,

and they are intentionally and willfully disregarding Developer RE1's and 423 Kennedy's rights

under the loan documents and under the law.  The Lender Defendants' misconduct and improper

lending practices also constitute outrageous conduct further justifying an award of punitive

damages.

<u>The DC Superior Court Enjoins the Lender Defendants.</u>

196.    On July 24, 2023, the Honorable Milton C. Lee, Jr. issued a comprehensive,

twenty-two page Order in Case No.: 2023-CAB-004260 granting 423 Kennedy's Motion for

Temporary Restraining Order (the "First TRO Order").

197.    In the First TRO Order, Judge Lee concluded that 423 Kennedy "carried their

burden by establishing a likelihood of success on the merits."  TRO Order at p. 17.  Judge Lee

also determined that the Trustee had a fiduciary duty to act faithfully to the Borrowers and that

when the Trustee acted as counsel to WCP, this created a conflict.  First TRO Order at pp. 16-17.

Judge Lee concluded that "[w]hen there is evidence of the conflict of interest, the burden of

demonstrating the faithful discharge of duties shifts to the trustee."  *Id.*  p. 17.

198.    On August 15, 2023, Judge Scott entered a Hearing Order by which she, among

other things, memorialized her oral decision (from a July 25, 2023 TRO hearing) that granted

Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an

Imminent Foreclosure sale (the "Second TRO Order").  In the Second TRO Order, Judge Scott

came to nearly the same conclusions as Judge Lee, and she observed that "[t]he record

demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to perform under the deed of

trust."  Second TRO Order at p. 4 (italic emphasis added).  Pursuant to the Second TRO Order,

Judge Scott ordered that the defendants, including the Trustee, "must immediately stop taking

any action to foreclose on the Property [owned by Developer RE1] pending further order of this

Court."  *Id.* p. 5.

   The Lender Defendants Create JPK NewCo for a Fraudulent Purpose, Then
   Engage in Multiple Fraudulent Transfers.

199.    Some of the parties engaged in private mediation in January of 2024, but that

mediation (with JAMS) was not successful.  The second mediation session on January 25, 2024

was abruptly terminated when Mr. Huertas decided to end the negotiations.

200.    JPK NewCo was formed after the mediation concluded, sometime in early

February of 2024.  Since its formation, JPK NewCo has conducted no business, it has no

employees, it generates no income, it produces no goods, and it provides no services.

201.    On or about April 15, 2024, the WCP Fund transferred the 423 Kennedy loan

documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

202.    On or about April 15, 2024, SF NU transferred the Developer RE1 loan

documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

203.    This transfers described in paragraphs 201-202 were not supported by any

consideration.

204.     This transfers described in paragraphs 201-202 were made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the specific intent to hinder or delay the adjudication of the claims in this case.

205.     The transfers described in paragraphs 201-202 were also made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and SF NU.

206.     On or about June 3, 2024, JPK NewCo borrowed $50,000 from Defendant Sariri, a longtime personal friend of Mr. Huertas.

207.     The transfer of funds from Mr. Sariri to JPK NewCo was a sham transaction.  The sham loan was part of a plan to make it appear that JPK NewCo was a legitimate company, when in fact it was a shell company that was created for improper purposes.

208.     The transfer described in paragraph 206 was made by Mr. Sariri, Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the adjudication of the claims in this case.

209.     The transfer described in in paragraph 206 was also made by Mr. Sariri, the Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and/or SF NU.

210.     Soon after the Sariri loan was made to JPK NewCo, JPK NewCo transferred $23,000 to a bankruptcy lawyer that would later represent JPK NewCo.

211.     Soon after the Sariri loan was made, JPK NewCo loaned $26,000 to a company called Energy of Morocco, LLC under a promissory note to make it appear that JPK NewCo was conducting business.  The funds loaned to Energy of Morocco, LLC were used for an unrelated development project that was funded by the WCP Fund.

212.    The loan to Energy of Morocco, LLC was also designed to create the appearance that JPK NewCo was a legitimate company that was conducting business, when in reality JPK NewCo was the alter ego of the Lender Defendants that was created for the purpose of hindering and delaying Developer RE1 and 423 Kennedy from reaching the assets of SF NU and the WCP Fund.

213.    The loan from Mr. Sariri was designed to never be paid by JPK NewCo so that Mr. Sariri could later claim that he was a legitimate creditor of JPK NewCo in order to file an involuntary bankruptcy petition against JPK NewCo so that the Defendants could argue that a "core proceeding" existed that would give this Court jurisdiction over Developer RE1 and 423 Kennedy's claims in the D.C. Superior Court cases.

214.    The Lender Defendants also hatched the scheme to create a "core proceeding" because they were dissatisfied with various rulings made by the D.C. Superior Court, so they wanted to get a new judge on the case and to delay the taking of their depositions that were scheduled the first few days of the week of July 8, 2024.

215.    The scheme to create a "core jurisdiction" argument appears to have been designed and orchestrated by counsel of record for the Lender Defendants, who, on information and belief, transferred part of JPK NewCo's funds through his escrow account.

216.    At the time JPK NewCo loaned money to Energy of Morocco, LLC, JPK NewCo knew that making that loan would render it unable to make any payment to Mr. Sariri.

217.    JPK NewCo is dominated and controlled by Daniel Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU.

8161\0002\4916-8515-5391.v1

COUNT I
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against the WCP Fund, DP Capital, and Mr. Huertas

218.    Paragraphs 1-217 of the Fourth Amended Complaint are incorporated by reference.

219.    423 Kennedy and Developer RE1 were in the process of closing on a refinancing of their existing loans with Main Street Bank.

220.    The Count I Defendants each knew of the existence of Developer RE1's and 423 Kennedy's business relations with Main Street Bank.

221.    As a result of the Count I Defendants' improper demand that Developer RE1 and 423 Kennedy pay Default Interest and Default Penalties, Developer RE1 and 423 Kennedy could not obtain a release of the respective deeds of trust on their properties as part of the refinancing of their loans with Main Street Bank.

222.    As a direct result of the Count I Defendants' direct and continuing interference with Developer RE1's and 423 Kennedy's business relations with Main Street Bank, they were not able to go to closing on the refinancing loans with Main Street Bank.

223.    The Count I Defendants have intentionally interfered with Developer RE1's and 423 Kennedy's development of their properties and their refinancing of the loans with Main Street Bank without any valid justification.

224.    Developer RE1 and 423 Kennedy have been damaged by the Count I Defendants' tortious interference with their business relations, and will continue to be damaged if the Count I Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor and against Defendants

8161\0002\4916-8515-5391.v1

WCP, WCP Fund I, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be

determined) that they have suffered and will suffer as a result of the Count I Defendants'

intentional interference with their business relations (currently estimated to be at least $3 million

for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of

$2,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

COUNT II
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against DP Capital, the WCP Fund, SF NU and JPK NewCo.

225.    Paragraphs 1–224 of the Fourth Amended Complaint are incorporated by

reference.

226.    Every contract in the District of Columbia contains an implied covenant of good

faith and fair dealing.

227.    The notes and deeds of trust between Developer RE1 and the WCP Fund, and/or

SF NU, and/or JPK NewCo.

228.    The notes and deeds of trust between 423 Kennedy and the WCP Fund, and/or SF

NU, and or JPK NewCo. are contracts.

229.    Through their improper conduct, the Count II Defendants have breached the

implied covenant of good faith and fair dealing contained in the respective contracts.

WHEREFORE, the Plaintiffs, Developer RE1 LLC 423 Kennedy St Holdings, LLC,

respectfully request that this Honorable Court enter judgment in its favor under Count II against

Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, SF NU,

LLC and/or JPK NewCo: (a) any and all damages (to be determined) that the Plaintiffs has

suffered will suffer as a result of the Count II Defendants' breach of the duty of good faith and

37

fair dealing (currently estimated to be $3 million for each Plaintiff); (b) reasonable attorney's

fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

COUNT III
DECLARATORY JUDGMENT
Count III Is Asserted Against
the WCP Fund, SF NU, and JPK NewCo Only)

230.    Paragraphs 1–229 of the Fourth Amended Complaint are incorporated by

reference.

231.    The deeds of trust are contracts between Developer RE1 and 423 Kennedy and

the WCP Fund and/or SF NU and/or JPK NewCo.

232.    There is an actual and justiciable controversy between Developer RE1 and 423

Kennedy and the Count III Defendants as to whether Developer RE1 or 423 Kennedy are

affiliates" under the deeds of trust, which controversy is ripe for adjudication.

233.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed

does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of*

*American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing

with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law

abhors a forfeiture.")).

234.    There is an actual and justiciable controversy between Developer RE1, the WCP,

the WCP Fund, and/or SF NU as to whether an unresolved dispute about water bills, or the late

payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate

a forfeiture of the Property.

235.    There is an actual and justiciable controversy between Developer RE1 and the

WCP, the WCP Fund, SF NU, and/or JPK NewCo as to whether notes and deeds of trust contain

38

unenforceable liquidated damages (and other) provisions, which controversy is ripe for

adjudication.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,

respectfully request that under Count III, this Honorable Court declare that: (a) under Section

7.9 of the deeds of trust, (i) 423 Kennedy St Holdings LLC is not an affiliate of Developer REI,

LLC or 2507 I Street LLC; and (ii) Developer RE1 is not an affiliate of 2507 I Street LLC (b)

any provision of either the deed of trust that allows the lender to declare a default by Developer

RE1 or 423 Kennedy after the fact, after the alleged default has already been cured (or is in the

process of being adjudicated), and without providing any notice to the borrower or any

opportunity to cure, and that results in either (i) additional interest and penalties entirely

disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is

unconscionable and enforceable as a matter of public policy; and (c) the notes and deeds of trust

have liquidated damages (and other) provisions that are unenforceable and cannot be used to

support any basis for a foreclosure.

COUNT IV
PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE DEEDS OF TRUST AND
ANY FORECLOSURE UNTIL AFTER A TRIAL ON THE MERITS)
Count IV Is Asserted Against All Defendants except Defendant Sariri

236.    Paragraphs 1–235 of the Fourth Amended Complaint are incorporated by

reference.

237.    Unless they are enjoined, the Count IV Defendants will continue to improperly

claim that Developer RE1 and 423 Kennedy are in default of notes and deeds of trust.

238.    The Count IV Defendants' unethical, outrageous, and illegal conduct, as

described in this Fourth Amended Complaint, is causing irreparable harm to Developer RE1 and

39

423 Kennedy.  The properties that Developer RE1 and 423 Kennedy own are unique, and

Developer RE1 and 423 Kennedy could lose their entire interests in their properties.

239.    Developer RE1 and 423 Kennedy do not have an adequate remedy at law.

240.    If the Count IV Defendants are not all enjoined, they will proceed to foreclose on

the properties owned by Developer RE1 and 423 Kennedy.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,

respectfully request that under Count IV this Honorable Court enter an injunction prohibiting the

Count IV Defendants from invoking any remedy under the note and deeds of trust, including,

without limitation, enjoining the Count IV Defendants: (a) from attempting to enforce any

provisions in the notes and deeds of trust that the court determines are inapplicable and/or

unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from

initiating any foreclosure on the properties until after Developer RE1's and 423 Kennedy's

claims in the Fourth Amended Complaint have been decided.

## COUNT V
### BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

241.    Paragraphs 1-240 of the Fourth Amended Complaint are incorporated by

reference.

242.    As Trustee under the deeds of trust, Defendant Drazin had, and has, a fiduciary

duty to both the lender and the borrowers (Developer RE1 and 423 Kennedy).

243.    Defendant Drazin knew that he had actual conflicts of interest while serving

simultaneously as counsel for the Defendants and as Trustee under the deeds of trust.

244.    While serving in his role as Trustee under the deeds of trust, Defendant Drazin

has at all times acted solely in favor of, and made decisions solely in favor of, the Defendants.

40

245.    While serving in his role as Trustee under the deed of trust, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1 and 423 Kennedy, as borrowers, under the deeds of trust.

246.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

247.    While serving in his role as Trustee under the deeds of trust, Defendant Drazin has been in continual consultation with, and dominated by, the Defendants.

248.    Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Fourth Amended Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and 423 Kennedy became adverse to the Defendants, by continuing to act solely in favor of the Defendants while Trustee, and by issuing correspondence and Foreclosure Notices when he had actual knowledge of his conflicts of interest.

249.    Due to his actual conflicts of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Defendants under the deeds of trust.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for: (a) any and all damages (final amount to be determined) that the Plaintiffs have suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated to be at least $3 million for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

COUNT VI

DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE
TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants Except Defendant Sariri

250.    Paragraphs 1-249 of the Fourth Amended Complaint are incorporated by

reference.

251.    Defendant Drazin has an actual conflict of interest that prevents him from serving

as Trustee under the deeds of trust.

252.    Due to his conflict of interest as counsel for one or more of the Defendants,

Defendant Drazin cannot uphold his fiduciary duties to the borrowers as Trustee under the deeds

of trust.

253.    Any actions taken by Defendant Drazin as Trustee under the deeds of trust must

be either set aside or suspended unless and until Defendant Drazin proves that he has been

faithful to his obligations to the borrowers under the deeds of trust.

254.    There is an actual and justiciable controversy between Developer RE1 and 423

Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has

an actual conflict of interest, which controversy is ripe for adjudication.

255.    There is an actual and justiciable controversy between Developer RE1and 423

Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee

while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

VI this Honorable Court declare that: (a) Defendant Drazin cannot serve as Trustee under the

deeds of trust due to an actual conflict of interest; and (b) that any actions that Defendant Drazin

took while he had a conflict of interest must be either set aside or suspended until Defendant

8161\0002\4916-8515-5391.v1

Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both

the borrowers (Developer RE1 and 423 Kennedy) and under the deeds of trust.

## COUNT VII
## TO SET ASIDE FRAUDULENT TRANSFERS
Count VII is Asserted Against All Defendants except Defendant Drazin

256.    Paragraphs 1-255 of the Fourth Amended Complaint are incorporated by

reference.

257.    The transfer of the loan documents described in paragraphs 201-202 were made

with the intent to hinder or delay the claims of Developer RE1 and 423 Kennedy.

258.    The transfer of the loan documents described in paragraphs 201-202 were made

with the intent to hinder or delay Developer RE1 and 423 Kennedy from reaching the assets of

SF NU and/or the WCP Fund.

259.    The transfers described in paragraphs 201-202 were made without consideration

and/or without SF NU and the WCP Fund receiving a reasonably equivalent value in exchange

for the transfer.

260.    The transfers described in paragraphs 206, 210, and 211 were made when JPK

NewCo believed or reasonably should have believed that it would incur a debt beyond its ability

to pay that debt when it became due.

261.    The transfers described in paragraphs 206, 210, and 211 were made when JPK

NewCo was insolvent or became insolvent shortly after the transfer was made or the obligation

was incurred.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,

respectfully request that under Count VII this Honorable Court:  (a) set aside all fraudulent

transfers; (b) disregard JPK NewCo as a company because it is in reality the alter ego of one of

more of the Lender Defendants that was formed to hinder and delay creditors and to perpetuate a

fraud (an orchestrated, phony involuntary bankruptcy case) upon this Court; and (c) issue an

injunction preventing any further disposition of the loan documents for Developer RE1 and 423

Kennedy until after all claims in this case have been decided.

## COUNT VIII
### BREACH OF CONTRACT – 423 KENNEDY
Count VIII is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

262.    Paragraphs 1-261 of the Fourth Complaint are incorporated by reference.

263.    There was either an express contract or an implied-in-fact contract between 423

Kennedy and the WCP and the WCP Fund to fund construction draws.

264.     The WCP and the WCP Fund breached the contract by unilaterally refusing to

fund construction draws and due to no fault of 423 Kennedy.

265.    To the extent that SF NU is found to have been assigned any rights in the contract

from either the WCP or the WCP Fund, SF NU is bound by the contract and equally responsible

for its breach.

266.    423 Kennedy has been damaged by the breach of contract by the WCP, the WCP

Fund, and SF NU.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that

under Count VIII this Honorable Court enter judgment in its favor and against Defendants DP

Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC for:

(a) any and all damages that 423 Kennedy has suffered and will suffer as a result of the

Defendants' breach of contract (currently estimated to be at least $3 million); (b) reasonable

attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

## DEMAND FOR A JURY TRIAL

The Plaintiffs demand a trial by jury as to all claims asserted in the Fourth Amended

Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  May 6, 2025

/s/ James D. Sadowski
_____
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and
423 Kennedy St Holdings LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Fourth Amended Complaint was filed as an

Exhibit to Plaintiff's Motion for Leave to File Fourth Amended Complaint through ECF this 6th

day of May, 2025, and a notice of electronic filing should be sent by ECF to all counsel of record

in the case.

/s/ James D. Sadowski
_____
James D. Sadowski

45